1  **JENNER & BLOCK LLP**
   David R. Singer (SBN 204699)
2  dsinger@jenner.com
   Julie A. Shepard (SBN 175538)
3  jshepard@jenner.com
   Lauren M. Greene (SBN 271397)
4  lgreene@jenner.com
   515 South Flower Street, Suite 3300
5  Los Angeles, CA  90071-2246
   Telephone: (213) 239-5100
6  Facsimile:  (213) 239-5199
7
8
9  *Attorneys for Plaintiffs*
10
11              **UNITED STATES DISTRICT COURT**
12             **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| DISNEY ENTERPRISES, INC., a Delaware corporation; MARVEL CHARACTERS, INC., a Delaware corporation; MVL FILM FINANCE LLC, a Delaware limited liability company; LUCASFILM LTD. LLC, a California limited liability company; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; and DREAMWORKS ANIMATION L.L.C., a Delaware limited liability company, | Case No. 25-5275 **COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT AND SECONDARY COPYRIGHT INFRINGEMENT; DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| MIDJOURNEY, INC., a Delaware corporation, | |
| Defendant. | |

Plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation (collectively "Disney"), and Universal City Studios Productions LLLP and DreamWorks Animation L.L.C. (collectively "Universal") bring this lawsuit for direct and secondary copyright infringement under the Copyright Act (17 U.S.C. § 101 et seq.) against Midjourney, Inc. ("Midjourney").  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).  Disney and Universal (sometimes referred to collectively as "Plaintiffs") allege, on personal knowledge as to themselves and information and belief as to others, as follows:

## **INTRODUCTION**

1.     For more than 100 years, Disney and Universal have delighted audiences around the world by investing in and fostering American creative innovation and producing some of the greatest motion pictures and fictional characters of all time.  Midjourney, however, seeks to reap the rewards of Plaintiffs' creative investment by selling an artificial intelligence ("AI") image-generating service ("Image Service") that functions as a virtual vending machine, generating endless unauthorized copies of Disney's and Universal's copyrighted works.

2.     By helping itself to Plaintiffs' copyrighted works, and then distributing images (and soon videos) that blatantly incorporate and copy Disney's and Universal's famous characters—without investing a penny in their creation—Midjourney is the quintessential copyright free-rider and a bottomless pit of plagiarism.  Piracy is piracy, and whether an infringing image or video is made with AI or another technology does not make it any less infringing.  Midjourney's conduct misappropriates Disney's and Universal's intellectual property and threatens to upend the bedrock incentives of U.S. copyright law that drive American leadership in movies, television, and other creative arts.

3.     Midjourney's infringement is calculated and willful. Plaintiffs have asked Midjourney to stop infringing their copyrighted works and, at a minimum, to adopt technological measures, which other AI services have implemented to prevent the

generation of infringing material.  But Midjourney, which has attracted millions of subscribers and made $300 million last year alone, is focused on its own bottom line and ignored Plaintiffs' demands.

4.   Instead, Midjourney has chosen to double down on its unlawful actions by releasing and promoting even newer versions of its Image Service and teasing its soon-to-be-released commercial AI video service ("Video Service").  On information and belief, without Plaintiffs' authorization, Midjourney's Video Service will generate, publicly display, and distribute videos featuring Disney's and Universal's copyrighted characters. Midjourney has already begun training its Video Service, meaning that Midjourney is very likely already infringing Plaintiffs' copyrighted works in connection with its Video Service.

5.   Disney's and Universal's vast libraries of intellectual property include some of the most well-known movies, television shows, and fictional characters of all time.  For Disney, these include the *Star Wars* franchise, the Marvel Comics properties, Pixar films, the 20th Century Studios (formerly 20th Century Fox) library, and Disney's namesake animated features.  Disney's unforgettable copyrighted characters span decades of works across a wide range of genres and tastes: Darth Vader from *Star Wars*, Elsa from *Frozen*, Lightning McQueen from *Cars*, Buzz Lightyear from *Toy Story*, Sully from *Monster's Inc*., Marvel's Iron Man, and Homer Simpson from *The Simpsons*, to name just a few.

6.   Universal—the oldest continuously operating movie studio in the United States—is the home to some of the most popular and enduring animated movies and beloved characters that have become part of modern American popular culture.  These include Shrek from the Academy Award-winning *Shrek* and its sequels and spin-offs, and the Minions characters from *Despicable Me* and *Minions* movies (the highest grossing animated franchise to date), as well as other beloved and famous characters from critically

acclaimed film franchises like Hiccup and Toothless from *How to Train Your Dragon*, Po from *Kung Fu Panda*, and the Boss Baby from *The Boss Baby*.

7.      Disney's and Universal's works are built on decades of financial investment, imagination, and innovation.  Few American entertainment companies have embraced creativity and technology like Plaintiffs, from the earliest days of using technology to synchronize sound and film, to creating virtual and immersive experiences at their world class theme parks, to pushing the boundaries of animation through groundbreaking rendering software, to advanced machine learning for de-aging actors in movies.

8.      These investments of time and money are only made possible by the incentives embodied in U.S. copyright law, which ensure copyright owners the exclusive right to control and commercialize their own creative works.  Whether it is a children's coloring book with Marvel superheroes, a video game based on the *Shrek* movies, or a subscription service that distributes high resolution images or short videos with Plaintiffs' copyrighted characters, *only Plaintiffs* are allowed to build a business around or otherwise commercialize those characters.  Midjourney's Image Service was developed using innumerable unauthorized copies of Plaintiffs' copyrighted works, and it operates by reproducing, publicly displaying, making available, and distributing additional infringing copies and derivatives of those works.  If a Midjourney subscriber submits a simple text prompt requesting an image of the character Darth Vader in a particular setting or doing a

particular action, Midjourney obliges by generating and displaying a high quality, downloadable image featuring Disney's copyrighted Darth Vader character:



Similarly, if a Midjourney subscriber submits a simple text prompt requesting an image of the Minions characters in a particular setting or doing a particular action, Midjourney obliges by generating and displaying a high quality, downloadable image featuring Universal's Minions:



9.     Midjourney also copies and uses Plaintiffs' copyrighted characters to market and promote its Image Service, encouraging even more infringement (and falsely implying Plaintiffs' endorsement).

10.     Midjourney could easily stop its theft and exploitation of Plaintiffs' intellectual property.  Midjourney controls what copyrighted content it selects, copies, and includes in its Image Service, and it has the means to implement protection measures to prevent the ongoing copying, public display, and distribution of Plaintiffs' works. Midjourney already has in place technological measures to prevent its distribution and public display of certain images and artwork such as violence or nudity.  And other AI image- and video-generating services have instituted copyright protection measures that recognize and protect the rights of content creators like Disney and Universal.  These readily available measures can be implemented in at least two ways: first by rejecting

COMPLAINT

prompts that request the display or download of Plaintiffs' copyrighted characters, and second by using technology to screen for infringing image outputs.

11.    Before taking legal action, Plaintiffs asked Midjourney to stop its theft of their intellectual property, including by implementing these simple measures.  Instead of stopping its infringement, Midjourney has continued to release new versions of its Image Service, which, according to Midjourney's founder and CEO, have even higher quality infringing images.[1] These are just a few examples of Midjourney's latest infringement of Plaintiffs' copyrighted characters:

 

 

---

[1] Jim Clyde Monge, *Midjourney Finally Releases V7 Image Model*, Medium (Apr. 7, 2025), https://generativeai.pub/midjourney-finally-releases-v7-image-model-e07455e60f57.

12.     Midjourney's bootlegging business model and defiance of U.S copyright law are not only an attack on Disney, Universal, and the hard-working creative community that brings the magic of movies to life, but are also a broader threat to the American motion picture industry which has created millions of jobs and contributed more than $260 billion to the nation's economy.

13.     This case is not a "close call" under well-settled copyright law. Midjourney set up a lucrative commercial service by making countless, unauthorized copies of Plaintiffs' copyrighted works, and now sells subscriptions to consumers so that they can view and download copies and derivatives of Plaintiffs' valuable copyrighted characters. That is textbook copyright infringement.

14.     Midjourney's large-scale infringement is systematic, ongoing, and willful, and Plaintiffs have been, and continue to be, substantially and irreparably harmed by it. Disney and Universal bring this action to stop Midjourney's intellectual property theft and to uphold U.S. copyright law and the crucial incentives that reward those who create, not those who take.

## THE PARTIES

15.     Plaintiff Disney Enterprises, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Disney Enterprises, Inc. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those specified copyrighted works in Exhibit A.

16.     Plaintiff Marvel Characters, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Marvel Characters, Inc. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those copyrighted works specified in Exhibit A.

17.     Plaintiff MVL Film Finance LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Burbank,

California.  MVL Film Finance LLC owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those copyrighted works specified in Exhibit A.

18.    Plaintiffs Marvel Character, Inc. and MVL Film Finance LLC are referred to collectively as "Marvel."

19.    Plaintiff Lucasfilm Ltd. LLC is a limited liability company organized under the laws of the State of California with its principal place of business in San Francisco, California.  Lucasfilm Ltd. LLC owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those copyrighted works specified in Exhibit A.

20.    Plaintiff Twentieth Century Fox Film Corporation (also known as "20th Century Studios") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  20th Century Studios owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those copyrighted works specified in Exhibit A.

21.    As noted above, Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, and 20th Century Studios are collectively referred to in this Complaint as "Disney."  Exhibit A contains a non-exhaustive, representative list of Disney's works, along with their registration numbers, which Midjourney has directly or secondarily infringed and continues to infringe ("Disney's Copyrighted Works").  All of Disney's Copyrighted Works in Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, et seq., and they have been duly registered with the U.S. Copyright Office.  The copyrights set forth in Exhibit A remain valid and subsisting and have been owned and/or controlled by Disney at all times relevant to the allegations in this Complaint.  The registered copyrights for Disney's Copyrighted Works encompass the identified characters appearing therein.

22.    Plaintiff Universal City Studios Productions LLLP ("Universal Pictures") is a limited liability limited partnership organized under the laws of the State of Delaware with

its principal place of business in Universal City, California. Universal Pictures owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those copyrighted works specified in Exhibit B.

23. Plaintiff DreamWorks Animation L.L.C. ("DreamWorks") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Glendale, California. DreamWorks Animation L.L.C. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute, including those copyrighted works specified in Exhibit B.

24. As noted above, Universal Pictures and DreamWorks are referred to collectively in this Complaint as "Universal." Exhibit B contains a non-exhaustive, representative list of Universal's works, along with their registration numbers, which Midjourney has directly or secondarily infringed and continues to infringe ("Universal's Copyrighted Works"). All of Universal's Copyrighted Works in Exhibit B constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, et seq., and they have been duly registered with the U.S. Copyright Office. The copyrights set forth in Exhibit B remain valid and subsisting and have been owned and/or controlled by Universal at all times relevant to the allegations in this Complaint. The registered copyrights for Universal's Copyrighted Works encompass the identified characters appearing therein.

25. Disney's Copyrighted Works specified in Exhibit A and Universal's Copyrighted Works in Exhibit B are referred to collectively in this Complaint as the "Copyrighted Works" or "Plaintiffs' Copyrighted Works."

26. Defendant Midjourney, Inc. is a corporation duly incorporated in Delaware with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

28.     Midjourney is subject to the jurisdiction of this Court.   Midjourney is headquartered in San Francisco, California and does continuous, systematic, and routine business in California and in this District.

29.     Midjourney's unauthorized exploitation of the Copyrighted Works has caused harm to Disney and Universal in California and in this District.   Midjourney reasonably expected or should have reasonably expected its acts to cause harm in California and in this District because Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, 20th Century Studios, Universal Pictures, and DreamWorks maintain their headquarters in this District, and it is the location of a significant portion of Plaintiffs' production and distribution operations.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims have occurred in this district.

31.     Venue is further proper in this District pursuant to 28 U.S.C. § 1400(a) because Midjourney is subject to personal jurisdiction in this District as it purposefully directed its activities toward this District:

      a.     Midjourney knows that Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, 20th Century Studios, Universal Pictures, and DreamWorks reside in this District and has intentionally targeted Plaintiffs' Copyrighted Works and businesses by developing, training, and commercially offering its Image Service that generates, distributes, and publicly displays infringing copies, reproductions, and derivatives of Plaintiffs' Copyrighted Works.  It is also common knowledge that Plaintiffs' world-famous movie studios are located in this District.  Moreover, Midjourney uses the infringing copies of Plaintiffs' Copyrighted Works generated by its Image Service to promote its Image Service and attract subscribers, including subscribers in this District.

      b.     Midjourney competes with Disney and Universal in this District by distributing infringing copies, reproductions, and derivatives of Plaintiffs' Copyrighted Works to subscribers, including subscribers in this District.

c.    As recently as June 2025, Midjourney has distributed infringing copies, reproductions, and derivatives of Plaintiffs' Copyrighted Works to Midjourney's subscribers in this District.  On information and belief, during the entire relevant period, Midjourney has distributed infringing copies, reproductions, and derivatives of Plaintiffs' Copyrighted Works to subscribers in this District.

d.    Midjourney offers and maintains an interactive website in this District and purposefully directs its business activities here.  Midjourney charges fees to subscribers in this District and then makes available through downloads and/or public displays infringing copies and derivatives of Plaintiffs' Copyrighted Works in this District.  Further, to purchase and use Midjourney's Image Service, residents of this District must create an account and provide Midjourney with their address.  Midjourney accepts payment from residents of this District to use its Image Service.  Once a subscriber's account is created in this District, Midjourney necessarily knows that a particular user resides in this District and therefore chooses to direct its business activities, and distribution and public display of infringing copies of Plaintiffs' Copyrighted Works, into this District.

e.    Midjourney has specifically targeted this District by hiring at least one employee in Los Angeles, California which is in this District.

f.    Midjourney further targets "artists" and users involved in "commercial art project[s]," a community that includes many of the human creative professionals that Disney and Universal have and continue to heavily invest in.  In particular, Midjourney CEO David Holz stated in a *Forbes* interview that Midjourney has "a famous character designer using [its] product."  Holz further opined that the entertainment industry will use systems like Midjourney to "try to cut costs" and that "some people will try to cut artists out."[2]  Not only do Disney and Universal each employ numerous creative professionals in

---

[2] Rob Salkowitz, *Midjourney Founder David Holz on the Impact of AI on Art, Imagination and the Creative Economy*, Forbes (Sept. 16, 2022), https://www.forbes.com/sites/robsalkowitz/2022/09/16/midjourney-founder-david-holz-on-the-impact-of-ai-on-art-imagination-and-the-creative-economy/.

this District, but Los Angeles and the surrounding area is a known hub for the global creative community. DreamWorks alone employs approximately 750 artists and 3D animators at its Glendale campus. Midjourney's Image Service is built off of decades of hard work by Disney, Universal, and the broader Los Angeles creative community.

32. Midjourney has caused harm that was, and has been, foreseeably suffered in this District during the relevant time period.

## FACTUAL BACKGROUND

**A.    Disney and Universal Have Created and Own Some of the Most Popular Movies and Television Shows of All Time.**

33. Disney and Universal have a long and storied history of entertaining and inspiring audiences worldwide. Disney and Universal have created, developed, and produced some of the most enduring, valuable, and famous copyrighted entertainment properties in film, television, books, consumer products, theme parks, and other experiences.

34. A driving force behind the success of Plaintiffs' entertainment properties are the imaginative and beloved copyrighted characters that appear in those Copyrighted Works. Many of Plaintiffs' memorable characters have become pillars of pop culture with a lasting impact on generations of audiences and consumers.

35. Plaintiffs' characters span across the numerous entertainment properties that they own and exploit, from Princess Elsa to Buzz Lightyear, and Shrek to Minions. These original characters are central to the entertainment properties in which they appear. Plaintiffs' copyright registrations for those properties encompass those characters.

### 1.    The *Star Wars* Characters

36. The *Star Wars* franchise began in 1977 with the release of the film *Episode IV: A New Hope*. The franchise is an epic space odyssey that spans multiple eras across three sets of film trilogies, multiple standalone motion pictures and specials, numerous live-action and animated television series, live theatrical productions, interactive video

games, novels, theme park attractions, and comic books. Disney owns the copyrights to the *Star Wars* entertainment properties.

37.    The *Star Wars* franchise is one of the most commercially successful franchises in entertainment history. As of 2020, five of the *Star Wars* movies have each earned over $1 billion at the global box office. *Star Wars: The Rise of Skywalker*, the most recent film in the franchise, reached this mark in only 28 days.

38.    The *Star Wars* franchise is built upon numerous key characters that have expressive conceptual and physical qualities that make them distinctive and immediately recognizable. For example, Darth Vader is the iconic villain from the original *Star Wars* trilogy. Darth Vader is known for his black robes, dark powers, and signature black mask and helmet. Yoda is the small, green, humanoid alien and Jedi Master in the *Star Wars* franchise. He is old, wise, has distinctive ears, and wears a robe. The Stormtroopers are the iconic military soldiers for the Galactic Empire and its leaders including Darth Vader. The Stormtrooper's distinguishable uniform consists of white armor on top of a black underlayer and a striking white helmet. The Clone Troopers are soldiers that served as the military for the Galactic Republic. The Clone Trooper's distinguishable uniform typically consists of white plates of armor over a soft black layer, and features a unique T-shaped visor. In some portrayals, different ranks and units of Clone Troopers are denoted using different colors of markings on their armor.

39.    The *Star Wars* franchise includes several other iconic central characters like the droids R2-D2 and C-3PO, the Wookiee Chewbacca, and many more.

40.    Disney's copyright registrations for the entertainment properties in its *Star Wars* franchise encompass the central characters therein.

### 2.    The Marvel Characters

41.    The Marvel works and characters are part of one of the largest collections of entertainment properties that exist in the same shared universe. The origins of the Marvel works and characters are the superheroes from comic books published by Marvel Comics. The Marvel characters and storylines have grown considerably over time and are featured

in numerous blockbuster feature films, television series, specials, short films, books, video games, art exhibits, theme park attractions, and, of course, comic books. Disney owns the copyrights to these Marvel entertainment properties.

42.    Disney's Marvel Cinematic Universe, which includes films based on the Marvel characters, is the highest-grossing film franchise of all time. All thirty-six films in the franchise have opened number one at the domestic weekend box office.

43.    There are numerous superheroes and other characters in the Marvel works. These characters have expressive conceptual and physical qualities that make them distinctive and immediately recognizable. The superhero Iron Man first appeared in Marvel Comics in 1963, and in 2008 was featured in the blockbuster motion picture *Iron Man*. Iron Man is the alter ego of eccentric billionaire businessman and engineer Tony Stark. To transform into Iron Man, Stark dons his Iron Man suit made of distinguishable red and gold armor that glows white over his heart and includes a red and gold mask.

44.    The Incredible Hulk (sometimes called "The Hulk") first appeared in Marvel Comics in 1962. The Hulk originated when Dr. Robert Bruce Banner was accidentally exposed to gamma rays after an experimental bomb exploded. As a result of the gamma ray exposure, when Banner experiences emotional stress, he transforms into The Hulk, a large, green, super muscular humanoid with extreme physical strength and anger.

45.    Spider-Man first appeared in Marvel Comics in 1962. In the comics, high-schooler Peter Parker became Spider-Man after he developed superhuman spider powers from being bitten by a radioactive spider. Spider-Man wears a distinctive red and blue suit with spider web markings and spider-based eyes.

46.    The Marvel works include numerous other iconic central characters like Deadpool, Groot from Guardians of the Galaxy, the X-Man Wolverine, and Captain America. Disney's copyright registrations for the Marvel works encompass the central characters therein.

### 3. *The Simpsons* Characters

47.    The television series *The Simpsons* debuted in 1989 and has become the longest-running scripted primetime television series in American history.  The series is produced by 20th Century Studios, which was acquired by Disney approximately five years ago.  *The Simpsons* follows a family of five through their hijinks in the fictional town of Springfield.  In addition to the television series, *The Simpsons* franchise includes a movie, comic books, video games, and books.  Disney's 20th Century Studios owns the copyrights to the works in *The Simpsons* franchise.

48.    *The Simpsons* franchise is built upon several key main characters.  These characters have expressive conceptual and physical qualities that make them distinctive and immediately recognizable.  Visually, characters in *The Simpsons* franchise are distinct due to the animation style featured on the show.  The namesake family of five consists of Homer and Marge and their three children Bart, Lisa, and Maggie.  Bart Simpson, for example, is a mischievous troublemaker who wears blue shorts and an orange-red shirt and has signature spiked hair.  The father, Homer Simpson, is a loveable goof with a penchant for donuts, wears blue pants with a white top, and has two signature strands of hair.

49.    Disney's copyright registrations for the entertainment properties in *The Simpsons* franchise encompass the central characters therein.

### 4. The Pixar Works and Characters

50.    Pixar is an animation studio that has produced dozens of critically acclaimed and commercially successful computer-animated films.  In 1995, Pixar released *Toy Story*, which became an overnight sensation and box office success, grossing over $350 million worldwide.  Since then, the Pixar works have expanded to include several highly successful motion picture franchises and standalone films including *Monsters, Inc.*, *Cars*, and *The Incredibles*.  Additionally, the characters from the Pixar works appear in several theme park attractions, experiences, and consumer products.  Disney owns the copyrights to the Pixar entertainment properties.

51.     The Pixar entertainment properties have achieved both commercial and critical success.  Eight of Pixar's films have surpassed the $1 billion mark at the worldwide box office, something only eleven animated films have ever done.  In addition, Pixar's films have won eighteen Academy Awards and received forty-nine nominations.

52.     The Pixar works feature numerous, highly expressive copyrighted characters adored by fans.  Buzz Lightyear, for example, is a central character in the *Toy Story* franchise.  He is a superhero action figure that wears a green and white spacesuit with a clear dome-shaped helmet and expandable wings.    Lightning McQueen is an anthropomorphic stock car and the main character in the *Cars* franchise.  He is a red race car with a yellow lightning bolt on his sides along with the number 95.

53.     Disney's copyright registrations for the Pixar entertainment properties encompass the central characters therein.

### 5.     Disney Classic Animation Characters

54.     Animated cartoons have been a bedrock in Disney's intellectual property portfolio since the 1920s.  Disney's classic animation characters have delighted and entertained generations of audiences.

55.     In 1937, Disney released its first animated feature film, *Snow White and the Seven Dwarfs*.  The movie became the highest-grossing film of all time until it was surpassed by *Gone with the Wind*.  Since the release of *Snow White*, Disney has released numerous successful animated feature films such as *Peter Pan*, *The Little Mermaid*, *The Lion King*, *Frozen*, and *Mulan*.  Disney holds the copyrights to each of these feature films along with several sequels, television series, short films, books, and other works in these franchises and Disney's classic animation universe.

56.     Disney's classic animation properties feature some of the world's most beloved characters including Princess Elsa and Olaf from *Frozen*, Ariel from *The Little Mermaid*, Jasmine and Aladdin from *Aladdin*, Mulan from *Mulan*, Lilo and Stitch from *Lilo & Stitch*, and Snow White from *Snow White*.

57.    The iconic central characters in Disney's classic animation properties have expressive conceptual and physical qualities that make them distinctive and immediately recognizable.  Elsa, for one, is a princess with the ability to control ice and snow, who wears a glittering blue dress and has flowing, light blond hair.  Stitch, for another, is a mischievous blue extraterrestrial with large floppy ears, a round black nose, and black eyes.

58.    Disney's copyright registrations for its classic animation entertainment properties encompass the central characters therein.

### 6.    Universal Pictures' Minions Characters

59.    The *Despicable Me* franchise began in 2010 with Universal Pictures' release of the original *Despicable Me* film.  The *Despicable Me* franchise is not only the highest-grossing animated film franchise of all time, but it is also among the highest-grossing of any film franchises of all time, having grossed over $5 billion since 2010.  The *Despicable Me* franchise has spawned four main feature films, a *Minions* three-film prequel series, 20 short films, a holiday television special, a *Saturday Morning Minions* digital series consisting of forty episodes, several video games, and theme park attractions in Universal Studios Hollywood, located in this District, as well as theme parks in Florida and throughout Asia.

60.    The *Despicable Me* franchise is built upon numerous key characters that have expressive conceptual and physical qualities that make them distinctive and immediately recognizable.  One of the most ubiquitous and recognizable characters from the franchise is the Minion.  Minions were first introduced in *Despicable Me* as members of the army of the film's antagonist, Felonious Gru, but quickly achieved fame on their own, and eventually became the main characters in the *Minions* spin-off film series.

61.    Minions are instantly recognizable due to their distinctive capsule shape and yellow color.  Minions have one or two brown eyes, sparse black or no hair, and lack visible noses and ears.  Minions wear black gloves and metal goggles, and often wear denim overalls that sometimes feature Gru's logo on the pocket.

62.    Universal Pictures' copyright registrations for the *Despicable Me* franchise encompass the central characters therein, including the Minions.

### 7.    DreamWorks Characters

63.    Universal's DreamWorks animation studio has released 50 films and over 50 television series in its 30 years, making it one of the largest animation production companies in the world. DreamWorks films and television shows are critically acclaimed, and have received Academy Awards, Emmy Awards, and Golden Globe Awards. DreamWorks has also received awards for being an industry leader in technological innovations.

64.    The *Shrek* franchise is among DreamWorks' most successful ventures. DreamWorks has released four *Shrek* feature films, with *Shrek 5* slated for release next year. The *Shrek* franchise also consists of short films, theme park attractions, television specials, video games, comic books, spin-off films based on the Puss in Boots character, and a Broadway musical. *Shrek* is the second highest-grossing animated film franchise of all time, after Universal's *Despicable Me*.

65.    *Shrek*'s namesake character is a large, bald, dull-green ogre with a broad, round face, brown eyes, and highly distinctive trumpet-shaped ears. Shrek typically wears crude clothing consisting of a canvas-like shirt, a leather vest, and brown leggings.

66.    The *How to Train Your Dragon* franchise began with the release of the first of three animated films, *How to Train Your Dragon*, in 2010. Since 2010, the franchise has grossed over $1.6 billion worldwide, and has received overwhelmingly positive critical reviews. The *How to Train Your Dragon* franchise has won Golden Globe Awards and been nominated for Academy Awards. In addition to the three original animated films, Universal plans to release a live-action remake of *How to Train Your Dragon* on June 16, 2025, with a *How to Train Your Dragon 2* remake expected in 2027. The franchise also consists of the *DreamWorks Dragons* television series, short films, video games, comic books and graphic novels, live performance adaptations, and theme park attractions.

67.    The *How to Train Your Dragon* franchise is built upon several key main characters.  These characters have expressive conceptual and physical qualities that make them distinctive and immediately recognizable.  The protagonist of the franchise, Hiccup Horrendous Haddock III, or "Hiccup," is a scrawny, teenage Viking boy, with medium-length tousled hair and green eyes.  Hiccup often wears armor made of dark brown leather. Toothless is the dragon who belongs to Hiccup in the franchise.  Toothless has a sleek body covered in matte, jet-black scales, with bat-like wings and a long tail.  He is a medium-sized, aerodynamic dragon, with pointy black ears that are pointed backwards.  Toothless has a short, rounded muzzle, with large, cat-like green eyes.

68.    The *Kung Fu Panda* franchise began with DreamWorks' release of the 2008 animated film of the same name.  The original *Kung Fu Panda* had the highest-grossing opening for any DreamWorks non-sequel film; other than *Shrek,* its domestic box office revenue was also the highest of all non-sequel DreamWorks films until *How to Train Your Dragon* was released in 2010.  Today, the *Kung Fu Panda* franchise extends to video games, an interactive theme park experience, a live show, short films, and television series.

69.    The franchise follows a giant animated panda, Po Ping, or "Po," as he is chosen to be the legendary Dragon Warrior and seeks to become a Kung Fu master.  Po is depicted as a rotund, animated panda, who initially struggles to become proficient in Kung Fu but ultimately grows into his own unique fighting style motivated by his love of food, and leans into his bulky physique to become a skilled martial artist.

70.    Po is portrayed as a chubby, anthropomorphic panda with a white face, black ears, and black fur around his eyes.  Po's upper body and arms are covered with black fur, while his torso is covered with white fur.  Po wears brown burlap pants that have a waistband of vertical dark red and yellow stripes.  Po also wears shoes that are intended to look like panda toes.

71.    *The Boss Baby* film franchise began with the 2017 animated film of the same name.  The franchise also includes two television series, two short films, and an interactive special.  The franchise has been praised for its adult humor despite being in an animation

1  format and was nominated for Academy and Golden Globe Awards. *The Boss Baby* earned
2  over $500 million at the box office worldwide.

3      72.    *The Boss Baby*'s titular character, "Boss Baby," also known as "Theodore
4  Templeton Jr." or simply "Ted," is an infant who speaks and carries himself like an adult
5  when parents and adults are not around.  Ted is visually distinct and deliberately designed
6  to contrast the cuteness of a baby with the seriousness of a corporate executive. Ted has an
7  oversized, round baby head with a high forehead, green eyes and blonde hair that forms a
8  widow's peak.  Ted is usually portrayed wearing a full suit, or just a diaper.

9      73.    Universal's copyright registrations for its DreamWorks entertainment
10  properties encompass the central characters therein.

11    **B.    Midjourney Infringes Plaintiffs' Intellectual Property**
12        **1.    Midjourney's Image Service**

13      74.    Midjourney was founded in 2021 by David Holz, its Chief Executive Officer.
14  Midjourney develops, operates, and sells its generative AI services, including its Image
15  Service.  Midjourney is a successful enterprise that  surpassed $200 million in revenue in
16  2023, and reportedly made $300 million in revenue in 2024, despite the company's
17  relatively short existence. Midjourney had nearly 21 million users as of September 2024.[3]

18      75.    Unbeknownst to Plaintiffs, Midjourney first launched its Image Service in
19  February 2022 as a "bot" accessible within the Discord communication platform.  Since
20  then, Midjourney has released various versions of its Image Service.  Midjourney began to
21  offer its Image Service to consumers via its own website, Midjourney.com, in or around
22  October 2023.  Originally, the website was open only to Midjourney customers who had
23  used Midjourney's Image Service via the Discord platform.  On or around August 23, 2024,

24

---

25  [3] *See* Kyle Wiggers, *Midjourney Says It's 'Getting Into Hardware'*, TechCrunch (Aug. 28,
26  2024),      https://techcrunch.com/2024/08/28/midjourney-says-its-getting-into-hardware/;
    Naveen Kumar, *Midjourney Statistics 2025: Users & Revenue Data*, DemandSage (Dec.
27  31, 2024), https://www.demandsage.com/midjourney-statistics/; Oskar Mortensen, *How*
28  *Many People Work at Midjourney? Statistics & Facts (2025)*, SEO.AI (Dec. 2, 2024).

Midjourney began offering its Image Service to all subscribers.  On or around April 3, 2025, Midjourney launched version 7 ("V7") of its Image Service.  Midjourney's Image Service is a commercial service.  Currently, subscribers can access the Image Service by signing up for a subscription on Midjourney's website.[4]  Midjourney offers four different subscription levels, as shown below:

| | Basic Plan | Standard Plan | Pro Plan | Mega Plan |
|---|---|---|---|---|
| Monthly Price | $10 | $30 | $60 | $120 |
| Annual Price | $96 ($8 / month) | $288 ($24 / month) | $576 ($48 / month) | $1,152 ($96 / month) |
| Fast GPU Time ⓘ | 3.3 hr/month (200 minutes) | 15 hr/month | 30 hr/month | 60 hr/month |
| Relax GPU Time ⓘ | 🚫 | Unlimited | Unlimited | Unlimited |
| Purchase Extra GPU Time | $4/hr | $4/hr | $4/hr | $4/hr |
| Work Solo in Discord Direct Messages ⓘ | ✓ | ✓ | ✓ | ✓ |
| Stealth Mode ⓘ | 🚫 | 🚫 | ✓ | ✓ |
| Maximum Concurrent Jobs | 3 Fast jobs | 3 Fast or Relax jobs | 12 Fast Jobs or 3 Relax Jobs | 12 Fast Jobs or 3 Relax Jobs |
| Maximum Repeat / Permutation Size | 4 jobs | 10 jobs | 40 jobs | 40 jobs |
| Rate Images to Earn Free GPU Time ⓘ | ✓ | ✓ | ✓ | ✓ |
| Usage Rights | General Commercial Terms* | General Commercial Terms* | General Commercial Terms* | General Commercial Terms* |

---

[4] *See* https://docs.midjourney.com/docs/plans.

76.    Midjourney's four levels of paid subscriptions range from $10 per month to $120 per month.  Subscribers can receive a discount of approximately 20% on monthly pricing by paying for an annual subscription.  Image generation requires processing time on Graphics Processing Units (GPUs), and Midjourney's different subscription levels come with different amounts of "Fast" GPU time.  According to Midjourney, it takes them approximately one minute of GPU time to generate, reproduce, and publicly display (and/or distribute) further copies of Plaintiffs' Copyrighted Works.

77.    What Midjourney calls its "Basic Plan" costs $10 per month and comes with 3.3 hours of Fast GPU Time per month.  This allows Basic Plan subscribers to receive roughly 200 images per month.  The more expensive the plan, the more Fast GPU Time the subscriber is allocated, and the more images that subscriber can receive.  All subscribers can purchase additional Fast GPU Time for $4 per hour.

78.    Additionally, subscribers with a "Standard Plan," "Pro Plan," or "Mega Plan" receive unlimited "Relax" GPU Time.  An image generated using Relax GPU Time, which Midjourney refers to as "Relax Mode," does not cost the subscriber any Fast GPU Time, however, the generation is placed into a queue based on how much the subscriber has used the system.  Wait times in Relax Mode can range up to ten minutes per job.

79.    Copies of the images generated by Midjourney for its subscribers are also publicly displayed on the "Explore" page on Midjourney's website.  Midjourney's Explore page is a prominent feature of its website where Midjourney advertises the images that its Images Service has generated.  The Explore page is a means for Midjourney to promote its Image Service, attract subscribers to the Image Service, and encourage them to use the Image Service, thereby generating more money for Midjourney.

2.    **Midjourney Reproduces, Generates, Publicly Displays, and Distributes Reproductions and Derivative Works of Plaintiffs' Copyrighted Works.**

80.    Through its own affirmative conduct, including the selection of which Copyrighted Works will be stored by and made available through the Image Service,

Midjourney directly reproduces, publicly displays, and distributes reproductions and derivative works of Disney and Universal content.

81.    The examples below confirm that Midjourney directly produces image outputs that infringe on Plaintiffs' copyrighted characters.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

82.    Midjourney consistently and accurately reproduces, publicly displays, and distributes copies and derivatives of characters from Disney's *Star Wars* franchise to its subscribers.  In response to the simple request (often referred to as a "prompt") asking to see "Yoda with lightsaber, IMAX," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download further copies of Disney's Yoda, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|

///
///
///
///
///
///
///
///

COMPLAINT

1      83.   In response to the prompt "Storm Trooper battle scene, movie still,

2 screencap," Midjourney accessed the data about Disney's Copyrighted Works that is stored

3 by the Image Service and then reproduced, publicly displayed, and made available for

4 download an image output that copies Disney's Stormtroopers, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

84.    In response to the prompt "R2-D2 and C-3PO walking around a spaceship, screenshot from movie," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's R2-D2 and C-3PO characters, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|

///
///
///
///
///
///

85.    In response to the prompt, "Darth Vader walking around the Death Star with a red lightsaber," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Darth Vader, as shown in this screenshot:



/// 
/// 
/// 
/// 
/// 
///

86.     In response to the prompt, "Chewbacca, screenshot from movie," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Chewbacca, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|
| | |

///
///
///
///
///
///
///
///
///
///
///

87.    In response to the prompt, "Mandalorian carrying Baby Yoda, movie still, screencap," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's The Mandalorian and Baby Yoda, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///
///

88.     Midjourney consistently reproduces, publicly displays, and distributes copies and derivatives of characters from *The Simpsons* to its subscribers.  In response to the prompt, "Bart Simpson riding a skateboard," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Bart Simpson, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
| --- | --- |



///
///
///
///
///
///
///
///
///

89.    In response to the prompt, "Homer Simpson, animated," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Homer Simpson, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|

///
///
///
///
///
///
///
///
///
///
///

90.    In response to the prompt, "The Simpsons comic book," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's *The Simpsons* characters, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |

///
///
///
///
///
///
///
///
///
///

91.    Midjourney consistently and accurately reproduces, publicly displays, and makes available for download copies and derivatives of Disney's Marvel characters to its subscribers.  In response to the prompt, "Iron Man flying, action photo," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Iron Man character, as shown in this screenshot:



///
///
///
///
///
///
///
///

92. In response to the prompt, "Deadpool, 35mm, portrait," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Deadpool character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///
///

93. In response to the prompt, "Spider Man action scene, screenshot from movie," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Spider-Man character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///

94.    In response to the prompt, "The Incredible Hulk flexing his muscles," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Incredible Hulk character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///

95.    In response to the prompt, "Groot, movie trailer," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Groot from *Guardians of the Galaxy*, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |

///
///
///
///
///
///
///
///
///
///

96.     In response to the prompt, "Guardians of the Galaxy, 2023, 4K," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Groot, Drax the Destroyer, and Rocket characters from *Guardians of the Galaxy*, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|

///

///

///

///

97.    Midjourney consistently and accurately reproduces, publicly displays, and makes available for download copies and derivatives of characters from Disney's Pixar entertainment properties to its subscribers.  In response to the prompt, "Buzz Lightyear flying, animated," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Buzz Lightyear, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///

98.     In response to the prompt, "Lightning McQueen racing, cartoon," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Lightening McQueen character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///
///
///

99.    In response to the prompt, "Wall-E with trash, animated," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Wall-E character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///
///
///

100.    In response to the prompt, "Pixar," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Sulley character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///

101.   In response to the prompt, "Sulley, animated," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Sulley character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///
///

102. Midjourney consistently and accurately reproduces, publicly displays, and makes available for download copies and derivatives of characters from Disney's classic animation entertainment properties to its subscribers. In response to the prompt, "Princess Elsa singing in front of an ice castle, Frozen animated movie," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Princess Elsa character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///

103.   In response to the prompt, "Olaf Frozen, cartoon," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Olaf character from *Frozen*, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///
///

104.   In response to the prompt, "Aladdin and Jasmine riding flying carpet, movie still, screencap," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Aladdin and Jasmine characters, as shown in this screenshot:



///
///
///
///
///
///
///
///
///

105.   In response to the prompt, "Simba and Nala standing on Pride Rock, Lion King, screencap," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Simba character, as shown in this screenshot:



/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
///

106.    In response to the prompt, "Ariel and Flounder under water, movie still, screencap," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Ariel character, as shown in this screenshot:

| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///
///
///

107.   Notably, a subscriber does not even have to explicitly request a particular Disney character for Midjourney to create an output that copies Disney's Copyrighted Works.  From the prompt, "Superhero fight scene," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Disney's Spider-Man character, as shown in this screenshot:



| Midjourney Output | Disney's Copyrighted Character(s) |
|---|---|

///
///
///
///
///
///
///
///
///

108.   Midjourney consistently and accurately reproduces, publicly displays, and makes available for download copies and derivatives of characters from Universal's *Despicable Me* franchise to its subscribers.  In response to the prompt, "Minions in the film Despicable Me, screencap," Midjourney accessed the data about Universal's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Universal's Minions from its *Despicable Me* franchise, as shown in this screenshot:

| Midjourney Output | Universal's Copyrighted Character(s) |
|---|---|



///

109.   Midjourney consistently and accurately reproduces, publicly displays, and makes available for download copies and derivatives of characters from Universal's DreamWorks entertainment properties to its subscribers.  In response to the prompt, "How to Train Your Dragon," Midjourney accessed the data about Universal's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Universal's Toothless and Hiccup characters from the *How to Train Your Dragon* franchise, as shown in this screenshot:

| Midjourney Output | Universal's Copyrighted Character(s) |
| --- | --- |
|  | |

///

///

///

110. In response to the prompt, "Shrek, screencapture, animated film" Midjourney accessed the data about Universal's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Universal's Shrek character from the *Shrek* franchise, as shown in this screenshot:

| Midjourney Output | Universal's Copyrighted Character(s) |
|---|---|



///
///
///
///
///
///
///
///

111.   In response to the prompt, "The Boss Baby," Midjourney accessed the data about Universal's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Universal's Ted (also known as Boss Baby) character from *The Boss Baby* franchise, as shown in this screenshot:

| Midjourney Output | Universal's Copyrighted Character(s) |
|---|---|



/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
///

112.   In response to the prompt, "Po character from the animated film Kung Fu Panda, full body view, screencap" Midjourney accessed the data about Universal's Copyrighted Works that is stored by the Image Service and then reproduced, publicly displayed, and made available for download an image output that copies Universal's Po character from the *Kung Fu Panda* franchise, as shown in this screenshot:



| Midjourney Output | Universal's Copyrighted Character(s) |
| --- | --- |

113.   As explained below, Midjourney is able to reproduce, publicly display, and distribute these copies because Midjourney selected and copied Plaintiffs' Copyrighted Works as part of the training process for its Image Service.

### 3.   Midjourney Was Trained to Output Infringing Content

114.   The fact that Midjourney generates copies and derivatives of Plaintiffs' Copyrighted Works demonstrates that Midjourney, without Plaintiffs' knowledge or

permission, copied Plaintiffs' Copyrighted Works to train and develop its Image Service. It also shows that Midjourney's AI Image Service, through software programming and computer storage devices, embodies "copies" of those works, as that term is defined in Section 101 of the Copyright Act, in the AI software that powers the Image Service.  On information and belief, and unbeknownst to Disney and Universal, Midjourney developed and trained its Image Service on copyrighted works, including Plaintiffs' Copyrighted Works to help ensure that it is able to reproduce, publicly display, and distribute faithful, high-quality copies and derivative works of the works it trained on, including Plaintiffs' Copyrighted Works.

115.   Based on the facts and circumstantial evidence alleged in this Complaint and common knowledge about the process for creating a generative AI image service like Midjourney, Plaintiffs are informed and believe that Midjourney engaged in the following conduct to train its Image Service:

a.   *First*, Midjourney gathered the underlying works to be used to train the service.  To do so, Midjourney downloaded from the internet, and other sources, content using tools variously described as bots, scrapers, streamrippers, video downloaders, and web crawlers. David Holz admitted that to collect the training data, Midjourney "pulls off all the data it can, all the text it can, all the images it can."[5]  Mr. Holz elaborated saying that Midjourney, "grabs everything they can, they dump it in a huge file, and they kind of set it on fire to train some huge thing."  Admitting even more, in a September 2022 interview, Mr. Holz confirmed that Midjourney never sought any copyright content

---

[5] James Vincent, *'An Engine for the Imagination': The Rise of AI Image Generators, An Interview with Midjourney Founder David Holz*, The Verge (Aug. 2, 2022), https://www.theverge.com/2022/8/2/23287173/ai-image-generation-art-midjourney-multiverse-interview-david-holz.

holders' consent to copy and exploit their works.[6]   The data gathered and copied by Midjourney to use in training its Image Service includes Plaintiffs' Copyrighted Works.

b.   *Second*, to prepare the data for ingestion, Midjourney "cleaned" the copies of the underlying works that were collected in the previous step through a filtering process and reformatted (e.g., converted them to a common technical format) the copies that were not filtered out in the cleaning process to train its Image Service.   This step necessarily included creating more copies of the materials obtained in the gathering phase, such as a new copy of each reformatted item (including Plaintiffs' Copyrighted Works).

c.   *Third*, Midjourney then used the collected and cleaned data and Copyrighted Works to "train" its Image Service.   Although the specifics of this training phase have not been disclosed by Midjourney, and will be the subject of discovery in this action, Midjourney's ability to repeatedly access the data stored in its software system and reproduce, publicly display, and distribute further copies of Plaintiffs' Copyrighted Works for its subscribers demonstrates that Midjourney's training of its generative AI model involved the fixation of copies of Plaintiffs' Copyrighted Works in a tangible medium from which the work can be perceived, reproduced, or otherwise communicated with the aid of a machine or device.   Midjourney's process of training and making multiple copies of Plaintiffs' Copyrighted Works was done without Plaintiffs' approval or authorization.

116.   In other words, Midjourney used software, servers, and other technology to store and fix data associated with Plaintiffs' Copyrighted Works in such a manner that those works are thereby embodied in the model, from which Midjourney is then able to generate, reproduce, publicly display, and distribute unlimited "copies" of Plaintiffs' works as defined by the Copyright Act.

---

[6] Rob Salkowitz, *Midjourney Founder David Holz on the Impact of AI on Art, Imagination and the Creative Economy*, Forbes (Sept. 16, 2022), https://www.forbes.com/sites/robsalkowitz/2022/09/16/midjourney-founder-david-holz-on-the-impact-of-ai-on-art-imagination-and-the-creative-economy/.

117.   Moreover, Midjourney repeats this process each time it trains and creates a substantially new version of its Image Service.  With each major reiteration of its Image Service, Midjourney created a new model trained anew on Plaintiffs' Copyrighted Works without Plaintiffs' knowledge.  For example, according to Midjourney's CEO, version 6 of Midjourney was actually the "third model trained from scratch."

118.   To be clear, Midjourney had to copy Plaintiffs' Copyrighted Works in order for it to be able to subsequently disseminate reproductions and derivatives of Plaintiffs' Copyrighted Works as outputs.  Midjourney's unauthorized copying of Plaintiffs' Copyrighted Works to train its Image Service infringes Plaintiffs' copyrights in their Copyrighted Works.

## 4.   Midjourney's Public Display and Distribution of Disney's and Universal's Copyrighted Works Is Pervasive.

119.   Once the training process is complete, due to Midjourney's massive copying of Plaintiffs' Copyrighted Works, and as a direct and intentional result of Midjourney's development and training, Midjourney's Image Service generates reproductions and derivatives of Plaintiffs' Copyrighted Works.  Midjourney is able, by its Image Service, to further reproduce, publicly display, and distribute image outputs that are identical or virtually identical to Plaintiffs' Copyrighted Works in response to simple text-based prompts from subscribers.

120.   As repeatedly shown above, the outputs created by Midjourney are copies and derivative works of Disney's and Universal's valuable copyrighted characters.  When a subscriber enters a prompt for an image of Spider-Man, Minions, Iron Man, or any of Plaintiffs' countless copyrighted characters, Midjourney creates yet another copy of that character which it publicly displays and/or distributes via download.  These so-called outputs are copies and/or derivatives of Plaintiffs' copyrighted characters.  Midjourney thus has an endless supply of copies and derivative works that it can publicly display and distribute to subscribers on demand.

121.    Indeed, in true vending machine form, Midjourney distributes and displays copy after copy after copy of Plaintiffs' iconic copyrighted characters to its subscribers and on its website as part of its Explore feature.  These copies often contain extensive infringing nuance and detail, background elements, costumes, and accessories beyond what was specified in the prompt.

122.    By publicly displaying, reproducing, distributing, and creating derivative works of Plaintiffs' Copyrighted Works, as described above, Midjourney has directly infringed (and continues to directly infringe) Plaintiffs' exclusive rights as copyright holders, including the rights of reproduction, distribution, public display, and preparation of derivative works.

123.    Midjourney has faced widespread criticism for copying, publicly displaying, and distributing images of copyrighted works, including images of Plaintiffs' Copyrighted Works.  AI researcher Gary Marcus and film artist Reid Southen published a research article detailing how Midjourney generates copyrighted works.[7]  As shown in the images from their article displayed on the next page, Midjourney version 6.0 generated images that were copies of stills from Disney's movie *Avengers: Infinity War*:

///

///

///

///

///

///

///

///

///

---

[7] Gary Marcus and Reid Southen, *Generative AI Has A Visual Plagiarism Problem Experiments With Midjourney And DALL-E 3 Show A Copyright Minefield*, IEEE Spectrum (Jan. 6, 2024), https://spectrum.ieee.org/midjourney-copyright.

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24



25    ///

26    ///

27    ///

28

124.    Further, Dr. Marcus and Mr. Southen noted that Midjourney generated images that infringed Plaintiffs' Copyrighted Works even when the prompt did not ask Midjourney for Plaintiffs' specific characters.  As stated in the research paper, in response to Dr. Marcus and Mr. Southen's prompt "yellow 3d cartoon character with goggles and overalls --v 6.0 --ar 16:9" Midjourney accessed the data about Universal's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Universal's Minions characters from the *Despicable Me* franchise:



yellow 3d cartoon character with goggles and overalls --v 6.0 --ar 16:9

///
///
///
///
///
///
///

125.  Dr. Marcus and Mr. Southen also used Midjourney to create images of characters from Disney's *The Simpsons* by using the prompt "popular 90's animated cartoon with yellow skin --v 6.0 --ar 16:9 --style raw," which notably did not expressly request *The Simpsons* characters, as shown in the image below:



popular 90's animated cartoon with yellow skin --v 6.0 --ar 16:9 --style raw

///
///
///
///
///
///
///
///
///
///
///
///

126.    Dr. Marcus and Mr. Southen detailed numerous prompts in response to which Midjourney generated outputs featuring Disney's and Universal's Copyrighted Works even when the prompt did not expressly request Copyrighted Works.  In response to Dr. Marcus and Mr. Southen's prompt "black armor with light sword, movie screencap -- ar 16:9 --v 6.0 -- style raw," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Disney's Darth Vader and The Mandalorian characters:



black armor with light sword, movie screencap --ar 16:9 --v 6.0 --style raw

///

///

///

///

///

///

///

127.    In response to Dr. Marcus and Mr. Southen's single word prompt "screencap," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Disney's Spider-Man and Loki characters from its Marvel franchises, and Elsa from *Frozen*:







///
///
///
///
///
///

128. In response to Dr. Marcus and Mr. Southen's prompt "popular movie screencap --ar 1:1 --v 6.0," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Disney's Iron Man character:



///
///
///
///
///
///
///
///
///
///
///

COMPLAINT

129.    In response to Dr. Marcus and Mr. Southen's prompt "animated toys --v 6.0 --ar 16:9 --style raw," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Disney's characters from the *Toy Story* franchise:



animated toys --v 6.0 --ar 16:9 --style raw

///
///
///
///
///
///
///
///
///
///
///

130.   In response to Dr. Marcus and Mr. Southen's prompt "protocol droid from classic sci-fi movie --v 6.0 --ar 16:9," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Disney's *Star Wars* droids R2-D2 and C-3PO:



protocol droid from classic sci-fi movie --v 6.0 --ar 16:9

///
///
///
///
///
///
///
///
///
///

131.　In response to Dr. Marcus and Mr. Southen's prompt "man in robes with light sword, movie screen cap --ar 16:9 --v 6.0 --style raw," Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following output that copies Disney's Luke Skywalker character:



**man in robes with light sword, movie screencap --ar 16:9 --v 6.0 --style raw**

132.　Other prominent publications have reported on Midjourney's ability to generate images that infringe copyrighted content.

**5.　Midjourney's Infringement of Plaintiffs' Copyrighted Works Is a Feature of Its Image Service and a Draw to Consumers.**

133.　Midjourney has already generated countless images that infringe on Plaintiffs' Copyrighted Works and publicly displayed and/or distributed innumerable copies of each of Plaintiffs' copyrighted characters to Midjourney subscribers.　Midjourney also publicly displays copies of Plaintiffs' characters on the "Explore" page on its website which is accessible to subscribers and non-subscribers alike.　There, as an added service to subscribers, Midjourney subscribers can search the various images previously generated

by Midjourney for other subscribers. As shown below, this Explore page contains a seemingly limitless trove of infringing copies of Plaintiffs' Copyrighted Works, and showcases how subscribers are drawn to the Image Service because of the availability of Plaintiffs' Copyrighted Works. On information and belief, Midjourney curates and presents Explore page search results that publicly display images that infringe Plaintiffs' copyrighted characters. Midjourney's publication and curation of infringing images on the Explore page show that Midjourney knows that its platform regularly reproduces Plaintiffs' Copyrighted Works, and that the Explore page is intended to advertise Midjourney's ability to infringe the Copyrighted Works.

134. As an example, when the Explore page is searched for "Iron Man," Midjourney publicly displays infringing images of Disney's Iron Man character that Midjourney has generated and distributed to its subscribers:



135.   Likewise, when the Explore page is searched for "Deadpool," Midjourney publicly displays the infringing images of Disney's Deadpool character that Midjourney has generated and distributed to its subscribers:



136.   When the Explore page is searched for "Spider Man," Midjourney publicly displays the infringing images of Disney's Spider-Man character that Midjourney has generated and distributed to its subscribers:



137.   When the Explore page is searched for "The Incredible Hulk," Midjourney publicly displays the infringing images of Disney's Hulk character that Midjourney has generated and distributed to its subscribers:



138.    When the Explore page is searched for "Groot," Midjourney publicly displays the infringing images of Disney's Groot character that Midjourney has generated and distributed to its subscribers:



139.    When the Explore page is searched for "Thanos," Midjourney publicly displays the infringing images of Disney's Thanos character that Midjourney has generated and distributed to its subscribers:



140.   When the Explore page is searched for "The Simpsons," Midjourney publicly displays the infringing images of Disney's *The Simpsons* characters that Midjourney has generated and distributed to its subscribers:

1

141.   When the Explore page is searched for "Bart Simpson," Midjourney publicly

2

displays the infringing images of the Disney's Bart Simpson character that Midjourney has

3

generated and distributed to its subscribers:

4



16

142.   When the Explore page is searched for "Homer Simpson," Midjourney

17

publicly displays the infringing images of the Disney's Homer Simpson character that

18

Midjourney has generated and distributed to its subscribers:

19

20

21

22

23

24

25

26

27

28



143.   When the Explore page is searched for "Yoda," Midjourney publicly displays the infringing images of the Disney's Yoda character that Midjourney has generated and distributed to its subscribers:

144.    When the Explore page is searched for "Storm Trooper," Midjourney publicly displays the infringing images of Disney's Stormtrooper characters that Midjourney has generated and distributed to its subscribers:



145.    When the Explore page is searched for "R2-D2," Midjourney publicly displays the infringing images of Disney's R2-D2 character that Midjourney has generated and distributed to its subscribers:



146.   When the Explore page is searched for "C-3PO," Midjourney publicly displays the infringing images of the character C-3PO from Disney's *Star Wars* franchise that Midjourney has generated and distributed to its subscribers:



147.   When the Explore page is searched for "Darth Vader," Midjourney publicly displays the infringing images of Disney's Darth Vader character that Midjourney has generated and distributed to its subscribers:



148.   When the Explore page is searched for "Chewbacca," Midjourney publicly displays the infringing images of Disney's Chewbacca character that Midjourney has generated and distributed to its subscribers:



149.   When the Explore page is searched for "Mandalorian," Midjourney publicly displays the infringing images of Disney's Mandalorian character that Midjourney has generated and distributed to its subscribers:



150.   When the Explore page is searched for "Baby Yoda," Midjourney publicly displays the infringing images of Disney's Din Grogu character, colloquially known as Baby Yoda, that Midjourney has generated and distributed to its subscribers:



151.   When the Explore page is searched for "Buzz Lightyear," Midjourney publicly displays the infringing images of Disney's Buzz Lightyear character that Midjourney has generated and distributed to its subscribers:



152.   When the Explore page is searched for "Lightning McQueen," Midjourney publicly displays the infringing images of Disney's Lightning McQueen character that Midjourney has generated and distributed to its subscribers:



153.   When the Explore page is searched for "Wall-E," Midjourney publicly displays the infringing images of Disney's Wall-E character that Midjourney has generated and distributed to its subscribers:

COMPLAINT



154. When the Explore page is searched for "Princess Elsa," Midjourney publicly displays the infringing images of Disney's Princess Elsa character that Midjourney has generated and distributed to its subscribers:

155.   When the Explore page is searched for "Olaf from Frozen," Midjourney publicly displays the infringing images of Disney's Olaf character that Midjourney has generated and distributed to its subscribers:



156.   When the Explore page is searched for "Aladdin," Midjourney publicly displays the infringing images of Disney's Aladdin character that Midjourney has generated and distributed to its subscribers:



157.   When the Explore page is searched for "Princess Jasmine," Midjourney publicly displays the infringing images of Disney's Princess Jasmine character that Midjourney has generated and distributed to its subscribers:



158.   When the Explore page is searched for "Simba," Midjourney publicly displays the infringing images of Disney's Simba character that Midjourney has generated and distributed to its subscribers:



159.   When the Explore page is searched for "Ariel," Midjourney publicly displays the infringing images of Disney's Ariel character that Midjourney has generated and distributed to its subscribers:

160.    When the Explore page is searched for "Little Mermaid," Midjourney publicly displays the infringing images of Disney's Ariel character that Midjourney has generated and distributed to its subscribers:



161.    When the Explore page is searched for "How to Train Your Dragon," Midjourney publicly displays the infringing images of Universal's Hiccup and Toothless characters that Midjourney has generated and distributed to its subscribers:



COMPLAINT

162.    When the Explore page is searched for "Minions," Midjourney publicly displays the infringing images of Universal's Minions characters that Midjourney has generated and distributed to its subscribers:



163.    When the Explore page is searched for "The Boss Baby," Midjourney publicly displays the infringing images of Universal's Ted character that Midjourney has generated and distributed to its subscribers:

1

2



3

4

5

6

7

8

9

10

11

12

13    164.    When the Explore page is searched for "Shrek," Midjourney publicly displays

14    the infringing images of Universal's Shrek and Donkey characters that Midjourney has

15    generated and distributed to its subscribers:

16

17



18

19

20

21

22

23

24

25

26

27

28

165.  When the Explore page is searched for "Kung Fu Panda," Midjourney publicly displays the infringing images of Universal's Po character that Midjourney has generated and distributed to its subscribers:



166.  By maintaining and publicly displaying infringing copies of Plaintiffs' Copyrighted Works on its Explore page, Midjourney is advertising its ability to reliably reproduce Plaintiffs' Copyrighted Works for its subscribers.  Midjourney's Explore gallery also demonstrates that Midjourney subscribers use Midjourney to view and/or download copies of Plaintiffs' Copyrighted Works.

167.  Midjourney's Explore page manifests its express intention and desire to attract Midjourney subscribers (and increase its revenues) by exploiting the availability of infringing Plaintiffs' content and its ability to reliably reproduce Plaintiffs' Copyrighted Works for its subscribers.  And Midjourney further facilitates and encourages infringement by publicly displaying the prompts used to generate the images Midjourney displays on the Explore page which encourages Midjourney subscribers to obtain similar results to those they find in the gallery.

168.   Midjourney's Explore page further evidences Midjourney's knowledge that its Image Service both generates images that infringe Plaintiffs' Copyrighted Works, and that it uses these images to attract subscribers who wish to use the Image Service for the express purpose of reproducing Plaintiffs' Copyrighted Works.  Midjourney curates and presents Explore page search results that publicly display images that infringe Plaintiffs' copyrighted characters.  This curation demonstrates Midjourney's specific knowledge that its Image Service reliably reproduces Plaintiffs' Copyrighted Works, and shows that the reproductions are extremely high quality.

169.   Midjourney's infringement of Plaintiffs' Copyrighted Works is a well-documented "feature" of its Image Service.  Several websites, Reddit threads, and online posts confirm that Midjourney subscribers are drawn to Midjourney due to its ability to infringe Plaintiffs' Copyrighted Works.[8]

///
///
///
///
///
///
///
///
///
///
///
///
///

---

[8] *See, e.g.,* InstantAI, *Recreating Classic Disney 1930s Style Animation with Midjourney AI*, Medium (Oct. 14, 2024), https://instantaiprompts.medium.com/recreating-classic-disney-1930s-style-animation-with-midjourney-ai-3c4735dfb226.

170.   One Reddit user posted an image of a "Battle-damaged Stormtrooper" in the r/Midjourney Subreddit, and received 22 "votes" and one comment on their post:[9]



171.   Many Reddit users have posted images of Minions created using Midjourney, including the image below depicting the "Institutionalization of minions" on the r/Midjourney Subreddit:[10]

---

[9] CarterDire3, *Battle-damaged Stormtrooper*, Reddit, https://www.reddit.com/r/midjourney/comments/110krst/battledamaged_stormtrooper/.

[10] Sandwich01, *Institutionalization of minions*, Reddit, https://www.reddit.com/r/midjourney/comments/15lo724/institutionalization_of_minions/.



172. Another Reddit user posted an image of "Deadpool and Wolverine hanging out" in the r/Midjourney Subreddit:[11]



[11] gdspaz, *Deadpool and Wolverine hanging out*, Reddit, https://www.reddit.com/r/midjourney/comments/13h3fd0/deadpool_and_wolverine_hanging_out/.

173.   A different Reddit user posted several images of "The Life of Shrek Beyond the Swamp" in the r/Midjourney Subreddit, with the tag "Showcase:"[12]



///
///
///
///
///
///
///
///
///

[12]   GremlinBobby, *The Life of Shrek Beyond the Swamp*, Reddit, https://www.reddit.com/r/midjourney/comments/180c179/the_life_of_shrek_beyond_the_swamp/.

COMPLAINT

174. Another Reddit user posted several images of "Deadpool" in the r/Midjourney Subreddit, with the tag "AI Showcase – Midjourney":[13]



///
///
///
///
///
///
///
///
///
///
///
///

---

[13] Eon_Flux_139, *Deadpool*, Reddit, https://www.reddit.com/r/midjourney/comments/1esdjzk/deadpool/.

175.   One Reddit user posted several images of characters from *Frozen* in the r/Midjourney Subreddit, with the tag "AI Showcase – Midjourney:"[14]



176.   In response to that post, a different user asked to "see an example of a prompt from this fine collection," and the "OP" (shorthand for "original poster") replied with one of the prompts they had used, suggesting that users are drawn to Midjourney because it accepts infringing prompts and successfully and repeatedly generates infringing images.

///
///
///
///
///
///
///
///

---

[14] SmirkingDesigner, *Frozen*, Reddit, https://www.reddit.com/r/midjourney/comments/1fwkjhe/frozen/.

177.   Another Reddit user posted an image of "Darth Vader" in the r/Midjourney Subreddit, along with the prompt that was used, and the tag "AI Showcase – Midjourney," and received 116 "votes" and ten comments on their post:[15]



///
///
///
///
///
///
///
///
///
///
///
///

[15] RainMan915, *Darth Vader*, Reddit, https://www.reddit.com/r/midjourney/comments/198z4ad/darth_vader/.

178.   A different Reddit user posted an image of "Yoda" in the r/Midjourney Subreddit, along with the prompt that was used, which was simply "yoda," and the tag "Prompt-Sharing:"[16]



///
///
///
///
///
///
///
///
///
///
///

---

[16] alanskimp, *Yoda*, Reddit, https://www.reddit.com/r/midjourney/comments/10xpm3j/yoda/.

179.   Yet another Reddit user created a post of "Some of my fave Marvel generations! [prompt in comment]" in the r/Midjourney Subreddit, along with the prompts that were used and the tag "Prompt-Sharing:"[17]



180.   Additionally, in an article on the popular website *Medium* titled "Recreating Classic Disney 1930s Style Animation with Midjourney AI," user InstantAI provided sample prompts for Midjourney to generate copies of Disney's Copyrighted Works, including *Snow White*.  In response to one of these prompts, Midjourney accessed the data about Disney's Copyrighted Works that is stored by the Image Service and then generated the following image which infringes Disney's Snow White character:

---

[17]  filoni, *Some of my fave Marvel generations! [prompt in comment]*, Reddit https://www.reddit.com/r/midjourney/comments/xeqpi3/some_of_my_fave_marvel_gene rations_prompt_in/#lightbox.



181.   As further evidence that users are drawn to Midjourney's Image Service because it distributes infringing copies of Plaintiffs' copyrighted characters, there are now marketplaces and forums where users exchange tips about how to use the service to download a variety of images featuring Plaintiffs' copyrighted characters. These marketplaces and forums, as well as the articles, social media, and other postings discussed above, demonstrate as strong public desire to use Midjourney's commercial Image Service as a source for reproductions of characters from Plaintiffs' Copyrighted Works.

**6.    Midjourney Chooses to Not Take Any Reasonable Measures to Prevent Further Copyright Infringement.**

182.   Midjourney could stop, or at least minimize, its ongoing copyright infringement.  Specifically, in addition to discontinuing its large-scale infringement of the Copyrighted Works to train its models, Midjourney could readily implement copyright protection measures to prevent or limit infringing outputs.

183.  Midjourney already uses technical measures to prevent the generation of certain content.  For example, if a Midjourney subscriber submits a prompt asking for images with violence or nudity, Midjourney's protection measures cause a response that says "Sorry!  The AI Moderator is unsure about this prompt.  It might not meet our community guidelines or our AI moderation might have gotten confused. Please try a different one."  An example of this is shown below:



184.  The error messages explain Midjourney's "Community Standards," which list four categories of prompts that Midjourney does not allow: (1) "Content that disrespects, harms, or misleads about public figures or events," (2) "Hate speech, explicit or real-world violence," (3) "Nudity or overtly sexualized images," and (4) "Imagery that might be considered culturally insensitive."

185.  Midjourney's Terms of Service further describe its prohibitions on "adult content," "gore," and "images for political campaigns," and ask subscribers to "avoid making visually shocking or disturbing content."  The Terms of Service then explain that Midjourney "will block some text inputs automatically."

186.  This demonstrates that Midjourney controls, and has the ability to control, generative outputs through readily available technical protection measures.  Despite having the ability to do so, Midjourney has affirmatively chosen not to use copyright protection measures to limit the infringement of Plaintiffs' Copyrighted Works before or after receiving Plaintiffs' cease-and-desist letters.

187.  In contrast, other AI services have demonstrated that reasonable, readily available copyright protection measures can prevent or limit infringing generative AI

outputs, including by screening image outputs for infringing material before the image is displayed to the subscriber, and by refusing to allow generations based on prompts likely to elicit infringing content.

188.   Midjourney also makes clear in its Terms of Service that it has the ability to police and control the content its service makes available, stating that it can terminate "access to and use of" the Image Service "for any user who engages in repeated acts of [copyright] infringement."[18]   However, given the extraordinary volume of outputs that infringe Plaintiffs' Copyrighted Works, it is evident that this provision of the Terms of Service is merely Midjourney paying lip service to put up a façade that its Image Service complies with copyright law.

189.   Midjourney's infringement of Plaintiffs' Copyrighted Works is manifestly willful.  Counsel for Plaintiffs sent Midjourney letters detailing Midjourney's extensive infringement of Plaintiffs' Copyrighted Works, attached as Exhibits C and D.  In its letter, Disney put Midjourney on notice that its Image Service was generating images of Disney's iconic characters including *The Simpsons*, Spider-Man, several Guardians of the Galaxy characters including Groot, Drax the Destroyer, and Rocket, the *Star Wars* droids R2-D2 and C-3PO, Stormtroopers, and Buzz Lightyear.  Similarly, Universal put Midjourney on notice that its Image Service was generating images of its iconic characters including Shrek, Hiccup and Toothless from the *How to Train Your Dragon* film franchise, Boss Baby, Po from *Kung Fu Panda*, and the Minions from the *Despicable Me* and *Minions* film franchises.

190.   On December 11, 2024, Midjourney informed counsel for Disney that it was reviewing Disney's letter.  Apart from that brief communication, Midjourney never responded to Disney's letter.  Midjourney never responded to Universal's letter at all.  Despite being put on notice of its infringement of Plaintiffs' Copyrighted Works,

---

[18]   *See* Terms of Service, Midjourney (Feb. 5, 2025), *available at* https://docs.midjourney.com/hc/en-us/articles/32083055291277-Terms-of-Service.

Midjourney has not implemented any reasonable technical measures or otherwise attempted to cease its infringement or purge its Explore page of the numerous images infringing Plaintiffs' Copyrighted Works. Notably, the infringing images shown above include images that were reproduced, publicly displayed, and distributed by Midjourney *after* Plaintiffs sent their cease-and-desist letters to Midjourney.

191.  Far from working with Plaintiffs to address the concerns raised in their letters, Midjourney doubled down on its infringement. On April 3, 2025, Midjourney released a new and improved version of its Image Service dubbed "V7." The ability to infringe Plaintiffs' Copyrighted Works remains a central feature of V6 and V7 of Midjourney's Image Service which are both in use. And just a few days ago, Midjourney's CEO publicly announced Midjourney's continued focus on improving V7, while continuing to make V6 available, and touted Midjourney's soon-to-be-released video service, noting it works well with images from Midjourney.

192.  If Midjourney is not enjoined, it intends to continue to develop and scale its Image Service and thereby enhance its ability to infringe Plaintiffs' Copyrighted Works. Indeed, last week, Midjourney's CEO announced that Midjourney plans to continue deploying new versions its Image Service and to launch its Video Service sometime this month.

193.  Based on the facts alleged in this Complaint, Plaintiffs are informed and believe that Midjourney's forthcoming Video Service will allow paying subscribers to request copies of videos featuring Plaintiffs' copyrighted characters and incorporating Plaintiffs' Copyrighted Works, and will reproduce, publicly perform, and distribute videos containing and infringing Plaintiffs' characters.

194.  Given that Midjourney's Image Service was trained on Plaintiffs' Copyrighted Works without authorization and unbeknownst to Plaintiffs, it is likely that Midjourney is currently training its forthcoming Video Service on Plaintiffs' Copyrighted Works.

195.  Midjourney's planned Video Service would only enhance Midjourney's ability to distribute infringing copies, reproductions, and derivatives of Plaintiffs' Copyrighted Works.

196.  Midjourney's unlawful conduct has caused, and will continue to cause, substantial and irreparable harm to Plaintiffs if it is not enjoined.

197.  Plaintiffs exercise their exclusive rights to exploit and license (or not to license) its characters and intellectual property to develop and grow selected markets for their Copyrighted Works.  Midjourney's conduct usurps Plaintiffs' control over the exercise of their exclusive rights in their Copyrighted Works, interfering with Plaintiffs' exploitation and licensing strategies.

198.  Midjourney illegally and unfairly competes with companies that license Plaintiffs' Copyrighted Works for the purpose of creating authorized derivatives, and undercuts those existing and potential licensing markets.  Such companies negotiate licenses with Plaintiffs and abide by contractual restrictions in those agreements. Midjourney need not honor such contractual restrictions because it circumvents the licensing process altogether.

199.  Midjourney is also contributing to consumer confusion regarding what is lawful and what is not lawful by misleading its subscribers to believe that Midjourney's massive copying and the countless infringing images generated by its Image Service are somehow authorized by Plaintiffs.

200.  Plaintiffs have no adequate remedy at law for the substantial and irreparable harm that Midjourney has caused and continues to cause.  Midjourney must be held accountable for its vast, intentional, and unrelenting copyright infringement and enjoined from further infringing activities.

## **FIRST CLAIM FOR RELIEF**

### **(Direct Copyright Infringement)**

201.  Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 200 inclusive.

202. Plaintiffs own the Copyrighted Works at issue, including those in the non-exhaustive, representative lists attached as Exhibits A and B, and have the exclusive right, among others, to reproduce, publicly display, distribute, and make derivative works under Section 106 of the Copyright Act.

203. Plaintiffs never authorized Midjourney to reproduce, publicly display, distribute, make derivatives of, or otherwise exploit their Copyrighted Works.

204. Midjourney has directly infringed Plaintiffs' Copyrighted Works by unlawfully reproducing, publicly displaying, distributing, and making derivative works based on Plaintiffs' Copyrighted Works both in developing and training its Image Service and in the output Midjourney generates for its subscribers.

205. Each act of infringement by Midjourney constitutes a separate and distinct act of infringement.

206. Midjourney's acts of infringement are willful, in disregard of and with indifference to Plaintiffs' rights.

207. Midjourney is purposefully exploiting Plaintiffs' valuable intellectual property to attract subscribers, and profiting by providing subscribers with countless copies and derivatives of Plaintiffs' Copyrighted Works.

208. As a direct and proximate result of Midjourney's infringement, Plaintiffs are entitled to damages and Midjourney's profits in an amount according to proof.

209. Alternatively, and at their election, Plaintiffs are entitled to statutory damages, up to $150,000 per infringed work by virtue of Midjourney's willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

210. Plaintiffs are further entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

211. As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court,

Midjourney will continue to infringe Plaintiffs' rights in their Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## SECOND CLAIM FOR RELIEF

### (Secondary Copyright Infringement)

212.    Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 200 inclusive.

213.    Plaintiffs allege that Midjourney is the direct copyright infringer of the Copyrighted Works at issue in this litigation.  However, in the event that Midjourney argues that it is not the direct infringer of Plaintiffs' Copyrighted Works, and that its own subscribers are somehow the direct infringers of the Copyrighted Works, then Plaintiffs plead, in the alternative, that Midjourney is nevertheless liable for secondary copyright infringement.

214.    Plaintiffs own the Copyrighted Works at issue, including those in the non-exhaustive, representative lists attached as Exhibit A and B, and have the exclusive right, among others, to reproduce, publicly display, distribute, and make derivative works under Section 106 of the Copyright Act.

215.    As alleged above, the unauthorized reproduction, public display, distribution, and creation of derivatives of Plaintiffs' Copyrighted Works through Midjourney's output infringes Plaintiffs' exclusive copyrights under Section 106 of the Copyright Act.

216.    If Midjourney contends that its own subscribers are the volitional actors responsible for making the copies of Plaintiffs' Copyrighted Works identified in this Complaint, such copying was done (and is being done) without Plaintiffs' authorization or consent and constitutes copyright infringement under the Copyright Act.

217.    Midjourney is vicariously liable for these acts of direct copyright infringement (assuming they are adjudicated to be direct infringement by Midjourney's subscribers).

218.    Midjourney has the right and ability to supervise and/or control these acts of direct copyright infringement.

219.    *First*, Midjourney has the ability to control the copyright infringement at issue because Midjourney controls and selects which of Plaintiffs' Copyrighted Works are copied and used to train its Image Service.  Midjourney had the right and ability to exclude Plaintiffs' Copyrighted Works from its training data.

220.    *Second*, Midjourney has the right and ability to control the prompts from its subscribers that are submitted to its Image Service to generate an output and the ability to block subscribers who request infringing content.

221.    *Third*, Midjourney has protection measures already in place that expressly block the generation of certain content (e.g., disrespectful images of public figures, hate speech, violence, nudity, and culturally insensitive information).  Midjourney, however, has not implemented those measures to limit its Image Service from infringing Plaintiffs' Copyrighted Works.  This is the case even though such copyright protection measures are employed by a number of Midjourney's competitors.

222.    As evidenced by the Explore pages featuring Plaintiffs' Copyrighted Works, and subscribers' interest in using the Image Service to produce infringing copies of Plaintiffs' Copyrighted Works, the ability to use the Image Service to obtain copies of Plaintiffs' Copyrighted Works is plainly an attraction and a draw for subscribers.

223.    At all relevant times, Midjourney has derived a direct financial benefit from each act of direct infringement at issue.  Midjourney is a commercial service as Midjourney subscribers must pay to access the Image Service.  Thus, Midjourney receives revenue from all of its subscribers.  By providing more generations and features to subscribers with more expensive plans, Midjourney encourages its subscribers to pay more for its service.  Moreover, Midjourney surpassed $200 million in revenue in 2023, and hit $300 million in revenue in 2024, despite the company's relatively short existence.  Midjourney reportedly had nearly 21 million subscribers as of September 2024.  Midjourney's popularity and economic success is directly tied to the popularity of its Image Service and its ability to reproduce, publicly display, and create derivatives of Plaintiffs' Copyrighted Works.

224. Midjourney is also secondarily liable for copyright infringement as a contributory infringer (if Midjourney contends that its subscribers are the ones making the infringing copies of Plaintiffs' Copyrighted Works identified in this Complaint) because Midjourney knowingly and materially contributes to, encourages, and induces such infringement.

225. Midjourney has specific knowledge of, or is willfully blind to, the direct infringement of Plaintiffs' Copyrighted Works done through its Image Service. At a minimum, through their cease-and-desist letters, Plaintiffs put Midjourney on notice that its Image Service was being used to infringe Plaintiffs' Copyrighted Works and the specific characters identified in the letter (see Exhibits C and D). Additionally, Midjourney has knowledge of the direct infringement of Plaintiffs' Copyrighted Works through its ongoing relationship with its subscribers as Midjourney publicly displays the infringing copies, reproductions, and derivatives generated by its Image Service for its subscribers on the Midjourney Explore page. Indeed, as shown above, Midjourney's own website displays hundreds, if not thousands, of images generated by its Image Service at the request of its subscribers that infringe Plaintiffs' Copyrighted Works. Midjourney also has specific knowledge that Plaintiffs were being harmed in this District by its infringement of Plaintiffs' Copyrighted Works.

226. Midjourney specifically designed its Image Service to encourage, contribute to and induce the reproduction, public display, distribution, and preparation of derivative works of copyrighted works. As alleged above, Midjourney intentionally trained its Image Service to readily produce and display reproductions and derivatives of Plaintiffs' Copyrighted Works. Midjourney would not be able to create such infringing outputs without its intentional design enabling that infringement.

227. Additionally, Midjourney has the means to take simple steps not to materially contribute to the specific infringing activity but fails to do so. Midjourney has failed to take reasonable, readily available, and cost-effective steps to purge its Image Service of Plaintiffs' Copyrighted Works identified in Plaintiffs' cease-and-desist letters and its own

website promotional pages. Even more, Midjourney has the right and ability to limit its Image Service's ability to copy, reproduce, and prepare derivatives of Plaintiffs' Copyrighted Works. Midjourney has failed to implement simple measures, such as copyright protection measures, that would limit its Image Service's ability to copy, reproduce, and prepare derivatives of Plaintiffs' Copyrighted Works despite the availability of such copyright protection measures and their use by other AI image-generating services.

228. Instead of taking simple, available steps to not materially contribute, encourage, or induce to the specific infringing activity, Midjourney actively facilitates the ongoing infringement through its actions above. As a direct and proximate result, Midjourney has secondarily infringed Plaintiffs' Copyrighted Works.

229. Each act of secondary infringement by Midjourney constitutes a separate and distinct act of infringement.

230. Midjourney's acts of secondary infringement are willful, in disregard of and with indifference to Plaintiffs' rights.

231. Midjourney is purposefully exploiting Plaintiffs' valuable intellectual property to attract subscribers to Midjourney, and it is profiting by providing subscribers with endless copies and derivatives of Plaintiffs' Copyrighted Works.

232. Midjourney has failed to take reasonable steps to prevent the copyright infringement of its subscribers. As a direct and proximate result of Midjourney's infringement, Plaintiffs are entitled to damages and Midjourney's profits in an amount according to proof.

233. Alternatively, and at their election, Plaintiffs are entitled to statutory damages, up to $150,000 per infringed work by virtue of Midjourney's willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

234. Plaintiffs are further entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

235.   As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Midjourney will continue to infringe Plaintiffs' rights in their Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.   For Plaintiffs' damages and Midjourney's profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages; or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c);

2.   For an accounting, the imposition of a constructive trust, restitution of Midjourney's unlawful proceeds from copyright infringement, and damages according to proof;

3.   For preliminary and/or permanent injunctive relief enjoining and restraining Midjourney and all of its officers, agents, servants, and employees and all persons acting in concert or participation with Midjourney, from: (a) infringing Plaintiffs' exclusive rights under the Copyright Act by copying, publicly displaying and/or distributing Plaintiffs' Copyrighted Works, (b) offering its Image Service without appropriate copyright protection measures to prevent such infringement, (c) offering its forthcoming Video Service without appropriate copyright protection measures to prevent such infringement, and (d) otherwise engaging in the copyright infringement conduct described above;

4.   For prejudgment interest according to law;

5.   For attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

6.   Any further and additional relief the Court may deem just and proper.

Dated:  June 11, 2025              JENNER & BLOCK LLP


                          By: _____
                                        /s/ *David R. Singer*
                                      David R. Singer
                                      Julie A. Shepard
                                      Lauren M. Greene

                              Attorneys for Plaintiffs

                              DISNEY ENTERPRISES, INC., MARVEL
                              CHARACTERS, INC., MVL FILM
                              FINANCE LLC, LUCASFILM LTD. LLC,
                              TWENTIETH CENTURY FOX FILM
                              CORPORATION, UNIVERSAL CITY
                              STUDIOS PRODUCTIONS LLLP,
                              DREAMWORKS ANIMATION L.L.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Dated:  June 11, 2025                    JENNER & BLOCK LLP


By: _____/s/ *David R. Singer*_____

David R. Singer

Julie A. Shepard

Lauren M. Greene

Attorneys for Plaintiffs

DISNEY ENTERPRISES, INC., MARVEL CHARACTERS, INC., MVL FILM FINANCE LLC, LUCASFILM LTD. LLC, TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, DREAMWORKS ANIMATION L.L.C.