1

**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Julie A. Shepard (SBN 175538)
jshepard@jenner.com
Lauren M. Greene (SBN 271397)
lgreene@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199

*Attorneys for Plaintiffs*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al.,<br><br>                    Plaintiffs,<br>        v.<br>MIDJOURNEY, INC.,<br><br>                    Defendant. | Case No. 2:25-cv-05275-JAK-AJR<br>Judge Honorable John A. Kronstadt<br><br>**JOINT RULE 26(f) REPORT**<br>Hearing: Under submission<br><br>Complaint filed:    June 11, 2025 |

Plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation (collectively "Disney"), and Universal City Studios Productions LLLP and DreamWorks Animation L.L.C. (collectively "Universal" and with Disney, sometimes "Plaintiffs"), and defendant Midjourney, Inc. ("Midjourney" and with Plaintiffs, the "Parties") hereby submit this Joint Report following the conference of counsel required by Fed. R. Civ. P. 16(b) and 26(f), this Court's Civil L.R. 26-1 and this Court's Order Setting Scheduling Conference ("Scheduling Conference Order") (ECF No. 21).

## a. Statement of the Case

### 1. Disney and Universal's Statement:

Disney and Universal filed this lawsuit to stop Midjourney's willful and systematic copyright infringement of their copyrighted works and characters and to recover statutory damages, disgorgement of profits, and other remedies allowed under the Copyright Act.[1] Disney and Universal are two of the largest movie and television studios and entertainment companies in the world. Plaintiffs' copyrighted works – and, in particular, their iconic copyrighted characters – are extraordinarily valuable. These are some of the most recognizable characters of all time, including Darth Vader, Spider-Man, the Minions from *Despicable Me*, and Shrek.

Defendant Midjourney develops, operates, sells, and promotes a commercial subscription service (the "Service"), powered by an artificial intelligence ("AI") model, that generates, reproduces, publicly displays, publicly performs, and makes available for download image and video outputs that feature Plaintiffs' iconic copyrighted characters – without Plaintiffs' authorization or consent and over Plaintiffs' repeated objections. Midjourney engages in rampant, direct copyright infringement through its Service on multiple levels. *First*, Midjourney infringed Plaintiffs' Copyrighted Works during the training process for its AI model and Service. As alleged in the Complaint, Midjourney

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Complaint.

copied, without permission, Plaintiffs' Copyrighted Works in order to train and fine tune the AI model.  There is no question about this because Midjourney could not operate a virtual vending machine generating countless infringing images and videos of Plaintiffs' copyrighted works without training its AI model to reproduce those works as part of the Service.  *Second*, Midjourney's Service readily generates, distributes, publicly displays, and publicly performs copies and derivatives of Plaintiffs' Copyrighted Works. Midjourney's Service has already generated countless copies and derivatives of Plaintiffs' Copyrighted Works.  *Third*, to the extent Midjourney is trying to evade responsibility for reproducing, distributing, publicly displaying, and publicly performing Plaintiffs' Copyrighted Works without authorization by blaming its subscribers for Midjourney's own conduct, Midjourney is liable anyways as a secondary infringer under the doctrines of vicarious and contributory liability.

In the time since Plaintiffs' Complaint was filed on June 11, 2025, Midjourney has only ramped up its infringement.  As alleged in the Complaint, Midjourney had disclosed its intent to release a version of the Service capable of generating video outputs that feature Plaintiffs' copyrighted characters and, after the Complaint was filed, Midjourney launched this feature.  Now, the Service routinely generates videos from the images it generated.  If a subscriber requests a video based on an image (or, in Midjourney parlance, asks to "animate" an image), Midjourney adds realistic motion to the image and generates a video output.

After Midjourney released the version of the Service which generates videos, Midjourney demonstrated its ability to implement copyright protection measures.  These measures (which ultimately proved to only be temporary and implemented at the whim of Midjourney) prevented the Service's distribution, public display, and public performance of infringing videos (i.e., videos featuring Plaintiffs' copyrighted characters) by refusing to "animate" some of the infringing images that Midjourney's Service had generated. Midjourney, however, has never taken any steps to prevent the Service from creating and distributing images that infringe Plaintiffs' Copyrighted Works.  Moreover, approximately

two months after implementing copyright protection measures for Midjourney's video output, Midjourney reversed course and removed these protections. As of the filing of this Joint Report, Midjourney's Service continues generate infringing images and videos of Plaintiffs' Copyrighted Works unabated.

As alleged in the Complaint, Midjourney intentionally created a Service that infringes Plaintiffs' Copyrighted Works to profit from the decades of hard work that Plaintiffs have poured into their copyrighted content building their significant value. Midjourney has proven that it could stop infringing Plaintiffs' Copyrighted Works, but instead it has made the business decision to continue its infringement. Midjourney's systematic infringement is willful and must end.

2. Midjourney's Statement:

Midjourney is a self-funded artificial intelligence ("AI") research lab dedicated to creating tools that augment and expand the human imagination. Its namesake generative AI platform empowers tens of millions of users to express their imaginations by enabling them to translate natural language text into images. Midjourney's AI models were designed to enable users to create new, beautiful images that never existed before. To that end, it has succeeded: images generated by Midjourney users have won awards, adorned magazine covers, appeared in national ads, and served as the bases for set designs in an Oscar-winning film.

Plaintiffs, among the largest media conglomerates in the world, assert ownership of copyrights in various characters from film, television, and comic book franchises. They allege that Midjourney directly infringed their copyrights by 1) using images collected from the internet to train its generative AI models, a small number of which incorporate Plaintiffs' alleged characters, and 2) displaying user outputs on the Midjourney website, a small number of which allegedly incorporate those characters. Alternatively, Plaintiffs assert that Midjourney is vicariously and/or contributorily liable for its users' creation of images containing Plaintiffs' asserted works. Their allegations against Midjourney lack merit. With respect to Plaintiffs' training claim, the conduct alleged—training a generative

AI model on publicly available content in order to teach it concepts about the world—is a textbook fair use under 17 U.S.C. § 107. Like every other state-of-the-art generative AI model available today, Midjourney's models had to be trained on *billions* of publicly available images collected from the internet in order to understand how language relates to images and objects in the world, and to enable users to create an effectively infinite range of new images based on those relationships. In short, use of publicly available images to train generative AI models is highly transformative. Moreover, there is no actual or legally cognizable market for the data necessary to train state of the art generative AI models, nor have Plaintiffs or their works otherwise suffered injury from AI training.

As to Plaintiffs' output-focused claim, Plaintiffs mischaracterize Midjourney's role in its users' creations, the contents of those images, and the context in which they are made. Midjourney users—not Midjourney—prompt the tool to create or animate images. The vast majority of the more than a billion user images created to date have nothing to do with Plaintiffs' asserted works. And while some user images incorporate characters from popular culture, including characters that Plaintiffs purport to own and have asserted infringement of, many such images constitute criticism or commentary, while others may be ordinary, non-commercial fan art, or even artwork created by *Plaintiffs'* employees or partners for purposes of creative ideation, marketing, or otherwise—none of which is unlawful, either on fair use grounds or otherwise. Even to the extent that some user images might be infringing, or may have been put to infringing uses by individual users, Plaintiffs never followed Midjourney's DMCA notice-and-takedown procedure, which would have identified specific images that are allegedly infringing (including associated URLs) and given users an opportunity to defend their creations. Under these circumstances, the law precludes liability for services, like Midjourney, which are, at a minimum, capable of substantial non-infringing uses.

Meanwhile, at the same time Plaintiffs demagogue Midjourney for enabling lawful, harmless self-expression, many of their employees and creative partners, including in the visual effects industry, have been utilizing Midjourney professionally and for Plaintiffs'

benefit.  Midjourney also has reason to believe that Plaintiffs have developed and/or used other generative AI models which, like Midjourney's models, would have been trained on publicly available images and/or text.  Plaintiffs cannot have it both ways—benefitting from or experimenting with the same technology they are seeking to have the Court declare is effectively unlawful. These actions bar Plaintiffs' claims in whole, or in part, on the grounds of acquiescence, estoppel, waiver, unclean hands, and that certain works are under license.

Finally, discovery will test Plaintiffs' allegations regarding copyrights they put at issue, including ownership, the scope of the claim in each registration, and compliance with statutory requirements. The Complaint is vague as to chain of title for legacy works and does not clearly connect the scope of asserted registrations to the specific characters invoked. Many copyright registrations cited in the Complaint expressly exclude materials that relate to the characters mentioned.  In addition, many works-in-suit and characters they depict originate from periods governed by historical requirements—such as publication with proper notice and adherence to renewal formalities—that may affect the scope and validity of any rights asserted. Defendant intends to seek targeted discovery on these issues, as they are foundational for standing and remedies tied to the works-in-suit for all claims.

### b.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).  Midjourney has not challenged this Court's jurisdiction.

### c.  Legal Issues

1. Disney and Universal's Statement:

Disney and Universal's Complaint asserts claims for direct copyright infringement and, in the alternative, secondary copyright infringement.  Plaintiffs anticipate that the legal issues will include: (1) whether Midjourney infringes Plaintiffs' copyrights when it trains its Service on Plaintiffs' content, (2) whether Midjourney infringes Plaintiffs' copyrights with its video and image outputs generated by Midjourney's Service, (3) whether

Midjourney's infringement of Plaintiffs' copyrights is willful, (4) whether Midjourney can establish a fair use defense; and (5) whether Midjourney can shift responsibility for direct infringement to its subscribers for Midjourney's infringing outputs based on its assertion that Midjourney's subscribers are the ones engaged in direct copyright infringement.

      2. <u>Midjourney's Statement</u>:

Midjourney anticipates that legal issues will include: (1) the validity and scope of Plaintiffs' claims of ownership in the asserted works; (2) as to Plaintiffs' direct infringement claims, whether Plaintiffs can establish volitional conduct by Midjourney, as opposed to Midjourney users; (3) whether Plaintiffs' copyright infringement claims are barred, in whole or in part, by fair use under 17 U.S.C. § 107, (4) whether Plaintiffs' claims are barred, in whole or in part, on the ground that the Midjourney service is capable of substantial non-infringing uses; (5) whether Plaintiffs licensed their asserted works to Midjourney, in whole or in part, (6) whether Plaintiffs' copyright infringement claims are barred by the doctrine of acquiescence, estoppel, and/or waiver, (7) whether Plaintiffs' use of Midjourney and/or other generative AI tools constitutes unclean hands, barring Plaintiffs' copyright infringement claims, (8) whether any alleged copying of Plaintiffs' works is *de minimis*, and (9) whether Midjourney is entitled to avail itself to the DMCA's safe harbor provisions under 17 U.S.C. § 512.

### d. **Parties and Non-Party Witnesses**.

Plaintiffs are Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, and DreamWorks Animation L.L.C. Aside from the countless subscribers of Midjourney's Service to whom Midjourney has distributed, publicly displayed, and publicly performed infringing copies and derivative works featuring Plaintiffs' copyrighted characters, Disney and Universal are not aware of significant percipient witnesses that are unaffiliated with any party at this time, although such witnesses may be identified in discovery.

Defendant is Midjourney, Inc. Midjourney is aware of a number of third-party

service providers to Plaintiffs, including visual effects companies and other licensees, whom have used Midjourney's services, and whose testimony is relevant to the issues in dispute. Midjourney anticipates that there may also be former employees of Plaintiffs and current and/or former employees of Plaintiffs' affiliates, who possess relevant knowledge regarding Plaintiffs' uses of Midjourney and/or other generative AI products.

### e. Damages

Plaintiffs do not have an estimate of damages/disgorgement or other remedies under the Copyright Act at this time and will seek relevant materials and information in discovery. Plaintiffs anticipate that damages/disgorgement remedies will be the subject of expert testimony.

Midjourney denies that Plaintiffs are entitled to any relief whatsoever. Midjourney does not seek relief at this time other than attorneys' fees and costs if it prevails.

### f. Insurance

Disney and Universal's Position: Not applicable to Plaintiffs.

Midjourney's Position: Midjourney has tendered a claim for insurance coverage in connection with Plaintiffs' claims.

### g. Motions

1. Motion to Consolidate:

The Parties have agreed to stipulate to consolidate this action with a related action filed by another movie studio against Midjourney raising the same claims arising from Midjourney's Service, namely, the action entitled *Warner Bros. Entertainment Co., et al. v. Midjourney, Inc.*, Case No. 2:25-cv-08376 (the "Warner Bros. Discovery Action") which was filed on September 4, and has also been assigned to Judge Kronstadt. *See* ECF No. 22.

While the Parties agree that consolidation is appropriate pursuant to Federal Rule of Civil Procedure 42(a) as both matters involve common questions of law and fact, the Parties disagree on the impact that consolidation should have (if any) on certain scheduling

and discovery issues.  The Parties' positions on consolidation are immediately below, and in Section J(5) the Parties state their respective positions on discovery issues.

Disney and Universal's Position: While the parties have agreed that consolidation is warranted and appropriate, the parties have not agreed on the case schedule and interrogatory limits for such a consolidated action.

With respect to the case schedule, the schedule Plaintiffs originally proposed took into account the anticipated case consolidation and set a fact discovery cut-off in mid-August 2026 and a motion cut-off in December 2026.  In the meet and confer process, in order to obviate the need to file a motion for consolidation Plaintiffs offered to agree to a schedule that built in an additional month for fact discovery and made adjustments to other cut-off dates which resulted in the motion cut-off being extended almost two months from Plaintiffs' original proposal.  (*See* the chart on the next page.)  Specifically, as a compromise, Plaintiffs proposed a discovery cut-off of September 14, 2026, just over eleven months after the parties' Rule 26(f) Conference of Counsel.  Plaintiffs' second proposed schedule also built in extra time for expert discovery and included a motion filing cut-off date of February 8, 2027, well over a year after both lawsuits were filed.  And with the permission of the plaintiffs in the Warner Bros. Discovery Action, they offered to advance the initial disclosures in that matter and to allow discovery in that matter to commence early.  Despite this, the Parties did not reach agreement.

For its part, Midjourney originally proposed a discovery cut-off in November 2026 and a motion cut-off at the end of March 2027.  Through the meet and confer process, Midjourney offered to agree to a schedule with a proposed discovery cut-off of October 9, 2026 and motion deadline of March 8, 2027.  Plaintiffs understand that, like Plaintiffs, Midjourney is now proposing its original schedule in Exhibit A.  Plaintiffs believe that such an attenuated schedule with a motion deadline over twenty-one months after this case was filed is unwarranted at this time.  Plaintiffs further believe Midjourney's request for such an extended discovery period is also unwarranted and will lead to overly burdensome discovery for which good cause has not been shown (nor could it reasonably be shown at

such an early stage of the case). Notably, the parties in this action have already commenced written discovery. If, closer to the discovery cut-off the Parties have good cause for more time, there is a process by which they can request more time.

In Exhibit A hereto, Disney and Universal request that this Court enter the schedule that they originally proposed to Midjourney which appears in the second column below entitled "Plaintiffs' initial proposal." For the Court's convenience, below is a chart that includes the various schedules exchanged by the Parties during the meet and confer process:

| Event | Plaintiffs' initial proposal | Midjourney counter | Plaintiffs' 10/6/25 counter | Midjourney 10/8 proposal | Plaintiffs counter |
|---|---|---|---|---|---|
| Last date to add parties / amend pleadings | January 26, 2026 | Agreed | N/A | | |
| Non-expert discovery cutoff | August 17, 2026 | November 9, 2026 | September 7, 2026 | October 9, 2026 | September 14, 2026  And all other dates remain the same as Plaintiffs' 10/6/25 proposal |
| Initial expert disclosure | September 14, 2026 (approx. 1 month after close of fact discovery) | December 7, 2026 (approx. 2 months after close of fact discovery) | October 12, 2026 (approximately 5 weeks after close of fact discovery) | November 11, 2026 | |

| Event | Plaintiffs' initial proposal | Midjourney counter | Plaintiffs' 10/6/25 counter | Midjourney 10/8 proposal | Plaintiffs counter |
|---|---|---|---|---|---|
| Rebuttal expert disclosure | October 12, 2026 (approx. 1 month after initial expert disclosure) | January 19, 2027 (approx. 6 weeks after initial expert disclosure/over holiday period) | November 23, 2026 (approximately 6 weeks after initial expert disclosure) | December 21, 2026 | |
| Expert discovery cutoff | November 23, 2026 (approx. 6 weeks after rebuttal expert disclosure) | March 1, 2027 (approx. 6 weeks after rebuttal expert disclosure) | January 11, 2027 (approx. 7 weeks – after rebuttal expert disclosure over multiple holidays) | February 8, 2027 | |
| Last date to file all motions | December 21, 2026 (approximately 4 weeks after close of discovery) | March 29, 2027 (approximately 4 weeks after close of discovery) | February 8, 2027 (approximately 4 weeks after close of discovery) | March 8, 2027 | |
| Last day to conduct settlement conference or mediation | January 25, 2027 | January 25, 2027 / Agreed for a court deadline, subject to intent to mediate earlier, after | February 26, 2027 (court ordered)<br><br>*Subject to discussions in April 2026 if the parties should engage in an* | March 2027 | |

JOINT RULE 26(f) REPORT

| Event | Plaintiffs' initial proposal | Midjourney counter | Plaintiffs' 10/6/25 counter | Midjourney 10/8 proposal | Plaintiffs counter |
|-------|------------------------------|--------------------|-----------------------------|--------------------------|--------------------|
| | | some initial discovery | *early mediation* | | |

Disney and Universal's position on the appropriate discovery limitations in the actions if the actions are consolidated is set forth in Section J(5) below.

Midjourney's Position:

Plaintiffs in this action are two of the largest media conglomerates in the world. They claim infringement of dozens of allegedly copyrighted characters, many of which date back decades and have complex chain of title histories. And they bring this action in the midst of their own employees' experimentation with and use of Midjourney and other, similar generative AI tools that share the same training techniques and capabilities that Plaintiffs characterize as unlawful. Through consolidation, Plaintiffs seek to add to this case a third media giant, *hundreds* of additional works, and new layers of complexity.

For the sake of judicial economy and to avoid consumption of Court resources with avoidable motion practice, Midjourney will not stand in the way of Plaintiffs' request for consolidation and will stipulate to the same. But Midjourney has serious reservations about the implications of consolidation for the case schedule and, as detailed in **Section j** below, the applicable discovery limits. Midjourney raised these concerns with Plaintiffs and attempted to negotiate a resolution in good faith.

Midjourney is a small company with a few dozen employees and Plaintiffs' discovery, collectively, will concern the same Midjourney documents and witnesses (as evidenced by their decision to unify their cases). The same, however, is not true of Midjourney's discovery of the Plaintiffs. Each of the three Plaintiff groups (totaling twelve entities) represents a separate, massive, publicly traded company with thousands of employees. The addition of the *Warner* case will effectively multiply the volume of unique

discovery requests, documents, and depositions sought by Midjourney *by at least 50%*, while Warner's discovery of Midjourney will be largely, if not entirely cumulative of other Plaintiffs. In other words, the discovery burden on the parties is manifestly asymmetrical.

Plaintiffs are seeking to exploit this asymmetry for tactical advantage with a compressed fact discovery period of roughly 10 months, even though the *Warner* action was filed months after this one and discovery has not begun in that action. In contrast, Midjourney's proposed schedule, with fact discovery set to expire in November 2026, is aggressive in light of the above, but more feasible and still in keeping with the Court's desire for cases to proceed efficiently and expeditiously.

It bears noting that although Plaintiffs have treated consolidation as a *fait accompli*, it is within the discretion of the Court. *Dodaro v. Standard Pac. Corp.*, 2009 WL 10673229, at *3 (C.D. Cal. Nov. 16, 2009). To that end, courts weigh "the saving of time and effort consolidation would produce" against "any inconvenience, delay, or expense that it would cause." *Thomas Inv. Partners, Ltd. v. United States*, 444 F. App'x 190, 193 (9th Cir. 2011). Midjourney believes that consolidation can serve these objectives, but not if it comes at the expense of having sufficient time to conduct the discovery it needs to defend itself.

### 2. Other Motions:

Beyond the motion to consolidate the Parties do not presently anticipate filing motions to add additional parties, or claims, or to amend pleadings or transfer venue. The Parties may seek to file such motions at a later date if necessary and appropriate.

### h. Manual for Complex Litigation

The Parties have conferred and agree that this case should not be designated as complex, and that the procedures of the Manual for Complex Litigation should not be utilized.

### i. Status of Discovery

The Parties conferred regarding the timing of Initial Disclosures under FRCP 26(a) and served their respective Initial Disclosures on October 15, 2025. In addition, Midjourney served its first set of discovery requests on Plaintiffs via email on October 1,

2025, and Plaintiffs served their first set of discovery requests on Midjourney on October 8, 2025.

### j. Discovery Plan

Pursuant to Fed. R. Civ. P. 26(f)(3)(B) and the Scheduling Conference Order, the Parties have conferred regarding the subjects on which discovery may be needed. The parties have conferred and plan to conduct discovery as follows:

**1.** <u>Discovery by the Plaintiffs</u>: Disney and Universal anticipate that the discovery they conduct will include the following subjects: (1) Midjourney's infringement of Plaintiffs' Copyrighted Works including copies made by Midjourney in conjunction with training of Midjourney's models, including during processes known as pre-training or fine-tuning, as well as Midjourney's infringing outputs, (2) the development and operation of Midjourney and its Service including source code relevant to Plaintiffs' copyright infringement claims, (3) the acquisition and/or librarying of training data/images/videos for Midjourney's Service and models, including scraping, the acquisition of pirated content in connection with the development of the Service, and licensing deals and negotiations for training data, (4) Midjourney's business plans, including service features under development and projections for use of Midjourney's Service and features, (5) Midjourney's features, including image and video output and the Explore features on the Midjourney website, (6) Midjourney's use of Discord and other platforms for image and video output, (7) Midjourney's Midjourney.tv website, (8) Midjourney's partnerships and licensing arrangements, (9) Midjourney's analysis, development, implementation, and removal of copyright protection measures and what Midjourney refers to as "content moderation measures", (10) Midjourney's subscriber terms and conditions, including changes thereto, (11) Midjourney's enforcement of its terms and conditions, including restricting or terminating subscriber accounts, (12) Midjourney's knowledge that its Service massively infringes copyrights and notice of other claims of infringement asserted against Midjourney, (13) Midjourney's revenues, profits and expenses attributable to its

infringement of Plaintiffs' Copyrighted Works; and (14) Midjourney's organizational structure.

**2.** Discovery by Defendant: Midjourney anticipates that discovery will include, but not be limited to, the following subjects: (1) Plaintiffs' ownership, registration, scope of rights, and licensing of their Asserted Works, (2) Plaintiffs' use of Midjourney and/or other Generative AI Tools, including by individual employees or contractors, (3) Plaintiffs' actual or contemplated development, training, or fine-tuning of any generative AI tools, (4) the creation of the images shown in the Complaint, (5) Plaintiffs' use of web crawlers to acquire or download multimedia content or their downloading of data containing multimedia content that they do not own or have a license to, (6) any alleged harm suffered by Plaintiffs in connection with the allegations in their Complaint, (7) the economic impact of generative AI, including Midjourney's product, on Plaintiffs' businesses and on the market for the Asserted Works, and (8) valuations of the Asserted Works.

**3.** ESI: Pursuant to Fed. R. Civ. P. 26(f)(3)(C) and the Scheduling Conference Order, the Parties have discussed disclosure and discovery of electronically stored information and have agreed to work together to develop an efficient plan for the exchange of electronically stored information.

**4.** Privilege Issues: Pursuant to Fed. R. Civ. P. 26(f)(3)(D) and the Scheduling Conference Order, the Parties have conferred and, while their discussions are ongoing, at this time do not anticipate any unusual privilege issues.

**5.** Limitations on Discovery: Pursuant to Fed. R. Civ. P. 26(f)(3)(E) and the Scheduling Conference Order, the Parties have conferred and have agreed to adjust the limitations on depositions (i.e., 10 per side) in the consolidated action as follows, subject to further adjustment by agreement or a showing of good cause:

- Midjourney would get 20 party depositions,
- Plaintiffs would get 10 party depositions,
- Both sides would get 5 additional third-party depositions, and
- These limits would not include expert depositions.

Midjourney accepts Plaintiffs' proposal concerning deposition limits on the understanding that the parties may further adjust those limits by agreement or upon a showing of good cause. However, Midjourney anticipates that additional depositions of Plaintiffs and third parties will be necessary in view of, among other things, the number of parties and their sizes, the number of asserted works, and the extent to which third parties, including Plaintiffs' former employees, are implicated in the Parties' claims and defenses.

The Parties have conferred on limitations to interrogatories and state their respective positions as follows:

Disney and Universal's Position:

Plaintiffs believe that the limits set by the Federal Rules of Civil Procedure for interrogatories would be appropriate in the action even after it is consolidated with the Warner Bros. Discovery Action.

The Federal Rules of Civil Procedure allow *each* named party to serve 25 interrogatories on each opposing named party. Fed. R. Civ. P. 33(a)(1). Despite this, Midjourney proposed restricting Plaintiffs to 25 interrogatories *total* for all Plaintiffs, plus 5 additional interrogatories for each group of affiliated Plaintiffs (*i.e.*, Disney, Universal, and Warner Bros. Discovery—considerably *less* discovery than the Rules allow. This is an unacceptable proposition for Plaintiffs. Under the rules, Plaintiffs are entitled to serve up to 300 interrogatories to Midjourney. The rules make sense as each Plaintiff may want to ask Midjourney different questions that relate to each specific entity.

However, in the interest of reaching compromises in light of Midjourney's disagreement with this view, and to avoid burdening the Court with unnecessary motion practice, Plaintiffs have proposed adjustments of the Federal Rules of Civil Procedure in order to alleviate any supposed prejudice to Midjourney from the consolidation. Specifically, Plaintiffs have proposed that each group of affiliated Plaintiffs could each serve 25 interrogatories on Midjourney and, in turn, Midjourney could serve each group of affiliated Plaintiffs with 25 interrogatories. Plaintiffs respectfully submit this is more than reasonable.

<u>Midjourney's Position</u>:

Midjourney seeks the following modification to the default interrogatory limits, subject to further adjustment by agreement between the parties or a showing of good cause:

- <u>Plaintiffs' side</u>: limited to 25 common interrogatories total, and 5 additional interrogatories per each of the three Plaintiff groups (i.e., Disney, Universal, and Warner)
- <u>Midjourney's side</u>: limited to 25 common interrogatories total, and 6 additional interrogatories directed to any of the three Plaintiff groups.

In the alternative, Midjourney requests that the Court order a conference with the Magistrate Judge to address the Parties' competing proposals.

The modifications proposed by Midjourney are necessary to ameliorate the asymmetrical burden that would otherwise be unduly imposed on it by operation of the default limits. Plaintiffs, having made their own proposal, have tacitly acknowledged that some modification is warranted, but their proposal is inadequate. Plaintiffs, sharing the same attorneys, are pursuing identical legal claims via a unified strategy, and will each be seeking the same information from Midjourney. Under these circumstances, permitting each Plaintiff group to serve 25 unique interrogatories is effectively no different than allowing a single plaintiff to serve 75 unique interrogatories, and is contrary to the purpose of Rules 26 and 33.

Midjourney's proposal takes into account that Plaintiffs are only nominally separate by limiting them to 25 common interrogatories, while still permitting each of the three groups to serve an additional 5 interrogatories specific to that particular group. This approach is consistent with Federal Rule of Civil Procedure 26(b)(2), which authorizes the Court to alter the default limits in order to effectuate Rule 26(b)(1)'s proportionality mandate. To that end, "[c]ommentary and caselaw" have "noted that permitting the maximum number of allowable interrogatories" per party "does not always accord with the purpose of Rule 33's limitation." *21X Capital Ltd. v. Werra*, 2007 WL 2852367, *1 (N.D. Cal. Oct. 2, 2007). Instead, a "25 interrogatory limit per side rule is often applied when

parties to an action are nominally separate," as occurs when they are "represented by a single attorney, when there is a unity of action, *or* when there is a legal relationship between the parties." *Id.* (emphasis added). *See e.g.*, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2023 WL 5058889, at *2 (N.D. Cal. July 7, 2023) (limiting each side to 25 interrogatories, despite multiple plaintiffs); *Stiles v. Walmart*, 2020 WL 264420, *4 (E.D. Cal. Jan. 17, 2020) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories."); *United States ex rel. Woodruff v. Hawai'i Pac. Health*, 2008 WL 11420075, at *3 (D. Haw. Feb. 29, 2008) (collecting cases); *Gonzalez v. United States*, 2023 WL 7102162, at *7 (E.D.N.Y. Oct. 27, 2023) ("where parties to a litigation have conducted themselves or acted as if they have a 'common interest' or are otherwise 'aligned,'" courts may consider them "one 'party' for Rule 33(a)").

\* \* \*

At this time, the Parties do not believe non-expert discovery should be conducted in phases.

**6.** Protective Order: Pursuant to Fed. R. Civ. P. 26(f)(3)(F) and the Scheduling Conference Order, the Parties have conferred and agree that a multi-tiered protective order will be necessary to protect proprietary and confidential financial information and/or competitively sensitive information, and they have agreed to work together to submit a mutually agreeable proposed order to the Court.

**k. Discovery Cut-Off**

The Parties have conferred and have not agreed on a discovery cut-off. Each side's proposal is stated in Exhibit A.

**l. Expert Discovery**

The Parties have conferred and have not agreed on expert discovery dates. Each side's proposal is stated in Exhibit A.

**m. Dispositive Motions**

The Parties have discussed the filing of dispositive motions. All Parties anticipate

filing a motion for summary judgment as to some or all of the claims and/or defenses raised in the operative pleadings at an appropriate time, after discovery has progressed.

### n. Settlement

The Parties have discussed the ADR Procedure specified in L.R. 16-15.4. The Parties are amenable to ADR Procedure No. 3, a private dispute resolution proceeding with a mediator jointly selected by the Parties. The Parties' proposed ADR deadlines are set forth in Exhibit A.

### o. Trial Estimate

The Parties currently estimate that trial of this case will require 14 court days.

### p. Trial Counsel

Disney and Universal's lead trial counsel will be David R. Singer, Julie A. Shepard and Lauren M. Greene of Jenner & Block LLP.

Midjourney's lead trial counsel will be Bobby Ghajar, JP Oleksiuk, and Judd Lauter of Cooley LLP.

### q. Independent Expert or Master

Pursuant to this Court's Order Setting Scheduling Conference, the Parties have conferred and do not believe that the appointment of a special examiner or master is necessary for this case.

### r. Timetable

The Parties have completed, and are filing herewith, the Court's Schedule of Pretrial and Trial Dates form. The Parties agree that the deadline to add additional parties is January 26, 2026. However, the Parties have been unable to agree on a deadline for amendment to the pleadings.

- Plaintiffs' Proposal: The deadline for Plaintiffs to amend to identify additional infringed works shall be three (3) months before the fact discovery cut-off. This proposed deadline accounts for the fact that the information about many additional infringed works is exclusively in Midjourney's possession such that Plaintiffs will need time to conduct discovery into

Midjourney's reportedly sprawling databases to identify such works. The proposed schedule also provides three months for Midjourney to conduct discovery into any later identified work.

- <u>Midjourney's Proposal</u>: The deadline for the Parties to amend the pleadings is January 26, 2026. Plaintiffs should not receive a separate (or unilateral) deadline to amend, let alone one so close to the end of discovery (and unusually so). Plaintiffs' proposal would not leave sufficient time for Midjourney to conduct discovery on and develop defenses to any additional asserted works, including as to their validity, ownership, and applicable defenses. Any deadline to amend the pleadings should be at least six months before the close of discovery.

**s.  Other Issues**

The Parties have no additional issues to raise with the Court at this time.

**t.  Patent Cases:**

N/A.

**u.  Whether the Parties Wish to Have a Magistrate Judge Preside**

The Parties do not consent to have a Magistrate Judge preside over the entire action under 28 U.S.C. § 636.

Dated:  October 22, 2025                    JENNER & BLOCK LLP


By: _____*/s/ David R. Singer*_____
                         David R. Singer
                         Julie A. Shepard
                         Lauren M. Greene

                    *Attorneys for Plaintiffs*

Dated:  October 22, 2025

By: _____ */s/ Judd D. Lauter*
COOLEY LLP

BOBBY GHAJAR (198719)
(bghajar@cooley.com)
ELLIE DUPLER (337607)
(edupler@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

JOHN PAUL OLEKSIUK (283396)
(jpo@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Midjourney, Inc.*

*Pursuant to C.D. Cal. L.R. 5-4.3.4(a)(2)(i), the filer hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*