# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., et al.; WARNER BROS. ENTERTAINMENT, INC., et al., | Lead Case No. 2:25-cv-05275-JAK (AJRx) |
| Plaintiffs, | [~~PROPOSED~~] **ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| v. | |
| MIDJOURNEY, INC., a Delaware corporation, | |
| Defendants. | |
| ALL CASES | |

Upon the stipulation of the parties, the Court ORDERS as follows:

This Joint Stipulation is made by and between plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, DreamWorks Animation L.L.C., Warner Bros. Entertainment Inc., DC Comics; Turner Entertainment Co., Hanna-Barbera Productions, Inc., and The Cartoon Network, Inc. (collectively "Plaintiffs") and defendant Midjourney, Inc. ("Midjourney" and, collectively with Plaintiffs, the "Parties"), by and through their counsel of record as follows:

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable stipulations, orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

## 3. LIAISON

The parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. PRESERVATION

The parties have an obligation to take reasonable steps to preserve discoverable information in the parties' possession, custody, or control, which includes metadata where applicable, consistent with the Federal Rules. The parties have taken steps to preserve such discoverable information consistent with their obligations under applicable federal law.

## 5. SEARCH

### a. DISCLOSURES

Consistent with the Parties' obligations under the Rules, the Parties will meet and confer as warranted to plan for discovery. This may include a disclosure of custodians, data sources, anticipated date ranges of relevant documents, and categories of documents or ESI that contain information relevant to this litigation.

The Parties shall endeavor to reach an agreement regarding the data sources subject to preservation and discovery. To advance that effort, the Parties shall disclose (a) categories or sources of relevant information identified to date that are not reasonably accessible because of undue burden or cost, and (b) categories of data or sources that a party believes could contain relevant information, but are not discoverable and should not be preserved under the proportionality factors.

The Disney Plaintiffs (collectively, Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, and Twentieth Century Fox Film Corporation), Universal Plaintiffs (collectively, Universal City Studios Productions LLLP and DreamWorks Animation L.L.C.), and Warner Bros. Discovery Plaintiffs (collectively, Warner Bros. Entertainment Inc., DC Comics, Turner Entertainment Co., Hanna-Barbera Productions, Inc., and The Cartoon Network, Inc.) shall each be considered a single Producing Party and Requesting Party. Each Producing Party is responsible for initial identification of its own custodians, which shall be disclosed upon request by a Requesting Party. The Parties may request inclusion of

additional custodians or searches as discovery progresses, and the Parties agree to meet and confer in good faith regarding such requests.  To the extent that the Parties are unable to reach an agreement regarding the identification of additional custodians, the Court shall consider contested requests for additional custodians upon a showing of need based on, among other factors, the degree to which the requested custodians are likely to possess non-duplicative information, the size of the respective parties, and the size, complexity, and issues of this specific case.

### b.  SEARCH METHODOLOGY

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery, consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."

i. **Search Terms Use:** Each Producing Party may – but is not required to – use search terms to locate potentially relevant documents for collection and/or culling after collection.  As a general matter, each Producing Party will use search terms for searching email and other electronic communications, and other sources that are readily amenable to search terms.  For other sources, each Producing Party is best equipped to determine whether search terms or other approaches – such as retrieval of documents and sources identified during custodial interviews – is appropriate for each such source.

ii. **Search Terms:**  To the extent search terms are used for a given source or set of data, each Producing Party will develop its own appropriately tailored search terms to locate its relevant documents that are responsive to discovery requests.  Upon reasonable request of a Requesting Party, and where search terms have been used by the Responding

Party, the Producing Party shall provide search term hit reports pursuant to Paragraph 5.d, unless the parties agree otherwise.

The Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application.  If, after disclosure of the Producing Pary's search method, search parameters, and search terms, and after a reasonable meet-and-confer process, a Requesting Party has a specific, tangible, evidence-based reason to believe that the Producing Party's search, retrieval, and production has or is likely to result in deficiencies in production (consistent with Sedona Conference Principle 6), the Requesting Party may make requests for different or additional search methods, parameters, or search terms. Such requests shall only be made after the Parties have met and conferred as to the alleged deficiencies identified by the Requesting Party. If the issue is not resolved within fourteen (14) calendar days after the objection, either Party may thereafter immediately submit the dispute to the Court or its designee for resolution.

iii. **Other Review Procedures:** Nothing in this Joint Stipulation may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant. Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term.  Nothing in this Order constitutes a waiver of the Requesting Party's right to challenge those relevance determinations.

   **d. HIT REPORTS**

A hit report shall contain, for each custodian or data source in the document collection where the terms were applied, or as otherwise agreed, the following with respect to each search term in the collection: (i) the number of documents with hits for that term; (ii) the number of unique documents, i.e., documents which do not have hits for any other term, for that term; and (iii) the number of family members requiring review in connection with all documents with hits.

**e. VALIDATION**

Each Producing Party shall take reasonable steps to validate its own review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and shall take necessary adjustments to its process.

**6.   ENTERPRISE MESSAGING AND OTHER COMMUNICATION TOOLS**

a.   The Parties will disclose at the outset any use of enterprise messaging tools used in the course of business (e.g., Slack, MS Teams, Zoom, WhatsApp, Google Chat, Sametime, Skype, Telegram, etc.). The Parties will, as needed, meet and confer regarding procedures for collection of such data, the format of the production, metadata fields, and other issues unique to this type of data. Electronically stored information associated with enterprise messaging tools should be collected and reviewed with emails and other custodian/non-custodial data sources. Documents produced from an enterprise messaging platform must clearly indicate, either in a unique metadata field or on the face of the document, the specific platform from which the documents originated.

b.   The Parties agree to disclose whether any document custodians' use non-enterprise messaging tools for relevant communications, and if their mobile devices contain unique sources of relevant ESI, and to meet and confer regarding procedures for the inclusive collection of such data, the format of production, metadata fields, and other issues unique to this type of data.

## 7. PRODUCTION FORMATS

With the exception of source code and potential access to the asserted works, the parties agree to produce documents in the formats described in Exhibit 2 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

Source code and certain other highly confidential technical materials associated and produced in conjunction with source code, will be produced in native format and/or shall be made available for inspection pursuant to the terms of the parties' anticipated Protective Order governing "HIGHLY CONFIDENTIAL – SOURCE CODE" materials.

## 8. DEDUPLICATION

A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, or SHA-256 hash values. The Parties shall make reasonable efforts to not produce Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Custodians, the Producing Party shall take reasonable steps to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails. Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When Duplicate ESI exists in the files of multiple custodians, the Producing Party shall take reasonable steps to populate the names of all designated custodians from whom a document was collected in an applicable metadata field. Email that includes content in the "bcc" or other blind copy field shall not be treated as duplicate of an email that does not include content in the "bcc" or other blind copy field, even if all remaining content in the email is identical.

### 9. HYPERLINKS

Except as provided in this paragraph and its subparagraphs, the Producing Party shall not be required to produce documents solely because they are hyperlinked within the Producing Party's production. For purposes of this protocol, "hyperlinked documents" include but are not limited to documents shared via Google Workspace, Microsoft Office's "Share Documents via Link" feature, or similar cloud-based document storage and sharing platforms. The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of relevant hyperlinked documents and metadata. Nothing in this paragraph and its subparagraphs shall be construed as limiting the parties' obligation, if any, to produce hyperlinked documents that are relevant or responsive to discovery requests.

### a. PRODUCTION OF HYPERLINKED DOCUMENTS

The Parties may request the production of the current version or contemporaneous version of a responsive and non-privileged document or communication that is within the Producing Party's possession, custody, or control and is hyperlinked within the Producing Party's production and where such production is not unduly burdensome and is proportional to the needs of the case by providing to the Producing Party a list of hyperlinks and corresponding Bates numbers in which the hyperlinked document is referenced. If the hyperlinked document has already been produced, the Producing Party may alternatively provide the Requesting Party with the document's Bates number. Each side may make up to two hundred such requests. The parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of the production of the requested documents and communications and any reasonable request to increase the limit on the total number of hyperlinked documents and communications to be produced. If a Requesting Party believes that more requests are warranted and the Producing

Party has not agreed to produce additional hyperlinked documents, the Requesting Party may seek relief from the Court.

### b.  PRODUCTION OF HYPERLINK METADATA

The Parties acknowledge that the current version of the hyperlinked document (i.e., the version produced pursuant to the paragraphs concerning hyperlinks) may differ from the version of the document at the time the hyperlink was sent and that receipt of a hyperlink by a custodian does not indicate that a custodian reviewed the hyperlinked file. The Parties also acknowledge that the metadata of such document(s) may not reflect the metadata for requested documents at the time the documents were hyperlinked. Nothing in this paragraph shall be construed as limiting a Producing Party's obligation to produce metadata for hyperlinked documents where such production is not unduly burdensome and is proportional to the needs of the case. Nothing in this paragraph shall be construed as a waiver of a party's duty to preserve discoverable information.

### 10. MODEL DATA

To the extent such data is not addressed in this protocol, the Parties will meet and confer to address the production of data related to the generative AI models at issue. Given the size, structure and format of such data, the Parties agree to discuss how such data should be produced.

### 11. PRIVILEGE LOGS

Any otherwise discoverable document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work-product doctrine, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party in a privilege log. Each entry on the privilege log shall include sufficient information for a party or the Court to determine whether the document is privileged.

a.  Privilege logs will be produced in an Excel format, or other agreed-upon format, which allows the Requesting Party to search and sort any and all columns and entries of the privilege log.

b.  The privilege log shall include:

i.  A privilege log control number for each entry on the log.

ii.  A description of the basis for the privilege claim and identification of whether attorney-client privilege and/or work product is being claimed.

iii. Date of document for all ESI and to the extent known or discernible for all hard copy documents. For emails this should be the sent date of the document and for loose ESI this should be the last-modified and date of the document.

iv. Custodian of the document. For emails this should be populated with the metadata extracted from the Custodian(s) field. For loose ESI, this should be populated with the Custodian value assigned to the instance of the document in question.

v.  Author of the document. For emails this should be populated with the metadata extracted from the "Email From" field associated with the file. For loose ESI, this should be populated with the metadata extracted from the "Author" field. For hard copy documents, this will be populated with the "Custodian."

vi.  Recipient(s) of the document where reasonably ascertainable. For emails this will be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns will be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

vii.  Subject Line for emails.

viii.  Filenames for non-email ESI.

ix.  File extension for non-email ESI.

x.  Bates number(s), if any. For Bates numbered documents (e.g. when a parent email is produced but an attachment is withheld on the basis of privilege) the BegAttach and EndAttach values will be provided.

c.  Parties may substitute an alternative description of the content within the identified field(s) where the content of the field reveals privileged information. The Producing Party shall identify each instance in which it has modified the content of the field and the basis for the modification.

d.  If the document is the parent or child of a family of documents, some of which been produced and others withheld, the log should identify the Bates numbers of the first document (i.e., the parent, or if the parent is withheld the first attachment) produced from the in which the logged document was withheld.

e.  Privileged communications between a Party and its outside counsel on or after June 11, 2025; and work product created by outside or in-house counsel or undertaken by a Party at the direction of its outside or in-house counsel on or after June 11, 2025, need not be included on a privilege log.  The Parties will work in good faith to agree on a method for avoiding the undue burden involved in logging: (1) work product or privileged communications between Plaintiffs' and their outside counsel regarding their pre-filing investigation into this litigation and (2) Defendant Midjourney, Inc.'s privileged communications between itself and its outside counsel or work product concerning the matter of *Andersen et al. v. Stability AI Ltd. et al.*, Case No. 3:23-cv-00201-WHO.

f.  The privilege logs will clearly identify (a) any attorneys on the privilege log using an asterisk or other agreed-upon method; and (b) any third party (along with the name of the third-party business, the job title and/or role of the third-party, and the basis for asserting the claim of privilege or work-product protection sufficient under Federal Rule of Civil Procedure

26(b)(5) identified in a log entry or entries)). To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information regarding which attorney(s) requested or were involved in the preparation of the document that is claimed to be privileged.

g.      For ESI, the parties are not required to manually populate information required by paragraph 13.b.(ii – viii) if the information cannot be electronically extracted via standard e-discovery processing.

**12. CHALLENGING PRIVILEGE**

A Requesting Party may challenge a Producing Party's claims of privilege, work product, or other protection at any time.

a.  Where the challenge pertains to documents, the Requesting Party shall set forth in writing their challenges and the Producing Party shall have fourteen (14) calendar days to respond. Failure to respond timely will be presumed to terminate the meet and confer process. That timing may be extended by agreement of the Parties.

b.  Within seven (7) calendar days of the Producing Party's response, the parties shall meet and confer to attempt to resolve the challenge. That timing may be extended by agreement of the Parties.

c.  If, at the conclusion of the meet-and-confer process, the Parties are still not in agreement, they may bring the issue to the Court.

**13. DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass

1  production is not itself a waiver in this case or in any other federal or state proceeding. This order

2  supersedes the non-waiver requirements of <u>Fed. R. Evid. 502(B)(1-3)</u>.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT 1

### FIELDS and METADATA TO BE PRODUCED

1.      The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|-------|-------------------|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| CUSTODIAN | Name of custodian or custodial file |
| CONFIDENTIALITY | Confidentiality designation assigned to document |

2.      The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and/or unredacted:

| Field[1] | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|----------|-------------------------------------------|-------------------------------------------------|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

| Field[1] | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
| PRODVOL | Production volume | Production volume |
| PAGECOUNT | Number of pages | Number of pages |
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| CUSTODIAN | Custodian of the document | Custodian of the document |
| ALLCUSTODIANS | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation |
| AUTHOR | Any value populated in the Author field of the document properties | n/a |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
| --- | --- | --- |
| FROM | n/a | Sender of message or calendar invite |
| TO | n/a | All recipients that were included on the "To" line of message or calendar invite |
| CC | n/a | All recipients that were included on the "CC" line of message or calendar invite |
| BCC | n/a | All recipients that were included on the "BCC" line of message or calendar invite |
| EMAILSUBJECT | n/a | Subject of message or calendar invite pulled from the document properties |
| TITLE | Any value populated in the Title field of the document properties | n/a |
| DATETIMECREATED | Date and time file was created according to filesystem information (format: MM/DD/YYYY HH:mm:ss) | n/a |
| DATETIMEMODIFIED | Date and time file was last modified according to filesystem information (format: MM/DD/YYYY HH:mm:ss) | n/a |
| DATETIMESENT | n/a | The sent date and time of the message in the format MM/DD/YYYY HH:mm:ss |
| DATETIMERECEIVED | n/a | The received date of the message in the format MM/DD/YYYY HH:mm:ss |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| DOCEXT | File extension of document pulled from the document properties | File extension of document pulled from the document properties |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |
| FILEPATH | The directory structure of the original file(s). Any container name is included in the path. | The directory structure of the original file(s). Any container name is included in the path. |
| HASHVALUE | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email |
| NATIVEFILEPATH | Link to native file (if any) | Link to native file (if any) |
| TEXTFILEPATH | Link to extracted text/OCR file for the document | Link to extracted text/OCR file for the email |
| REDACTION | Identifies if a document has been redacted | Identifies if a document has been redacted |

Such metadata field values will be provided to the extent reasonably available at the time of collection and processing, except that they may be redacted if privileged or if the information in the metadata is protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original metadata of the document.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **EXHIBIT 2**

### **PRODUCTION AND LOAD FILE FORMAT FOR DOCUMENTS AND ESI**

**1.    Delimited Text File.**

A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided.

The delimiters for the file should be Concordance defaults accordingly:

| Comma | ASCII character 20 (¶) |
|-------|------------------------|
| Quote | ASCII character 254 (þ) |
| Newline | ASCII character 174 (®) |

- The first record should contain the field names in the order of the data.

- All date fields should be produced in mm/dd/yyyy format.

- Use carriage-return line-feed to indicate the start of the next record.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

**2.    Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

Further definitions and instructions as follows:

| ImageID | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
|---|---|
| VolumeLabel | The name of the volume. |
| ImageFilePath | The full path to the image file. |
| DocumentBreak | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak | Leave empty. |
| BoxBreak | Leave empty. |
| PageCount | Number of pages in the Document. |

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.LFP).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

**3.    OCR / Extracted Text Files**

OCR or Extracted Text files shall be provided in a separate folder containing Document level text files.  If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format.

**4.    TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as

TIFFs.  Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. All ESI shall be processed with a single consistent time zone date and time setting. All tracked changes shall be maintained, to the extent reasonably feasible upon collection, so that all changes to a document are evident. Author comments shall remain or be made visible, to the extent reasonably feasible upon collection and processing. Upon request, a document with tracked changes and/or comments shall be produced in a form where such tracked changes and comments are visible or natively to the extent necessary for preservation and disclosure of such tracked changes and/or comments. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality image or the native or original file.

**5.    Color.**  To limit the costs of production, the parties will produce documents in black and white in the first instance, but the parties recognize that color images may be necessary based on the claims at issue. Accordingly, the parties may make reasonable requests for color copies of documents, in particular documents containing images reflecting the asserted works or portions thereof. Such requests shall not be unreasonably denied. Color image files that exist as separate records (e.g. .Jpg, .gif, .png, .heic, etc.) should be produced in color in single-page JPEG format.

**6.    Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions

of the documents. A commercially acceptable technology for optical character recognition

"OCR" shall be used for all scanned, hard copy documents, documents that do not contain

electronically extractable text, and for documents with redactions.

7.      **Native files.** Spreadsheet-type files (*e.g.* Microsoft Excel) and PowerPoint presentations

will be produced in native format.  To the extent that they are produced in this action, audio,

video, and multi-media files will be produced in native format. Native files will be produced with

a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is

available) and applicable metadata fields set forth in paragraph 4 above.  A Bates numbered TIFF

placeholder indicating that the document was provided in native format must accompany every

native file. To the extent native files require redactions, such files shall be produced with

redactions in the native file to the extent possible using industry-standard eDiscovery redaction

software (e.g. Relativity Redact).  PowerPoint presentations that require redactions will be

imaged and produced in TIFF format.

8.      **Confidentiality Designation.** Responsive documents in TIFF format will be stamped

with the appropriate confidentiality designations in accordance with the Protective Order entered

in this matter. Each responsive document produced in native format should have its

confidentiality designation identified in the filename of the native file and indicated on its

corresponding TIFF placeholder.

**9.**      **Families.**  Parent-child relationships will be maintained in production. Links within a

document are not considered attachments.

1    **IT IS SO STIPULATED**, through Counsel of Record.

2

3    DATED:  February 11, 2026

4

5    _/s/ Lauren Greene_
     Attorneys for Plaintiff(s)

6

7    DATED: February 11, 2026

8

9    _/s/ Bobby Ghajar_
     Attorneys for Defendant(s)

10

11   **IT IS ORDERED** that the forgoing Agreement is approved.

12

13    Dated: 2/12/2026

14    _____
                        HON. A. JOEL RICHLIN

15                UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28