COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
ELLIE DUPLER (337607)
(edupler@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

JOHN PAUL OLEKSIUK (283396)
(jpo@cooley.com)
STEPHANIE SCHUYLER (*Pro Hac Vice*)
(sschuyler@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Counsel for Defendant Midjourney, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., et al.; WARNER BROS. ENTERTAINMENT, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIDJOURNEY, INC., <br><br> Defendant. <br><br> ALL CASES | Lead Case No. 2:25-cv-05275-JAK (AJRx) <br><br> **DISCOVERY MATTER** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: April 27, 2026 <br> Time: 1:30 p.m. <br> Court: Courtroom 780 <br> Judge: Hon. A. Joel Richlin <br><br> Date Action Filed: June 11, 2025 |

COOLEY LLP
ATTORNEYS AT LAW

Further to the parties' informal discovery conference, Defendant Midjourney, Inc. ("Midjourney") moves to compel Plaintiffs to produce (1) documents concerning their development, use of, and policies regarding generative artificial intelligence ("AI") tools for image and video creation, and (2) the complete set of Midjourney prompts and outputs that Plaintiffs (or their agents) used. Exs. 1-3, 8. Plaintiffs want to hide as "irrelevant" how they develop and use competitive image and video AI tools, while seeking a judgment that the same practices are infringing when undertaken by Midjourney.  As explained below, these categories of documents are highly relevant, and any arguable burden is minimal and mitigatable.

***First***, Plaintiffs' ***own*** development and use of generative AI to create images and video is probative of the transformative nature of the alleged copying at issue. Every state-of-the-art generative AI model relies on similar technology, the ***same*** corpuses of training data (images found on the internet), the ***same*** training practices, and the ***same*** fair use justification.[1] If Plaintiffs are developing their own image AI models, they cannot credibly maintain that Midjourney's industry standard practices are infringing while their own is not.  And their commercial reliance on such models is a practical concession that AI models trained on publicly available images produce something fundamentally new and useful—*i.e.*, that such training is transformative.

***Second***, Plaintiffs' selective disclosure of cherrypicked Midjourney outputs in the Complaints is precisely the kind of gamesmanship that the waiver doctrine is designed to prevent. These are not legal impressions, nor are they confidential. Plaintiffs prompted Midjourney's tool to put various outputs at issue; it cannot now disclose ***only*** results that support their claims while withholding others that undermine or contextualize them. It is also unfair for Plaintiffs and their agents to

---

[1] *See e.g.*, *Getty Images (US), Inc. v. Stability AI Ltd.*, [2025] EWHC 2863 (Ch) ¶¶ 4, 8 (Eng.) (describing training of Stability AI diffusion model through scraping of voluminous data), available at https://www.judiciary.uk/wp-content/uploads/2025/11/Getty-Images-v-Stability-AI.pdf (describing training of another diffusion model through scraping data); *Diffusion Model*, Wikipedia, https://en.wikipedia.org/wiki/Diffusion_model (last visited Mar. 27, 2026) (describing how diffusion models underpin AI models from e.g., OpenAI, Stability AI, Google).

generate dozens of images and point to those images (as they have) as evidence of infringement (they are not), *without* revealing their roles in creating those images.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Midjourney is a leading independent AI research lab, and the developer of its namesake image and video generation platform. Midjourney's AI models are "diffusion models"—a technology that is to state-of-the-art image and video generation AI tools what LLMs are to chatbots like ChatGPT.  To understand visual patterns and concepts, state-of-the-art diffusion models must be trained on *billions* of images, enabling them to create novel content in response to user prompts. It is widely understood that all state-of-the-art image and video models share the same basic underlying technology and require large training corpuses.[2]

The Complaints advance essentially two theories of how Midjourney's commercialization of its AI models infringes their copyrights: (1) Midjourney created unauthorized copies of Plaintiffs' works (*i.e.*, various film and TV franchises) by training its models on large corpuses of publicly available images, a small portion of which concern those works (Disney Compl. ¶ 155; Warner Compl. ¶ 99), and (2) Midjourney is also directly or secondarily liable for images created by Midjourney users that may depict characters from those works (Disney Compl. ¶¶ 212-235).

Midjourney served requests on Plaintiffs seeking documents regarding, *inter alia*, their training and development of their own AI models (RFP Nos. 12, 13, 25), use of image and video AI (RFP Nos. 8, 10, 23-24), and AI policies (RFP Nos. 14, 21).  Plaintiffs only agreed to produce documents regarding their uses of AI "to create images and/or video outputs intended for consumers, featuring the asserted works." Ex. 8. Midjourney also served requests seeking prompts that Plaintiffs or their agents submitted to Midjourney (and corresponding outputs) *not* featured in the Complaints

---

[2] *See supra* fn. 1.  *See also*, "LAION-5B: An open large-scale dataset for training next generation image-text models," at 2, https://arxiv.org/pdf/2210.08402 (last visited Mar. 27, 2026) (describing how "[a] critical ingredient in this new generation of image-text models is the pre-training dataset, " which requires "hundreds of millions or even billions of image-text pairs").

(RFP No. 16), which Plaintiffs refused. The parties conferred multiple times but could not reach agreement and presented the dispute to the Court through an informal discovery conference on March 12, 2026, which resulted in an order for this briefing.

## II.   LEGAL STANDARD

Parties may obtain discovery "that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), which "broadly encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021). Although the moving party carries the "burden of establishing that its request satisfies the relevancy requirements . . . [t]he party opposing discovery [carries] a heavy burden of showing why discovery should be denied," including "the burden of … supporting its objections." *Id*.

## III.   ARGUMENT

### A.   Plaintiffs' Development and Use of Gen AI is Highly Relevant to Central Issues and Proportional to the Needs of the Case

Cognizant that their own development and use of models trained on third-party copyrighted works would undermine the positions they have taken in this litigation, Plaintiffs seek to withhold *all* discovery about their downloading of datasets that contain third-party copyrighted content (RFP 25); agreed to produce only board minutes discussing Midjourney (but not other AI tools) (RFP 21); and limited their production of business plans and related documents to those discussing the development or use of AI to generate outputs "intended for consumers, featuring the asserted works" (RFPs 8, 10, 12, 13, 14, 23-24). The result is a one-sided production. Plaintiffs want to disclose only what they believe supports their market harm theory under the fourth fair use factor, while withholding evidence that provides necessary context for Plaintiffs' production, supports Midjourney's various defenses, and bears on various other issues, as discussed below.

COOLEY LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:25-CV-05275-JAK-AJR

### 1. The Discovery is Relevant to Fair Use

This case, like other AI cases, will largely turn on fair use, which "permits courts to avoid rigid application of the copyright statute when . . . it would stifle the very creativity which that law is designed to foster." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021) (cleaned up). The Copyright Act enumerates four factors to be considered in determining whether a given use is fair (17 U.S.C. § 107), but those factors are non-exhaustive, and courts also consider evidence regarding industry customs and practice and public benefits associated with the copying. *Cisco Sys., Inc. v. Arista Networks, Inc.*, 2016 WL 11752975, at *2 (N.D. Cal. Nov. 16, 2016) ("widespread use of [the Work] throughout the industry is relevant to . . . fair use").

Plaintiffs' made-for-litigation position is that training generative AI models on copyrighted content is ***not*** a fair use, disputing that Midjourney's training AI models on publicly available copyrighted works is transformative; that no market for Plaintiffs' works is harmed; and that such training is an industry-standard practice benefitting the public. Their own conduct likely tells a different story—documents showing that Plaintiffs trained their own models (or used models already trained) on the ***same*** data would directly counter Plaintiff's theory of the case, and undermine their credibility on core disputed issues. *See Mattel, Inc. v. MGA Ent., Inc.*, 2010 WL 11464001, at *1 (C.D. Cal. Oct. 28, 2010) (holding "discovery into whether [plaintiff] engaged in the same conduct it now complains of: wrongfully obtaining advance information about competitors' forthcoming product lines" relevant to plaintiff's theory that the information in its showrooms was confidential); *In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 4327876, at *3 (S.D. Cal. Sept. 10, 2018) (permitting discovery of communications with competitors to "counter plaintiff's theory" that defendant's similar conduct constituted unfair competition).

**Transformativeness**. To protect a wide spectrum of varying forms of creativity, fair use is designed to be a "flexible concept," *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527 (2023), that "is sensitive to new

technologies and their potential consequences," *Kadrey v. Meta Platforms*, *Inc.*, 788 F. Supp. 3d 1026, 1059 (N.D. Cal. 2025) (finding AI model transformative). This analysis requires courts to determine "whether and to what extent the new work is transformative" which is the "central purpose of the first-factor inquiry." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F. 3d 443, 452 (9th Cir. 2020). This is especially true with newly emerging technologies; "fair use is a tool for adapting copyright law to brisk technological advances." *Wall Data, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). And although the fair use defense must be tied to case-specific facts, its implications can extend beyond the parties to the litigation. *See Bartz v. Anthropic,* 787 F. Supp. 3d 1007, 1033 (N.D. Cal. 2025) (describing "[t]he technology at issue," generative AI, as "the most transformative many of us will see in our lifetimes").

All state-of-the-art image and video AI models rely on use of "diffusion" model AI architectures that learn visual patterns through exposure to ***enormous*** volumes of publicly available data. Plaintiffs' lawsuit challenges that practice. But if Plaintiffs are developing and deploying diffusion models (employing the same technology, training techniques, and public data as Midjourney), that is a powerful concession that such models produce something fundamentally new and useful—relevant evidence of the transformative nature of that (and Midjourney's) technology.

**Public Benefits**.  Although Plaintiffs argue that any "public benefits" must stem specifically from ***Midjourney's*** use of ***Plaintiff's works***, the benefits that Plaintiffs reap from their own and others' AI models is probative of Midjourney's public benefits.  Indeed, courts routinely consider the benefits conferred when similarly situated parties engaged in the accused conduct.  In *Google v. Oracle*, the Supreme Court was "convince[d]" to find fair use based on a "record [] demonstrate[ing] the numerous ways in which" the kind of conduct at issue was *generally* beneficial to the software industry. 593 U.S. at 32. The Court considered evidence of industry practice, the plaintiff's conduct, and how software developers

benefitted from the same conduct. *Id. See also*, *Sony Computer Ent. Am., Inc. v. Bleem*, LLC, 214 F.3d 1022, 1027 (9th Cir. 2000), *amended on denial of reh'g* (July 10, 2000) (analyzing the benefits of accused conduct generally); *Norse v. Henry Holt & Co.*, 847 F. Supp. 142, 145 (N.D. Cal. 1994) (referring to public benefits, and explaining that "a biographer must, in order to be accurate, cite and quote things said by the subject and said about him by others."). That Plaintiffs benefit commercially from, or are developing, AI models trained the same way as Midjourney is compelling evidence (if not an admission) that the technology confers substantial public benefits and promotes innovation in the industry.

**Industry Custom and Practice**. Courts also recognize that "industry customs" are independently relevant to the fair use analysis. *Cisco,* 2016 WL 11752975, at *2. Courts should "bear in mind that fair use is appropriate where a reasonable copyright owner would have consented to the use, *i.e.*, where the custom or public policy at the time would have defined the use as reasonable." *Wall Data*, 447 F.3d at 778. The requested discovery goes to the heart of this inquiry. *See Tween Brands Inv., LLC v. Bluestar All., LLC*, 2016 WL 5216632, at *5-6 (S.D. Ohio Sept. 22, 2016) (compelling discovery regarding plaintiff's use of third-party copyrighted images, as "it would seem unjust for [Plaintiff] to prevail on a claim when it engages regularly in conduct that would also violate the Copyright Act, or, at minimum, is industry practice"). If Plaintiffs, some of the largest, most sophisticated copyright holders in the world, are themselves training generative AI models on third-party copyrighted works, scraping the internet, and investing in tools that do the same, that is powerful evidence that the relevant industry considers such conduct to be fair use.

**Market Harm**. The fourth factor "focuses on actual or potential market substitution," *Andy Warhol,* 598 U.S. at 536 n. 12, asking "whether unrestricted and *widespread* conduct *of the sort* engaged in by the defendant would result in a substantially adverse impact on the potential market" for the original. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (emphasis added). Plaintiffs' own

adoption and deployment of AI tools is relevant to this inquiry. Plaintiffs created departments to develop and implement AI, Exs. 4, 5, and admitted to using AI tools to create content for their businesses (*e.g.*, RFA 39). That use undermines Plaintiffs' argument that Midjourney's alleged copying for of Plaintiffs' works to train AI has had a "substantially adverse impact" on the market for Plaintiffs' works and instead highlights an industry-wide acceptance of the accused conduct.

### 2. The Discovery is Relevant to Equitable Defenses

The documents sought are also essential to Midjourney's unclean hands defense, which requires only that Plaintiffs' conduct (1) is inequitable; and (2) relates to the subject matter of Plaintiffs' claims. *See POM Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (cleaned up). Midjourney need not demonstrate that Plaintiffs' conduct was egregious, merely that they "engaged in a willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *Id.* at 1097. With respect to the second prong, relatedness, the "misconduct that forms the basis for the unclean hands defense [must be] directly related to plaintiff's use or acquisition of the right in suit." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (citation omitted). While this case is pending, Disney announced new plans to use asserted rights-in-suit through a "Landmark Agreement to Bring Beloved Characters from Across Disney's Brands to [OpenAI video generator] Sora." Ex. 6. Disney has thus sought to commercially exploit the characters in suit through other AI models that are based on publicly available ***third-party*** data just like Midjourney's technology—and, indeed, Disney sought to become part owner of such AI models.

Warner Bros. and NBCUniversal also attack Midjourney for training its AI models on publicly available data. If they are also engaged in the same conduct, the jury should hear that evidence. *See Mattel*, 2010 WL 11464001, at *1 ("Mattel seeks discovery into whether MGA engaged in the same conduct it now complains about …. Such discovery is relevant to Mattel's unclean hands defense[.]"); *In-N-Out*

*Burgers v. Smashburger IP Holder LLC*, 2018 WL 7891028, at \*5-6 (C.D. Cal. Dec. 21, 2018) (defense viable where plaintiff's false marketing claims were "sufficiently close" to its claims against the defendant for false advertising).

### 3. Any (Unsubstantiated) Burden Concerns Are Easily Addressed

Plaintiffs have identified no concrete burden sufficient to resist this discovery – let alone the "heavy burden" the law requires. Having agreed to produce documents on their consumer-facing AI outputs, they cannot now draw an arbitrary line at internal uses. Whether Plaintiffs use AI to ideate characters, storyboard, or otherwise, those uses are plainly relevant and already within the scope of Plaintiffs' existing collection efforts (*e.g.*, search terms). There is nothing to withhold. Any marginal burden from capturing "non-consumer" uses can be resolved through targeted investigation and routine negotiation of custodians and search terms.

### B. Plaintiffs Should Produce All Prompts and Outputs (RFP 16)

#### 1. The Documents Are Necessary to Vet Plaintiffs' Claims

Plaintiffs cannot have it both ways. They have demanded production of Midjourney outputs they claim are infringing — invoking their "volume" to support a disgorgement theory — while refusing to disclose the prompts and accounts they used to generate those very outputs. That is fundamentally prejudicial and legally untenable. Outputs created by or at the direction of a copyright owner are not infringing as a matter of law. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). Without this discovery, Plaintiffs are free to artificially inflate the universe of allegedly infringing outputs, distort the damages calculus, or misrepresent their own engineered images as examples of third-party infringement. Midjourney cannot counter any of this without production of Plaintiffs' prompts and outputs.

#### 2. Plaintiffs Waived Any Work Product Protection

Any work product protection that might attach to an attorney or paralegal entering "Homer Simpson, animated" (Disney Compl. ¶ 82) into Midjourney is, at

COOLEY LLP
ATTORNEYS AT LAW

8

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:25-CV-05275-JAK-AJR

most, protection for "relevant, non-privileged facts," not attorney "mental processes." *SEC v. Pulier*, 2020 WL 8102053, at *3 (C.D. Cal. Nov. 13, 2020).[3] And even if such prompts could be characterized as opinion work product, Plaintiffs waived that protection on three independent grounds. *See Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, 2025 WL 41936, at *8 (N.D. Cal. Jan. 6, 2025) (describing waiver where party places attorney opinions at issue "or engages in selective disclosure…, such as where a party intentionally disclos[es] materials helpful to its case while . . . conceal[ing] detrimental information on the same topic").

*First*, Plaintiffs waived protection by submitting prompts to Midjourney, under Midjourney's Terms of Service, which makes prompts and outputs public by default and grants Midjourney a license to "reproduce, prepare derivative works of, publicly display, publicly perform, sublicense, and distribute" their inputs, Ex. 7. By voluntarily operating under those terms, Plaintiffs "substantially increased the opportunities" for their adversary to obtain their "work product." *See U.S. v. Sanmina*, 968 F.3d 1107, 1121 (9th Cir. 2020); *Labbe v. Dometic Corp.*, 2024 WL 325331, at *6 (E.D. Cal. Jan. 29, 2024) (finding waiver as to material sent to non-party, because "there was no expectation of privacy").

*Second*, Plaintiffs waived protection through selective disclosure. Under Federal Rule of Evidence 502(a), waiver extends to undisclosed information where the waiver is intentional, the disclosed and undisclosed material concerns the same subject matter, and fairness requires they be considered together. All three elements are satisfied: Plaintiffs intentionally featured a curated subset of prompts and outputs in their Complaints; the full universe of prompts and outputs concerns the same subject matter (alleged infringement on Midjourney); and fairness requires that Midjourney be able to evaluate whether outputs Plaintiffs proffer as evidence of infringement were in fact created by them. Courts have compelled production on

---

[3] To the extent the Court agrees that the prompts are, at most, fact work product, Midjourney has shown "substantial need and unavailability by other means," as set forth above. *Id*.

similar reasoning. *See Taction Tech., Inc. v. Apple Inc.*, 2023 WL 4675652, at \*8 (S.D. Cal. July 20, 2023) (finding waiver because investigator's "selective disclosures give an incomplete and potentially one-sided view" and provide an "unfair advantage" where his "analysis is not something that Defendant can recreate itself…."); *Xfinity Mobile v. Globalgurutech LLC*, 2024 WL 4566857, at \*4 (D. Ariz. Oct. 23, 2024) (same, where plaintiffs included "large portions" of investigator's findings in complaint, making them "the backbone of their factual allegations"). The remedy for Plaintiffs' selective disclosures is the disclosure of the remainder. *See Mungia-Brown v. Equity Residential*, 337 F.R.D. 509, 517 (N.D. Cal. 2021).

***Third***, and critically, Plaintiffs waived any work product by naming an evidence collector, Bruce Ward, as "an individual likely to have discoverable information regarding "infringing outputs" that they are "relying on in this action." Having put Mr. Ward's investigation at issue, Plaintiffs cannot withhold the full record of what he (and those helping him) found. Midjourney cannot vet his representations without knowing which outputs he generated – including prompts that did not yield images of Plaintiffs' works and outputs that may reflect transformative fair uses omitted from the Complaints. *See Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 3677935, at \*3 (N.D. Cal. Dec. 18, 2025) (holding that plaintiffs had "placed [the] topic and investigation at issue" by raising "*how* [the investigators] . . . elicited the allegedly infringing results").[4]

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Midjourney's motion to compel and compel production as set forth in the accompanying Proposed Order.

---

[4] This case is distinguishable from cases where courts have declined to compel prompt production. In *Tremblay v. OpenAI, Inc.*, the court reversed a production order because it "did not conclude… that counsel's mental impressions are at issue." 2024 WL 3748003, at \*3 (N.D. Cal. Aug. 8, 2024). An earlier decision in *Concord Music* found only "limited waiver" where "it [was] unclear what evidence [Plaintiffs] will rely on to prove the 'ease of use' or 'massive use' allegations," 2025 WL 1482734, at \*2 (N.D. Cal. May 23, 2025), while a later decision found waiver as to the investigator's collection and compelled production of negative prompts, 2025 WL 3677935, at \*3.

Dated:        March 27, 2026          COOLEY LLP


By: */s/ Bobby Ghajar*
Bobby Ghajar
John Paul Oleksiuk
Stephanie Schuyler
Judd Lauter

*Counsel for Defendant Midjourney, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Midjourney, Inc., certifies that this brief contains 3,445 words and, being under ten pages in length, complies with the Standing Order of this Court.

Dated:        March 27, 2026        COOLEY LLP


By: */s/Bobby Ghajar*
Bobby Ghajar
John Paul Oleksiuk
Stephanie Schuyler
Judd Lauter

*Counsel for Defendant Midjourney, Inc.*

COOLEY LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:25-CV-05275-JAK-AJR