COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone:   (310) 883-6400
Facsimile:   (310) 883-6500

JOHN PAUL OLEKSIUK (283396)
(jpo@cooley.com)
STEPHANIE SCHUYLER (PRO HAC VICE)
(sschuyler@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone:   (212) 479-6000
Facsimile:   (212) 479-6275

JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

*Counsel for Defendant Midjourney, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., et al.; WARNER BROS. ENTERTAINMENT, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIDJOURNEY, INC., a Delaware corporation, <br><br> Defendant. <br><br> ALL CASES | Case No. 2:25-cv-05275-JAK-AJR <br><br> Consolidated for all purposes with Case No. 2:25-cv-08376-JAK-E <br><br> **DEFENDANT MIDJOURNEY INC.'S NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER PURSUANT TO FRCP 72(A) AND LOCAL RULE 72-2.1** <br><br> Date:     August 17, 2026 <br> Time:     8:30 a.m. <br> Court:    Courtroom 10C <br> Judge:    Hon. John A. Kronstadt <br><br> Date Action Filed:  June 11, 2025 |

COOLEY LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on August 17, 2026, or as soon thereafter as this matter may be heard, Defendant Midjourney, Inc. ("Midjourney") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, for review of the Magistrate Judge's discovery order (Dkt. 88) granting in part and denying in part Midjourney's Motion to Compel Plaintiffs to produce documents in response to Midjourney's Requests for Production, on the basis that the Magistrate Judge's partial denial of Midjourney's Motion was clearly erroneous and contrary to the law.

This Motion is based on this Notice and Motion, the Memorandum of Points and Authorities, the briefing, declarations, and any other documents and evidence that the Court may receive at or before the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which was formally concluded on June 22, 2026.

Dated:   June 29, 2026               COOLEY LLP

                                     */s/ Bobby Ghajar*
                                     Bobby Ghajar
                                     John Paul Oleksiuk
                                     Stephanie Schuyler
                                     Judd Lauter

                                     *Counsel for Defendant Midjourney, Inc.*

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 3

    A.  Factual Background .................................................................................... 3

    B.  The Relevant Discovery Dispute ............................................................... 3

    C.  The Magistrate Judge's Order .................................................................... 5

III.  LEGAL STANDARD ............................................................................................. 8

IV.  ARGUMENT .......................................................................................................... 9

    A.  The Order Incorrectly Imposed a "Consumer-Facing" Limitation
    on Discovery Requests Concerning Plaintiffs' Development and
    Use of AI and Their Generative AI Policies ............................................. 9

    B.  The Order Applied the Wrong Legal Standard in Assessing
    Midjourney's "Unclean Hands" Defense ................................................ 15

        1.  The Order incorrectly imported an "injury" requirement
        into the unclean hands test. ........................................................... 15

        2.  The Order also erred in requiring the discovery requests
        to satisfy every element of Midjourney's unclean hands
        defense. ......................................................................................... 19

    C.  It was Error to Conclude that Plaintiffs' Generative AI Prompts
    and Outputs Are Irrelevant, Non-Discoverable Work Product .......... 21

V.  CONCLUSION ..................................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Fed. Republic of Nigeria*,
219 F.3d 869 (9th Cir. 2000) ................................................................................. 15

*Andersen v. Stability AI Ltd.*,
No. 23-cv-201 (N.D. Cal. June 17, 2026), Dkt. No. 602 ......................... 9, 10, 11

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) ............................................................................................... 13

*Arista Recs. LLC v. Myxer Inc.*,
2010 WL 11515375 (C.D. Cal. 2010) ............................................................. 16, 18

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
742 F. Supp. 2d 1101 (C.D. Cal. 2010) ................................................................ 16

*Bd. of Trs. for Laborers Health & Welfare Tr. Fund for N. Cal. v. Turner Grp. Constr.*,
2021 WL 516039 (N.D. Cal. Feb. 11, 2021) ......................................................... 20

*Brother Records, Inc. v. Jardine*,
318 F.3d 900 (9th Cir. 2003) ................................................................................. 16

*Cisco Sys. Inc. v. Arista Networks, Inc.*,
2016 WL 11752975 (N.D. Cal. Nov. 16, 2016) ............................................... 12, 13

*Concord Music Grp. v. Anthropic PBC*,
2025 WL 3677935 (N.D. Cal. Dec. 18, 2025) ................................................. 23, 24

*Dream Games of Ariz., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) ............................................................................ 17, 18

*Evox Prods. LLC v. Yahoo Inc.*,
2023 WL 4850748 (C.D. Cal. July 28, 2023) ....................................................... 16

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987) .............................................................................. 6, 16

*Geophysical Sys. Corp. v. Raytheon Co.*,
117 F. R.D. 646 (C.D. Cal. 1987) .......................................................................... 18

COOLEY LLP
ATTORNEYS AT LAW

ii

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021) ..................................................................................... 6, 9, 10, 11

*Gravity Defyer Corp. v. Under Armour, Inc.*,
2014 WL 12597583 (C.D. Cal. Apr. 23, 2014) .................................................. 16

*Green v. Baca*,
219 F.R.D. 485 (C.D. Cal. 2003) ........................................................................ 8

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
2018 WL 7891028 (C.D. Cal. Dec. 21, 2018) ................................................... 16

*Intamin, Ltd. v. Magnetar Techs. Corp.*,
623 F. Supp. 2d 1055 (C.D. Cal. 2009) .................................................. 16, 17, 18

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) ............................................................... 6

*Keystone Driller Co. v. Gen. Excavator Co.*,
290 U.S. 240 (1933) ......................................................................................... 15

*Labbe v. Dometic Corp.*,
2024 WL 325331 (E.D. Cal. Jan. 29, 2024) ..................................................... 23

*Levi Strauss & Co. v. Shilon*,
121 F.3d 1309 (9th Cir. 1997) .......................................................................... 16

*Mattel, Inc. v. MGA Ent. Inc.*,
2010 WL 11464001 (C.D. Cal. Oct. 28, 2010) ................................................. 20

*MGM Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................... 7, 15, 16, 17

*Mitchell Bros. Film Grp. v. Cinema Adult Theater*,
604 F.2d 852 (5th Cir. 1979) ....................................................................... 17, 18

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
2019 WL 1751837 (C.D. Cal. Feb. 28, 2019) ............................................. 17, 18

*Oracle Am., Inc. v. Terix Comput. Co., Inc.*,
2015 WL 1886968 (N.D. Cal. Apr. 24, 2015) ................................................... 16

*In re Packaged Seafood Prods. Antitrust Litig.*,
2018 WL 4327876 (S.D. Cal. Sep. 10, 2018) ................................................... 20

COOLEY LLP
ATTORNEYS AT LAW

iii

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR REVIEW OF MAGISTRATE JUDGE'S DECISION
CASE NO.: 2:25-CV-05275-JAK-AJR

*In re Pioneer Corp. v. Technicolor, Inc.*,
   2018 WL 4961911 (C.D. Cal. Sep. 12, 2018) ................................................ 8, 9, 10

*POM Wonderful LLC v. Coca-Cola Co.*,
   166 F. Supp. 3d 1085 (C.D. Cal. 2016) ........................................................ 6, 15

*Poquito Mas Licensing Corp. v. Taco Bell Corp.*,
   2015 WL 12734784 (C.D. Cal. Jan. 22, 2015) ................................................... 17

*Randles Films, LLC v. Quantum Releasing, LLC*,
   2011 WL 13216986 (C.D. Cal. Apr. 5, 2011) ..................................................... 16

*Scheiber v. Dolby Labs., Inc.*,
   293 F.3d 1014 (7th Cir. 2002) ...................................................................... 15

*Schloss v. Sweeney*,
   515 F. Supp. 2d 1068 (N.D. Cal. 2007) ...................................................... 16, 18

*SEC v. Pulier*,
   2020 WL 8102053 (C.D. Cal. Nov. 13, 2020) .................................................... 22

*Taction Tech., Inc. v. Apple Inc.*,
   2023 WL 4675652 (S.D. Cal. July 20, 2023) ..................................................... 24

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) .................................................................... 16, 18

*Tween Brands Inv., LLC v. Bluestar All., LLC*,
   2016 WL 5216632 (S.D. Ohio Sep. 22, 2016) .................................................... 12

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ...................................................................... 23

*Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*,
   2025 WL 41936 (N.D. Cal. Jan. 6, 2025) ......................................................... 25

*Wall Data, Inc. v. L.A. Cnty. Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ..................................................................... 9, 13

*Xfinity Mobile v. Globalgurutech LLC*,
   2024 WL 4566857 (D. Ariz Oct. 23, 2024) ....................................................... 24

**Statutes**

17 U.S.C. § 107 ............................................................................................ 5

COOLEY LLP
ATTORNEYS AT LAW

iv

28 U.S.C. § 636(b)(1)(A)................................................................................................8

**Court Rules**

Federal Rule of Civil Procedure
   26(b).......................................................................................................................14, 22
   72 ..................................................................................................................................1, 8

Federal Rule of Evidence
   401 .............................................................................................................................19
   502(a)......................................................................................................................24, 25

Local Rule 72-2.1 ........................................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Midjourney, Inc.  ("Midjourney"), by and through its counsel and pursuant to Federal Rule of Civil Procedure 72 and Civil Local Rule 72-2.1, seeks review of Magistrate Judge A. Joel Richlin's Order dated June 16, 2026 ("Order"). (Dkt. 88). Midjourney respectfully requests that the Court grant this Motion for Review, reverse the Order (in relevant part), and compel production as set forth in the accompanying Proposed Order.

### I.   INTRODUCTION

In this case, Plaintiffs, several of the largest and most well-established film and television studios in the world, seek to impose sweeping liability on Midjourney (a groundbreaking artificial intelligence ("AI") research lab) for training AI models on publicly available data—while simultaneously refusing to disclose if they are doing the same thing themselves. That asymmetry is unfair and legally indefensible. If Plaintiffs are doing the very thing they seek to punish, that evidence goes to the heart of Midjourney's fair use and unclean hands defenses. The Order denies Midjourney any meaningful opportunity to uncover that relevant information, and it does so through three discrete, but compounding legal errors that this Court should correct.

*First*, even though the Order (correctly) found that discovery related to Plaintiffs' AI policies, model development, and use was relevant to the "industry custom" and "market harm" factors of the fair use defense, it imposed an arbitrary and ambiguous "consumer-facing" limitation on it. But if Plaintiffs' AI practices (including if they are themselves copying images of the internet) are relevant when the resulting output is consumer-facing, those practices are equally relevant when it is not. This may include, for example, use or development of AI tools to spark ideas or iterate on characters or content, regardless of whether they are commercialized. The Order's contrary view is unsupported by a single authority and gives Plaintiffs free rein to produce helpful documents while concealing harmful ones. That result is

incompatible with the breadth of the fair use defense, the low standard of discovery relevance (easily met here), and unsupported by any proportionality analysis.

*Second*, the Order applied the wrong legal standard to Midjourney's unclean hands defense, in turn creating an improperly high bar for discovery relevance. As the Ninth Circuit has long held, the unclean hands defense requires only that a plaintiff's conduct be (1) inequitable and (2) related to the subject matter of the claims. At Plaintiffs' invitation, the Order grafted a third requirement onto that test—that Plaintiffs' conduct must have injured Midjourney—drawn from a nonbinding district court decision that conflicts with Supreme Court and Ninth Circuit authority. That legal error alone warrants reversal.

*Third*, the Order wrongly classified Plaintiffs' AI prompts submitted to Midjourney's platform (and any corresponding outputs) as "core" opinion work product. But AI prompts are factual inputs, not legal strategy. And Plaintiffs waived whatever protection might attach to that information when they (1) agreed to terms of service granting Midjourney a broad license to those inputs; (2) designated their investigator as a fact witness and relied on his findings in post-Order interrogatory responses; and (3) selectively disclosed a curated subset of prompts in the complaints. There is another error with the Order: Plaintiffs seek to hold Midjourney liable for images that its users create. It follows that Midjourney—and the fact-finder—need to know which (and how many) prompts and outputs were generated by Plaintiffs and their agents because, as a matter of law, *those* outputs cannot be infringing. The Order forecloses Midjourney from learning that crucial information.

Taken together, these errors tilt the playing field in one direction: Plaintiffs get to advance their overreaching claims on a curated evidentiary record while Midjourney is denied the information and tools needed to defend itself. This Court should grant this motion and correct that imbalance.

## II.   BACKGROUND

### A.   Factual Background

Midjourney is a leading AI research lab and the developer of its namesake image- and video-generation platform. Its AI models are diffusion models—the foundational technology underlying all state-of-the-art image and video generation tools, just as large language models underlie chatbots like ChatGPT and Claude. (Dkt. 55-1 at 2). Diffusion models are trained on *billions* of publicly available images, enabling them to learn visual concepts and patterns and to generate novel content in response to user prompts. Because cutting-edge image and video generation requires a large corpus of training data, this method is standard industry practice. (*Id.*). Since 2022, Midjourney users have created billions of novel images.[1]

Plaintiffs are major film and television studios who own the copyrights to many popular film and television franchises. Each alleges that Midjourney infringed those copyrights by training Midjourney's AI models on publicly available images of those works, and because users may prompt the models to create images that depict characters from those works. (Disney Compl. ¶ 155, 212-235; Warner Compl. ¶ 99). These allegations prompted two separate lawsuits—the first filed by Disney Enterprises, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film, Universal City Studios Productions LLLP, and DreamWorks Animation L.L.C. (Case No. 25-cv-05275-JAK-AJR); and the second filed by Warner Bros. Entertainment Inc., DC Comics, Turner Entertainment Co., Hanna-Barbera Productions, Inc., and The Cartoon Network, Inc. (Case No. 25-cv-08376-JAK-E). The parties stipulated to consolidate the actions under Case Number 25-cv-05275.

### B.   The Relevant Discovery Dispute

As relevant to this motion, Midjourney served discovery requests seeking the

---

[1] Midjourney recently did a technology demonstration for Magistrate Judge Richlin. For further context on the platform's capabilities and the creative autonomy it affords users, Midjourney refers the Court to a new user tutorial available at https://www.youtube.com/watch?v=jDexcrChwRc. Declaration of Stephanie Schuyler ("Schuyler Decl.") ¶ 4.

COOLEY LLP
ATTORNEYS AT LAW

3

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR REVIEW OF MAGISTRATE JUDGE'S DECISION
CASE NO.: 2:25-CV-05275-JAK-AJR

following categories of documents from Plaintiffs: (1) documents regarding Plaintiffs' training and development of their own AI models (RFP Nos. 12, 13, and 25); (2) documents concerning Plaintiffs' use of image and video AI (RFP Nos. 8, 10, 23, and 24); (3) documents related to their AI policies (RFP Nos. 14 and 21); and (4) the prompts Plaintiffs or their agents submitted to Midjourney—and any corresponding outputs—that were not featured in the Complaints (RFP No. 16). (Dkts. 55-1 at 2-3, 55-4, 55-5, 55-6). As to the first three categories, Plaintiffs agreed to produce a subset of responsive documents, subject to a self-serving limitation: namely, just those documents related to Plaintiffs' development of, use of, and policies regarding AI to create or generate "images and/or video outputs intended for consumers, featuring the asserted works." (*See* Dkt. 55-11). As to the fourth and final category, Plaintiffs refused to produce any Midjourney prompts beyond those used to create the images featured in the two Complaints. (Dkt. 88 at 7).

Over several months of meet-and-confers, Midjourney negotiated in good faith and made meaningful concessions to avoid burdening the Court. Most notably, despite consistently maintaining that source code is irrelevant to Plaintiffs' infringement claims, Midjourney nonetheless agreed to produce highly sensitive, commercially valuable source code related to model training. (Dkt. 98 at 6). Plaintiffs responded with stonewalling. They have taken the blanket position that their internal documents are wholly irrelevant to this case and have produced virtually no electronically stored information to date—substituting instead self-serving, hand-picked "go-gets" of publicly available copyright registrations and related documents. (Schuyler Decl. ¶ 5). Left with no choice, Midjourney sought judicial relief.

When the parties reached an impasse on the four categories of discovery at issue, they jointly submitted the dispute to the Magistrate Judge, who ordered briefing on Midjourney's motion to compel (Dkt. Nos. 55, 60) and held three informal discovery conferences between March and May 2026.

In its motion to compel, Midjourney explained why the requested discovery

Cooley LLP
Attorneys at Law

4

Defendant's Notice of Motion and Motion
for Review of Magistrate Judge's Decision
Case No.: 2:25-cv-05275-JAK-AJR

was relevant, necessary, and not unduly burdensome to Plaintiffs. (Dkt. 55-1 at 3-10). Midjourney argued that documents about Plaintiffs' AI development, use, and policies were relevant to fair use because if Plaintiffs "are themselves training generative AI models on third-party copyrighted works, scraping the internet, and investing in tools that do the same," that would serve as "powerful evidence that the relevant industry considers such conduct to be fair use," and serve as a concession as to the fundamentally transformative nature and public benefit of AI image-generating models like Midjourney. (*Id.* at 6). It would also undermine Plaintiffs' claims that Midjourney had harmed the market for their copyrighted works. (*Id.* at 6-7). In a similar vein, Midjourney argued that the requested documents were relevant to its unclean hands defense because those documents would reinforce Midjourney's contention that Plaintiffs were engaging in the very conduct they complained about. (*Id.* at 7). Finally, Midjourney explained that Plaintiffs' AI prompts and outputs on Midjourney were relevant and that Plaintiffs had waived any applicable work product privilege covering those prompts (*id.* at 8-9) and that because Plaintiffs seek to hold Midjourney liable for third-party users' generation of images depicting Plaintiffs' characters, Midjourney had the right to know which outputs were created by Plaintiffs and their agents, including investigator Bruce Ward (*id.* at 9-10). Plaintiffs opposed Midjourney's motion. (Dkt. 60).

### C.    The Magistrate Judge's Order

On June 15, 2026, the Magistrate Judge issued an Order granting in part and denying in part Midjourney's motion to compel. (Dkt. 88).

<u>Fair Use</u>: The Order first addressed Midjourney's argument that the requested documents were relevant to four fair use factors—namely, transformativeness, public benefits, market harm, and industry custom and practice (*Id.* at 9-19).[2] Relying

---

[2] The fair use defense considers: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

heavily on out-of-circuit precedent from the Southern District of New York, the Order determined that Plaintiffs' development and use of AI diffusion models (including potential evidence of their own unlicensed download and copying of millions of images ) were *not* relevant to the transformativeness and public benefits factors. (*Id.* at 11-16 (citing *In re OpenAI, Inc., Copyright Infringement Litig.*, 800 F. Supp. 3d 602 (S.D.N.Y. 2025) and *N.Y. Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594 (S.D.N.Y. 2024))). As to market harm, the Order acknowledged that discovery on Plaintiffs' use of AI is relevant, but it would be limited to "their use of generative AI to create *consumer-facing* image and video outputs featuring the asserted works." (*Id*. at 16) (emphasis added).

With respect to industry custom and practice, the Order acknowledged that, based on controlling precedent, industry custom may be "relevant to the analysis of fair use." (*Id.* at 18 (citing *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021))). In line with that precedent, the Order correctly agreed to "permit some discovery related to industry custom and practice." (*Id.* at 19). But, relying (again) on the same two S.D.N.Y. cases and a third from the Southern District of Florida, the Order limited that discovery based on his view that Midjourney's "industry and custom" argument was "really an attempt to establish the equitable defense of unclean hands." (*Id.*).

Unclean Hands: The Order turned next to Midjourney's contention that the requested discovery was also relevant to its unclean hands defense. (*Id.* at 19-22). At the outset, the Order rejected Midjourney's two-prong articulation of the unclean hands test (*id.* at 19), which requires only a showing that Plaintiffs' conduct (1) is inequitable and (2) relates to the subject matter of Plaintiffs' claims, *see POM Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

---

As one court held in a recent landmark decision finding fair use as to the training of generative AI tools, "[t]here is no serious question that" the use of copyrighted works to train generative AI models is "highly transformative" for purposes of the first factor. *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1044 (N.D. Cal. 2025).

Eschewing that standard, the Order instead adopted the tripartite test set forth in *Grokster* (Dkt. 88 at 20), which requires a defendant to show (1) "inequitable conduct," (2) that "the plaintiff's conduct directly relates to the claim which it has asserted against the defendant," and (3) that "plaintiff's conduct injured the defendant." *MGM Studios, Inc. v. Grokster*, *Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007). Applying the *Grokster* standard, the Order concluded that "documents related to Plaintiffs' development, use of, and policies regarding generated AI are not relevant to the defense of unclean hands because none of the discovery would establish inequitable conduct by Plaintiffs that is <u>both</u> directly related to the claims asserted against Defendant <u>and</u> injured Defendant." (Dkt. 88 at 21).

The "Consumer-Facing" Restriction: After assessing Midjourney's key defenses, the Order ultimately concluded that the requested discovery has "some relevance to establishing industry custom and practice," but that Midjourney's requests "must be narrowed . . . to focus on Plaintiffs' actual or proposed development of generative AI intended for consumers." (*Id.* at 23).[3] That was so— the Order reasoned—because generative AI tools like Midjourney are "intended for consumers" and so "Plaintiffs' training of generative AI tools not intended for consumers would not provide evidence of customs and practices that would be relevant to Defendant's defense of fair use." (*Id.*). And although the Order expressly acknowledged that "Defendants' requested discovery" was potentially relevant to establishing "the defense of unclean hands" (*id.* at 22), it did not conduct an analysis justifying the imposition of the "consumer-facing" restriction on that defense.

Midjourney Prompts as Work Product: Lastly, the Order refused to compel production of Plaintiffs' Midjourney prompts and related outputs beyond those used to generate the images featured in the Complaints. Such prompts, the Order

---

[3] The Order offers no explanation for the fact that, in limiting production to consumer-facing *AI services*, it is narrower even than Plaintiffs' agreement to produce evidence of their "use of generative AI to create consumer-facing *image and video outputs featuring the asserted works*." (Dkt. 60 at 5) (emphasis added).

explained, were irrelevant and protected by the work-product doctrine. (*Id.* at 25-30). As to relevance, the Order rejected Midjourney's proffer that such prompts were necessary to guard against Plaintiffs' potential distortion of damages, since "the volume of prompts and outputs related to images generated for potential use" was "infinitesimal compared to the true scope of the case." (*Id.* at 25). As to work product, the Order concluded that the requested prompts were entitled to work product protection and held that Plaintiffs did not waive that privilege—even though they agreed to Midjourney's Terms of Service, selectively disclosed some of their prompts and outputs, and identified an investigator (Bruce Ward) as an individual likely to have discoverable information. (*Id.* at 27-29; Schuyler Decl. Ex. 2).[4]

## III.   LEGAL STANDARD

This Court must "consider timely objections and modify or set aside" any part of the Magistrate Judge's Order that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to a "magistrate judge's findings of fact" and requires a "definite and firm conviction that a mistake has been committed." *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal. 2003) (citation modified). The "contrary to law" standard "permits independent review of purely legal determinations by the magistrate judge." *Id.* at 489 (citation modified). A decision is contrary to law when it "applies an incorrect legal standard or fails to consider an element of the applicable standard." *In re Pioneer Corp. v. Technicolor, Inc.*, 2018 WL 4961911, at *3 (C.D. Cal. Sep. 12, 2018) (Kronstadt, J.) (citation modified). "When the court reviews the magistrate's determination of relevance in a discovery order, the Court must review the magistrate's order with an

---

[4] The Order granted Midjourney's motion to compel in two respects: It ordered Plaintiffs to produce (1) "responsive documents that are sufficient to show Plaintiffs' approval of the use of generative AI to generate images and/or video outputs intended for consumers, featuring the asserted works" (RFP No. 21) and (2) "non-privileged responsive documents sufficient to show Plaintiffs' development, training, or contemplated development or training of any generative AI to generate images and/or video outputs intended for consumers, featuring the asserted works, including training datasets, datasources, or model weights" (RFP No. 13). (*Id.* at 30-31).

eye toward the broad standard of relevance in the discovery context." *Id.* at *4 (citation modified). This broad approach to relevance is especially paramount here given the nature of this case: As a court recently held in another case concerning image-generating AI models, "because fair use in the context of generative AI copyright cases is an unsettled area of law," courts should be "disinclined to prematurely limit the parties' ability to obtain and present evidence that may bear on fair use." Order Resolving Joint Disc. Letter Concerning Pl.'s Financial Information at 1-2, *Andersen v. Stability AI Ltd.*, No. 23-cv-201 (N.D. Cal. June 17, 2026), Dkt. No. 602 (citation modified).

## IV.    ARGUMENT

Although the Order suffers from multiple flaws, this Motion focuses on the three most critical errors warranting reversal.

### A.    The Order Incorrectly Imposed a "Consumer-Facing" Limitation on Discovery Requests Concerning Plaintiffs' Development and Use of AI and Their Generative AI Policies

The Magistrate Judge correctly concluded that Midjourney's discovery requests were relevant "to establishing industry custom and practice" and "market harm" for purposes of evaluating the fair use defense. (Dkt. 88 at 22-23). In reaching that conclusion, the Order confirmed that "industry custom and practice" is relevant under fair use. (*Id.* at 16-17). *See, e.g.*, *Wall Data, Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). The Order acknowledged that the decisions on this issue (Dkt. 88 at 17-18), were consistent with the Supreme Court's guidance that the fair use doctrine is "an equitable rule of reason that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity the law is designed to foster." *Google*, 593 U.S. at 18 (citation modified).

Adhering to this precedent, the Order "permit[ted] some discovery related to industry custom and practice," because it rightly found that Plaintiffs' AI use, development, and policies could be probative of industry customs and standards (Dkt. 88 at 19), and correctly held that some information about Plaintiffs' development of

generative AI would be relevant to "the market-harm factor of the fair-use analysis" (*Id.* at 22). But in the very same breath, the Order found that Midjourney's requests "must be narrowed" to only those documents showing Plaintiffs' use and development of AI intended for *consumers*. (*Id.* at 23). In an attempt to justify this "consumer-facing" limitation, the Order claimed that "Plaintiffs' training of generative AI tools not intended for consumers" would have no relevance or even "marginal relevance" to the market harm or industry customs and practices factors of fair use and would not be proportional. (*Id*. at 22-23). This unexplained line-drawing suffers from multiple flaws on both relevance and proportionality grounds.

**Relevance:** *First*, the Order's overly restrictive view of relevance as to both industry custom and practice and market harm cannot be squared with the "broad standard of relevance in the discovery context," *In re Pioneer Corp.*, 2018 WL 4961911, at *4, or the Supreme Court's recognition that the fair use doctrine is an "equitable rule of reason . . . , the application of which requires judicial balancing, depending upon relevant circumstances, including significant changes in technology," *Google*, 593 U.S. at 18-19 (citations modified). Consonant with that guidance, a district court in this Circuit, in a parallel case involving image-generating AI models, recently acknowledged that courts should exercise caution in "prematurely limit[ing] the parties' ability to obtain and present evidence that may bear on fair use" given that "fair use in the context of generative AI copyright cases is an unsettled area of law." *Andersen*, Dkt. No. 602, at 1-2 (citation modified). The Order's "consumer-facing" gloss flouts these principles by unfairly permitting Plaintiffs to cherry-pick only those documents they believe support their market harm claims while depriving Midjourney of documents that would support its defenses.

Instead of grappling with this point, the Order and Plaintiffs attack a strawman, claiming that Midjourney's argument is nothing more than an "everybody else is doing it" defense to copyright. (Dkt. 88 at 18). That is false. The documents Plaintiffs are withholding are precisely those that would reveal whether, behind closed doors,

Cooley LLP
Attorneys at Law

10

Defendant's Notice of Motion and Motion
for Review of Magistrate Judge's Decision
Case No.: 2:25-cv-05275-JAK-AJR

they are doing exactly what they are suing Midjourney for doing. If they are, equity demands that Midjourney be able find out in support of its fair use and unclean hands defenses. Endorsing the Order would be incompatible with the flexible and equitable framework that *Google*, *Andersen*, and the Copyright Act demand.

**Second**, the Order's "consumer-facing" limitation is pure *ipse dixit*. The Order drew a line between documents "related to the actual or proposed development of generative AI intended for consumers" (admittedly relevant to market harm or industry custom and practice) and related to non-consumer-facing AI development (not relevant), but offered no principled basis for that distinction. (*Id.* at 22). There is none. If Plaintiffs are developing image-generating AI models—trained on unlicensed, third-party copyrighted data—for internal use in storyboarding or ideating content for film or TV, that evidence would equally demonstrate that it is an industry custom, even among the studios themselves, to download and train AI on unlicensed copyrighted content.

Nor does the "consumer-facing" limitation follow logically from the fourth fair use factor (market harm), which evaluates the impact of a defendant's use on the "potential market for or value of" the copyrighted works. Plaintiffs have asserted that Midjourney's AI models harmed the market that they claim exists for licensing their works to train AI models. (Dkt. 1 ¶ 197; Schuyler Decl. Ex. 1). If *Plaintiffs* are training an image-generating AI model in-house on third-party (or one another's) copyrighted data without paying for it, that would indicate (1) that there *is no such market*, and (2) that Plaintiffs themselves believe that training on third-party data without paying for a license causes no market harm—both of which would undermine their own market harm claims, regardless of whether Plaintiffs are copying data and using it to train an AI model for internal or external use.

Similarly, if documents related to AI "intended for consumers" are probative of industry custom and practice (as the Order acknowledges and as Plaintiffs tacitly concede), then documents related to non-consumer-facing AI development are too.

The Order cites no authority for the premise that industry custom in AI training should be segmented by end use. After all, the fact-finder should know whether Plaintiffs are engaging in the ultimate hypocrisy: copying and using unlicensed content while protesting when others do the same; arguing that it is not fair use for Midjourney to train on unlicensed data, but perfectly fine when they do it; and claiming there is no "industry custom" of downloading publicly available images even as that is their own practice. This is equally true whether Plaintiffs' AI is an internal tool used by studio animators to storyboard or test concepts, or one offered to consumers. If Disney downloaded terabytes of public images, including NBCUniversal's images or images on Midjourney's "Explore" page, and used or plans to use those images to train an in-house AI model, Midjourney should be able to use that information to rebut Disney's anticipated claim that such conduct is *not* an industry custom. **That Plaintiffs can or will not say "we have no such evidence" suggests at least that one of them does.**

Moreover, the cases cited approvingly in the Order undermine this "consumer-facing" distinction. *See Cisco Sys. Inc. v. Arista Networks, Inc.*, 2016 WL 11752975, at *2 (N.D. Cal. Nov. 16, 2016); *Tween Brands Inv., LLC v. Bluestar All., LLC*, 2016 WL 5216632, at *5-6 (S.D. Ohio Sep. 22, 2016). In *Cisco*, the district court held that "widespread use of [the work] throughout the industry is relevant to . . . fair use" without imposing a "consumer-facing" limitation. 2016 WL 11752975, at *2. The same holds true for *Tween*, which compelled production of evidence about the plaintiff's own use of third-party copyrighted images without regard to whether that use was consumer-facing—because "it would seem unjust for [the plaintiff] to prevail on a claim when it engages regularly in conduct that would also violate the Copyright Act, or, at minimum, is industry practice." 2016 WL 5216632 at *5-6.

***Third***, in applying the "consumer-facing" limitation, the Order conflated industry custom and practice with market harm. It derived the "consumer-facing" limitation from the market harm factor and transplanted it, without justification, onto

the "industry custom and practice" factor. But those are distinct inquiries. The market harm factor "focuses on actual or potential market substitution," *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 536 n.12 (2023), whereas the industry custom factor asks a different question: what does the industry regard as acceptable and customary practice? *See Wall Data*, 447 F.3d at 778. That question turns not on whether Plaintiffs' AI use and development is "consumer-facing," but on whether their generative AI activities reflect industry custom. Again, if Plaintiffs are training AI models on unlicensed third-party copyrighted works, or investing in AI tools that do the same, that evidence is directly relevant to whether the industry regards such conduct as fair use. *See Cisco Sys. Inc.*, 2016 WL 11752975, at *2. And that is true whether or not the use is "consumer-facing." In holding otherwise, the Order wrongly conflated two distinct fair use factors. Even if the Order were correct to limit market harm discovery to "consumer-facing" documents, there is no basis to impose the same limit on discovery related to industry custom and practice. The Order then compounded this error by collapsing the industry custom factor into its unclean hands analysis. (Dkt. 88 at 19). The result: the Order mixed *three* different legal inquiries (market harm, industry custom, and unclean hands) into a single, muddled analysis. None of this was right.

**Finally**, the Order's artificial line-drawing is impractical and difficult to fairly administer. The Order never quite explains what is and isn't "consumer-facing." If Plaintiffs engage in communications now in a non-consumer setting, but eventually develop a consumer-facing AI output or technology, would that be consumer-facing? What if Plaintiffs use generative AI models internally to prepare scenes that are eventually included in a movie they release to consumers? What if Plaintiffs developed or fine-tuned AI models for purposes of giving their illustrators or writers a "super tool" to ideate or experiment around characters, concepts, or storylines that might later be turned into a sizzle reel or confidential pilot? Are these examples "consumer-facing"? Or suppose Plaintiffs have documents about a stealth mode

research project involving AI models trained on third-party data that may eventually be released as a proprietary consumer-facing technology. What then? The Order's "consumer-facing" restriction ultimately raises more questions than it answers.

**Proportionality:** The Order's proportionality analysis on its "consumer-facing" limitation is independent legal error. After cautioning Plaintiffs at the March 12, 2026 discovery conference on this issue that they would need to "support" their proportionality argument "with facts" about burden (Schuyler Decl. Ex. 4 at 56), Plaintiffs provided no concrete evidence of burden beyond the cursory assertion that Plaintiffs include "a dozen corporate entities" with "tens of thousands of employees." The burden is *Plaintiff*-specific, not aggregated across Plaintiffs. The Order then failed to analyze proportionality, despite acknowledging the six-factor test (Dkt. 88 at 7)—beyond the conclusory remark that, even if there were marginal relevance to non-consumer AI training documents, "that marginal relevance would be easily outweighed by the voluminous scope of the requests." (Dkt. 88 at 24). Had the Order engaged with the proportionality factors (Fed. R. Civ. P. 26(b)(1)), they all favor Midjourney: "the issues at stake" (*id*.), two of Midjourney's defenses, are critical; the Order acknowledges the "relevance" of the discovery; Plaintiffs are well-capitalized, have asserted over 400 works, and seek *many millions* in total damages (Dkt. 1); and, having *agreed* to search for and produce documents regarding their consumer-facing AI efforts (*see supra* at n.3), Plaintiffs offered no evidence of "burden or expense," such as custodian or document totals, that justify excluding all evidence of their internal AI use on "proportionality" grounds. (*Id*.) As Midjourney explained (Dkt. 55-1 at 8), any such burden could be easily resolved through routine negotiation of custodians and search terms.[5] The Order addressed none of these issues.

In short, the Order clearly erred in imposing a "consumer-facing" restriction, and this Court should reverse the Order's denial of Midjourney's requests for non-

---

[5] The ESI Order in this case contemplates negotiation of search terms and custodians to address proportionality concerns. (Dkt. 47 at 3-4). Neither the Order nor Plaintiffs offer any reason why that process would be insufficient to address any concern.

consumer uses and development of AI.

## B. The Order Applied the Wrong Legal Standard in Assessing Midjourney's "Unclean Hands" Defense

In assessing Midjourney's "unclean hands" defense, the Order applied the three-part standard enunciated in *Grokster*. (Dkt. 88 at 20). Under *Grokster*, Midjourney would have to show that (1) Plaintiffs engaged in inequitable conduct, (2) such conduct "directly relates" to the claim asserted against Midjourney, and (3) such conduct injured Midjourney. *See Grokster*, 518 F. Supp. 2d at 1223. Applying that test, the Order concluded that discovery requests seeking documents related to Plaintiffs' development of, use of, and policies on generative AI were "not relevant to the defense of clean hands" since those documents could not establish all three elements of the defense and, in particular, did not "injure" Midjourney. (Dkt. 88 at 21). That was legal error, for multiple reasons.

### 1. The Order incorrectly imported an "injury" requirement into the unclean hands test.

Contrary to the Order's flawed analysis, the unclean hands defense does not require proof that the inequitable conduct results in injury to Midjourney. (*See* Dkt. 55-1 at 7). Under this doctrine, "plaintiffs seeking equitable relief must have acted fairly and without fraud or deceit as to the controversy in issue." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000) (citation modified). Put differently, the unclean hands defense "means that in equity . . . the plaintiff's fault, like the defendant's is relevant to the question of what if any remedy the plaintiff is entitled to." *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002). Consistent with these equitable principles, Midjourney only had to show that Plaintiffs' conduct (1) is inequitable and (2) relates to Plaintiffs' claims. *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933); *POM Wonderful*, 166 F. Supp. 3d at 1092.

Indeed, the Ninth Circuit has long adopted and consistently applied this two-part standard for unclean hands and declined to import the third "injury" prong

applied in the Order. *See Fuddruckers*, 826 F.2d at 847 ("To prevail [on an unclean hands defense], the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims."); *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011) (same); *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909-10 (9th Cir. 2003) (same); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997) (same). This Court and others within the Ninth Circuit have followed suit, including in copyright infringement suits. *See, e.g.*, *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2018 WL 7891028, at *6 (C.D. Cal. Dec. 21, 2018) (quoting two-part test for "unclean hands" from *Fuddruckers*); *Gravity Defyer Corp. v. Under Armour, Inc.*, 2014 WL 12597583, at *2 (C.D. Cal. Apr. 23, 2014) (Kronstadt, J.) (same); *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1074-76 (C.D. Cal. 2009) (applying two-part test set forth in *Fuddruckers* and rejecting injury requirement set forth in *Grokster*); *Schloss v. Sweeney*, 515 F. Supp. 2d 1068, 1082 (N.D. Cal. 2007) ("To prevail on an unclean hands defense, a defendant in a copyright infringement action must demonstrate that (1) the plaintiff's conduct is inequitable and (2) the conduct relates to the subject matter of its claims."); *Arista Recs. LLC v. Myxer Inc.*, 2010 WL 11515375, at *2 (C.D. Cal. 2010) (quoting same from *Schloss*); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1117 (C.D. Cal. 2010) (applying two-part unclean hands standard in copyright infringement case); *Randles Films, LLC v. Quantum Releasing, LLC*, 2011 WL 13216986, at *6 (C.D. Cal. Apr. 5, 2011) (same); *Evox Prods. LLC v. Yahoo Inc.*, 2023 WL 4850748, at *5 (C.D. Cal. July 28, 2023) (same); *Oracle Am., Inc. v. Terix Comput. Co., Inc.*, 2015 WL 1886968, at *5 n. 46 (N.D. Cal. Apr. 24, 2015) (same).

*Intamin* is particularly instructive on this point. In that case, the district court expressly considered and rejected the position (endorsed in the Order) that a defendant "must additionally demonstrate that it was somehow injured or prejudiced by [a plaintiff's] conduct" in order "to establish unclean hands." 623 F. Supp. 2d at

Cooley LLP
Attorneys at Law

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR REVIEW OF MAGISTRATE JUDGE'S DECISION
CASE NO.: 2:25-CV-05275-JAK-AJR

1075. In reaching that conclusion, the district court held that cases (like *Grokster*) injecting a third prong into the unclean hands test were "inconsistent with controlling Supreme Court, Federal Circuit and Ninth Circuit authority," which "requires only that a defendant who asserts unclean hands prove inequitable conduct by the plaintiff and that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant." *Id.*; *see Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2019 WL 1751837, at \*5 n.4 (C.D. Cal. Feb. 28, 2019) ("While the Court acknowledges that some district courts have included a third requirement that the plaintiff's conduct must have injured the defendant, this formulation of the test is not supported by Ninth Circuit precedent and at least one published Central District case has held that no third requirement exists."); *Poquito Mas Licensing Corp. v. Taco Bell Corp.*, 2015 WL 12734784, at \*2 (C.D. Cal. Jan. 22, 2015) (citing *Intamin* for principle that "proof of damages is not an element of an unclean hands defense").

Against this wall of precedent, the Order improperly added an "injury" requirement to the unclean hands analysis. In service of that view, the Order invoked a pair of cases—*Grokster* and the Ninth Circuit's decision in *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983 (9th Cir. 2009). As explained above, and as other courts have rightly observed, *Grokster* is a nonbinding district court case that runs contrary to controlling Supreme Court and Ninth Circuit precedent, which recognizes that a defendant need not establish injury to prevail on an unclean hands defense. (*See supra* at 15-16). The Order's (and Plaintiffs') reliance on *Dream Games* fares no better. To be sure, that case includes the following language: "The alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct." 561 F.3d at 991. (quoting *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)) (citation modified). But the Ninth Circuit was merely quoting a principle from a Fifth Circuit case discussing a *different* defense—namely, "the defense of obscenity." *Id.* (characterizing *Mitchell* as "analogous case law" from a different context). *Dream*

*Games* did not purport to break new ground and add a third requirement to the unclean hands defense, as many decisions after *Dream Games* have since confirmed. *See, e.g.*, *TrafficSchool.com*, 653 F.3d at 833 (applying two-part unclean hands test); *Natural-Immunogenics*, 2019 WL 1751837, at *5 n.4 (same).[6]

Equally unavailing is the Order's passing suggestion that the two-part unclean hands test applies only in "trademark and false advertising case[s]." (Dkt. 88 at 20 & n.3). As a threshold matter, the Order provided no explanation for why the injury requirement applies in the copyright infringement context, but not in a trademark or false advertising case. And none of the cases on which the Order relies supports that line-drawing. In fact, many of the decisions cited above confirm that the Order's putative distinction between copyright infringement actions and trademark/false advertising suits is erroneous. *See, e.g.*, *Schloss*, 515 F. Supp. 2d at 1082 (applying two-part test in "copyright infringement action"); *Arista Records*, 2010 WL 11515375, at *2 (same); *Intamin*, 623 F. Supp. 2d at 1074-76 (applying two-part test in patent infringement suit).

In short, the Order got the law of unclean hands wrong. Under the correct legal standard, Midjourney's discovery requests are plainly relevant (as liberally defined in this discovery context )[7] to its unclean hands defense. Such evidence could show that Plaintiffs have engaged in the ***very conduct*** they accuse Midjourney of: developing or training AI diffusion models based on publicly available third-party copyrighted data and investing in those AI models. And there is good reason to believe that such evidence exists. As Midjourney explained in its motion to compel, Disney announced plans to use asserted rights-in-suit through a "Landmark

---

[6] It appears that the Order adopted this mistaken reading of *Dream Games* at Plaintiffs' suggestion. (Dkt. 60 at 6 (quoting language from *Dream Games* out of its proper context)).

[7] The Order appears to conflate admissibility at trial and the much broader standard of relevance for discovery purposes. Because "[t]he test of relevance is a broad one," this "Court must review the magistrate's order with an eye toward the broad standard of relevance in the discovery context." *Geophysical Sys. Corp. v. Raytheon Co.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987).

COOLEY LLP
ATTORNEYS AT LAW

18

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR REVIEW OF MAGISTRATE JUDGE'S DECISION
CASE NO.: 2:25-CV-05275-JAK-AJR

Agreement to Bring Beloved Characters from Across Disney's Brands to [OpenAI video generator] Sora," (Dkt. 55-9)—a point that the Order did not address. That conduct squarely implicates Plaintiffs' infringement claims, which rest on the theory that Midjourney's use of billions of images to teach its AI model infringes their copyrights—but apparently not when Plaintiffs do it. Because the unclean hands defense does not require injury to Midjourney, there was no basis for the Order to arbitrarily limit discovery to Plaintiffs' "consumer-facing" AI development and use. (Dkt. 88 at 24; *see supra* at 15-16). If Warner Bros has downloaded datasets containing third party copyrighted material or scraped the internet for data and images (including, potentially, Midjourney's website) to develop and train an AI model, it should not matter whether it is "intended for consumers." What matters is that one or more of the Plaintiffs engaged in unlicensed copying of third-party content, whether in the spirit of experimentation, research, or to build tools that help writers and illustrators ideate and create.

> 2. *The Order also erred in requiring the discovery requests to satisfy every element of Midjourney's unclean hands defense.*

Even if the Order had applied the correct legal test, it separately erred by concluding that the requested discovery was relevant only if it "would establish inequitable conduct by Plaintiffs that is <u>both</u> directly related to the claims asserted against Defendant <u>and</u> injured Defendant." (Dkt. 88 at 21). This conflates discovery with the ultimate merits of Midjourney's unclean hands defense.[8] As the Order recognized, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Under this capacious standard, evidence is relevant even if it does not satisfy every single element of a claim or defense. As noted above, the gravamen of Midjourney's unclean hands defense is

---

[8] The Order later "conclude[d]" that Midjourney's "requested discovery is potentially relevant to establishing … the defense of unclean hands" (Dkt. 88 at 22), but the relevance apparently hinged on whether the documents sought could "establish" all three elements of Midjourney's unclean hands defense (*id.* at 21). This was error.

that Plaintiffs are guilty of the same accusations that they level against Midjourney. (Dkt. 55-1 at 7-8). Documents concerning Plaintiffs' AI policies or its development and use of AI could bolster Midjourney's unclean hands defense by making it "more probable" that Plaintiffs engaged in inequitable conduct, and are "of consequence in determining the action" since they would help establish a necessary condition of the unclean hands defense. *See id.* That satisfies the low bar for relevance, even if such evidence could not separately establish conduct that injured Midjourney. *See Mattel, Inc. v. MGA Ent. Inc.*, 2010 WL 11464001, at *1 (C.D. Cal. Oct. 28, 2010) (recognizing that "discovery into whether [plaintiff] engaged in the same conduct it now complains about: wrongfully obtaining advance information about competitors' forthcoming product lines" is "relevant to [defendant's] unclean hands defense"); *In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 4327876, at *3 (S.D. Cal. Sep. 10, 2018) (permitting discovery of communications to "counter [p]laintiff's theory" that defendant's similar conduct constituted unfair competition).

It makes little sense to require every requested document to satisfy every element of an asserted claim or defense, since different elements require different evidence. In a negligence action, for example, a document establishing a duty of care may have nothing to do with breach, causation, or damages.  A document that proves one element but not all does not lose its relevance.  So, too, here. Even if this Court agreed that the unclean hands defense has an "injury" element, neither logic nor law supports the Order's extraordinary view that discovery requests are relevant to a defense only if the documents sought prove all of its elements. (Dkt. 88 at 21). Accepting that position would require courts to adjudicate the merits of an affirmative defense in the context of a discovery dispute—an especially inappropriate result given that "[a]pplication of the unclean hands defense is 'primarily a question of fact' and thus usually reserved for a jury." *Bd. of Trs. for Laborers Health & Welfare Tr. Fund for N. Cal. v. Turner Grp. Constr.*, 2021 WL 516039, at *5 (N.D. Cal. Feb. 11,

2021) (quoting *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)). The Court should not follow the Order down that path.

### C. It was Error to Conclude that Plaintiffs' Generative AI Prompts and Outputs Are Irrelevant, Non-Discoverable Work Product

The Order treated the undisclosed Midjourney prompts and outputs generated by Plaintiffs and their agents during their pre-suit investigation as "core" opinion work product that is "virtually undiscoverable." (Dkt. 88 at 27) (quoting *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014)). That determination was wrong for several reasons: (1) Plaintiffs' Midjourney prompts and corresponding outputs are highly relevant; (2) at most, those prompts were fact work product for which there is a substantial need; and (3) Plaintiffs waived any applicable work product protection that attaches to Plaintiffs' AI prompts and outputs.

***First***, the Order held that Plaintiffs' undisclosed AI prompts and outputs were entirely irrelevant based on skepticism that any such prompts and outputs could "distort the damages calculus" given the relatively small volume of those outputs and "in light of the current statistical sampling protocol that the parties are finalizing." (Dkt. 88 at 26). This analysis is mistaken. For starters, the Order's conclusion rests on an assumption that the volume of Plaintiffs' AI prompts renders them entirely irrelevant. That misses the point. As Midjourney explained in its motion to compel, discovery is necessary because Plaintiffs cannot have it both ways: demand production of Midjourney's outputs but refuse to disclose the prompts and accounts they themselves used to manufacture those outputs. Otherwise, what is to prevent Plaintiffs from generating many thousands of images on Midjourney and showing them to the jury as evidence of infringement? Discovery is thus necessary not only to avoid the "distortion" of damages, but also to ensure that Plaintiffs cannot misrepresent their self-serving outputs as exemplars of third-party infringement.

This is not a speculative concern: Plaintiffs responded to an interrogatory requesting evidence of infringement by Midjourney "users" with reference to

prompts *submitted by their investigator*. Schuyler Decl. Ex. 3. Put another way, the requested discovery goes not only to quantity, but to substance: obtaining access to Plaintiffs' full inventory of AI prompts and outputs (including those not featured in the Complaints) is the only way for Midjourney to fully and fairly test and counter Plaintiffs' claims about third-party infringement. For the same reasons, the Order's reliance on the statistical sampling protocol is sorely misplaced. Even if that sampling protocol could isolate which prompts were generated by Plaintiffs, that would not supply the information necessary to vet Plaintiffs' representations about its self-serving claims of third-party infringement.[9]

***Second***, the Order concluded that the requested AI prompts were "core" opinion work product "because they necessarily reveal counsel's 'mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation.'" (Dkt. 88 at 27 (quoting *Mackay*, 742 F.3d at 869 n.3)). That was wrong. Plaintiffs' prompts reveal only "relevant, non-privileged facts"—not any legal theory, strategy, or "mental processes" of counsel. *See SEC v. Pulier*, 2020 WL 8102053, at *3 (C.D. Cal. Nov. 13, 2020). A Midjourney prompt (e.g., "Homer Simpson, animated") is a factual input into a third-party platform, and the disclosure of that prompt and others like it would not require Plaintiffs or their counsel to reveal any attorney mental impressions or legal opinions—even if the outputs of those prompts did not ultimately land in the pleadings. Accordingly, the requested prompts and outputs are, at most, "fact" work product and are therefore discoverable because Midjourney has shown a "substantial need" for the materials "and unavailability by other means." Fed. R. Civ. P. 26(b)(3)(A); *Pulier*, 2020 WL 8102053, at *3.[10]

***Third***, even assuming that the requested AI prompts were protected work product, Plaintiffs waived that protection, three times over. To begin, Plaintiffs

---

[9] If the Court does not compel production of all of the prompts or corresponding outputs, it should at least require Plaintiffs to provide Midjourney with the accounts used so that it can at least determine the volume of outputs. (Dkt. 55-1 at 8).

[10] In any event, the prompts are not Plaintiffs' counsel's mental impressions. They are the prompts of disclosed fact witness Bruce Ward.

waived any applicable work-product privilege by submitting prompts to Midjourney under terms of service that expressly make such inputs public by default and grant Midjourney a broad license to "reproduce, prepare derivative works of, publicly display, publicly perform, sublicense, and distribute" those inputs. (*See* Dkt. 55-10 § 4). The Order recognized as much, noting that "Defendant has custody of these prompts and outputs," but nonetheless concluded that Plaintiffs somehow preserved the work-product privilege because waiver requires "an act inconsistent with the adversary system." (Dkt. 88 at 28 (citation modified)). But that is precisely what occurred here: Plaintiffs' counsel entered prompts into a third-party platform (operated by the defendant) under terms granting that defendant a broad license to use and distribute those inputs. The Order failed to explain how or why the terms of service did not effect a waiver of any privilege over Plaintiffs' prompts and outputs, including those that did not eventually feature in the Complaints. (Dkt. 55-10 § 4 (Terms of Service make prompts and outputs public by default and grant Midjourney a license to "reproduce, prepare derivative works of, publicly display, publicly perform, sublicense, and distribute")). That failure is no surprise. Using a platform ***where the adversary holds a license to all inputs*** is, by definition, inconsistent with the adversarial purposes the work product doctrine is designed to protect and "substantially increased the opportunities" for Midjourney to obtain their "work product." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020); *see Labbe v. Dometic Corp.*, 2024 WL 325331, at *6 (E.D. Cal. Jan. 29, 2024) (finding waiver when material is sent to non-party who lacks any "expectation of privacy").

Plaintiffs also waived the privilege by naming Bruce Ward—an evidence collector for Plaintiffs—as a potential fact witness who is "likely to have discoverable information" regarding "infringing outputs." (Schuyler Decl. Ex. 2). In doing so, Plaintiffs placed his investigation squarely at issue and thereby waived any work product privilege over any related information (including any infringing prompts and corresponding outputs). *See Concord Music Grp. v. Anthropic PBC*, 2025 WL

3677935, at *3 (N.D. Cal. Dec. 18, 2025). The Order nonetheless found no waiver because "the mere fact that Plaintiffs have identified Mr. Ward as a witness . . . does not somehow put his entire investigation at issue." (Dkt. 88 at 30). But the Order offered no support or reasoning for this assertion, and precedent is to the contrary. *Concord Music Grp.* is illustrative. There, the court held that "when a party presents an investigation to this Court as evidence, it may not then use the work-product privilege to deny its adversary access to additional materials that could provide an important context for proper understanding." 2025 WL 3677935 at *2 (citation modified). Because the plaintiffs in *Concord Music Grp.* had "placed [the] topic and investigation at issue," the court compelled product of "all (*i.e.*, negative as well as positive) prompts and outputs submitted by investigators and client-witnesses" during the investigation. *Id.* at *3. The same result should obtain here. Plaintiffs have made the completeness and integrity of Mr. Ward's investigation and collection of evidence central to their infringement and damages case; having used Mr. Ward's findings as an evidentiary sword, they should not now be allowed to shield from discovery the AI prompts and outputs that lie at the heart of Mr. Ward's investigation.

Plaintiffs also waived any applicable work product privilege under Federal Rule of Evidence 502(a) through selective disclosure. Here, Plaintiffs' decision to disclose a curated selection of AI prompts and outputs in their Complaints satisfies the requirements for selective disclosure under FRE 502(a): Plaintiffs' disclosure was intentional; the full universe of Plaintiffs' Midjourney prompts involves the same subject matter as the disclosed material; and fairness requires that Midjourney have access to the complete record of AI prompts that Plaintiffs submitted to the Midjourney platform. *See Taction Tech., Inc. v. Apple Inc.*, 2023 WL 4675652, at *8 (S.D. Cal. July 20, 2023) (finding waiver because investigator's "selective disclosures give an incomplete and potentially one-sided view" and provide an "unfair advantage" where his "analysis is not something that [d]efendant can recreate itself"); *Xfinity Mobile v. Globalgurutech LLC*, 2024 WL 4566857, at *4 (D. Ariz

Oct. 23, 2024) (finding selective disclosure where plaintiffs included "large portions" of investigator's findings in complaint as the "backbone of [their] factual allegations"). The Order declined to find that Plaintiffs engaged in selective disclosure on the theory that "every court filing inherently reflects strategic choices of counsel in what facts to include and even what legal arguments to make." (Dkt. 88 at 29). But that theory proves too much: under the Order's rationale, Rule 502(a) would be rendered a nullity because all selective disclosure of work product occurs in the context of litigation. That cannot be, and is not, the law. *See Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, 2025 WL 41936, at *8 (N.D. Cal. Jan. 6, 2025) (finding "selective disclosure . . . where a party intentionally discloses materials helpful to its case while . . . concealing detrimental information on the same topic") (citation modified).

***Finally***, Plaintiffs' actions since the Order have merely heightened Midjourney's concerns about their selective disclosure of Mr. Ward's prompts. On June 23, 2026, Plaintiffs served interrogatory responses in which they claim that Mr. Ward was able to generate additional images of Plaintiffs' characters and works on a more recent version of Midjourney's AI model, v8, that he had purportedly been unable to generate on prior versions of the Midjourney model. (Schuyler Decl. Ex. 3). Having now put the model's ability (and more importantly, *inability*) to generate allegedly infringing outputs squarely at issue, including in support of their recent motion to compel (Dkt. 87-1 at 7) ("Plaintiffs have identified more than two dozen additional characters that v8 faithfully reproduces, which previous versions did not"), Plaintiffs cannot selectively disclose Mr. Ward's prompts that successfully generated Plaintiff characters while withholding those inputted into the prior Midjourney models that failed to generate any such characters.

## V.   CONCLUSION

The Court should grant Midjourney's Motion for Review of the Order and compel production as set forth in the accompanying Proposed Order.

COOLEY LLP
ATTORNEYS AT LAW

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DECISION
CASE NO.: 2:25-CV-05275-JAK-AJR

Dated:    June 29, 2026                    COOLEY LLP


                                          By: */s/ Bobby Ghajar*
                                          Bobby Ghajar
                                          John Paul Oleksiuk
                                          Stephanie Schuyler
                                          Judd Lauter

                                          *Counsel for Defendant Midjourney, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Midjourney, Inc., certifies that this brief is under 25 pages, which complies with the page limit contained in Section 9(d) of this Court's Standing Orders for Civil Cases.

Dated:   June 29, 2026                     COOLEY LLP


By: */s/ Bobby Ghajar*
Bobby Ghajar
John Paul Oleksiuk
Stephanie Schuyler
Judd Lauter

*Counsel for Defendant Midjourney, Inc.*