**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Julie A. Shepard (SBN 175538)
jshepard@jenner.com
Lauren M. Greene (SBN 271397)
lgreene@jenner.com
Andrew G. Sullivan (SBN 301122)
agsullivan@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

Kara V. Brandeisky (*admitted pro hac vice*)
kbrandeisky@jenner.com
1099 New York Avenue N.W. #900
Washington, D.C. 20001
Telephone: (202) 639-6000

Zachary A. Marino (*admitted pro hac vice*)
zmarino@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al.; WARNER BROS. ENTERTAINMENT INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIDJOURNEY, INC., <br><br> Defendant. <br><br> ALL CASES | Case No. 2:25-cv-05275-JAK-AJR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT MIDJOURNEY, INC.'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER PURSUANT TO FED. R. CIV. P. 72(a) AND LOCAL RULE 72-2.1** <br><br> Hearing Date:  August 17, 2026 <br> Time:    8:30 a.m. <br> Courtroom:  10C <br> Judge:   Hon. John A. Kronstadt <br><br> Date Action Filed: June 11, 2025 |

**TABLE OF CONTENTS**

I.     Introduction..................................................................................................1

II.    Standard of Review......................................................................................3

III.   The Order's Request-by-Request Assessment and Rejection of Midjourney's Unsupported Relevance Arguments Concerning Plaintiffs' General Use of AI Was Not Clearly Erroneous or Contrary to Law....................................................5

       A.   The Magistrate Judge Correctly Held That Midjourney's Inquiry Into AI Usage Not Intended for Consumers Is Irrelevant to Fair Use. ..................7

       B.   The Order Correctly Declined to Compel Discovery Into Plaintiffs' AI Activity Based on an Unclean Hands Theory. ...............................................13

       C.   The Magistrate Judge's Assessment of Burden Provides an Independent Reason His Order Must Stand. ......................................................17

IV.    Magistrate Judge Richlin Correctly Held That the Not-At-Issue Prompts and Outputs Are Irrelevant and Protected Opinion Work Product. ...........................19

       A.   The Not-At-Issue Prompts and Outputs Are Protected Work Product. ........20

       B.   There Has Been No Waiver of Work Product Protection. ...........................22

       C.   The Not-at-Issue Prompts and Outputs Are Not Relevant..........................24

V.     Conclusion. ...............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andersen v. Stability AI Ltd.*,
   No. 23-cv-201 (N.D. Cal. June 17, 2026)....................................................................4

*Avila v. Ford Motor Co.*,
   680 F. Supp. 3d 1125 (N.D. Cal. 2023).......................................................................19

*U.S. ex rel. Bagley v. TRW, Inc.*,
   212 F.R.D. 554 (C.D. Cal. 2003)................................................................................20

*Bellsouth Advert. & Pub. Corp. v. Donnelley Info. Publ'g, Inc.*,
   719 F. Supp. 1551 (S.D. Fla. 1988).............................................................................9

*Benke v. Agency*,
   2014 WL 12577405 (C.D. Cal. Jan. 15, 2014)............................................................15

*Broderbund Software, Inc. v. Unison World, Inc.*,
   648 F. Supp. 1127 (N.D. Cal. 1986).....................................................................14, 15

*Cacique, Inc. v. Robert Reiser & Co.*,
   169 F.3d 619 (9th Cir. 1999) .......................................................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).......................................................................................................6

*Cisco Systems, Inc. v. Arista Networks, Inc.*,
   2016 WL 11752975 (N.D. Cal. Nov. 16, 2016) .....................................................10, 11

*Concord Music Grp., Inc. v. Anthropic PBC*,
   2025 WL 3677935 (N.D. Cal. Dec. 18, 2025).............................................................20

*Curry v. Baca*,
   2008 WL 11411966 (C.D. Cal. Jan. 3, 2008)...............................................................3

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
   890 F.2d 165 (9th Cir. 1989) .....................................................................................15

*Dream Games of Ariz., Inc. v. PC Onsite*,
   561 F.3d 983 (9th Cir. 2009) ...........................................................................14, 15, 17

*Export Dev. Canada v. E.S.E. Elecs.*,
  2017 WL 3868795 (C.D. Cal. Sept. 5, 2017) .................................................. 16

*Est. of Gonzales ex rel. Gonzales v. Hickman*,
  2007 WL 3231956 (C.D. Cal. Apr. 18, 2007) .................................................. 4

*Grief v. Nassau Cnty.*,
  246 F. Supp. 3d 560 (E.D.N.Y. 2017) ........................................................... 3

*Hallett v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) ...................................................................... 13

*Integon Preferred Ins. Co. v. Saavedra*,
  2019 WL 13075956 (C.D. Cal. Oct. 24, 2019) ........................................... 3, 4

*Interscope Records v. Time Warner, Inc.*,
  2010 WL 11505708 (C.D. Cal. June 28, 2010) .............................................. 14

*Kaseberg v. Conaco, LLC*,
  360 F. Supp. 3d 1026 (S.D. Cal. 2018) ........................................................ 15

*Keystone Driller Co. v. General Excavator Co.*,
  290 U.S. 240 (1933)................................................................................... 16

*King.com Ltd. v. 6 Waves, LLC*,
  2014 WL 12704998 (N.D. Cal. July 11, 2014) ......................................... 16, 17

*Mattel, Inc. v. MGA Ent., Inc.*,
  2010 WL 11464001 (C.D. Cal. Oct. 28, 2010) .............................................. 16

*Maxtone-Graham v. Burtchaell*,
  631 F. Supp. 1432 (S.D.N.Y. 1986) .............................................................. 8

*Meeropol v. Nizer*,
  417 F. Supp. 1201 (S.D.N.Y. 1976) .............................................................. 8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................ 14

*In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*,
  2020 WL 6504416 (S.D. Cal. Nov. 5, 2020)............................................. 18, 24

*Mitchell Bros. Film Group v. Cinema Adult Theater*,
  604 F.2d 852 (5th Cir. 1979) ...................................................................... 14

*Nat'l Therapeutic Servs., Inc. v. City of Costa Mesa*,
2020 WL 7263541 (C.D. Cal. May 12, 2020) .................................................................. 4

*New York Times Co. v. Microsoft Corp.*,
757 F. Supp. 3d 594 (S.D.N.Y. 2024) ............................................................... 6, 8, 9

*Niantic, Inc. v. Global++*,
2020 WL 1548465 (N.D. Cal. Jan. 30, 2020) .................................................................. 15

*In re OpenAI, Inc., Copyright Infringement Litig.*,
2025 WL 1652110 (S.D.N.Y. May 30, 2025) .................................................................. 6, 12

*Oracle Am., Inc. v. Google LLC*,
886 F.3d 1179 (Fed. Cir. 2018) .................................................................. 10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
2017 WL 2311296 (N.D. Cal. May 26, 2017) .................................................................. 15

*In re Pioneer Corp. v. Technicolor, Inc.*,
2018 WL 4961911 (C.D. Cal. Sept. 12, 2018) .................................................................. 4

*POM Wonderful LLC v. Coca-Cola Co.*,
166 F. Supp. 3d 1085 (C.D. Cal. 2016) .................................................................. 14

*Republic of Ecuador v. Mackay*,
742 F.3d 860 (9th Cir. 2014) .................................................................. 20

*Rimini St., Inc. v. Oracle Int'l Corp.*,
473 F. Supp. 3d 1158 (D. Nev. 2020) .................................................................. 15

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) .................................................................. 4

*Rutherford v. Palo Verde Health Care Dist.*,
2014 WL 12632904 (C.D. Cal. Dec. 1, 2014) .................................................................. 13

*In re Sealed Case*,
676 F.2d 793 (D.C. Cir. 1982) .................................................................. 22

*SEC v. Pulier*,
2020 WL 8102053 (C.D. Cal. Nov. 13, 2020) .................................................................. 21

*Sedlik v. Drachenberg*,
2022 WL 17886029 (C.D. Cal. June 27, 2022) .................................................................. 9

*Survivor Prods. LLC v. Fox Broad. Co.*,
    2001 WL 35829270 (C.D. Cal. June 12, 2001) ............................................................. 15

*Taylor Holland LLC v. MVMT Watches, Inc.*,
    2016 WL 6892097 (C.D. Cal. Aug. 11, 2016) ............................................................. 15

*Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*,
    55 F. Supp. 2d 1113 (D. Nev. 1999) ............................................................................ 16

*Tremblay v. OpenAI, Inc.*,
    2024 WL 3748003 (N.D. Cal. Aug. 8, 2024) ........................................................ 20, 24

*Tween Brands Inv., LLC v. Bluestar All., LLC*,
    2016 WL 5216632 (S.D. Ohio Sept. 22, 2016) ............................................................ 11

*UMG Recordings, Inc. v. Suno, Inc.*,
    2026 WL 936049 (D. Mass. Apr. 6, 2026) ...................................................... 7, 17, 20

*United States v. Abonce-Barrera*,
    257 F.3d 959 (9th Cir. 2001) ....................................................................................... 3

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) .............................................................................. 22, 24

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) ..................................................................................... 10

*Yent v. Baca*,
    2002 WL 32810316 (C.D. Cal. Dec. 16, 2002) ............................................................ 4

**Statutes**

17 U.S.C. § 107 ...................................................................................................... 8, 10, 11

17 U.S.C. § 107(4) ............................................................................................................ 7

28 U.S.C. § 636(b)(1)(A) .................................................................................................. 3

**Court Rules**

Fed. R. Civ. P. 11 ........................................................................................................... 23

Fed. R. Civ. P. 26 ........................................................................................................... 16

Fed. R. Civ. P. 26(b)(1) ............................................................................................. 4, 18

Fed. R. Civ. P. 26(b)(3) .................................................................................................... 23

Fed. R. Civ. P. 26(b)(3)(A)(ii) .................................................................................... 21, 22

Fed. R. Civ. P. 72 .............................................................................................................. 3

Fed. R. Civ. P. 72(a) ..................................................................................................... 3, 20

Fed. R. Evid. 502(a) ........................................................................................................ 24

**Other Authorities**

4 Nimmer on Copyright § 13.09 (2026) ........................................................................... 15

## I.    Introduction.

Midjourney operates a commercial generative AI image and video service that makes Plaintiffs' famous characters (like Superman, Batman, Spider-Man, Darth Vader, the Minions and Scooby-Doo) available for display and download in images and videos for Midjourney's paying subscribers. Midjourney developed and built this service by creating libraries of unauthorized copies of videos and images from Plaintiffs' movies and TV shows, then "training" its AI model on those images and videos in a way that effectively stores copies of Plaintiffs' copyrighted characters on Midjourney's servers. When a Midjourney subscriber requests an image or video of one or more of those characters, Midjourney obliges by providing an infringing reproduction or derivative output.

This lawsuit is not about the benefits of AI. Plaintiffs are not suing to stop the use of AI or to shut down Midjourney's service. Plaintiffs brought this lawsuit simply to stop Midjourney from commercializing and infringing Plaintiffs' famous copyrighted works. Plaintiffs never authorized Midjourney to reproduce their works to train and build the Midjourney service, and never authorized Midjourney to further reproduce, distribute, publicly display, or publicly perform Plaintiffs' copyrighted works as part of a commercial service. That is textbook copyright infringement, and it is illegal.

Having been caught red-handed, Midjourney desperately tries to divert attention from its own unlawful conduct by insisting on sweeping discovery into speculative claims about Plaintiffs' imagined infringement of unidentified third parties' copyrights. Courts routinely deny defendants' requests for this kind of "you're a copyright infringer too" discovery when it has nothing to do with the plaintiff's claim against the defendant or the works at issue. Midjourney also seeks intrusive discovery into Plaintiffs' use of AI in their own businesses. None of these subjects are remotely relevant to the only claims at issue: Midjourney's willful, rampant, and ongoing infringement of Plaintiffs' copyrights. Courts are unsympathetic to these broad "let me search all of your conduct for any wrongdoing" requests, which are nothing more than burdensome and irrelevant fishing expeditions.

Nevertheless, Midjourney demands expansive discovery into Plaintiffs' internal use of AI, Plaintiffs' corporate deliberations about AI generally, and documents related to a speculative inquiry into whether Plaintiffs may have ever theoretically infringed third parties' works in connection with their own internal AI usage. Plaintiffs have agreed to produce documents sufficient to show all relevant aspects of their use of AI, and even some uses Plaintiffs maintain are irrelevant. For example, Plaintiffs agreed to produce documents concerning their employees' use of Midjourney, even if not related to the asserted works at issue. Plaintiffs agreed to produce documents sufficient to show their use and development of generative AI to create image or video outputs intended for consumers, featuring the asserted works. Those documents, and only those documents, could be relevant to the Copyright Act's fair use analysis, which asks how Midjourney's unauthorized use of Plaintiffs' works threatens to harm the market for Plaintiffs' works that Midjourney infringed.

But Midjourney contends that is not enough, arguing it is entitled to a sweeping audit of Plaintiffs' internal use of AI generally, claiming that is supposedly relevant to an equitable defense of unclean hands. Midjourney also claims it needs to conduct this audit under a legally untenable theory that its own illegal infringement may be excused because its conduct is the "industry custom." Of course, suggesting there is a "custom" that allows Midjourney to infringe Plaintiffs' works is contradicted by the fact that today's popular image and video AI services are all just a few years old, and there are already dozens of copyright infringement lawsuits challenging AI training.

Midjourney further seeks to invade the opinion work product of Plaintiffs' counsel, by demanding that Plaintiffs disclose their pre-litigation investigation done on Midjourney's service in connection with the preparation of the complaints in this lawsuit. Even though Plaintiffs have already produced the prompts and outputs that are referenced in the complaints, Midjourney demands discovery into whether Plaintiffs' counsel ever tested the Midjourney service and received outputs that Plaintiffs and their counsel evaluated and chose not to include in their complaints.

After three informal discovery conferences and full briefing, Magistrate Judge Richlin denied Midjourney's motion to compel the discovery at issue here. Dkt. 88 (the "Order"). Magistrate Judge Richlin issued a thorough, well-reasoned, 31-page Order based on a mountain of authority—including multiple recent district court cases dealing with the same AI copyright issues—that clearly rejects the improper discovery Midjourney seeks here. Order at 11–31.

Midjourney's motion for review (Dkt. 112 ("Mot.")) identifies no clear error in any of Magistrate Judge Richlin's rulings. Instead, it repeats the same relevance arguments the Magistrate Judge considered and soundly rejected; it misleadingly recasts the Order's holdings and quarrels with its reasoning; it faults his Order for omitting a proportionality analysis that Midjourney itself never briefed below; and it asks this Court to weigh new (and irrelevant) factual considerations that were never before the Magistrate Judge.

Disagreement with Magistrate Judge Richlin's discretionary discovery rulings does not carry Midjourney's burden under Rule 72(a). The Order was well-reasoned, reached the correct result, and was consistent with recent rulings by other district courts on nearly identical issues. Midjourney's motion should be denied.

## II.    Standard of Review.

"[T]he magistrate judge's decision in . . . nondispositive matters is entitled to great deference by the district court." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001). Under Rule 72(a), the Court may modify or set aside a magistrate judge's order only where it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). As the party seeking review, Midjourney bears the burden of showing that Magistrate Judge Richlin's Order meets that high threshold of error. *Curry v. Baca*, 2008 WL 11411966, at *1 n.1 (C.D. Cal. Jan. 3, 2008); *see also Grief v. Nassau Cnty.*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017) ("Under Rule 72, the 'heavy' burden of proof lies with the moving party").

"Under this standard of review, the district court may not substitute its own judgment for that of the magistrate judge." *Integon Preferred Ins. Co. v. Saavedra*, 2019 WL

13075956, at *1 (C.D. Cal. Oct. 24, 2019) (citing *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1061 (9th Cir. 2004)). Nor can the Court reverse based on evidence the magistrate judge was not able to consider in the first instance. *See Est. of Gonzales ex rel. Gonzales v. Hickman*, 2007 WL 3231956, at *2 (C.D. Cal. Apr. 18, 2007) ("[T]he district court is limited to the record that the magistrate judge had before her in the proceeding below.").

A magistrate judge's order is "clearly erroneous" only "if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed." *Yent v. Baca*, 2002 WL 32810316, at *2 (C.D. Cal. Dec. 16, 2002). A decision "is 'contrary to law' only if it 'applies an incorrect legal standard or fails to consider an element of the applicable standard.'" *In re Pioneer Corp. v. Technicolor, Inc.*, 2018 WL 4961911, at *3 (C.D. Cal. Sept. 12, 2018) (Kronstadt, J.) (citation omitted); *see also Rivera*, 364 F.3d at 1063 (a reviewing court may not overturn a magistrate simply because it "might have weighed differently the various interests and equities").

"Enforcing a discovery request for irrelevant information is a per se abuse of discretion." *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) (citation omitted); Fed. R. Civ. P. 26(b)(1). "Under the abuse of discretion standard, the court should not disturb the magistrate judge's relevancy determinations unless 'based on an erroneous conclusion of law' or 'the record contains no evidence on which he rationally could have based that decision.'" *Nat'l Therapeutic Servs., Inc. v. City of Costa Mesa*, 2020 WL 7263541, at *2 (C.D. Cal. May 12, 2020) (citation omitted).

Midjourney cites a discovery order in *Andersen v. Stability AI Ltd.* for the "principle[]" that "courts should be 'disinclined to prematurely limit'" discovery in AI cases. Mot. at 9 (citing No. 23-cv-201 (N.D. Cal. June 17, 2026), ECF No. 602 at 1–2). The magistrate judge in *Andersen* merely noted that "the Court (*within reason*) is disinclined to prematurely limit" discovery when she ordered plaintiffs to produce financial information to show how defendants' infringement harmed them, but declined to compel the production of plaintiffs' tax returns. No. 23-cv-201, ECF No. 602 at 1–2 (emphasis added).

Midjourney has failed to show clear error or abuse of discretion by Magistrate Judge Richlin, and this Court should affirm Magistrate Judge Richlin's Order.

**III.    The Order's Request-by-Request Assessment and Rejection of Midjourney's Unsupported Relevance Arguments Concerning Plaintiffs' General Use of AI Was Not Clearly Erroneous or Contrary to Law.**

Midjourney moved to compel further responses to nine discovery requests seeking documents concerning use of image and video AI generally (RFP Nos. 8, 10, 23–24); Plaintiffs' policies related to AI (RFP Nos. 14, 21); and Plaintiffs' purported training and development of their own AI models (RFP Nos. 12, 13, 25). Order at 3. Plaintiffs did not resist this discovery wholesale. Plaintiffs agreed to produce documents sufficient to show their business plans, roadmaps, research reports, other studies, and approvals of their actual or proposed development or training of generative AI intended for consumers featuring the asserted works, including their contractors' authorized use of generative AI intended for consumers. Order at 3–5, 22 (citing Dkt. 55-4 at 3, 6, 12–13); *see also* Dkt. 55-11 at 6, 8. Plaintiffs further agreed to produce documents reflecting statements by their corporate officers concerning the development of generative AI intended for consumers featuring the asserted works, as well as documents sufficient to show Board of Directors minutes, presentations, or executive-level briefings relating to Midjourney. Order at 6, 22 (citing Dkt. 55-4 at 8, 10).

Magistrate Judge Richlin granted Midjourney's motion in part, and denied it in part, ultimately "agree[ing] with Plaintiffs' rationale of limiting the scope of responsive documents to the actual or proposed development of generative AI *intended for consumers*" precisely "because this addresses the market-harm factor of the fair-use analysis." Order at 22 (emphasis added). The Order then applied that limitation request-by-request. It accepted the "intended-for-consumers" scope that had already been offered by Plaintiffs in response to Midjourney's RFP Nos. 8, 12, 14, 23, and 24. Order at 22–23. It granted Midjourney's motion in part as to RFP Nos. 13 and 21, expanding Plaintiffs' agreed-upon productions consistent with the same rationale: as to RFP No. 21, Plaintiffs

must also produce documents sufficient to show their "approval of the use of generative AI to generate images and/or video outputs intended for consumers, featuring the asserted works" (Order at 23), and, as to RFP No. 13, documents sufficient to show their "development, training, or contemplated development or training of any generative AI to generate images and/or video outputs intended for consumers, featuring the asserted works, including training datasets, datasources, or model weights" (Order at 24).

In the end, Plaintiffs are producing nonprivileged documents concerning their employees' use of Midjourney for work purposes, and documents sufficient to show the Plaintiffs' use of image or video generative AI intended for consumers, featuring the asserted works. Order at 4–6; Dkt. 49 at 3–4. In other words, the documents Plaintiffs have agreed to produce will show how Plaintiffs intend to enter the same consumer market in which Midjourney is unlawfully exploiting Plaintiffs' works. These materials are potentially relevant to the fourth fair use factor of market harm, which asks whether copying like Midjourney's, if widespread, would have "a substantially adverse impact on the potential market" for Plaintiffs' works. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (citation omitted).

What Midjourney's motion seeks, then, is discovery into the studios' uses of *other* AI services—such as Sora, ChatGPT, Gemini, and Claude—for internal business reasons. *See* Order at 4–5. Magistrate Judge Richlin rejected this sweeping request. He held that Plaintiffs' documents concerning general use of AI not intended for consumers are "not relevant to market harm." Order at 22. He then held, in the alternative, that "even if there were some marginal relevance, that marginal relevance would be easily outweighed by the voluminous scope of the requests." *Id*. at 22–23.

Magistrate Judge Richlin joined the consensus of courts rejecting nearly identical discovery requests. *See New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 596, 599 (S.D.N.Y. 2024) (Wang, M.J.); *In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 1652110, at *1, 4–5, 8 (S.D.N.Y. May 30, 2025) (Stein, J.) ("[T]he most relevant evidence of harm under the fourth fair use factor involves the effect of the defendant's

copying on the potential market for the *thing copied*. . . . Here, the potential market is the market for The Times' works, not the market for generative AI generally.") (emphasis in original); *UMG Recordings, Inc. v. Suno, Inc.*, 2026 WL 936049, at *2–5 (D. Mass. Apr. 6, 2026) (denying discovery request regarding plaintiffs' "own use and development of generative AI tools"). Unable to tie its request to any fair use factor, Midjourney pursues these irrelevant documents based on the theory that, if Plaintiffs have engaged in AI training that infringed *someone else's* copyrights, then Midjourney should not be held liable for infringing the Plaintiffs' works at issue. But, as the Magistrate Judge observed, "everybody else is doing it" has never been a defense to infringement. Order at 18.

Midjourney nonetheless advances this same misguided theory of relevance, arguing (incorrectly) that (i) if Plaintiffs trained AI on third-party content, that supposedly shows Midjourney's infringing activity constitutes an industry custom, which supports Midjourney's fair use defense (Section III.A, *infra*); and (ii) Plaintiffs' purported infringement of third-party content gives rise to the unclean hands defense, which absolves Midjourney of liability for its infringement of the works at issue (Section III.B, *infra*). The Magistrate Judge correctly held that an inquiry into Plaintiffs' internal AI use not intended for consumers fails under both theories of relevance. Order at 16–21, 23. And, in any case, if this inquiry had even marginal relevance, it would be outweighed by the facially burdensome nature of the expansive requests. Order at 22–25.

A. **The Magistrate Judge Correctly Held That Midjourney's Inquiry Into AI Usage Not Intended for Consumers Is Irrelevant to Fair Use.**

In his Order, the Magistrate Judge carefully considered and rejected each of Midjourney's theories as to why the discovery at issue is relevant to Midjourney's fair use defense. Order at 11–19. He found that only Midjourney's requests for documents related to AI use *intended for consumers* and *related to the works at issue* were "potentially relevant" with respect to *one* of the *four* statutory fair use factors: the "effect of the use upon the potential market" (i.e., market harm). *Id*. at 22 (quoting 17 U.S.C. § 107(4)). In

7

so holding, he endorsed "Plaintiffs' rationale" in setting this same limitation on their prior discovery agreements. Order at 22 (citing *New York Times*, 757 F. Supp. 3d at 598).

Midjourney mischaracterizes the Magistrate Judge's Order—and the statutory fair use factors—by misstating the "four fair use factors" and claiming the non-existent "factor" of "industry custom and practice" justifies discovery into Plaintiffs' internal AI uses that are *not intended for consumers*. Mot. at 5, 9–14. The Copyright Act's four fair use factors are the (1) "purpose and character of the use"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used," and (4) "the effect of the use upon the potential market." 17 U.S.C. § 107. "Industry custom and practice" is not a statutory factor. And Midjourney does not challenge the Order's rulings on the first three factors: its motion never discusses the second or third factors, and it does not argue with the Order's rejection of Midjourney's transformativeness and public-benefits theories. *See generally* Mot.; Order at 11–15.

Midjourney speculates and argues that, if Plaintiffs "are themselves training generative AI models on third-party copyrighted works, scraping the internet, and investing in tools that do the same," that would serve as "powerful evidence that the *relevant industry considers* such conduct *to be fair use*." Order at 18. But the question of what participants in the "relevant industry" "consider[] to be fair use" is irrelevant. *See id*. "Fair use is a *legal question* to be determined *by the court*[,] not by alleged industry practice." *Meeropol v. Nizer*, 417 F. Supp. 1201, 1210 (S.D.N.Y. 1976), *rev'd on other grounds*, 560 F.2d 1061 (2d Cir. 1977) (emphasis added); *see also Maxtone-Graham v. Burtchaell*, 631 F. Supp. 1432, 1436 (S.D.N.Y. 1986) (rejecting plaintiff's argument that fair use should be decided based on what industry participants consider to be fair, holding that "[s]ince the doctrine of fair use is a legal doctrine having Constitutional implications, it cannot be subject to definition or restriction as a result of any such trade custom or practice, no matter how long continued. Accordingly, even if such a custom were shown to exist industry wide, and it has not been, it could have no legal force.").

PLAINTIFFS' OPPOSITION TO MOTION FOR REVIEW
CASE NO. 2:25-cv-05275-JAK-AJR

For this reason, courts consistently refuse to find fair use based on evidence from an alleged infringer that other participants in their industry are doing the same thing. *See Sedlik v. Drachenberg*, 2022 WL 17886029, at *4–5 (C.D. Cal. June 27, 2022) (excluding as inadmissible expert testimony that the industry custom is for tattoo artists to copy works without a license). As Magistrate Judge Richlin explained, this so-called "everybody else is doing it" theory cannot support a fair use defense. Order at 18–19. His Order cites to *Bellsouth Advert. & Pub. Corp. v. Donnelley Info. Publ'g, Inc.*, in which the court rejected the defendant's reliance on industry practice as establishing fair use and called the argument "analogous to that of a driver stopped for speeding" who claims that "everybody drives over fifty-five." *Id*. (citing 719 F. Supp. 1551, 1561 (S.D. Fla. 1988)). As that court explained: "[j]ust as widespread abuse of speed limits is irrelevant to the crime of speeding, industrial piracy of directories, even if widespread, should not be probative of whether such piracy is a fair use." *Id*.

Magistrate Judge Richlin found this rationale consistent with the recent ruling in *New York Times Co. v. Microsoft Corp.*, in which the district court denied the defendant's near-identical attempt to get a broad scope of internal AI-related documents from the plaintiff. Order at 18–19 (citing *New York Times*, 757 F. Supp. 3d at 599). As the *New York Times* court explained, "[t]he broad scope of document production sought here is simply not relevant to Defendant's purported fair use defense," reasoning, by way of example, that "if a copyright holder sued a video game manufacturer for copyright infringement, the copyright holder might be required to produce documents relating to their interactions with that video game manufacturer," but not documents "concerning the copyright holder's employees' gaming history, statements about video games generally, or even their licensing of different content to other video game manufacturers." 757 F. Supp. 3d at 599. Magistrate Judge Richlin found that reasoning "highly persuasive and applicable here" when he limited Midjourney's requests to AI activities related to Midjourney, or intended for consumers. Order at 19.

PLAINTIFFS' OPPOSITION TO MOTION FOR REVIEW
CASE NO. 2:25-cv-05275-JAK-AJR

Magistrate Judge Richlin acknowledged a limited evidentiary role that industry custom may sometimes play in certain fair use contexts. *See id.* at 18 ("[I]ndustry custom and practice *may* be relevant to the analysis of fair use in a particular case") (emphasis in original). This can occur, for example, where a *defendant's* understanding of industry custom and practice may show their willful state of mind in departing from industry norms with their allegedly infringing conduct. *See, e.g., Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1203 & n.10 (Fed. Cir. 2018) (jury instructed "[i]n evaluating the extent to which [defendant] acted in good faith or not," it may consider, "the extent to which [defendant] relied upon or contravened any recognized [industry] practices"). Magistrate Judge Richlin's Order addressed *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006)—Midjourney's key case to support the relevance of industry custom to fair use (Mot. at 9)—by expressly qualifying the relied-upon statement as *dicta*. *See* Order at 16–17 (citing *Wall Data*, 447 F.3d at 778 (commenting that "fair use is appropriate where a reasonable copyright owner would have consented to the use, *i.e.*, where the custom or public policy at the time would have defined the use as reasonable")). As Magistrate Judge Richlin explained, the relevant language "is *dicta* because the Ninth Circuit ultimately held that the defendant's challenged use was not fair use as a matter of law." Order at 16–17 (holding that "mere *dicta*" has "no binding or precedential impact").

The industry custom contemplated in *Wall Data*'s *dicta* went to whether the ***defendant's*** use of the ***plaintiff's*** work constituted fair use. *See generally Wall Data*, 447 F.3d at 778. This is the proper subject of all fair use inquiries. *See* 17 U.S.C. § 107 (the fair use factors "determin[e] whether the use made of *a work*" in a "*particular case*" is fair use) (emphases added). Here, Midjourney has confused the relevant inquiry. Midjourney argues that Plaintiffs' conduct is relevant to industry custom. Not so. The fair use inquiry is limited to *Midjourney's use* of *Plaintiffs' works*, not Plaintiffs' conduct toward others.

The other decisions Midjourney cites on the subject of industry custom do not support a finding that Plaintiffs' theoretical conduct toward third parties is relevant to fair use. *See* Mot. at 12–13. For example, *Cisco Systems, Inc. v. Arista Networks, Inc.*,

concerned evidence of the customary use of the plaintiff's *own asserted work*, not an inquiry into the plaintiff's conduct toward strangers to the case. 2016 WL 11752975, at *2 (N.D. Cal. Nov. 16, 2016). And in *Tween Brands Inv., LLC v. Bluestar All., LLC*, the court reserved the question of fair use for a later "dispositive motion," noting that the parties "did not devote extensive briefing" to whether the requested industry-custom documents could inform the fair use analysis "as a matter of law." 2016 WL 5216632, at *5–6 (S.D. Ohio Sept. 22, 2016). Moreover, the *Tween* court's comment on the relevance of the requested discovery rested solely on the "intuitive appeal" of the "plain meaning of the word 'fair'" rather than on any statutory fair use factor. *Id*. Section 107 directs that fair use be assessed under the four statutory factors, not a court's general sense of fairness. 17 U.S.C. § 107.

Midjourney's attempt to establish an "industry custom and practice" surrounding the nascent practice of AI-training is also absurd. AI companies began training the image and video generative AI models now available to consumers only within the past few years, *see* Dkt. 1 ¶¶ 74–75, and, in response, copyright holders have unleashed a tsunami of lawsuits seeking to enjoin the unlawful infringement. The use of third-party content to train generative AI is the *opposite* of any accepted industry custom. Indeed, Midjourney makes this very point to the Court when it emphasizes that "fair use in the context of generative AI copyright cases is an unsettled area of law." Mot. at 9. Moreover, if any industry participant had knowledge of existing and established "customs and practices" regarding the unauthorized use of content to train AI models, it would be Midjourney, not Plaintiffs. If Midjourney copied Plaintiffs' works in reliance on an industry custom, then Midjourney already holds whatever evidence of that custom it supposedly relied upon; it does not need discovery from Plaintiffs to establish what Midjourney itself understood the custom to be.

Midjourney's related market harm theory fares no better. According to Midjourney, if Plaintiffs train AI models in-house on unlicensed third-party data, that would show both that no market exists for licensing works to train AI and that Plaintiffs do not believe unpaid training causes market harm. Mot. at 11. But the fourth factor asks about the market for Plaintiffs' works, not the works of strangers, and Plaintiffs' hypothetical uses of

unidentified third parties' content say nothing about the market for licensing the asserted works. *See In re OpenAI*, 2025 WL 1652110, at *4 (explaining that the fourth factor looks to "the effect of the defendant's copying on the potential market for the *thing copied*," and that "the potential market is the market for *The Times*' works, not the market for generative AI generally") (emphasis in original). Midjourney's own exhibit defeats its premise: the announced agreement to bring Disney characters to OpenAI's Sora service (Dkt. 55-9) is an *authorized* use of the asserted works in a generative AI service intended for consumers. That agreement is direct evidence that the licensing market Midjourney claims does not exist in fact exists, and it falls squarely within the scope of documents Plaintiffs have agreed to produce. Order at 22.

As the Magistrate Judge ruled, there is simply no relevant basis to allow Midjourney wide-ranging discovery into documents and information regarding Plaintiffs' internal AI usage that is *not* intended for consumers. Order at 22–24. Midjourney criticizes this ruling from Magistrate Judge Richlin as "unexplained line-drawing" that rests on "pure *ipse dixit*." Mot. at 10–11. But the line drawn by Magistrate Judge Richlin could not be clearer: Midjourney is operating a commercial AI service intended for consumers; therefore the only AI use that is relevant to the statutory fair use factor of market harm is whether Plaintiffs are using their works for similar AI services intended for consumers.

Nor will the scope of production set by Magistrate Judge Richlin allow for "cherry-pick[ing]" of documents by Plaintiffs, as Midjourney suggests. Mot. at 10. Midjourney argues this limitation will let Plaintiffs choose "only those documents they believe support their market harm claims." *Id*. But that is not true. Neither Plaintiffs nor Magistrate Judge Richlin has limited Plaintiffs' production of market harm documents to those that are helpful to Plaintiffs. The document production does not exclude "unfavorable" evidence; it excludes irrelevant evidence.

Finally, Midjourney's complaint that the "consumer-facing" limitation is "impractical and difficult to fairly administer" criticizes a label that is not part of the Magistrate Judge's Order. Mot. at 13. The Order's operative standard is "intended for

consumers," a boundary that turns on the ultimate purpose of the activity at issue (Order at 22–24, 30–31); the phrase "consumer-facing" appears in the Order only once, in a quotation of the briefing below (*id*. at 16).

In short, the standard explained in Magistrate Judge Richlin's Order is clearly drawn and justified with well-reasoned analysis. *See Rutherford v. Palo Verde Health Care Dist.*, 2014 WL 12632904, at *1–3 (C.D. Cal. Dec. 1, 2014) (Kronstadt, J.) (denying motion for review of magistrate judge's order and recognizing district courts have "broad discretion to determine relevancy for discovery purposes.") (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

**B.    The Order Correctly Declined to Compel Discovery Into Plaintiffs' AI Activity Based on an Unclean Hands Theory.**

Midjourney's argument that the requested discovery is relevant to a defense of unclean hands merely repackages the same argument it makes for industry custom: that if Plaintiffs' internal AI practices have infringed the copyrights of unnamed third parties, that supposed infringement would somehow excuse Midjourney's infringement of Plaintiffs' works. Mot. at 18–19. Magistrate Judge Richlin recognized Midjourney's attempt to conflate industry custom and unclean hands: "Defendant's attempt to show that Plaintiffs engaged in the very conduct they are challenging here is really an attempt to establish the equitable defense of unclean hands . . . ." Order at 19. Midjourney argues at length about the appropriate test for unclean hands, asserting that Magistrate Judge Richlin applied the wrong test. Mot. at 15–21. It is Midjourney who is wrong on the applicable test. In any event, the evidence sought by Midjourney—whether Plaintiffs have infringed some unknown third parties' copyrights—is irrelevant to unclean hands under either test.

When considering relevance, Magistrate Judge Richlin applied the unclean hands test that courts have adopted in *"the context of copyright infringement."* Order at 19 (emphasis added). As noted in the Order, the defense of unclean hands is "'recognized only rarely'" in copyright cases in the Ninth Circuit and only where the plaintiff's transgression "'is of *serious proportions* and *relates directly* to the subject matter of the infringement

action.'" Order at 19–20 (emphasis added) (quoting *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009) (citing examples such as where "plaintiff misused the process of the courts by falsifying a court order or evidence, or by misrepresenting the scope of his copyright")). Consistent with this Ninth Circuit authority arising in the copyright context, Magistrate Judge Richlin found that "'the alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has *personally been injured* by the plaintiff's conduct.'" Order at 20 (emphasis added) (quoting *Dream Games*, 561 F.3d at 990).[1]

Magistrate Judge Richlin properly applied this "injury" requirement when assessing relevancy to unclean hands in a copyright case. Order at 19–22. He adopted the formulation in *Grokster*, 518 F. Supp. 2d at 1223, as "more consistent with the Ninth Circuit's guidance . . . than the two-element test articulated in *POM Wonderful*," which is a trademark and false advertising case that "did not involve claims under the Copyright Act." Order at 19–21 (discussing *POM Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016)).

Midjourney argues the Magistrate Judge supposedly ignored a "wall of precedent" applying a two-part test, but no binding authority applies the two-part test in a copyright case, and none involved an unclean hands theory premised on a plaintiff's supposed infringement of third parties' works. Mot. at 15–17. Moreover, Midjourney conveniently ignores the wall of authority within this Circuit adopting the injury requirement in copyright cases. *See, e.g.*, *Interscope Records*, 2010 WL 11505708, at *14 (requiring

---

[1] Midjourney's suggestion that *Dream Games* "merely quot[ed]" a principle from a Fifth Circuit obscenity case (Mot. at 17) ignores that *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979), is a foundational unclean hands authority that courts in this Circuit have applied in copyright cases for decades. *See, e.g.*, *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127, 1138 (N.D. Cal. 1986) (rejecting unclean hands defense where the defendant was not injured by the plaintiff's alleged infringement of a third party's copyright); *Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, at *14 (C.D. Cal. June 28, 2010); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1224 (C.D. Cal. 2007).

wrongful conduct personally injured defendant for unclean hands defense to copyright claim); *Survivor Prods. LLC v. Fox Broad. Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001) (same); *Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 WL 6892097, at *1, 11 (C.D. Cal. Aug. 11, 2016) (same); *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1038 (S.D. Cal. 2018) (same); *Niantic, Inc. v. Global++*, 2020 WL 1548465, at *10 (N.D. Cal. Jan. 30, 2020) (same); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 2311296, at *1–2 (N.D. Cal. May 26, 2017) (same); *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1201 (D. Nev. 2020) (same); *Benke v. Agency*, 2014 WL 12577405, at *1, 12 n.12 (C.D. Cal. Jan. 15, 2014); *Broderbund*, 648 F. Supp. at 1138 (same). This standard has been endorsed by the Ninth Circuit and adopted by the leading copyright treatise. *See Dream Games*, 561 F.3d at 990; 4 Nimmer on Copyright § 13.09 (2026) (citing the requirement that the defendant "has been personally injured"). As explained by the Ninth Circuit and in Professor Nimmer's treatise: "[t]he maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" *Dream Games*, 561 F.3d at 990 (citation omitted); 4 Nimmer on Copyright § 13.09 (2026). At most, Midjourney has identified a division among the district courts, and a magistrate judge's adoption of the formulation "more consistent with the Ninth Circuit's guidance" (Order at 20), is neither clearly erroneous nor contrary to law.

In any event, it does not matter whether the two-part or three-part test for unclean hands applies, because Midjourney's relevance theory fails under both. The two-part standard requires that Plaintiffs' alleged misconduct "directly relate" to the subject matter of the lawsuit, but that is *not* the case here. Midjourney's speculation that Plaintiffs may be infringing non-parties' content does not "directly relate" to the complaints' allegations that *Midjourney* is infringing *Plaintiffs' specific works placed at issue. See, e.g., Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) (the "alleged misconduct [must] *relate directly* to the transaction *concerning which the complaint is made*")

(emphasis added) (citation omitted); *Export Dev. Canada v. E.S.E. Elecs.*, 2017 WL 3868795, at \*18 (C.D. Cal. Sept. 5, 2017) ("The Supreme Court explained that unclean hands applies only where the 'unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'") (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)).

Finally, Midjourney is wrong when it suggests Magistrate Judge Richlin engaged in an improper merits-based assessment of the unclean hands defense when addressing the relevance of Midjourney's requests. Mot. at 19–21. Rather, the Magistrate Judge limited the scope of Midjourney's requests because they seek irrelevant information that exceeds the boundaries of allowable discovery under Rule 26. Even if the requested documents were to show what Midjourney wants them to show (i.e., that Plaintiffs are infringing third parties' content), this evidence would *still* be irrelevant to any viable unclean hands theory. Order at 21 & n.4. *Mattel, Inc. v. MGA Ent., Inc.*, 2010 WL 11464001 (C.D. Cal. Oct. 28, 2010), on which Midjourney relies (Mot. at 20), proves the point: the Order distinguished it because the discovery there "was focused on conduct by the plaintiff that would have injured the defendant." Order at 21. Midjourney cites no authority recognizing an unclean hands defense based on a plaintiff's supposed copyright infringement of some unspecified third parties' works, because no such authority exists. *See, e.g., King.com Ltd. v. 6 Waves, LLC*, 2014 WL 12704998, at \*1–2 (N.D. Cal. July 11, 2014) (striking unclean hands defense alleging that plaintiff had a "history" of infringing the copyrights of third parties in "exactly" the manner it alleged defendants had infringed, "as such allegations are not 'directly related to the merits of the controversy between the parties'"); *Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*, 55 F. Supp. 2d 1113, 1122–24 (D. Nev. 1999) (rejecting a defendant's unclean hands defense that was based on plaintiffs' alleged infringement of a work not at issue in the litigation, holding this was unrelated to "whether [p]laintiffs may protect their rights to [the asserted work]").

In short, the requested discovery is not relevant to any permissible unclean hands defense. Midjourney has never argued that it was injured by Plaintiffs' alleged use of

generative AI, and its theory that Plaintiffs' supposed infringement of unidentified third parties' works "relates directly" to the subject matter of this action fails as a matter of law, because misconduct aimed at strangers to this litigation does not relate to Midjourney's infringement of the works at issue. *See Dream Games*, 561 F.3d at 990–91; *King.com*, 2014 WL 12704998, at *1–2; *see generally* Dkt. 20 at 39; Dkt. 55-1 at 7–8; Mot. at 15–21. Magistrate Judge Richlin was correct to deny the discovery.

> **C.      The Magistrate Judge's Assessment of Burden Provides an Independent Reason His Order Must Stand.**

Magistrate Judge Richlin held that Midjourney's requested discovery into Plaintiffs' internal AI practices not intended for consumers is irrelevant, and he independently found that "even if there were some marginal relevance, that marginal relevance would be easily outweighed by the voluminous scope of the requests," such that "the requests are not proportional to the needs of the case." Order at 22–23.[2]

This determination mirrors the conclusion reached on a materially identical request in *UMG Recordings*, where the court denied an AI-music defendant's discovery into the plaintiff record labels' own use and development of AI products, finding the prospect of discoverable documents "speculative," the relevance "tangential," and holding that "any potential evidentiary value is outweighed by the undue burden of identifying and collecting such information, not to mention the unnecessary intrusion into ongoing business activities of a potential competitor." 2026 WL 936049, at *2–5.

Midjourney tells the Court that, in reaching his conclusion regarding proportionality, the Magistrate Judge considered "no concrete evidence of burden" beyond a "cursory assertion." Mot. at 14. In fact, the Order expressly considered the following.

---

[2] Midjourney seizes on a transitional sentence observing that its requests were "potentially relevant" to three subjects it had briefed (Mot. at 7, 9, 19 n.8), but the operative holdings are explicit: discovery into AI activity *not intended for consumers* is "not relevant to market harm" (Order at 22), "would not provide evidence of industry customs and practices," (*id.* at 23), and is "not relevant to the defense of unclean hands" (*id.* at 21).

- *The sweep of the requests*. Midjourney's nine requests reach Plaintiffs' development, use, training, testing, evaluation, and policies concerning any generative AI tool, for nearly any purpose, whether or not it ever reaches a consumer. Order at 3–7, 18–19, 22–25.

- *The targets of the requests*. Plaintiffs comprise a dozen distinct corporate entities, spanning film studios, television networks, animation houses, and franchise operations, with tens of thousands of employees among them. Dkt. 60 at 7.

- *What compliance would require*. Midjourney's requests, as written, would require surveying every employee to identify any instance in which any employee of any Plaintiff entity ever used *any* image- or video-generating AI service for any purpose, even if the internal use never reached a consumer. Dkt. 60 at 7.

Magistrate Judge Richlin's Order reflects a careful, request-by-request assessment—not the "conclusory remark" that Midjourney misleadingly suggests. Mot. at 14. The Order measured each request against Plaintiffs' written responses, expanded Plaintiffs' agreed-upon production where it found the line drawn too narrowly, and denied other requests as duplicative of productions already ordered. Order at 22–25 (citing Dkt. 55-4 at 3, 6, 8, 12–13). Midjourney also criticizes Magistrate Judge Richlin's Order because it did not march through the entirety of Rule 26(b)(1)'s six-factor assessment of proportionality. Mot. at 14. But Midjourney never even bothered to address, let alone establish, any of those factors in its underlying briefing before Magistrate Judge Richlin; its entire discussion of burden below was a single empty and conclusory assurance that any burden can supposedly "be resolved through targeted investigation and routine negotiation of custodians and search terms." Dkt. 55-1 at 8. There is nothing routine about the sweeping discovery sought here.

Midjourney now—for the first time—attempts (barely) to address the six-part factual inquiry, and criticizes Plaintiffs for failing to make a factual showing regarding "custodian or document totals"—suggesting that Plaintiffs were expected to undertake a systematic review of the precise scope of the universe of documents that Plaintiffs have always maintained (and Magistrate Judge Richlin ultimately agreed) are irrelevant. Mot. at 14.

Midjourney's new factual arguments are without merit and, regardless, cannot be raised for the first time on review. *In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, 2020 WL 6504416, at *5–6 (S.D. Cal. Nov. 5, 2020) (the Court's function on a motion for review of a magistrate judge's discovery order is to decide "'whether the Magistrate Judge, *based on the evidence and information before him*, rendered a decision that was clearly erroneous or contrary to law.'") (citations omitted).

Weighing relevance against burden is at the core of the discretionary inquiry Magistrate Judge Richlin performed based on the facts before him, and Midjourney's disagreement with his balancing is not reversible error. *See, e.g.*, *Avila v. Ford Motor Co.*, 680 F. Supp. 3d 1125, 1129 (N.D. Cal. 2023) ("The relevance and proportionality requirements of [Fed. R. Civ. P.] 26 are necessarily very fact specific.").

## IV.    Magistrate Judge Richlin Correctly Held That the Not-At-Issue Prompts and Outputs Are Irrelevant and Protected Opinion Work Product.

Midjourney's RFP No. 16 seeks "all . . . prompts submitted by [Plaintiffs] to Midjourney in connection with attempts to generate each image shown in the [operative complaints] (including *prompts that resulted in images not shown in the [operative complaints]*) and all outputs generated in response to such prompts." Dkt. 55-4 at 8–9 (emphasis added). Plaintiffs agreed to produce documents sufficient to identify the prompts and the "side-by-side outputs contemporaneously generated in response to such prompts" with respect to the infringing images in the complaints. *Id.* The dispute therefore concerns only the prompts and outputs for images Plaintiffs are ***not*** suing over (the "not-at-issue" prompts and outputs). Mot. at 21–22. Therefore, what RFP No. 16 seeks is counsel's selection of which investigative results to plead and which to leave out. That is core opinion work product. It is also irrelevant: Plaintiffs are not suing over those outputs. The Magistrate Judge correctly denied RFP No. 16 on two independent grounds: the prompts and outputs are protected opinion work product, and, in any event, they are irrelevant.

### A.    The Not-At-Issue Prompts and Outputs Are Protected Work Product.

Magistrate Judge Richlin "easily conclude[d]" that the not-at-issue prompts and outputs "qualif[y] for protection under the work-product doctrine." Order at 26. RFP No. 16 "literally seeks" exactly those materials—prompts and outputs submitted "'in connection with attempts to generate each image shown in the [operative complaints].'" Order at 26–27 (quoting Dkt. 55-4 at 8). That is "classic work product," representing "Plaintiffs' pre-suit investigation and efforts to prepare the operative complaints." *Id.* at 27. Because "the choice of which images to feature . . . is obviously strategic," compelling their production would "draw a roadmap as to counsel's strategic choices in selecting images for the operative complaints." *Id*. at 27–28.

In so holding, the Magistrate Judge agreed with *every court* to have confronted this *same question*; each has held that a copyright plaintiff's investigative prompts and outputs are protected work product. *See Tremblay v. OpenAI, Inc.*, 2024 WL 3748003, at *1–2 (N.D. Cal. Aug. 8, 2024) **(*"[Q]ueries crafted by counsel . . . contain counsel's mental impressions and opinions about how to interrogate ChatGPT*,"** and were thus opinion, not fact, work product) (emphasis added); *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 3677935, at *2, 4 (N.D. Cal. Dec. 18, 2025) ("***[t]he prompts and related settings themselves are opinion work-product"***) (emphasis added); *UMG Recordings*, 2026 WL 936049, at *3–4 (***investigators' "prompting efforts are plainly protected work product,"*** as "information-gathering efforts in anticipation of litigation") (emphasis added). Indeed, the one magistrate judge to rule to the contrary was reversed. In *Tremblay*, the magistrate judge initially compelled production of the plaintiffs' pre-suit prompts and outputs; the district court reversed the magistrate judge under the Rule 72(a) standard, rejecting the very arguments Midjourney now advances. 2024 WL 3748003, at *1–3.

As explained in Magistrate Judge Richlin's Order, the "opinion work product" put at issue in Midjourney's motion "'is virtually undiscoverable.'" Order at 27 (quoting *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014)); *see also U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 563 (C.D. Cal. 2003) (quoted in the Order)

("Where the selection, organization, and characterization of facts reveals the theories, opinions, or mental impressions of a party or the party's representative, that material qualifies as opinion work product."). However, Midjourney asserts this finding "was wrong," arguing that the not-at-issue prompts and outputs are not "opinion work product," but rather are "at most, 'fact' work product" (Mot. at 21–22), the production of which is subject to a lesser showing of "substantial need" and an inability "without undue hardship" to obtain the "substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

According to Midjourney, the not-at-issue prompts are mere "factual input[s]," the disclosure of which would not require Plaintiffs or their counsel to reveal "any attorney mental impressions or legal opinions—even if the outputs of those prompts did not ultimately land in the pleadings." Mot. at 22. But the authority Midjourney cites for its "fact work product" argument, *SEC v. Pulier*, actually supports Plaintiffs' position that the not-at-issue prompts and outputs are "opinion work product." 2020 WL 8102053, at *3 (C.D. Cal. Nov. 13, 2020) (cited by Mot. at 22). The court in *Pulier* held that attorney interview notes were opinion work product because they "include both questions and answers to questions that are crafted and asked by attorneys," and the materials "reflect what the attorneys thought [was] important." *Id.* at *7.

Like the notes at issue in *Pulier*, a prompt is a crafted query. By targeting only the prompts and outputs that do not appear in the operative complaints, RFP No. 16 asks Plaintiffs to reconstruct counsel's selection of what to include in, and what to omit from, their pleadings. That choice is quintessential opinion work product; the request is no different from a demand for every draft and redline of the complaints themselves. Magistrate Judge Richlin recognized as much at the parties' first informal discovery conference, asking Midjourney's counsel: "aren't you literally asking for what they chose strategically not to include?" Dkt. 56 at 68:2–3. And when Midjourney's counsel argued that the images in the complaint "were cherry-picked," the Court responded that "a complaint is cherry-picked; right? . . . [T]hat's good advocacy," and that Midjourney was

"asking for their strategic decision-making of what they chose not to include. That's . . . mental-impression work product. That's strategy." *Id.* at 68:19–69:2.

Finally, even if the not-at-issue prompts and outputs were "fact work product," that would not alter the outcome here, because fact work product is discoverable only on a showing of "substantial need." Fed. R. Civ. P. 26(b)(3)(A)(ii). As explained below, the not-at-issue prompts and outputs are irrelevant, and Midjourney therefore cannot demonstrate any "substantial need" for them.

### B.      There Has Been No Waiver of Work Product Protection.

As noted in the Order, Midjourney "appears to recognize that RFP No. 16 clearly seeks documents and information protected by the work-product doctrine." Order at 27 (citation omitted). Midjourney therefore argued below—and re-argues here—that it should nonetheless get access to the not-at-issue prompts and outputs based on various theories by which Plaintiffs waived the work product protection. Dkt. 55-1 at 8–10; Mot. at 22–25.

*First*, Midjourney's waiver argument should be rejected out of hand because opinion work product becomes discoverable only where counsel's "mental impressions are at issue" and the "need for the material is compelling." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1125 (9th Cir. 2020). Setting aside the lack of any compelling need, there can be no waiver because counsel's mental impressions are not at issue in this case.

*Second*, Midjourney argues that Plaintiffs waived protection of the work-product doctrine by entering prompts into the Midjourney service in the first place, because Midjourney's Terms of Service make prompts and outputs public by default and grant Midjourney a license to reproduce, display, and distribute their inputs. Mot. at 22–23. Magistrate Judge Richlin rejected this argument, holding that Plaintiffs' "pre-suit investigation that included submitting prompts to Midjourney was not inconsistent with the adversary system or the purposes of the work-product doctrine." Order at 28; *see In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) (quoted in the Order) ("The purposes of the work product privilege are more complex, and they are not inconsistent with selective disclosure—even in some circumstances to an adversary."). Magistrate Judge Richlin's

conclusion was correct, and to hold otherwise would upend public policy and the federal rules, which affirmatively require counsel to conduct a reasonable pre-filing investigation to support the claims pled. *See* Fed. R. Civ. P. 11.

Midjourney next argues that Plaintiffs waived work-product protection by identifying Bruce Ward, an evidence collector for Plaintiffs, as a fact witness "likely to have discoverable information" regarding "infringing outputs," thereby placing "his investigation squarely at issue" and waiving protection over all "related information." Mot. at 23–24. Magistrate Judge Richlin rejected this too, and explained why: Ward was designated "as a mere fact witness about the non-privileged prompts and outputs that were used in the operative complaints," and "[t]he Court easily concludes that the mere fact that Plaintiffs have identified Mr. Ward as a witness with discoverable information regarding infringing outputs does not somehow put his entire investigation at issue and waive the work-product protection as to all prompts he submitted to Midjourney." Order at 29–30.

To be clear, the fact that Bruce Ward, rather than counsel, submitted the prompts in the course of his client- and attorney-directed investigation does not change the analysis. Federal Rule of Civil Procedure 26(b)(3) protects material prepared "'by or for a party or any representative acting on his behalf,'" and shields the mental impressions "'of an attorney or *other representative* of a party.'" Order at 26 (quoting Fed. R. Civ. P. 26(b)(3) Advisory Committee's Notes (1970)) (emphasis added). Ward is Plaintiffs' agent, and his investigation is an extension of counsel's litigation preparation. RFP No. 16 targets counsel's judgment about which results to feature in the complaints, and that judgment remains protected regardless of whose hands typed the prompts.

Midjourney tries to salvage its argument regarding Mr. Ward by pointing to Plaintiffs' more recent disclosures, in which Mr. Ward generated additional infringing images on a newer version of Midjourney's model. Mot. at 25. However, none of Midjourney's arguments regarding these recent disclosures were before the Magistrate Judge. The interrogatory responses Midjourney references were served June 23, eight days after the Order. *Id.* (citing Dkt. 112-4). Midjourney likewise discusses recent briefing

related to this issue that was never part of the record before the Magistrate Judge. *Id.* (citing Dkt. 87-1). Review is confined to the record before the magistrate judge, and material that was never presented below cannot now be used to show that Magistrate Judge Richlin's Order was clearly erroneous. *See Midland*, 2020 WL 6504416, at *5–6.

Finally, Midjourney cites Federal Rule of Evidence 502(a) to argue that Plaintiffs "disclose[d] a curated selection of AI prompts and outputs in their Complaints" and that "fairness requires" access to the rest. Mot. at 24. FRE 502(a) treats an intentional disclosure of work product as waiving protection over undisclosed material only where the disclosed and undisclosed material "concern the same subject matter" and "ought in fairness to be considered together." Fed. R. Evid. 502(a). However, as the Magistrate Judge ruled, Plaintiffs produced the prompts and outputs for the images they put at issue, "so there is no fairness issue as to whether evidence proffered by Plaintiffs was created by them." Order at 29. Featuring a curated subset in a pleading is not a selective disclosure of the material withheld. See *Tremblay*, 2024 WL 3748003, at *3 (it was "improper to extend the scope of the waiver to opinion work product not disclosed in the operative complaint"). The Magistrate Judge explained that Midjourney's position "would virtually eliminate the protection for attorney work product in the context of any court filing because every court filing inherently reflects strategic choices of counsel in what facts to include." Order at 29.

In sum, the materials Midjourney demands are "core opinion work product"; Midjourney established neither waiver nor that counsel's "'mental impressions are at issue . . . and the need for the material is compelling.'" *Id.* at 30 (quoting *Sanmina Corp.*, 968 F.3d at 1125). The Court should affirm the Magistrate Judge's ruling.

## C.    The Not-At-Issue Prompts and Outputs Are Not Relevant.

Magistrate Judge Richlin's Order rests on a second, independent ground: the prompts and outputs for images Plaintiffs are not suing over are not relevant to any claims or defenses in this action. Magistrate Judge Richlin considered Midjourney's relevance arguments and rejected them. Order at 25–26.

Midjourney argues the not-at-issue prompts and outputs are relevant because withholding them "would allow Plaintiffs to artificially inflate the universe of allegedly infringing outputs, distort the damages calculus, or misrepresent their own engineered images as examples of third-party infringement." *Id.* at 25 (citing Dkt. 55-1 at 9). The Magistrate Judge rejected that concern, finding that the volume of such prompts is "infinitesimal compared to the true scope of this case which involves *tens of millions* of subscriber prompts associated with Plaintiffs' copyrighted works." *Id.* (citing Dkt. 60 at 13) (emphasis added). A vanishingly small fraction cannot meaningfully distort the damages calculus, and Midjourney offers no evidence to the contrary. *Id.*

Midjourney also claims it needs to know every prompt that Plaintiffs entered to test the Midjourney service, and every resulting output because this is "the only way for Midjourney to fully and fairly test and counter Plaintiffs' claims about third-party infringement." Mot. at 22. That is absurd. Midjourney does not need discovery on prompts and outputs from Plaintiffs, or from anyone. Midjourney owns the services at issue. It knows the works and characters Plaintiffs have asserted, and it is free to run whatever prompts it wants and to study every resulting output. Midjourney also already possesses every prompt ever submitted to its service and every output its service returned.

Moreover, Midjourney's "vetting" theory of relevance fails on the record. Plaintiffs have agreed to produce documents sufficient to identify the prompts used to create the images shown in the operative complaints, as well as the side-by-side outputs contemporaneously generated in response to those prompts. Order at 25. Midjourney's speculation that Plaintiffs might "generat[e] many thousands of images on Midjourney and show[] them to the jury" (Mot. at 21) is unfounded because Plaintiffs will produce the prompts and side-by-side outputs for every image they place at issue (Order at 25).

In short, RFP No. 16 seeks work product that is not relevant; it was properly denied.

## V.    Conclusion.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Midjourney's Motion for Review.

Dated:  July 13, 2026                    JENNER & BLOCK LLP


By:   /s/ *David R. Singer*
                                            David R. Singer
                                            Julie A. Shepard
                                            Lauren M. Greene
                                            Andrew G. Sullivan
                                            Kara V. Brandeisky
                                            Zachary A. Marino

                                         *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO MOTION FOR REVIEW
CASE NO. 2:25-cv-05275-JAK-AJR

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief complies with the Standing Order of this Court.


Dated:  July 13, 2026                    /s/ *David R. Singer*

                                         David R. Singer

27