COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

JOHN PAUL OLEKSIUK (283396)
(jpo@cooley.com)
STEPHANIE SCHUYLER (PRO HAC VICE)
(sschuyler@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Counsel for Defendant Midjourney, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DISNEY ENTERPRISES, INC., et al.; WARNER BROS. ENTERTAINMENT, INC., et al.,

Plaintiffs,

v.

MIDJOURNEY, INC., a Delaware corporation,

Defendant.

ALL CASES

Case No. 2:25-cv-05275-JAK-AJR

Consolidated for all purposes with Case No. 2:25-cv-08376-JAK-E

**DEFENDANT MIDJOURNEY INC.'S REPLY IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER PURSUANT TO FRCP 72(A) AND LOCAL RULE 72-2.1**

Date: August 17, 2026
Time: 8:30 a.m.
Court: Courtroom 10C
Judge: Hon. John A. Kronstadt

Date Action Filed: June 11, 2025

## I. INTRODUCTION

Three of the largest entertainment companies in the world are suing Midjourney—a company with fewer than 90 employees—for copyright infringement of over 400 works, seeking many millions of dollars in damages. To defend itself, Midjourney seeks documents regarding Plaintiffs' use and development of generative AI trained on copyrighted works that Plaintiffs do not own.

Discovery is freely allowed if relevant and proportional. Disregarding that bedrock principle, the Order applied an incorrect and onerous legal analysis for two bases of relevance and imposed a limiting restriction that is unworkable and wrong—all without a proper showing of burden from Plaintiffs. That is reversible error. At issue is critical evidence going to the core of Plaintiffs' cries of wrongdoing. The factfinder should hear whether Disney, through itself or others, has condoned or downloaded the same types of image data sets and web scrapes that it says are infringing when used by Midjourney. The factfinder must know whether Warner Bros. considers it industry custom to use third-party images to train an AI model. Whether or not the model or tool is "intended for consumers" has no bearing on its relevance. The accused act, which is the unauthorized downloading or use of copyrighted material, is the same, and if Plaintiffs' theory is correct, copyright infringement lies equally for both whether or not the intended use is consumer-facing.

Plaintiffs' Opposition merely confirms their discovery gamesmanship. They seek to curate a cherry-picked record, support their flawed claims based on incomplete facts, and then deprive Midjourney of the evidence needed to defend itself. The Order mistakenly endorsed that maneuver. But this Court should not.

## II. THE OPPOSITION CONFIRMS THAT THE ORDER'S "CONSUMER-FACING" LIMITATION IS LEGALLY INDEFENSIBLE

The Order's imposition of an artificial "consumer-facing" restriction was legal error. Mot. 9-15. Plaintiffs spend pages trying to reverse-engineer a justification for that limitation. But they do not cite a single case that expressly supports it. Nor do

Plaintiffs explain why ***consumer***-facing AI use and information is relevant, but ***non-consumer***-facing AI information and use is not. Both involve the same predicate act Plaintiffs put at issue in this case: downloading and copying third-party images without license to train an AI model. Instead of addressing these flaws in the Order, Plaintiffs advance scattershot arguments that miss the mark.

To begin, Plaintiffs call "industry custom and practice" a "non-existent" factor that cannot justify Midjourney's requested discovery. Opp. 8. Not even the Order adopted that extreme position. Dkt. 88 at 16-17. Rightly so. The Supreme Court has instructed courts to "avoid rigid application of the copyright statute" where, as here, it would "stifle the very creativity the law is designed to foster." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021) (citation omitted). In line with that guidance, the Ninth Circuit has confirmed that industry custom and practice are relevant to the fair use inquiry. *Wall Data, Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006).

Plaintiffs dismiss *Wall Data*'s endorsement of industry custom as "dicta" and cite out-of-Circuit cases from half a century ago. *See* Opp. 8, 10.[1] But many district courts in this Circuit have relied on *Wall Data*'s statement that industry custom is relevant to fair use. *See Oracle Am. Inc. v. Google, Inc.*, 2016 WL 1698107, at *2 (N.D. Cal. Apr. 28, 2016) (noting that the Ninth Circuit "made the statement regarding the relevance of custom and [Plaintiff] is wrong to ask this Court to ignore the statement"); *Cisco Sys. Inc. v. Arista Networks, Inc.*, 2016 WL 11752975, at *2 (N.D. Cal. Nov. 16, 2016) (citing to *Wall Data* and noting that "the evidence of widespread use of [a text-based interface] throughout the industry is relevant to this case, such as on the issues of fair use and estoppel"). *Wall Data* is also consistent with the flexible approach Congress intended the courts to take when applying the fair use doctrine. 447 F.3d at 778 (noting the relevance of "custom or public policy"

[1] Plaintiffs' remaining case, *Sedlick v. Drachenberg*, fails to help, as it concerned ***admissibility***, not ***discoverability***. And ultimately, the court admitted the opinions as relevant to willfulness. 2022 WL 17886029, at *4 (C.D. Cal. June 27, 2022).

in fair use analysis, citing Subcomm. on Patents, Trademarks & Copyrights of the Sen. Comm. on the Judiciary, 86th Cong., 2d Sess., Study No. 14, Fair Use of Copyrighted Works 15 (Latman) (Comm. Print 1960)); *see also Oracle Am.*, 2016 WL 1698107, at *3 (noting the "importance of the 1960 legislative history in interpreting the 1976 Act").

Plaintiffs' efforts to sidestep Midjourney's other authorities fare no better. Opp. 10-11. For instance, Plaintiffs' narrow reading of *Cisco Systems* as solely about "the customary use of plaintiff's *own asserted work*" is mistaken. Opp. 10-11. If anything, *Cisco Systems* reinforces Midjourney's argument that Plaintiffs' own conduct with respect to use of third-party images to train AI models is highly relevant to fair use. *See* 2016 WL 11752975, at *2 (analyzing whether conduct of the type defendant allegedly engaged in was sufficiently "widespread" to make it a "*de facto* industry standard"). Plaintiffs' effort to distinguish *Tween Brands*, *Investment, LLC v. Bluestar Alliance, LLC* makes even less sense. Opp. 11 (citing 2016 WL 5216632, at *5-6 (S.D. Ohio Sep. 22, 2016)). To be sure, the district court in *Tween Brands* reserved the ultimate merits determination for a dispositive motion (which the Order should have done too), but it still granted discovery based on Rule 26's broad and forgiving standard. This Court should do the same.[2]

Plaintiffs' market harm arguments are similarly flawed. For starters, Plaintiffs merely reiterate the *ipse dixit* from the Order: namely that "Midjourney is operating a commercial AI Service intended for consumers" and so "the only AI use that is relevant to . . . market harm is whether Plaintiffs are using their works for similar AI services intended for consumers." Opp. 12. But the "use" at issue here is the *use of copyrighted works for training* (whether intended for consumers or not). And the

[2] Plaintiffs also say it is "absurd" to evaluate "industry custom and practice" because the industry is so young. But Plaintiffs (characteristically) cite zero support for their made-up requirement that an industry must be a certain age to develop customs and practices. Regardless, if the Court wanted to probe the existence (or not) of an industry custom or practice, it should compel Plaintiffs to produce the requested information that would shed light on that question.

market-harm inquiry is not so narrow: it hinges on whether that use (or widespread use of the same type, *Onan v. Databricks, Inc.*, 2026 WL 125149, at *2 (N.D. Cal. Jan. 16, 2026)) harms the market for licensing copyrighted works to train AI. Whether Plaintiffs use AI models trained on copyrighted works (or train their own AI models on such works) without paying for a license would be relevant to determining if the conduct alleged in the complaint results in market harm. *See id.* at *2-3 (ordering discovery on licensing and use of third-party content as relevant to market harm, as discovery should not be "unduly limit[ed] . . . in a manner that could foreclose fair use arguments the parties may advance" in the "novel area of the law" of AI training). For this reason, *In Re OpenAI*—a non-binding out-of-Circuit decision—does not support Plaintiffs' position, as Midjourney does not seek evidence on "the market for generative AI generally," 2025 WL 1652110, at *4 (S.D.N.Y. May 30, 2025), but rather the at-issue market for the use of Plaintiffs' works (and others like them) to train AI.

Unable to win on the law, Plaintiffs mischaracterize Midjourney's position as an "everybody is doing it" defense. That is patently false. Midjourney is merely seeking targeted information about whether Plaintiffs—some of the biggest and most influential industry players—are training their AI models using third party images (or even *one another's* images) without a license; if they are, that is probative of whether the market harm or industry custom and practice factors may support a fair use defense. If Disney or Warner Bros. developed an internal AI image storyboarding tool trained on datasets or web scrapes including unlicensed images from their co-Plaintiffs' or third-parties' works (or Midjourney's Explore page)—but never incorporated that tool in a public-facing offering—it would not be "consumer-facing" but would still bear on, *inter alia*, whether there is a market for licensing copyrighted images to train AI and whether Plaintiffs' own conduct undermines their claim that such a market was harmed. Thus, this case is not the sort of unsupported "referendum on the benefits of Gen AI" the out-of-Circuit district court found troubling in *New*

*York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 599 (S.D.N.Y. 2024).

Lastly, Plaintiffs insist that the Order's "consumer-facing" standard is workable because it turns on whether the AI is "intended for consumers." Opp. 12-13. Not so. This nebulous language raises far more questions than answers. What differentiates AI use that is intended for consumers and AI use that is not? And who gets to decide? When is that intention measured? Plaintiffs do not say, likely because, in their view, *they* get to decide their own intent. But the federal rules and principles of fairness do not permit that one-sided, unilateral approach to discovery.

## III. The Order Applied the Wrong Legal Standard for Unclean Hands

Plaintiffs' effort to defend the Order's unclean hands analysis is equally unavailing. As explained in the Motion, the Order is contrary to law in two respects.

*First*, the Order mistakenly applied a three-part test that is contrary to the weight of controlling precedent. Plaintiffs' Opposition fails to grapple with *any* authority (including several from the Ninth Circuit) in Midjourney's Motion confirming that there is no "injury" requirement for unclean hands. *See* Mot. 15-18; *see also*, *e.g.*, *Lanard Toys Ltd. v. Dimple Child LLC*, 843 Fed. App'x 894, 897 (9th Cir. 2021) ("A defense of unclean hands requires proving that the plaintiff engaged in inequitable conduct that relates to the subject matter of its claims."); *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, 2023 WL 4142969, at *2 (N.D. Cal. June 21, 2023) ("[T]he Ninth Circuit clarified that injury to the defendant is not required in order to establish a defense of unclean hands."). Instead of engaging with these cases, Plaintiffs turn to non-binding district court cases that commit the very same error made in *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007). *See* Opp. 14-15 (citing cases reciting the same three-part standard from *Grokster*). As the court in *Intamin* persuasively explained, importing the third "injury" prong is "inconsistent with controlling, Supreme Court, Federal Circuit and Ninth Circuit authority." *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1075 (C.D. Cal. 2009) (noting with disapproval *Grokster*'s reliance on

*Survivor Productions v. Fox Broadcasting*, 2001 WL 35829270 (C.D. Cal. Jun. 12, 2001), which in turn relies for the "injury" prong on a single decision from E.D. Va.).

Plaintiffs have little to say in response, except to cite (again) to *Dream Games*. But, as Plaintiffs themselves admit, *Dream Games* was merely quoting from a Fifth Circuit case about "the defense of obscenity," and so it does not override the Ninth Circuit's longstanding two-part test for unclean hands in *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)—a case that Plaintiffs tellingly do not even bother to address. And since *Dream Games*, many courts in the Ninth Circuit have correctly applied the two-part test without imposing the injury prong applied by the Order. *See* Mot. 15-18.[3]

Perhaps recognizing that they (and the Order) are wrong on the law, Plaintiffs breezily assert that Midjourney cannot even satisfy the "two-part standard" because the alleged misconduct does not "directly relate" to the subject matter of the lawsuit, which Plaintiffs characterize as the works in suit. Opp. 15-16. Plaintiffs' Complaint is not so limited. It alleges that Midjourney's alleged behavior is a "broader threat to the American motion picture industry." Compl.¶ 12; *see id.* ¶ 2 ("Midjourney's conduct . . . threatens to upend the bedrock incentives of U.S. copyright law that drive American leadership in movies, television, and other creative arts."). By their own accounts, the "subject matter" of this litigation centers on the lawfulness of using third-party images to teach AI models; whether Plaintiffs are engaging in the very same conduct they castigate as "threatening" is therefore related to that subject matter. *See POM Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) ("Plaintiff's inequitable conduct is the basis for a valid defense only if it ***relates in some way*** to the subject matter in litigation.") (emphasis added).

---

[3] Plaintiffs' quotation to Professor Nimmer's treatise is even more off base. As Nimmer explains, unclean hands applies where the wrongful act "in some measure affect[s] the equitable relations between the parties in respect of something brought before the court for adjudication." 4 Nimmer on Copyright § 13.09(B) (2026) (citation omitted). But that statement is fully consistent with the Ninth Circuit's two-part test for unclean hands and provides scant support for an "injury" requirement.

*Second*, Plaintiffs do not seriously dispute that the Order improperly conditioned discovery relevance on whether the requested documents could establish every element of the unclean hands defense. Mot. 19-21. Instead, they lean into that error, claiming that the Order was right to deem the requested documents irrelevant because Midjourney's unclean hands defense fails on the merits. Opp. 16. That is not the law. "If the requested documents bear on, or could lead to evidence that bears on, ***any*** element of the defenses or counterclaims, then under Rule 26(a)(1) they are relevant." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015) (emphasis added); *see also* Fed. R. Evid. 401(a) (evidence is relevant if it makes any "fact more or less probable"). Here, all parties agree that unclean hands requires Midjourney to show that Plaintiffs engaged in "inequitable conduct," and here it is undeniable that the requested documents would be highly probative to establishing that element—regardless of whether Midjourney *ultimately* succeeds on the merits of its unclean hands defense. The Order's failure to conduct the proper analysis and jump prematurely into the merits is fatal.

## IV. THE ORDER'S BURDEN RULING IS NOT AN INDEPENDENT BASIS TO AFFIRM

Plaintiffs argue that the Order's burden analysis is an independent basis to deny the motion to compel. Opp. 18. That argument fails. As a threshold matter, Plaintiffs' burden argument rests on the faulty premise that Midjourney bears the burden to demonstrate proportionality. Opp. 18-19. But that is not the law. On a motion to compel, the moving party carries only the "initial burden of demonstrating relevance" (which Midjourney did), after which "[t]he party who resists discovery has the burden to show discovery should not be allowed, as well as the burden of clarifying, explaining, and supporting its objections." *Ent. Studios Networks, Inc. v. McDonald's USA, LLC*, 2025 WL 1090394, at *7 (C.D. Cal. Apr. 9, 2025) (citation modified). Plaintiffs therefore had the obligation to supply "sufficient detail regarding the time, money, and procedures required to produce the requested documents." *Gold v. Kaplan*, 2021 WL 6618643, at *5 (C.D. Cal. Dec. 2, 2021).

Plaintiffs failed to discharge that obligation, despite Judge Richlin's admonition that they must "support" their burden argument "with facts" in their briefing. Dkt. 112-5 at 56. Plaintiffs themselves concede that the only "evidence" they provided was: (1) the purported breadth of the RFPs at issue (though they admit the requests relate to one topic—Plaintiffs' use and development of AI, Opp. 2); (2) there are twelve Plaintiff entities (Plaintiffs' litigation choice); and (3) speculation that searching for responsive documents would require "surveying every employee." Opp. 18. Those conclusory assertions come nowhere close to the "sufficient detail regarding the time, money, and procedures" Plaintiffs were required to provide.[4]

In short, the Order's ruling on proportionality was not supported by any evidence, did not place the burden on the appropriate party, and was clearly erroneous.

## V. THE ORDER'S WORK-PRODUCT PRIVILEGE RULING SHOULD BE REVERSED

Finally, Plaintiffs assert that the prompts and outputs generated by their agents are not relevant and are protected work product. Both points are wrong.

Relevance. The requested prompts are relevant to preventing Plaintiffs from pointing to alleged infringement in the form of images ***created by them***. Plaintiffs barely address this point, aside from their naked assertion that the ratio of images created by Plaintiffs is "vanishingly small." But that begs the question. The only evidence in the record was the denominator of that ratio—that is, the total number of prompts and outputs. Without the undisclosed prompts, there is no way to test Plaintiffs' self-serving claim about how many images they created using Midjourney, or to prevent them from claiming infringement in the form of their own outputs. Plaintiffs' threat to "produce the prompts and side-by-side outputs for every image ***they place at issue***," Opp. 25 (emphasis added), merely proves the point: the Order

[4] The sole authority Plaintiffs cite as supporting such a cursory analysis, *UMG Recordings, Inc. v. Suno, Inc.*, 2026 WL 936049 (D. Mass. Apr. 6, 2026) is an out-of-circuit magistrate judge decision that has no bearing on whether Plaintiffs made the requisite showing of "time, money, and procedures" required in this jurisdiction.

permits them to selectively show their own images as infringement while refusing to disclose the scope of those images. That double standard should not be tolerated.

Work Product. Although perhaps superficially appealing, Plaintiffs' work-product arguments miss the mark. They cite a bevy of inapposite out-of-Circuit cases, where counsel had not placed the relevant prompts at issue. *Compare UMG Recordings*, 2026 WL 936049, at *4 (prompts from "non-testifying consulting expert" protected); *Concord Music Grp. v. Anthropic PBC*, 2025 WL 3677935, at *1 (N.D. Cal. Dec. 18, 2025) (only "limited waiver" where "it was unclear what evidence [Plaintiffs] will rely on to prove" allegations) (citation modified); *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003, at *3 (N.D. Cal. Aug. 8, 2024) (ruling "counsel's mental impressions" were not "at issue"), *with infra*, 10. As the Motion explained, the prompts and outputs are not work product because they do not disclose attorney impressions or strategy. Mot. 22. But even if they were, Plaintiffs waived the protection by disclosing their investigator (who was central in developing the prompts) as a key fact witness and by agreeing to Midjourney's terms of service (granting it a license). Mot. 23. This case is thus more akin to *Concord*, where Plaintiffs "placed [their agent's] investigation at issue." 2025 WL 3677935, at *3.

Plaintiffs' argument that Midjourney must show "substantial need" to obtain fact work product, Opp. 22, misses the point. As explained in Midjourney's Motion, work-product protection was waived here, three times over. Mot. 22-24. *See Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005) ("Given the Court's finding of waiver, it need not address [substantial need].").

**1. Disclosure to Adversary**. Plaintiffs contend that they did not waive work product protection by submitting prompts ***to their adversary*** under terms of service ***granting Midjourney a license***. Their sole authority for that contention is dicta from *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) that is contrary to Ninth Circuit law, which holds that "disclosure . . . to an adversary in litigation"—like Plaintiffs'—waives work product protection. *United States v. Sanmina Corp.*, 968 F.3d 1107,

1121 (9th Cir. 2020); *see also Columbia Riverkeeper v. U.S. Army Corps of Eng'rs*, 2014 WL 12792545, at *3 (D. Or. Mar. 19, 2014) ("Disclosure of work product to a party-opponent generally constitutes waiver of work-product immunity.") (citing *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)). In any event, *In re Sealed* supports waiver here as a "logical, even necessary feature" of Midjourney's terms of service (akin to the "voluntary disclosure program" in that case). 676 F.2d at 819.

**2. Waiver by Disclosing Bruce Ward**. Plaintiffs next argue that their investigator Bruce Ward's prompts are protected just the same as counsel's. Opp. 30. That is not the point. Rather, Plaintiffs ***waived*** any work-product protection that may have applied by disclosing him as a fact witness. Plaintiffs do not engage with Midjourney's authority on this issue. Mot. 23-24 (citing *Concord*, 2025 WL 3677935, at *3). They then assert that their supplemental interrogatory responses admitting certain models were unable to generate their characters were not available when the Order was decided, making them irrelevant. But those responses confirm the real risk and unfairness associated with the Order's refusal to compel disclosure: Plaintiffs prevent Midjourney from vetting Mr. Ward's efforts to force the model to generate their works, which was dispositive in *Concord*. *Id*. at *2 (disclosure necessary to vet "successful . . . compared to unsuccessful prompts").

**3. Selective Disclosure**. Lastly, Plaintiffs' effort to downplay their selective disclosure of Midjourney prompts and outputs backfires. In fact, Plaintiffs implicitly concede they have put their prompts and outputs at issue in this litigation by admitting they will rely on "prompts and side-by-side outputs," Opp. 25, to support their claims. That is precisely the type of selective disclosure that waives work-product protection. Mot. 24-25. As explained, Plaintiffs should not be permitted to present as evidence of infringement—or include in any calculation of damages—images they themselves created. The Order's failure to grapple with that harm is reversible error.

## VI. CONCLUSION

The Court should grant Midjourney's Motion for Review.

Dated: July 20, 2026

COOLEY LLP

By: ______________________

Bobby Ghajar
John Paul Oleksiuk
Stephanie Schuyler
Judd Lauter

*Counsel for Defendant Midjourney, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Midjourney, Inc., certifies that this brief does not exceed ten pages, which complies with the page limit contained in Section 9(d) of this Court's Standing Orders for Civil Cases.

Dated: July 20, 2026

COOLEY LLP

By: ______________________

Bobby Ghajar
John Paul Oleksiuk
Stephanie Schuyler
Judd Lauter

*Counsel for Defendant Midjourney, Inc.*