**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DISNEY ENTERPRISES, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al.; WARNER BROS. ENTERTAINMENT INC., et al.,

Plaintiffs,

v.

MIDJOURNEY, INC.,

Defendant.

ALL CASES

Lead Case No. 2:25-cv-05275-JAK (AJRx)

Consolidated Case No. 2:25-cv-08376-JAK (Ex)

**[PROPOSED] ORDER RE STATISTICAL SAMPLING PROTOCOL FOR PRODUCTION OF “PRIVATE” SUBSCRIBER PROMPTS AND OUTPUTS**

Upon the stipulation of the parties, the Court ORDERS as follows:

This Joint Stipulation is made by and between plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, DreamWorks Animation L.L.C., Warner Bros. Entertainment Inc., DC Comics, Turner Entertainment Co., Hanna-Barbera Productions, Inc., and The Cartoon Network, Inc. (collectively "Plaintiffs") and defendant Midjourney, Inc. ("Midjourney" and, collectively with Plaintiffs, the "Parties"), by and through their counsel of record as follows:

**1. PURPOSE**

This Order governs the production of subscriber prompts and outputs responsive to Plaintiffs' Requests for Production Nos. 43–45. The Parties agree to cooperate in good faith to implement this protocol consistent with the Court's April 16, 2026 minute order. Dkt. No. 61. The Parties may modify this protocol by written stipulation filed with the Court, without further leave of Court. To the extent that, due to unforeseen technical reasons, Midjourney is unable to carry out the methodology or any other obligations detailed herein, or in the course of attempting to carry out the actions contemplated herein Midjourney becomes aware of undue burden that would arise in connection with carrying out such actions, the Parties agree to work together in good faith to address the issue. If, following a good faith effort, the Parties are unable to do so, Midjourney will seek leave from the Court to get relief from this Order.

**2. DEFINITIONS**

As used in this Order: (a) "Character Bucket" means a group of one or more keywords associated with a specific asserted character or group of characters, as set forth in Exhibit A or Exhibit B to this Order; (b) "Private Prompts" means subscriber prompts and associated outputs created using Midjourney's stealth mode feature and captured by the keyword search terms set forth in Exhibit A or Exhibit B; and (c) "Sample" means the subset of Private Prompts and associated outputs produced by Midjourney pursuant to this

Order for a given Character Bucket. The Parties shall file Exhibits A and B by Thursday, August 13, 2026.

**3. CHARACTER BUCKETS AND KEYWORDS**

The Character Buckets and associated keywords are set forth in Exhibit A and Exhibit B to this Order. Upon entry of this Order, Midjourney shall proceed under Sections 4 through 7 as to the Exhibit A Character Buckets. The Exhibit B Character Buckets comprise the additional characters identified in Plaintiffs' discovery responses that are the subject of the scope-of-discovery dispute identified as Plaintiffs' Issue No. 2 in the Court's August 7, 2026 Minute Order. *See* Dkt. 148. If the Court rules that the scope of discovery includes those characters, or if the Parties so agree, this Order shall apply to the Exhibit B Character Buckets without further order, and the deadline in Section 7 shall run for those Character Buckets from the date of the ruling or agreement. Entry of this Order is without prejudice to any Party's position on the scope of discovery. Exhibit A and Exhibit B may otherwise be modified only by written agreement of the parties or leave of Court. The inclusion of Exhibit B is not an admission by Midjourney that the characters in the Exhibit B Character Buckets or the works containing those characters are within the scope of discovery or properly pled and at-issue in this case.

**4. SAMPLE SIZE**

For each Character Bucket, Midjourney shall produce a Sample of 385 Private Prompts and associated outputs drawn in accordance with Section 5. For any Character Bucket in which the total number of Private Prompt hits is fewer than 385, Midjourney shall produce all Private Prompts and associated outputs in that Character Bucket rather than a random sample.

**5. RANDOMIZATION METHODOLOGY**

To ensure that each Sample is random, Midjourney shall use the following methodology for each Character Bucket:

(a) Midjourney shall apply the agreed-upon keyword search terms for the Character Bucket to its database of Private Prompts to identify all responsive prompts and associated outputs.

(b) Midjourney shall deduplicate the search results by the unique identifier associated with each responsive prompt (the same identifier to which the hash function is applied pursuant to Section 5(c)), such that each responsive job is included exactly once in the eligible universe for a given Character Bucket, including where more than one keyword associated with that Character Bucket matches the same job. Deduplication shall be performed on no other basis. For the avoidance of doubt: (i) distinct jobs shall not be treated as duplicates of one another for purposes of deduplication on the ground that they contain identical or similar prompt text, whether submitted by the same user or different users; and (ii) deduplication shall not remove a job from the eligible universe for a Character Bucket on the basis that the job also appears in the eligible universe for a different Character Bucket. However, nothing herein shall preclude a Party from observing that the same job appears in the eligible universe for more than one Character Bucket.

(c) Midjourney shall apply a cryptographic hash function—specifically SHA-256—to the unique numeric or alphanumeric identifier associated with each responsive prompt. Midjourney shall use the same hash function across all Character Buckets.

(d) Midjourney shall sort the resulting hash values in ascending numerical order.

(e) Midjourney shall produce the prompts and associated outputs corresponding to the 385 lowest ranked hash values (or all hits, for buckets below the 385 threshold).

The Parties agree that the foregoing methodology produces a verifiably random sample because cryptographic hash values are uniformly distributed and are not predictable from or correlated with the underlying identifier or content of the prompt.

## 6. PRODUCTION FORMAT

Each Sample shall be produced in accordance with the Parties' ESI Protocol (Dkt. No. 47) to the extent applicable. Each production shall include, for each prompt and associated output in the Sample: (a) the text of the prompt; (b) the associated image or video outputs; (c) a URL, user ID, and unique job ID associated with the image; (d) the date the prompt was submitted; (e) the Character Bucket to which the prompt belongs; (f) the hash value assigned to the prompt pursuant to Section 5(c); (g) the following fields: "job_id," "user_id," "user_plan," "job_date," "platform," "type," "speed," "fullCommand," "full_prompt," "job_page_url," "url_1," "url_2," "url_3," "url_4," "source_image_url," "parent_job_id," "batch size," "is_moderated," "is_published," "soft_ban," "hidden," "user_hidden," "mod_hidden," "flagged," and "matched_keywords"; and (h) an indicator of whether the job was created using Midjourney's stealth mode feature. Where a field identified in this Section is not available for a particular prompt or output, the report shall so indicate. To the extent Midjourney withholds or redacts any information in the Sample on privacy grounds, it shall identify the basis for each such withholding or redaction (e.g., personally identifying information like a person's name, home address, or phone number).

## 7. PRODUCTION DEADLINE AND CERTIFICATION

Midjourney shall take reasonable steps to produce all Samples no later than three weeks following the entry of this Order. At the time of production, Midjourney shall provide a written certification signed by the Midjourney personnel responsible for executing the hash function query, confirming that, to the best of his or her knowledge, (a) the hash function and sampling methodology described in Section 5 were followed for each Character Bucket; (b) the hash function was applied to the actual prompt identifiers in Midjourney's production database; (c) no prompts or outputs were excluded from the eligible universe for any Character Bucket other than on the basis of the keyword search criteria set forth in Exhibit A and deduplication as described in Section 5(b); (d) the production includes the 385 (or all, if fewer) lowest-ranked-hash-value prompts and

associated outputs for each Character Bucket; (e) the verification list produced pursuant to this Section contains a complete and accurate list of all prompt IDs that comprised the eligible universe for each Character Bucket; and (f) deduplication was performed solely as described in Section 5(b) and on no other basis.

Contemporaneously with each Sample production, Midjourney shall provide a complete list (the "Verification List") of all prompt IDs that comprised the eligible universe for the corresponding Character Bucket—that is, all prompt IDs returned by applying the keyword search terms for that Character Bucket to Midjourney's database of Private Prompts before the hash function was applied. For each such prompt ID, Midjourney shall provide the corresponding SHA-256 hash value computed pursuant to Section 5(c). Midjourney shall produce each Verification List in a machine-readable format (such as CSV), with one row per prompt ID containing the prompt ID and its hash value. The Verification List shall not include the text of any prompt or any associated output. The obligation to produce Verification Lists is independent of and does not modify Midjourney's obligation to produce Samples pursuant to Sections 5 through 7.

## 8. REPRESENTATIVENESS AND EXTRAPOLATION

The Parties agree that a properly drawn random sample of 385 from a population of at least 385 is statistically sufficient to yield results that are representative of the underlying universe, with a margin of error of approximately ±5 percentage points at the 95 percent confidence level. The Parties further agree that, provided the Samples are drawn in accordance with Section 5: (a) for single-character Character Buckets, the Parties' respective experts may extrapolate from the Sample results to produce a per-character estimate of the total number of Private Prompts that generated outputs depicting that character; and (b) for multi-character Character Buckets, the Parties' respective experts may extrapolate from the Sample results to produce a franchise-level estimate of the total number of Private Prompts that generated outputs depicting any character from that franchise that appears in Plaintiffs' asserted works. The Parties will not challenge the reliability of either type of extrapolation on the ground that the Samples are not

representative of the full population. This Section does not preclude any Party from challenging any specific findings, conclusions, or opinions offered by any Party's expert on other grounds, including any finding, conclusion, or opinion that any particular outputs depicting an at-issue character are infringing.

**9. RESERVATION OF RIGHTS**

This Order does not limit any Party's right to seek additional discovery, move to compel, or raise any other discovery dispute.

IT IS SO STIPULATED, through Counsel of Record.

DATED: August 10, 2026

*/s/ David R. Singer*

Attorneys for Plaintiffs

DATED: August 10, 2026

*/s/ John Paul Oleksiuk*

Attorneys for Defendant Midjourney, Inc.

IT IS ORDERED that the foregoing Agreement is approved.

Dated: ____________________________

HON. A. JOEL RICHLIN

UNITED STATES MAGISTRATE JUDGE

— EXHIBIT A —

Character Buckets and Associated Keywords

[See attached Keyword Search—Private Prompts spreadsheet]

— EXHIBIT B —

Supplemental Character Buckets and Associated Keywords

[See attached Keyword Search—Private Prompts (Supplemental Characters) spreadsheet]