**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Julie A. Shepard (SBN 175538)
jshepard@jenner.com
Andrew J. Thomas (SBN 159533)
ajthomas@jenner.com
Lauren M. Greene (SBN 271397)
lgreene@jenner.com
Andrew G. Sullivan (SBN 301122)
agsullivan@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

Kara V. Brandeisky (admitted *pro hac vice*)
kbrandeisky@jenner.com
1099 New York Avenue N.W. #900
Washington, D.C. 20001
Telephone:  +1 202 639 6000

Zachary A. Marino (admitted *pro hac vice*)
zmarino@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Telephone:  +1 212 891 1600

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al.; WARNER BROS. ENTERTAINMENT INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIDJOURNEY, INC., <br><br> Defendant. <br><br> ALL CASES | Case No. 2:25-cv-05275-JAK-AJR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** <br><br> Judge:  The Honorable John A. Kronstadt <br> Ctrm:   10C <br> Date:   September 28, 2026 <br> Time:  8:30 a.m. PDT <br><br> Date Action Filed:  June 11, 2025 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    STANDARD OF REVIEW ....................................................................................... 2

III.   SUMMARY OF FACTUAL ALLEGATIONS ......................................................... 3

IV.    MIDJOURNEY'S MOTION IS PROCEDURALLY DEFECTIVE ......................... 5

V.     PLAINTIFFS HAVE ALLEGED INDUCEMENT IN MULTIPLE WAYS ........... 6

     A.   The Supreme Court Has Not Limited Its Inducement Ruling in *Grokster*, Which Focuses on a Defendant's Intent to Facilitate Copyright Infringement. ...................................................................................... 6

         1.   *Cox* Did Not Limit Inducement Liability. ............................................ 7

         2.   *Hikma* Did Not Limit Inducement Liability. ........................................ 8

     B.   Under *Grokster*, Inducement May Be Shown in Multiple Ways Besides Express Advertisement and Promotion of Infringing Use. .............. 9

     C.   Midjourney's Deliberate Design of its Service to Facilitate Massive Copyright Infringement Fully Supports Liability Both for Direct Infringement and Inducement. ................................................................... 11

     D.   Plaintiffs Plausibly Allege Inducement Based on Midjourney's Promotion of its Service. ........................................................................... 13

         1.   Midjourney's "Explore" Page. ............................................................. 13

         2.   Other Allegations of Midjourney Statements Encouraging Subscribers to Infringe. ..................................................................... 15

             a.   CEO statements. .......................................................................... 15

             b.   The r/midjourney Subreddit. ....................................................... 16

             c.   Efforts to conceal infringing activity. ......................................... 16

             d.   Serving up infringing outputs in secret. ..................................... 17

     E.   Plaintiffs' Allegations About Midjourney's Business Model Also Support Inducement. ................................................................................ 17

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

F.      Midjourney's Failure to Implement Technological Means to Prevent Infringement Further Supports Inducement Liability. ................................... 18

G.      Plaintiffs Have Sufficiently Alleged that Midjourney's Acts of Inducement Are Likely to Cause Infringement. .............................................. 19

VI.     CONCLUSION ................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advance Local Media LLC v. Cohere Inc.*,
   2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025)..................................................................13

*Andersen v. Stability AI Ltd.*,
   744 F. Supp. 3d 956 (N.D. Cal. 2024)....................................................................12, 16

*Antarctica Films Argentina, S.A. v. Gaia, Inc.*,
   662 F. Supp. 3d 1191 (D. Colo. 2023)..................................................................13

*Arista Records v. Lime Group, LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................3

*Bazuaye v. I.N.S.*,
   79 F.3d 118 (9th Cir. 1996) ...............................................................................6

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
   2015 WL 3649187 (C.D. Cal. June 11, 2015)..........................................................18

*Columbia Pictures Indus. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ....................................................................*passim*

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
   146 S. Ct. 959 (2026).................................................................................*passim*

*D'Angelo v. FCA US, LLC*,
   726 F. Supp. 3d 1179 (S.D. Cal. 2024) ...........................................................15, 17

*David v. CBS Interactive*,
   2012 WL 12884914 (C.D. Cal. July 13, 2012)..........................................................14

*Disney Enters., Inc. v. Minimax*,
   2026 WL 1476670 (C.D. Cal. May 22, 2026).....................................................5, 6, 11

*Doe v. Napa Valley Unified Sch. Dist.*,
   2018 WL 4859978 (N.D. Cal. Apr. 24, 2018)............................................................6

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

*Erhart v. BofI Holding, Inc.*,
    387 F. Supp. 3d 1046 (S.D. Cal. 2019) ................................................................ 6

*Franklin v. Midwest Recovery Sys., LLC*,
    2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) ....................................................... 6

*Hal Roach Studios v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) ........................................................................... 15

*Hartstein v. Hyatt Corp.*,
    2021 WL 2497926 (C.D. Cal. Mar. 19, 2021) ..................................................... 6

*Hikma Pharmaceuticals USA v. Amarin Pharma, Inc.*,
    146 S. Ct. 1391 (2026) ........................................................................................ 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ............................................................................. 14

*Lyon v. Chase Bank USA*,
    656 F.3d 877 (9th Cir. 2011) ............................................................................... 2

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................................ 16, 17, 18, 20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ....................................................................................*passim*

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    487 F.3d 701 (9th Cir. 2007), *as amended*, 508 F.3d 1146 (9th Cir. 2007) ................ 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .........................................................................9, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ............................................................................... 7

*Perfect 10, Inc. v. Visa International Service Association*,
    494 F.3d 788 (9th Cir. 2007) ...........................................................................9, 10

*Pitts v. Terrible Herbst, Inc.*,
    653 F.3d 1081 (9th Cir. 2011) ............................................................................. 7

*Ricketts v. CBS Corps.*,
    439 F. Supp. 3d 1199 (C.D. Cal. 2020), *aff'd*, 2022 WL 1046252 (9th
    Cir. Apr. 7, 2022) .............................................................................................. 15

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ............................................................................................... 3

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,
    2026 WL 1697633 (N.D. Cal. June 11, 2026)..................................................................... 12

*Torres v. Carescope, LLC*,
    2020 WL 6939032 (E.D. Cal. Nov. 25, 2020)...................................................................... 6

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019) ........................................................................................ 11, 12

*Warner Bros. Ent. v. Tusa*,
    2021 WL 6104399 (C.D. Cal. Oct. 25, 2021) ..................................................................... 20

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
    627 F. Supp. 3d 1072 (N.D. Cal. 2020)......................................................................... 3, 10

**Court Rules**

Fed. R. Civ. P. 8(d)(2).......................................................................................................... 5

Fed. R. Civ. P. 11 ................................................................................................................. 7

Fed. R. Civ. P. 12(b)(6)................................................................................................ 2, 5, 6

Fed. R. Civ. P. 12(c)...................................................................................................... 5, 15

Fed. R. Evid. 201(b)............................................................................................................ 15

## I.    INTRODUCTION

Midjourney operates an AI service that makes Plaintiffs' famous copyrighted characters (like Superman, Batman, Spider-Man, Darth Vader, Shrek, Scooby-Doo, and the Minions) available in images and videos served up to paying subscribers. Midjourney designed and developed this service by selecting, aggregating, copying, and storing unauthorized copies of Plaintiffs' copyrighted works, and then training and fine-tuning its AI model on those videos and images in a way that effectively extracted and stored copies of Plaintiffs' characters on its servers. As a result, whenever a subscriber requests an image or video of these iconic characters, Midjourney obliges by rendering a perfect replica of that character.

This lawsuit is not about the benefits of generative AI. Plaintiffs are not suing to halt the use of generative AI or shut down Midjourney. Plaintiffs sued to stop Midjourney from stealing and commercially exploiting their copyrighted characters. Plaintiffs never authorized Midjourney to reproduce their works to train and build its model, nor did they authorize Midjourney to reproduce, publicly display, publicly perform, and distribute their copyrighted characters as part of a commercial service.[1]

Now, 13 months after this litigation began, Midjourney has chosen to file a pleading motion attacking just one of three independent theories supporting Plaintiffs' secondary infringement claim. As a fig leaf for its delay, Midjourney invokes the Supreme Court's March 2026 decision in *Cox Communications v. Sony Music Entertainment*. *Cox* addressed one theory of secondary liability—contributory infringement based solely on evidence of knowledge and material contribution—but left untouched the well-settled secondary liability doctrines of inducement and vicarious infringement. Midjourney spends pages arguing Plaintiffs cannot assert a claim based on a "knowledge plus material contribution" theory (Mot. 9-11). But Plaintiffs *already have confirmed in writing* to Midjourney's

---

[1] Plaintiffs Disney and NBCUniversal filed the initial complaint ("DU Compl.") in June 2025. Three months later, Warner Bros. Discovery filed a separate complaint ("WBD Compl.") against the same defendants. The cases were consolidated in November 2025. Defendants answered both complaints.

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

counsel (Mot. 10) that they no longer are pursuing secondary liability based on the "knowledge-plus-material-contribution" theory at issue in *Cox*.  Plaintiffs' secondary infringement claim encompasses *two* additional theories of liability: inducement and vicarious infringement.  Midjourney's motion fails out of the gate procedurally because it attacks only one aspect of Plaintiffs' secondary liability claim—inducement—and does not address vicarious infringement at all.

Even as to inducement, Midjourney's motion is grounded in an erroneous reading of *Cox* that ignores the Supreme Court's holding in *Grokster* as well as key allegations in Plaintiffs' complaints.  The complaints are replete with allegations showing Midjourney's intent to facilitate widespread copyright infringement.  This conduct begins with Midjourney's deliberate actions in designing and training its AI model; stocking it with Plaintiffs' copyrighted works and characters; engineering it to reliably reproduce, publicly display, publicly perform, and distribute perfect copies of Plaintiffs' famous characters on demand; and—through word and deed—affirmatively encouraging subscribers to use the service to obtain infringing outputs.

These allegations are more than enough to support liability for direct infringement.  In addition to substantiating Plaintiffs' direct infringement claims (which are not at issue on this motion), this evidence of Midjourney's purposeful design and operation of its AI service—including its express promotion of its infringing capabilities on its website's "Explore" page and elsewhere, as well as its refusal to implement readily available copyright protection measures to mitigate infringing use—demonstrates that Midjourney has acted with the object of facilitating copyright infringement.

## II.    <u>STANDARD OF REVIEW</u>

As Midjourney acknowledges (Mot. 11), a motion for judgment on the pleadings is "functionally identical to" and governed by the same standards as a motion to dismiss under Rule 12(b)(6).  *Lyon v. Chase Bank USA*, 656 F.3d 877, 883 (9th Cir. 2011).  It is a pleading motion testing the allegations set forth within the four corners of the complaint.  To survive such a motion, a complaint "must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). The Court still must accept a plaintiff's allegations as true and draw all reasonable inferences in its favor. *Williams-Sonoma, Inc. v. Amazon.com, Inc.*, 627 F. Supp. 3d 1072, 1081-82 (N.D. Cal. 2020).

## III.   SUMMARY OF FACTUAL ALLEGATIONS

Plaintiffs have created and own copyrights in some of the most well-known fictional characters in the world. These include Darth Vader, Yoda, and other familiar characters from the *Star Wars* franchise; Spider-Man, Iron Man, Deadpool, Wolverine, and many others from the Marvel universe; Superman, Wonder Woman, Batman, and others from the DC Comics properties; as well as Shrek, Scooby-Doo, the Minions, and numerous others identified in Plaintiffs' complaints. DU Compl. ¶¶ 5-7, 33-73; WBD Compl. ¶¶ 1, 29-60.

Midjourney willfully chose to build a business based in substantial part on copying, displaying, and distributing Plaintiffs' copyrighted works and characters—a business that generated over $300 million in revenue in 2024 from more than 20 million subscribers, who have used it extensively to generate infringing images and videos. *See* DU Compl. ¶¶ 74-113, 119-122, 133-179; WBD Compl. ¶¶ 61, 64-68, 73-97. Midjourney's subscribers can enter a text prompt on Midjourney's site that includes a reference to one or more of Plaintiffs' characters (e.g., "Darth Vader walking on the beach"), and Midjourney will create an image (and/or a short video) featuring an exact reproduction of the copyrighted character and distribute it to the subscriber for display, performance, and/or download. *See* DU Compl. ¶¶ 8, 21, 24; WBD Compl. ¶¶ 7-11, 97. (In some cases, even if the user merely submits a prompt with a generic term like "superhero," Midjourney's service is so tuned to infringe that it will produce a replica of one or more of Plaintiffs'

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

famous characters.  *See* DU Compl. ¶¶ 124-131; WBD Compl. ¶¶ 12-13, 95-96.)

Midjourney has controlled all aspects of the design and development of its service by, among other things, (1) affirmatively choosing to copy and train its AI service on innumerable copies of Plaintiffs' copyrighted works,[2] (2) selecting and controlling what copyrighted material is copied, processed, ingested, and stored by its service, and (3) causing its service to produce outputs that reliably and predictably reproduce exact copies and derivatives of Plaintiffs' copyrighted characters on demand.  *See* DU Compl. ¶¶ 3, 8, 10-14, 80-114, 115(a)-(c), 116-122; WBD Compl. ¶¶ 3, 73-98, 99(a)-(c), 100-108, 178.[3]

Midjourney also "copies and uses Plaintiffs' copyrighted characters to market and promote" its service.  *See* DU Compl. ¶ 9; WBD Compl. ¶ 14.  Plaintiffs have asserted—in allegations that must be accepted as true on a pleading motion—that Midjourney has publicly displayed images of Plaintiffs' copyrighted characters on the "Explore" page of its website—Midjourney's primary marketing gallery and online brochure—to "promote" its service, "attract subscribers," and "encourage" them to use the service, "thereby generating more money for Midjourney."  *See* DU Compl. ¶ 79; WBD Compl. ¶ 70.  As Midjourney itself demonstrates in the image reproduced on page 8 of its Motion, it further encourages infringement by displaying *the exact prompts* used to generate the images shown on its Explore page, which in turn "encourages Midjourney subscribers to obtain similar results to those they find in the gallery."  DU Compl. ¶ 167; WBD Compl. ¶ 142.

Midjourney easily could have taken steps to prevent the reproduction, distribution, and display of Plaintiffs' copyrighted characters by its service—including by using copyright protection measures that other AI image generation companies have implemented—but it has refused to do so despite Plaintiffs' requests (or has done so only

---

[2] Midjourney mischaracterizes Plaintiffs' complaints: Plaintiffs allege that Midjourney trained its AI service on illicit copies of Plaintiffs' copyrighted films and television shows (DU Compl. ¶¶ 114-118; WBD Compl. ¶¶ 98-102), not merely on "screenshots and short clips" (Mot. 2).  Plaintiffs are still waiting for Midjourney to produce its training materials in discovery.

[3] Plaintiffs allege extensively that Midjourney's service uniformly produces outputs that *exactly reproduce* (DU Compl. ¶¶ 82-113; WBD Compl. ¶¶ 74-97), not just "resemble" (Mot. 2), Plaintiffs' famous characters.

4

in an intermittent way after the lawsuit was filed that underscores its intent that its service be used for infringement). *See* DU Compl. ¶¶ 10-11, 182-192; WBD Compl. ¶¶ 3-6.

## IV. <u>MIDJOURNEY'S MOTION IS PROCEDURALLY DEFECTIVE</u>

Plaintiffs each have pled a single claim for secondary infringement, based on alternative theories of contributory infringement by inducement and vicarious liability. *See* DU Compl. ¶¶ 212-235; WBD Compl. ¶¶ 164-187. Midjourney attacks only one aspect of these claims—inducement. Because Midjourney's motion does not even address one of the theories on which the secondary infringement claims are based (i.e., vicarious infringement, *see* Mot. 3:21-22), it is incapable of resolving the secondary liability claim and must be denied.

Under the Federal Rules, "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). A pleading motion—whether under Rule 12(c) or Rule 12(b)(6)—cannot be used to dispose of only a portion of a claim for relief or a mere subset of the allegations or theories set forth in that claim. As this District held recently in a copyright suit by Plaintiffs against another AI image and video generator, a motion to dismiss must be denied if it attacks only one part or one theory contained within a cause of action. *See Disney Enters., Inc. v. Minimax*, 2026 WL 1476670, at *6 n.7 (C.D. Cal. May 22, 2026) (Blumenfeld, J.).

In *Minimax*, the defendants moved to dismiss the studios' claim for secondary infringement, arguing that the studios had "not plausibly alleged secondary infringement based on either vicarious or contributory liability." *Id.* at *6. Addressing contributory infringement first, the court held there were sufficient allegations to "plausibly allege contributory infringement based on Defendants' affirmative steps to induce infringement" and denied the motion. *Id.* The court explained that "[b]ecause Rule 12(b)(6) does not permit dismissal of part of a claim, the Court need not decide whether the vicarious

infringement theory is also plausibly alleged." *Id.* at *6 n.7.[4]

This conclusion is well supported by other decisions in this Circuit, including in circumstances where, as here, a defendant seeks to break apart a claim and attack only one theory or aspect of the cause of action. *See, e.g.*, *Doe v. Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *2-3 (N.D. Cal. Apr. 24, 2018) (noting that "Defendants try to reframe Plaintiff's negligence claim as three separate claims, and then move to dismiss two of Plaintiff's three theories of negligence," but declining "at this procedural stage to break Plaintiff's negligence claim apart and reframe it as separate claims"); *Torres v. Carescope, LLC*, 2020 WL 6939032, at *4 (E.D. Cal. Nov. 25, 2020) (denying MJOP because "Defendants do not challenge the merits of the claims as a whole" but "seek adjudication as to only one aspect of [the claims]"); *Franklin v. Midwest Recovery Sys., LLC*, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (holding Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim").[5]

## V. <u>PLAINTIFFS HAVE ALLEGED INDUCEMENT IN MULTIPLE WAYS</u>

### A. The Supreme Court Has Not Limited Its Inducement Ruling in *Grokster*, Which Focuses on a Defendant's Intent to Facilitate Copyright Infringement.

In *Grokster*, the Supreme Court explained that inducement may be established by evidence that a product or service was distributed "*with the object* of promoting its use to infringe copyright, as shown by clear expression *or other affirmative steps* taken to foster infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919,

---

[4] *Cox* referred to inducement and vicarious liability as two "categories" of secondary infringement and did not require they be pled as separate causes of action; Midjourney has described them as "theories" or "doctrines" (Mot. 9, 13). Midjourney does not cite any authority that authorizes, let alone compels, the Court to rewrite Plaintiffs' well-pleaded complaints to break the secondary infringement claims into smaller pieces just because Midjourney might find that more convenient. Nor can Midjourney raise new arguments about vicarious liability on reply. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996).

[5] *See also Hartstein v. Hyatt Corp.*, 2021 WL 2497926, at *2 (C.D. Cal. Mar. 19, 2021); *Erhart v. BofI Holding, Inc.,* 387 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (collecting cases).

936-37 (2005) (emphasis added).  As *Grokster* makes clear, the crux of the inducement inquiry is the defendant's demonstrated *intent* to promote infringement by third parties.

### 1.    *Cox* Did Not Limit Inducement Liability.

In *Cox*, the Supreme Court addressed one aspect of contributory liability for copyright infringement in a lawsuit against an internet service provider (ISP) that acted merely as a conduit providing online connections to millions of customers.  *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 965 (2026).[6]  The Court held contributory infringement cannot be based merely on the defendant's knowledge of and material contribution to acts of infringement by others.  *Id.* at 968-69.  As noted above, in light of *Cox*, Plaintiffs have confirmed to Midjourney in writing (Mot. 10) that they are not pursuing a claim for secondary infringement based merely on knowledge and material contribution.[7]

*Cox* expressly did not address vicarious liability.  *See* 146 S. Ct. at 964, 967.  *Cox* also expressly left intact the inducement prong of secondary liability, holding that "[t]he provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement."  *Id.* at 967.  *Cox* explained this intent may be shown in two ways: (1) by inducement or (2) where the provider's service is "tailored" to infringement.[8]  *Id.*  In its discussion of contributory liability, *Cox* preserved and reaffirmed the Supreme Court's prior inducement holding in *Grokster*, explaining that

---

[6] Unlike the defendant in *Cox*, Midjourney is not a conduit ISP that simply provides a connection to the internet, nor is it analogous to the passive host of an online bulletin board service. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668-69 (9th Cir. 2017).

[7] Midjourney's speculation (Mot. 14-15) that Plaintiffs may seek to resurrect this theory at some future time is unfounded and without support.  It is well established that a written communication is sufficient to withdraw a theory of liability that a party has decided no longer to pursue.  *See* Fed. R. Civ. P. 11 Advisory Committee Note ("formal amendment of the pleadings to withdraw an allegation or denial is not required …"); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 (9th Cir. 2011) (same).

[8] In *Cox*, the Court stated that a service "is tailored to infringement if it is 'not capable of substantial or commercially significant noninfringing uses.'" *Cox*, 146 S. Ct. at 967 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).  Because Plaintiffs have not made this allegation in their complaints, Midjourney's discussion of this aspect of *Cox* is also beside the point.

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

inducement occurs where the provider "actively encourages infringement *through specific acts*." *Id.* (citation omitted) (emphasis added).

### 2.    *Hikma* Did Not Limit Inducement Liability.

Midjourney also cites the Supreme Court's recent patent law decision in *Hikma Pharmaceuticals USA v. Amarin Pharma, Inc.*, 146 S. Ct. 1391 (2026), for the proposition that inducement liability cannot be based on "mere omissions, inactions, or nonfeasance" (Mot. 16-17).  Not only is *Hikma* distinguishable as a patent case, but the Court in *Hikma* did not purport to limit *Grokster* in any way.  To the contrary, *Hikma* confirmed that culpable encouragement of infringement may be "implicit" and can be based on affirmative "statements *or actions*," so long as the message is clear to the relevant audience and does not require the court to "speculat[e]" about how customers might respond.  *See id.* at 1401-02 (defendant "overshoots by urging that active inducement must be 'express'").[9]  Here, Plaintiffs have alleged far more than omissions or vague statements.  As described above, Plaintiffs allege that Midjourney intentionally engaged in numerous affirmative acts:  it has selected Plaintiffs' copyrighted works for copying and ingestion, trained and fine-tuned its AI model on those works, utilized those works in its operation, and stored copies of Plaintiffs' copyrighted characters on its servers, and it reproduces and distributes perfect copies of Plaintiffs' characters in images and videos to paying subscribers on demand.  *See, supra*, Section III.  Plaintiffs further allege that Midjourney, through its Explore page and other channels, has communicated images and instructions on how to generate infringing images.  *See id*.  Unlike in *Hikma*, there is no need for Midjourney users to "read between the lines and draw improper conclusions" about a service's omission or inaction.  *See* 146 S. Ct. at 1402.  Rather, they are induced to infringe by a system designed to facilitate infringement and an Explore page that advertises and instructs how to do so.

---

[9] For example, a defendant may engage in inducement through acts of *implicit* encouragement, as defendant StreamCast did in the *Grokster* case through the suggestive name of its "OpenNap program," which was intended to appeal to former users of the illicit Napster file-sharing service.  *See Grokster*, 545 U.S. at 937-38; *Hikma*, 146 S. Ct. at 1401.

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

**B.      Under *Grokster*, Inducement May Be Shown in Multiple Ways Besides Express Advertisement and Promotion of Infringing Use.**

While express advertisements promoting infringing use of a service may be a "classic instance" of inducement, such express communicative acts are not the only conduct that can establish inducement.  Under *Grokster*, inducement may encompass other actions that reflect "affirmative" efforts to "entic[e] or persuad[e] another" to engage in infringement.  *Grokster*, 545 U.S. at 935-37.  In *Grokster* itself, evidence of inducement included internal decisions to target a customer base of known infringers, the reliance on a business model that depended heavily on infringing use, and the failure to implement readily available measures to mitigate infringing use.  *Id.* at 938-40; *see also id.* at 939 n.13 ("the culpable act is not merely the encouragement of infringement but also the distribution of the tool intended for infringing use").

The open-ended nature of *Grokster*'s intent inquiry is illuminated by subsequent Ninth Circuit decisions.  In *Fung*, which involved an online service that enabled users to distribute and download copyrighted works through the "BitTorrent" file-sharing protocol, the Ninth Circuit described the elements of inducement as including the *distribution* of a product or service that caused acts of infringement by third parties, with the "*object* of promoting its use to infringe copyright." *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (emphasis added).  Likewise, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), the court explained that "under *Grokster*, an actor may be contributorily liable for *intentionally* encouraging direct infringement if the actor *knowingly takes steps that are substantially certain to result in … direct infringement*." *Id.* at 1171 (emphasis added).

Midjourney's reliance on *Perfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788 (9th Cir. 2007), overstates the fact-dependent holding in that case.  There, a copyright owner sued a credit card company for inducement based on its processing of payments by subscribers of an infringing online service. *Id.* at 800.  The court affirmed the dismissal of the inducement claim based on the lack of any allegation that Visa, as a

payment processor, had any connection to the infringing activity or had taken any "affirmative steps … to foster infringement." *Id*.[10]  The court contrasted Visa's attenuated connection to the infringement with the allegations in *Napster* and *Grokster*, noting that those systems "were engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy of copyrighted music." *Id*. at 801.  The *Visa* court likewise distinguished the inducement allegations asserted against Google in the *Amazon.com* case, which were found to be more than sufficient, because Perfect 10 had not alleged that Visa engaged in "any '*specific acts*' intended to encourage or induce infringement." *Id.* at 802 (emphasis added).  Visa's conduct was distinguishable, the court held, because its payment system "does not facilitate access to websites; infringers do not use it to copy, alter, distribute or display infringing material; and consumers do not use it to locate, view, or download the infringing images." *Id.*

Midjourney's AI service, by contrast, does *all* of the things that were found to support inducement in the Ninth Circuit's *Amazon.com* decision (and more).  The alleged conduct here goes far beyond "ordinary acts incident to product distribution." *Grokster*, 545 U.S. at 937.  Far from suggesting a mere "possibility" of inducement (Mot. 19), Midjourney's messaging and other conduct directly promotes the use of its service to generate images and videos of Plaintiffs' copyrighted characters.  *See, supra*, Section III.  *Grokster* and its progeny confirm that a wide variety of conduct by a defendant—almost all of which is alleged in detail in Plaintiffs' complaints—may support an inference that the defendant intended to induce copyright infringement.  When it comes to inducement liability, the complaints in this case check every conceivable box.

---

[10] The court also observed that Visa was not alleged to have "promoted [its] payment system as a means to infringe," noting in passing that it would be "crucial to establish" that Visa had "communicated an inducing message." *Id.* at 800-01.  This statement cannot be read as overruling the Supreme Court's *Grokster* precedent or the Ninth Circuit's prior panel decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), *as amended*, 508 F.3d 1146 (9th Cir. 2007).  As the Ninth Circuit clarified in *Fung,* the communication of an inducing message is "***not the exclusive means of proving inducement***."  710 F.3d at 1036 (emphasis added).

**C.    Midjourney's Deliberate Design of its Service to Facilitate Massive Copyright Infringement Fully Supports Liability Both for Direct Infringement and Inducement.**

Plaintiffs allege in detail how Midjourney "specifically designed" its AI service to readily produce and display perfect reproductions and derivatives of Plaintiffs' copyrighted characters. *See, supra,* Section III; *see also* DU Compl. ¶ 226; WBD Compl. ¶ 178. Midjourney controls what copyrighted content it selects, copies, and includes in its service. Midjourney directly reproduces, publicly displays, and distributes reproductions and derivatives of Plaintiffs' copyrighted content. *See, supra,* Section III. Midjourney distributes perfect copy after perfect copy of Plaintiffs' iconic characters to its subscribers on demand and displays them on its website as part of its Explore page marketing gallery. These copies contain extensive nuance and detail, background elements, costumes, and accessories far beyond what was specified in any user's prompt. *See* DU Compl. ¶ 121; WBD Compl. ¶ 97. Indeed, Midjourney generates infringing images *even when the subscriber does not ask for copyrighted material.* In some cases, if the user submits only a prompt with a generic term like "superhero," Midjourney's service nevertheless will produce a perfect replica of one or more of Plaintiffs' characters. *See, supra*, Section III. As Plaintiffs allege, "Midjourney would not be able to create such infringing outputs without its intentional design enabling that infringement." DU Compl. ¶ 226; WBD Compl. ¶ 178.[11]

All of this conduct establishes that Midjourney is liable for direct copyright infringement. *See Minimax*, 2026 WL 1476670, at *6 (finding these Plaintiffs had sufficiently alleged direct copyright infringement against another AI image and video generator based on similar factual allegations).[12]    In addition to Plaintiffs' direct

---

[11] Far from being "transformative" (Mot. 2)—an issue related to fair use, a defense not raised in this motion—Midjourney's outputs that precisely reproduce Plaintiffs' iconic characters serve the very same entertainment function as the original works.

[12] In the Ninth Circuit, a defendant is liable for direct copyright infringement if its "volitional conduct" caused the infringement, meaning the defendant was "actively involved in the infringement." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir.

infringement claims, and consistent with *Grokster*, these allegations also establish that Midjourney is liable for inducement. Midjourney selected the copyrighted works on which to train its AI model, affirmatively chose to ingest and store Plaintiffs' characters in its AI model, and deliberately designed its model to reproduce and distribute perfect replicas of those characters on demand to paying customers—who are well aware of Midjourney's infringing capabilities and are drawn to the service for that reason. *See, supra*, Section III. These are, as alleged in Plaintiffs' complaints, without question "steps that are substantially certain to result in … direct infringement." *See Amazon.com,* 508 F.3d at 1171.

In *Andersen v. Stability AI Ltd.,* 744 F. Supp. 3d 956 (N.D. Cal. 2024), Judge William Orrick considered similar allegations against a generative AI service and concluded they amply supported inducement. The plaintiff artists claimed that Stable Diffusion, the defendant's AI image generator, used the plaintiffs' artistic works as training images and, as a result, could produce output images "'in the style' of those images." *Id.* at 963, 965. The court denied Stability's motion to dismiss the inducement claim, which argued the plaintiffs had not alleged that Stability engaged in advertising or other promotional efforts aimed at encouraging infringement. *See id.* at 968-69. The court concluded that allegations that Stable Diffusion was built "to a significant extent" on copyrighted works, that it "necessarily invokes copies or protected elements of those works" in its operation, and that it outputs infringing images were enough to support a "plausible inference … that [the generative AI product] by operation by end users *creates copyright infringement* and *was created to facilitate that infringement by design*." *Id.* (emphasis added). *See also Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, 2026 WL 1697633, at *9 (N.D. Cal. June 11, 2026) (holding that plaintiffs "plausibly allege that Defendant took active steps to encourage torrenting by implementing an algorithm"

---

2019). Volitional conduct typically turns on the issue of selection—that is, "who selects the copyrighted content." *Id.* Under *VHT*, the operative distinction is between a system that passively displays content selected and uploaded by third parties and one—like Midjourney's here—where the *defendant* selects the images and content it displays on its platform.

designed to facilitate infringement of copyrighted works); *Advance Local Media LLC v. Cohere Inc.*, 2025 WL 3171892, at *6 (S.D.N.Y. Nov. 13, 2025) (finding inducement was sufficiently alleged based on plaintiff publishers' claims that the defendant "intentionally programmed [the LLM] to generate and deliver copies of [plaintiffs'] works to third parties"); *Antarctica Films Argentina, S.A. v. Gaia, Inc.*, 662 F. Supp. 3d 1191, 1207-08 (D. Colo. 2023) (inducement adequately pled based on allegations the defendant took "affirmative steps" to facilitate the creation and distribution of an infringing film).

### D.    Plaintiffs Plausibly Allege Inducement Based on Midjourney's Promotion of its Service.

*Grokster* recognized that "[e]vidence of active steps taken to encourage direct infringement" that show "an affirmative intent that the product be used to infringe" can include "advertising an infringing use or *instructing how to engage in an infringing use*." 545 U.S. at 915 (emphasis added).

### 1.    Midjourney's "Explore" Page.

Plaintiffs allege in detail how Midjourney uses its Explore page to market and advertise that its image service can be used to generate infringing images. *See, supra*, Section III. Among other things, Midjourney has "curate[d] and present[ed] Explore page search results that publicly display images that infringe Plaintiffs' copyrighted characters," which shows that the Explore page "is intended to advertise Midjourney's ability to infringe" Plaintiffs' copyrighted works. DU Compl. ¶¶ 133, 134-168; WBD Compl. ¶¶ 133-142. Plaintiffs also allege the Explore page "is a prominent feature of its website where Midjourney ***advertises*** the images" its service generates and that it serves as "a means for Midjourney to ***promote*** its Image Service, ***attract subscribers*** to the Image Service, and ***encourage*** them to use the Image Service, thereby generating more money for Midjourney." DU Compl. ¶ 79 (emphasis added); WBD Compl. ¶ 70 (same).

As Midjourney's motion illustrates (Mot. 8), when an image is displayed on the Explore page, it includes instructions (i.e., the accompanying text prompt) that other subscribers can use to request the same images. Plaintiffs allege that Midjourney does this

purposely to "further facilitate[] and encourage[] infringement."  DU Compl. ¶ 167; WBD Compl. ¶ 142.  Providing such step-by-step instructions on "how to engage in an infringing use" is classic evidence of inducement.  *Grokster*, 545 U.S. at 915; *David v. CBS Interactive,* 2012 WL 12884914, at *5 (C.D. Cal. July 13, 2012) (inducement sufficiently alleged where defendant distributed file-sharing software and posted videos demonstrating how to use the programs to download copyrighted songs).

Plaintiffs do not allege that Midjourney merely organized or passively indexed user content (Mot. 18).  Instead, Plaintiffs contend Midjourney deliberately selected[13] infringing images for public display on its Explore page and deliberately chose to display them with word-for-word recitals of prompts that instruct users how to obtain the same outputs.  *See* DU Compl. ¶¶ 133, 167-168; WBD Compl. ¶¶ 136, 142.  Such affirmative selection and presentation of infringing content is not content-neutral but instead is precisely the sort of "active encouragement" *Fung* found indicative of unlawful intent.  *See* 710 F.3d at 1035-36.

Plaintiffs object to Midjourney's improper attempt to bolster its arguments with factual material, including a declaration purporting to show how Midjourney's website "really works" under the hood.  *See* Lauter Decl. ¶¶ 3, 6 & Exs. A-E (ECF 139-1).  This information—which includes not just screenshots of the Explore page but also inadmissible attorney hearsay and speculation about how the Explore page "functions … based on dynamic criteria," how it is "algorithmically populated," how "search functionality" operates, and whether the user, rather than Midjourney, "dictates the results of a search" (*see* Mot. 5-6, 19-20)—goes well beyond the four corners of the complaints and cannot be considered on a pleading motion.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  For purposes of this motion, the Court must accept that the Explore page operates exactly the way it is alleged to operate in Plaintiffs' complaints.

---

[13] Midjourney expresses confusion about the word "curates" (Mot. 5).  There is nothing unclear about the word, and Plaintiffs invite Midjourney and the Court to use any general dictionary definition.

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

In *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989), the Ninth Circuit reversed the grant of a Rule 12(c) motion because the district court "went beyond the pleadings" in relying on an attorney declaration proffering factual material. *See id.* at 1550; *see also Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199, 1208 (C.D. Cal. 2020), *aff'd*, 2022 WL 1046252 (9th Cir. Apr. 7, 2022). An attorney declaration, like Mr. Lauter's, that disputes a complaint's factual allegations about how the defendant's website functions far exceeds the proper scope of judicial notice because it seeks to introduce evidence that is not "generally known within the trial court's territorial jurisdiction" or that can "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1191 (S.D. Cal. 2024) (denying judicial notice of a declaration "purport[ing] to describe the user experience when interacting with [a website]" because it did not satisfy Rule 201(b)).[14]

### 2. Other Allegations of Midjourney Statements Encouraging Subscribers to Infringe.

Midjourney ignores numerous other facts alleged by Plaintiffs that independently support inducement.

### a. CEO statements.

These include allegations that recite public statements by Midjourney's CEO David Holz, which show that Midjourney intentionally stocked its service with the copyrighted material of Plaintiffs and others and made no effort to get the consent of any copyright owner, thereby purposely facilitating the distribution of infringing outputs. *See* DU Compl. ¶ 115(a) (quoting Holz stating that Midjourney "pulls off *all the data it can, all the text it can, all the images it can*" … without seeking the consent of Plaintiffs or any copyright owner) (emphasis added); WBD Compl. ¶ 99(a) (same). Such evidence supports a finding

---

[14] Midjourney's bid to smuggle these factual contentions into its Motion under the guise of judicial notice is particularly inappropriate because Plaintiffs have asked Midjourney in discovery to produce the source code software that would show how the Explore page functions and "[d]ocuments reflecting … [the] design, implementation, and operation of the Explore Page," which Midjourney has refused to produce on relevance grounds. *See* Declaration of David Singer at ¶¶ 4-7.

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

that Midjourney acted with an intent to encourage infringement. *See Andersen v. Stability AI,* 744 F. Supp. 3d at 968-69 (finding inducement sufficiently alleged based, in part, on CEO statements).

### b.    The r/midjourney Subreddit.

Midjourney also ignores Plaintiffs' allegations about Midjourney's promotion of infringing outputs on its dedicated "r/Midjourney Subreddit," which is branded with Midjourney's logo. *See* DU Compl. ¶¶ 169-179; WBD Compl. ¶¶ 109-112.[15] Plaintiffs allege that Midjourney has used "Midjourney's official Reddit page" to display the availability of outputs that infringe Plaintiffs' copyrights and that Midjourney has tried to cover its tracks about a change to its Terms of Service by "deleting discussion of this change from its Reddit channel." *See* WBD Compl. ¶¶ 109, 123.

### c.    Efforts to conceal infringing activity.

As soon as this lawsuit was filed, Midjourney modified its Explore page so that certain searches for infringing works produced a response message that inaccurately stated "nothing to see right now," even though infringing outputs still were stored on Midjourney's servers (and available for distribution). WBD Compl. ¶ 135. This change not only confirms that Midjourney is capable of implementing measures to prevent users from searching for infringing material, but it also shows that Midjourney has taken *affirmative steps to conceal* the infringing activity facilitated by its service—conduct that constitutes independent evidence of inducement. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 987-88 (C.D. Cal. 2006) ("*Grokster Remand*") (noting in inducement analysis that the defendant "took active steps to prote[c]t illegal file trading from the enforcement efforts of copyright holders").

In the same vein, Midjourney has sought to conceal the infringement its service has facilitated by terminating the account of a user investigating the service's infringing capabilities. WBD Compl. ¶ 121. After Plaintiffs' initial suit was filed, Midjourney also

---

[15] A review of this Subreddit also shows that Midjourney CEO David Holz is one of the moderators. *See* Singer Decl., ¶ 3, Exs. C-E.

16

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

updated its Terms of Service to prohibit red-teaming, the practice of testing an AI system for vulnerabilities such as the ability to infringe copyrights. *Id*. ¶ 123; *see also id.* ¶¶ 134-135 (referencing other technical changes to make infringement harder to detect). All this conduct evidences an intent to induce infringement.

### d. Serving up infringing outputs in secret.

To the extent the Court is inclined to take judicial notice of screenshots of Midjourney's website, it should consider the screenshots attached to the concurrently filed Singer Declaration.[16] These images reflect that when a subscriber now inputs a prompt that refers to one of Plaintiffs' copyrighted characters—such as Superman or the Minions—the output is displayed *only to the user*, and the user is notified with a message stating: "Our filters detected potential third party content, so we are keeping this generation private to you." *See* Singer Decl., Exs. A, B.

In other words, Midjourney is *recognizing* and *expressly acknowledging* that the user has requested infringing content and that an infringing image has been generated and will be made available to the user, *just surreptitiously*. In effect, Midjourney is telling the subscriber: "Here's some infringing content. We're happy to provide it to you in secret since it's illegal. Do you still want it?" This new function manifestly fosters copyright infringement. Beyond communicating an inducing message, this conduct independently supports inducement because it seeks to conceal infringing activity from detection by copyright owners. *See Grokster Remand*, *supra*, 454 F. Supp. 2d at 988.

### E. Plaintiffs' Allegations About Midjourney's Business Model Also Support Inducement.

In *Grokster*, the Supreme Court explained that a company's business model can be evidence of inducement, and other courts have followed this precedent. *See* 545 U.S. at 939-40; *Fung*, 710 F.3d at 1036-37 (finding the defendant's business model, which

---

[16] Because the declaration merely attaches website screenshots without any attorney testimony about how the website functions in the background, the exhibits are properly the subject of judicial notice. *See D'Angelo*, 726 F. Supp. 3d at 1191 (S.D. Cal. 2024) (taking judicial notice of website screenshots).

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

depended on high-volume use, constituted evidence of inducement); *Arista Records v. Lime Group, LLC*, 784 F. Supp. 2d 398, 429 (S.D.N.Y. 2011) (same).  Here, Plaintiffs allege that Midjourney's business model depends on attracting subscribers and on high-volume use of its infringing service and that customers are "drawn" to the service for that reason.  *See* DU Compl. ¶¶ 133, 176, 181; WBD Compl. ¶¶ 14, 105, 124.  These include allegations that "Midjourney set up a lucrative commercial service by making countless, unauthorized copies of Plaintiffs' copyrighted works, and now sells subscriptions to consumers so that they can view and download copies and derivatives of Plaintiffs' valuable copyrighted characters."  *See* DU Compl. ¶¶ 2-3, 12-14, 74-78, 223; WBD Compl. ¶¶ 1-2, 61, 66-69, 175, 178; *see also* DU Compl. ¶ 77 ("[t]he more expensive the plan … the more images that subscriber can receive"); WBD Compl. ¶ 68 (same).

## F.    Midjourney's Failure to Implement Technological Means to Prevent Infringement Further Supports Inducement Liability.

While the failure to "develop filtering tools or other mechanisms to diminish the infringing activity" that a service otherwise enables does not, by itself, support a finding of inducement, it may in the presence of other evidence "underscore[] [a defendant's] intentional facilitation of [its] users' infringement."  *See Grokster*, 545 U.S. at 939; *see also Fung*, 710 F.3d at 1036; *Grokster Remand*, 454 F. Supp. 2d at 990 (granting plaintiff summary judgment on inducement, in part, because defendants took no meaningful steps to prevent infringement, noting that "[e]ven if filtering technology does not work perfectly and contains negative side effects on usability, the fact that a defendant fails to make some effort to mitigate abusive use of its technology may still support an inference of intent to encourage infringement").[17]

---

[17] *See also China Cent. Television v. Create New Tech. (HK) Ltd.*, 2015 WL 3649187, at *10 (C.D. Cal. June 11, 2015) (finding evidence of "intent to foster or promote infringement" includes "failing to develop filtering tools or other mechanisms to diminish the infringing activity") (*citing Grokster*); *Arista Records v. Lime Group*, 784 F. Supp. 2d at 429-31 (finding inducement because defendant did not take meaningful steps to "implement[] in a meaningful way any of the technological barriers and design choices that are available to diminish infringement through file-sharing programs").

18

Plaintiffs allege extensively that Midjourney had ready access to technological means to limit the infringement of Plaintiffs' copyrighted characters but refused to implement any such measures.  These include allegations that Midjourney (1) has engaged in selective filtering of some content (such as violence and nudity) but not infringing content, *see, e.g.*, DU Compl. ¶¶ 183-185; WBD Compl. ¶¶ 126-129; and (2) has technology available that could create meaningful barriers against infringement that it chooses not to use, including protection measures used by other AI image companies. *See, supra*, Section III.  Midjourney instead "made a calculated and profit-driven decision to offer *zero* protection for copyright owners."  WBD Compl. ¶ 3.

Shortly after Disney and Universal sued, Midjourney deployed some half-measures that, for a brief period, prevented the distribution and public performance of infringing videos by refusing to "animate" certain infringing images that Midjourney generated.  But Midjourney then reversed course and deliberately removed even those imperfect protections against infringement.  *See* WBD Compl. ¶¶ 4, 130-132.  Thus, after demonstrating it easily could reduce infringement on its service, Midjourney went full steam ahead.  Midjourney even promoted this pro-infringement change as an "improvement" to its "video moderation," touting that subscribers would experience "fewer blocked jobs." *Id.* ¶ 4.

### G. Plaintiffs Have Sufficiently Alleged that Midjourney's Acts of Inducement Are Likely to Cause Infringement.

Midjourney's argument that Plaintiffs have not alleged a sufficient "causal link" between its inducing conduct and acts of infringement by subscribers (Mot. 20) misstates what the Ninth Circuit requires of a copyright owner alleging secondary infringement by inducement.  There is no requirement that a plaintiff tie specific actions by the defendant

to specific acts of infringement by third parties. (Mot. 20-21).[18]  In *Fung*, the Ninth Circuit held "the only causation requirement is that the product or service at issue was used to infringe the plaintiff's copyrights."  *See* 710 F.3d at 1037.  *Fung* explicitly rejected the argument that "the acts of infringement must be caused by the manifestations of the distributor's improper object—that is, by the inducing messages themselves."  *Id.*; *see also Grokster Remand,* 454 F. Supp. 2d at 984-85 (rejecting an argument that plaintiffs had to prove the inducing statements "caused specific acts of infringement").  Instead, the Ninth Circuit has held that a plaintiff "need only prove that the 'acts of infringement by third parties' were caused by the product distributed or services provided," explaining that "if one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of the service." *Fung,* 710 F.3d at 1037 (citing *Grokster*, 545 U.S. at 937).  Here, Plaintiffs cite numerous social media posts and other instances showing that subscribers in fact have obtained infringing outputs from Midjourney's service.  *See* DU Compl. ¶¶ 169-180; WBD Compl. ¶¶ 105-118.

The focus always remains on the defendant's "object" or "intent." *Id.*  As the Ninth Circuit has recognized, this is a "relatively loose" causation standard that allows courts to "assume causation and assess liability" based on an unlawful objective. *See Fung*, 710 F.3d at 1038-39; *see also Warner Bros. Ent. v. Tusa,* 2021 WL 6104399, at *1, 5 (C.D. Cal. Oct. 25, 2021) (finding the inducement causation requirement was satisfied because defendant "distributed and promoted the [unauthorized streaming] service for infringing uses, and the infringing conduct predictably followed").

Here, Plaintiffs sufficiently plead causation because they allege unlawful intent and that Midjourney's service has been used to generate and publicly display, reproduce, and

---

[18] Moreover, Midjourney's assertion that Plaintiffs "do not cite even one instance" (Mot. 20) of their copyrighted characters appearing on the Explore page is simply not true.  The complaints contain hundreds of examples of Plaintiffs' copyrighted characters appearing on the Explore page.  *E.g.,* DU Compl. ¶¶ 133-168; WBD Compl. ¶¶ 133-142.  This plausibly shows a design feature that does not operate "by default" or by magic but instead was designed and implemented deliberately by Midjourney. *See id.*

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR

distribute infringing replicas of Plaintiffs' famous copyrighted characters. *See, supra*, Section III. Under *Fung,* nothing more is required.

## VI.    <u>CONCLUSION</u>

For all of the reasons set forth above, Plaintiffs request that Midjourney's motion be denied.

Dated:  August 11, 2026                JENNER & BLOCK LLP


By: */s/ David R. Singer*
        David R. Singer
        Julie A. Shepard
        Andrew J. Thomas
        Lauren M. Greene
        Andrew G. Sullivan
        Kara V. Brandeisky
        Zachary A. Marino

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certifies that this brief is under 25 pages, which complies with the page limit contained in Section 9(d) of this Court's Standing Order for Civil Cases.


Dated:  August 11, 2026                    */s/ David R. Singer*
                                                    David R. Singer

22

PLAINTIFFS' OPPOSITION TO MIDJOURNEY INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. 2:25-cv-05275-JAK-AJR