COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
AASTHA SHARMA (366392)
(asharma@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

JOHN PAUL OLEKSIUK (283396)
(jpo@cooley.com)
STEPHANIE SCHUYLER (PRO HAC VICE)
(sschuyler@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

KAYLA BLAKER (PRO HAC VICE)
(kblaker@cooley.com)
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: (720) 566-4000
Facsimile: (720) 566-4099

*Counsel for Defendant Midjourney, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DISNEY ENTERPRISES, INC., et al.; WARNER BROS. ENTERTAINMENT, INC., et al.,

Plaintiffs,

v.

MIDJOURNEY, INC., a Delaware corporation,

Defendant.

ALL CASES

Case No. 2:25-cv-05275-JAK-AJR

Consolidated for all purposes with Case No. 2:25-cv-08376-JAK-E

**DEFENDANT MIDJOURNEY INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER RULE 12(C)**

Date: October 26, 2026
Time: 8:30 a.m.
Court: Courtroom 10C
Judge: Hon. John A. Kronstadt

Date Action Filed: June 11, 2025

# TABLE OF CONTENTS


**Page**

I. Introduction. ........ 1

II. The Complaints Do Not Plausibly State a Claim For Inducement ........ 1

- A. Model Design and Training Are Not Plausibly "Directed to Promoting Infringement." ........ 2
- B. The Explore and Search Features Are Not Plausibly Directed to Promoting Infringement. ........ 4
- C. The Cited CEO Statement Is Not Plausibly Directed to Promoting Infringement. ........ 6
- D. Third-Party Reddit Posts Are Not Plausibly Directed to Promoting Infringement. ........ 7
- E. Moderation Decisions Are Not Plausibly Directed to Promoting Infringement. ........ 7
- F. Midjourney's Subscription Model Is Not Plausibly Directed to Promoting Infringement. ........ 8

III. Midjourney's Motion is Ripe and Procedurally Proper. ........ 9

IV. Conclusion ........ 10

## I. INTRODUCTION.

Plaintiffs' Opposition confirms they have abandoned their material contribution theory of contributory infringement and are not pursuing the theory that Midjourney's service is "tailored" for infringement. Both must now be dismissed with prejudice. Mot. 14-15.

What's left is Plaintiffs' claim of contributory infringement by "inducement," which they defend by cluttering the record with red herrings and unpled or readily contradicted mischaracterizations of the Midjourney service. As the Supreme Court recently confirmed, inducement requires "clear" and "affirmative" "statements or actions directed to promoting infringement"—***not*** vague assertions, ordinary acts incident to product distribution, or mere omissions. Measured against that standard, Plaintiffs come up short. At most, they cobble together conclusory allegations, unreasonable inferences, and third-party conduct not attributable to Midjourney—none of which, individually or collectively, amounts to the "clear" and "affirmative" encouragement of infringement required by the law.

Plaintiffs also argue that dismissing their contributory infringement claim would be improper because it comprises only part of an omnibus "secondary liability" claim. However, combining contributory and vicarious infringement under a single count does not insulate Plaintiffs from *Iqbal* scrutiny: those are distinct claims, with different elements, and each must be plausibly pled independently.

Midjourney's Motion resulted in Plaintiffs conceding that the bulk of their contributory infringement claim was baseless. As to what remains, the Complaints fail to plead inducement, warranting dismissal of the claim in its entirety.

## II. THE COMPLAINTS DO NOT PLAUSIBLY STATE A CLAIM FOR INDUCEMENT.

Plaintiffs concede that *Cox* narrowed contributory infringement. They argue that the Motion mistakenly suggests that the Court also narrowed the standard for inducement, but that misses the point. Midjourney did not argue that *Cox* or *Hikma* explicitly narrowed the standard for inducement—nor does "narrowing" matter as to

whether Plaintiffs' inducement theory is defective. But those opinions—in particular *Hikma*—add a gloss to *Grokster*'s articulation of the inducement standard. Mot. 19. Applying *Iqbal* and *Twombly*, *Hikma* sharpened the line between plausible, non-conclusory allegations of affirmative "statements or actions directed to promoting infringement" and allegations merely consistent with liability. *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, at 1400-–03 (2026) (citation modified).[1] The Court stressed: whether "implicit or explicit, the necessary inducement must be clear *to the relevant audience* and affirmative." *Id*. at 1401 (emphasis added); *MGM Inc. v. Grokster, Ltd.*, 545 U.S. 913, at 935 (2005) (requiring "statements or actions *directed to promoting infringement*") (emphasis added). Thus, four categories of allegations were deemed insufficient to support a claim at the pleading stage: (1) statements with an "obvious alternative explanation"; (2) "ordinary acts incident to product distribution"; (3) "mere omissions, inactions, or nonfeasance"; and (4) "vague" statements that require "speculation about how [others] may act" to connect them to infringement. *Hikma*, 146 S. Ct. at 1400-02. The allegations highlighted in the Opposition fall squarely within these and other foreclosed categories, rendering any inference of "inducement" implausible.

### A. Model Design and Training Are Not Plausibly "Directed to Promoting Infringement."

Plaintiffs argue they satisfied their pleading obligations by alleging that Midjourney "specifically designed" its AI models "to readily produce and display perfect reproductions and derivatives of Plaintiffs' copyrighted characters" and that subscribers "are drawn to the service for that reason." Opp. 11-12. These conclusory allegations are nothing more than a bald assertion that "Midjourney intended to encourage infringement." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They also concern private acts that, by definition, cannot encourage a "relevant audience."

[1] Plaintiffs assert that *Hikma* is "distinguishable as a patent case," but offer no reason why that distinction matters. Opp. at 8. It doesn't. In each of the Court's cornerstone opinions on inducement—*Grokster*, *Cox*, and *Hikma*—it relied interchangeably on patent and copyright authority, demonstrating there is only one standard.

*Hikma*, 146 S. Ct. at 1401.[2] Plaintiffs' training-related allegations—that Midjourney selected Plaintiffs' material to train its models and "designed" them to reproduce Plaintiffs' characters—fare no better. Opp. 12. Privately training models on copyrighted works is hardly affirmative encouragement of others to infringe, and is consistent with obvious alternative explanations—including standard industry practice for generative AI systems, which courts have recognized as fair use. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1059 (N.D. Cal. June 25, 2025); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033 (N.D. Cal. June 23, 2025). Even as to the ability of Midjourney users to create various images (including Plaintiffs' alleged characters), there are many innocent reasons to do so, including non-commercial fan art, commentary, and criticism. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 545 (2023) (fair use factor one is "an objective inquiry into... what ***the user*** does with the original.... " (emphasis added)).

Separately, these allegations are deficient because they reduce to the position that knowingly designing a system capable of *some* infringing uses is enough to state a claim for inducement. It is not. That is just another way of saying Midjourney "[knew] of infringing potential or of actual infringing uses" of its service, which is insufficient as a matter of law. *Grokster*, 545 U.S. at 937. Besides, it is *tailoring*, ***not*** inducement, that turns on the extent to which a service lacks substantial non-infringing uses. Interpreting "inducement" to also contemplate service designs that enable infringement would collapse that distinction and eviscerate the tailoring theory. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 968 (2026).

Plaintiffs' responsive authorities (Opp. 12-13) are all distinguishable. *Andersen v. Stability AI, Ltd.* pre-dates *Cox*'s recognition that tailoring is distinct from inducement and *Hikma*'s application of *Iqbal*/*Twombly* to inducement—a different result might well obtain today. 744 F. Supp. 3d 956, 968-69 (N.D. Cal.

[2] Plaintiffs cite *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), to claim "steps that are substantially certain to result in… direct infringement" entails inducement; but that opinion addressed the material contribution theory.

2024). That decision cited Stability's CEO publicly touting the ability to "recreate" training images; there are no equivalent allegations here. *Id.* *Advance Local Media LLC v. Cohere Inc.*, an out-of-circuit decision that likewise predates *Cox* and *Hikma*, turned on the defendant's promotion of its service as providing "the latest news", *not* on how the service was designed. 2025 WL 3171892, at *2, *6 (S.D.N.Y. Nov. 13, 2025). *Strike 3* is also no help: it addressed *tailoring*, not inducement. *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, 2026 WL 1697633, at *9 (N.D. Cal. June 11, 2026). And *Antarctica Films Argentina, S.A. v. Gaia, Inc.* involved the defendant paying the direct infringer to create an infringing film—factually a world apart from Plaintiffs' allegations. 662 F. Supp. 3d 1191, 1207-08 (D. Colo. 2023).

### B. The Explore and Search Features Are Not Plausibly Directed to Promoting Infringement.

Midjourney's motion contextualized its "Explore" page to show the Court what it is, given that it features so heavily in the Complaints. Mot. at 5-8. Plaintiffs say the Complaints adequately plead inducement because Midjourney supposedly "curate[d] and present[ed] Explore page search results that publicly display images that infringe Plaintiffs' copyrighted characters" (Opp. 13), "deliberately selected infringing images for public display on its Explore page and deliberately chose to display them with word-for-word recitals of prompts that instruct users how to obtain the same outputs." Opp. 14. But here too, the allegations are wholly conclusory, and therefore "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Plaintiffs' Explore-feature allegations are also contradicted by materials incorporated by reference in the Complaints and thus subject to judicial notice: the contents of the feature itself. Mot. 6, n.1; Lauter Decl., Ex. A-E. As shown, the Explore gallery displays user images in a rolling feed under content-neutral categories such as "For You," "Random," and "Top Day" and via a user-driven search function that returns results based on the user's search terms. Mot. 6-7; *see* Disney Compl. ¶¶ 134-165; Warner Compl. ¶¶ 135-140. And the so-called "instructi[ons for] how to engage in an infringing use" (Opp. 14) are nothing more

than *user prompts*, which are displayed alongside every published image and video, regardless of its contents. On their face, these are *ordinary* functions incidental to provision of the Midjourney service (*Hikma*, 146 S. Ct. at 1400). As the Motion called out, Plaintiffs do not allege a ***single instance*** in which the default Explore gallery displayed an image or video that infringes any one of their hundreds of asserted works. Mot. 8.[3] Instead, Plaintiffs conflate the Explore gallery with screenshots of *their own* manual keyword searches. Saying, as Plaintiffs do, that these features are "designed to" encourage infringement does not make them so, particularly given that the features plainly serve content-neutral functions unrelated to infringement. *See Grokster*, 545 U.S. at 936-37; *Fung*, 710 F.3d at 1036 n.13 (organizing files and automated indexing does not send an inducing "message").[4]

Plaintiffs object that the Lauter Declaration improperly "purport[s] to show how Midjourney's website 'really works'" via "inadmissible attorney hearsay and speculation."[5] That objection rings hollow. The declaration merely directs the Court to facts observable on the face of the website: information incorporated by reference and subject to judicial notice. *See* Mot. 6 n.1; *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *4 (C.D. Cal. Mar. 31, 2026) (Plaintiff's reliance on site functionality "allows the Court to incorporate [Defendant's] assertions regarding this functionality."). The Court may rely on these materials to ensure that readily

---

[3] Plaintiffs also overstate Midjourney's causation argument. Opp. 19-21. Even *Fung's* "relatively loose" causation standard requires some connection between alleged inducement and the works asserted. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). It would be nonsensical to hold that, say, an image of Tweety Bird encourages infringement of Batman. In any event, Plaintiffs do not otherwise plausibly plead inducement, so the Court need not reach causation.

[4] Indeed, Plaintiffs' allegations are a far cry from the cases finding inducement, such as where a defendant published demonstrations or how-to articles instructing users to infringe copyrighted works by name. *See, e.g.*, *David v. CBS Interactive Inc.*, 2012 WL 12884914, at *5 (C.D. Cal. July 13, 2012); *see also* Mot. 17-18. No comparable advertisement or targeted instruction is alleged here.

[5] Plaintiffs, perhaps to manufacture a false equivocation, proffer their own attorney declaration (Dkt. 154-1) consisting entirely of "hearsay and speculation" unsupported by any materials incorporated by reference or subject to judicial notice. *Notably, even still, they cannot identify a single example of any asserted work having been displayed in the Explore gallery absent their own manual keyword searches.*

contradicted allegations are not accepted as true. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs' authorities do not counsel otherwise. *Khoja v. Orexigen Therapeutics, Inc.* cautioned against "overuse and improper application" of extrinsic materials, in particular "in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." 899 F.3d 988, 998 (9th Cir. 2018). But it also reaffirmed that "judicial notice and incorporation-by-reference do have roles to play at the pleading stage" by "prevent[ing] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id*. at 998, 1002.[6]

### C. The Cited CEO Statement Is Not Plausibly Directed to Promoting Infringement.

Plaintiffs next turn to an isolated quote from Midjourney's CEO that Midjourney "pulls off all the data it can, all the text it can, all the images it can." Disney Compl. ¶ 115(a); Warner Compl. ¶ 99(a); Opp. 15. That describes data collection for model training—a private, internal process. It says nothing to subscribers, recommends no use of the service, and instructs no one to infringe. In stark contrast, in *Andersen*, Stability's CEO's statements were explicit. *Supra*, pg. 4. No comparable message appears here. This is precisely the kind of "vague" statement that requires "speculation about how [others] may act" to connect it to infringement—insufficient under *Hikma*. 146 S. Ct. at 1400-02.

---

[6] Plaintiffs' remaining authorities are inapplicable. In *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, the Ninth Circuit reversed a Rule 12(c) judgment because the district court relied on an attorney declaration to establish *ownership of the copyrights at issue*—a fact expressly denied in the answer and not apparent from any document incorporated by reference. 896 F.2d 1542, 1550 (9th Cir. 1990). In *Ricketts v. CBS Corps.*, the court excluded extrinsic declarations and exhibits proffered by the Plaintiff that were neither incorporated by reference in the complaint nor subject to judicial notice. 439 F. Supp. 3d 1199, 1208 (C.D. Cal. 2020). And in *D'Angelo v. FCA US, LLC,* the court denied judicial notice of an attorney declaration that "purport[ed] to describe the user experience when interacting with" a website's *chat feature*, because the declaration addressed backend software processes not apparent from the face of the website. 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024).

### D. Third-Party Reddit Posts Are Not Plausibly Directed to Promoting Infringement.

Plaintiffs' Reddit allegations fare no better. Without basis, Plaintiffs attribute to Midjourney a handful of third-party posts in the r/midjourney subreddit and other online communities. *See* Opp. 16. Undoubtedly, these allegations were originally pled to support material contribution and vicarious liability (Disney Compl. ¶¶ 169-181; Warner Compl. ¶¶ 109-112), and have now been clumsily repurposed for inducement. But inducement cannot be premised on third-party speech that is not attributable to the defendant. *Fung*, 710 F.3d at 1038. "When dealing with corporate or entity defendants . . . the relevant intent must be that of the entity itself, *as defined by traditional agency law principles*." *Id*. (emphasis added). Plaintiffs allege no such relationship between Midjourney and users posting on Reddit or elsewhere.

### E. Moderation Decisions Are Not Plausibly Directed to Promoting Infringement.

Plaintiffs round out their inducement theory with a grab bag of moderation-related allegations that are irrelevant to whether Midjourney encouraged anyone to infringe—and that are, in any event, self-defeating. As a threshold matter, a platform's failure to filter infringing content does not support inducement. *See Grokster*, 545 U.S. at 939 n.12; *Fung*, 710 F.3d at 1036; *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 990 (C.D. Cal. 2006) (filtering evidence probative only in the presence of other inducement evidence). *Cox* outright rejected liability premised on knowledge combined with "insufficient action to prevent" infringement. 146 S. Ct. at 968-69. And *Hikma* reinforced that "omissions, inactions, [and] nonfeasance" cannot amount to active inducement. 146 S. Ct. at 1401-02. These authorities foreclose Plaintiffs' reliance on allegations that Midjourney "could have" prevented infringement through moderation. Opp. 4.

The same principle disposes of Plaintiffs' allegation that Midjourney temporarily restricted animation of certain flagged images, then after reversing course, generically promoted "fewer blocked jobs." Opp. 18-19. Adjusting

moderation parameters—even in a direction Plaintiffs dislike—is consistent with obvious alternative explanations (*e.g.,* preventing over-inclusive censorship) and remains a "mere omission[], inaction[], or nonfeasance," not an affirmative act "directed to promoting" it. *Hikma*, 146 S. Ct. at 1401-02.

Plaintiffs' other moderation-related arguments betray the sophistry of their position. According to Plaintiffs, displaying user images on the Explore page communicates an inducing message. Opp. 13-14. But when Midjourney screens searches for Plaintiffs' characters and makes flagged outputs private (unpled allegations introduced via the Singer Declaration), that too is evidence of inducement because it supposedly "conceals" infringement. Opp. 16-17. Apart from the fact that cautioning users about the contents of their creations is the antithesis of encouragement, Plaintiffs cannot have it both ways. The contradiction exposes their arguments for what they are: post hoc rationalizations scraped together to obscure the absence of any plausible allegations of an inducing act.

Plaintiffs' reliance on Midjourney's Terms of Service revisions is similarly misplaced. Telling users that they *cannot* use Midjourney's service to red-team (i.e., test) the ability of the service to create infringing material (or supposedly concealing public discussion of such policy) has no nexus to encouraging infringement. Such framing is also contradicted by Plaintiffs' emphasis throughout the Complaints that the accused images can be generated without any effort, let alone red-teaming. *See* Disney Compl. ¶¶ 8, 21, 124-131; Warner Compl. ¶¶ 7-13, 95-97.

### F. Midjourney's Subscription Model Is Not Plausibly Directed to Promoting Infringement.

Even in the cases cited by Plaintiffs, a "business model" was never independent evidence of inducement; it was, at most, evidence that corroborated *other* direct proof that the defendant communicated inducing messages. In *Grokster*, the Court treated the defendants' advertising-revenue model as a "further complement to the direct evidence of unlawful objective," stressing that "[t]his

evidence alone would not justify an inference of unlawful intent." 545 U.S. at 939-40. *Fung* likewise treated the defendant's business model as "supporting evidence, insufficient in [itself]" to establish inducement. 710 F.3d at 1036-37. And in *Arista Recs. LLC v. Lime Grp. LLC,* the business model similarly corroborated direct evidence that the defendant had built its service around known infringers. 784 F. Supp. 2d 398, 429 (S.D.N.Y. 2011). In each case, the business model mattered only because it reinforced inducing conduct already in the record. Here, there are no inducing messages for the "business model" to corroborate.

Plaintiffs' remaining allegations about Midjourney's business model are also conclusory. They baldly assert that the model "depends on attracting subscribers and on high-volume use of its infringing service," that customers are "drawn" to the service because of infringing content, and that tiered pricing links revenue to infringement because "[t]he more expensive the plan … the more images." Opp. 17-18. These accusations do no more than attach pejoratives to an otherwise generic subscription model—the Court should not accept them. *Iqbal*, 556 U.S. at 679.

## III. MIDJOURNEY'S MOTION IS RIPE AND PROCEDURALLY PROPER.

Relying on Rule 8(d)(2), Plaintiffs argue that their secondary infringement claim may only be challenged *in toto*—that they were allowed to plead "alternative" theories within a single claim. Although Rule 8(d)(2) governs how alternative theories may be pleaded, it does not immunize a faulty claim from Rule 12 scrutiny. As explained in the Motion (Mot. 13), Plaintiffs' secondary infringement "claim" is really two doctrinally independent *claims* (not *theories*) with distinct elements and courts in this District routinely assess them separately. *See* Mot. 12-14 (citing cases).

In Opposition, Plaintiffs turn to case law that does not help them. They rely primarily on Judge Blumenfeld's decision in *Minimax*. There, the court, having already found contributory infringement plausibly pled (based on advertisements and other conduct notably absent here) concluded in a footnote that it "need not decide whether the vicarious infringement theory is also plausibly alleged." *Disney Enters.,*

*Inc. v. Minimax*, 2026 WL 1476670, at *6 n.7 (C.D. Cal. May 22, 2026). Plaintiffs extrapolate too much from that footnote. In their briefing, the *Minimax* plaintiffs did not argue that it would have been improper to dismiss one secondary liability claim but not the other (and addressed both separately) (*Minimax,* Dkt. 42 at 17-21); and the Court's opinion contained no analysis of the applicable law.

Plaintiffs' remaining cases (Opp. 6) are inapt. None address whether contributory and vicarious infringement may be addressed as separate claims when pleaded together; each involved efforts to dismiss alternative theories or remedies within a single cause of action. *See Doe v. Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *2-3 (N.D. Cal. Apr. 24, 2018) (**negligence** claim cannot be split up into its distinct theories); *Franklin v. Midwest Recovery Sys., LLC*, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (same, but for a **UCL** claim); *Torres v. Carescope, LLC*, 2020 WL 6939032, at *4 (E.D. Cal. Nov. 25, 2020) (court will not rule on one of the **available remedies**); *Hartstein v. Hyatt Corp.*, 2021 WL 2497926, at *2 (C.D. Cal. Mar. 19, 2021) (declining to rule on one of three factual scenarios for **employment-**related claims); *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (same, for **whistleblower retaliation** theories).

In short, Plaintiffs cannot "evade Rule 12" by styling two independent claims as one. *Solis v. Am. Airlines, Inc.*, 2021 WL 4893247, at *2 (C.D. Cal. July 27, 2021). Otherwise, parties could always insulate facially defective claims from dismissal—and obtain discovery on them—simply by combining them with well-pleaded ones.

## IV. Conclusion

Midjourney's Motion established that the Complaints' "material contribution" theory of contributory infringement does not survive *Cox*, and that Plaintiffs have disclaimed any "tailoring" theory. Their remaining theory based on "inducement" fails under binding authority. With months left in discovery, the parties would benefit from a ruling streamlining the case. For the foregoing reasons, the Court should dismiss Plaintiffs' contributory infringement claim with prejudice.

Dated: August 25, 2026

COOLEY LLP

By: ______________________

Bobby Ghajar
John Paul Oleksiuk
Judd Lauter
Stephanie Schuyler
Kayla Blaker
Aastha Sharma

*Counsel for Defendant Midjourney, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Midjourney, Inc., certifies that this reply brief is under 10 pages, which complies with the page limit contained in Section 9(d) of this Court's Standing Orders for Civil Cases.

Dated: August 25, 2026

COOLEY LLP

By: ______________________

Bobby Ghajar
John Paul Oleksiuk
Judd Lauter
Stephanie Schuyler
Kayla Blaker
Aastha Sharma

*Counsel for Defendant Midjourney, Inc.*