**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DISNEY ENTERPRISES, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al.; WARNER BROS. ENTERTAINMENT INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MIDJOURNEY, INC.,<br><br>Defendant.<br><br>ALL CASES | Lead Case No. 2:25-cv-05275-JAK (AJRx)<br><br>Consolidated Case No. 2:25-cv-08376-JAK (Ex)<br><br>**JOINT STIPULATION AND ~~[PROPOSED]~~ ORDER RE TRAINING DATA PRODUCTION** |

This Joint Stipulation is made by and between plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, DreamWorks Animation L.L.C., Warner Bros. Entertainment Inc., DC Comics, Turner Entertainment Co., Hanna-Barbera Productions, Inc., and The Cartoon Network, Inc. (collectively "Plaintiffs") and defendant Midjourney, Inc. ("Midjourney" and, collectively with Plaintiffs, the "Parties"), by and through their counsel of record as follows:

## 1. PURPOSE

This Order governs Midjourney's production of the training data for the Midjourney AI Models, the verification of that data, and the allocation of associated costs. This Order implements Midjourney's election under Rule 33(d) of the Federal Rules of Civil Procedure, made November 21, 2025 in response to Interrogatory No. 3, to produce or make available for inspection the image and video datasets used in training, and responds to, among other discovery, Plaintiffs' Request for Production No. 4. The Parties agree that Midjourney's compliance with the terms of this protocol satisfies its obligation to produce or make available for inspection image and video datasets used in training the Midjourney AI Models. The Parties further agree to cooperate in good faith to implement this protocol consistent with the Court's August 7, 2026 minute order. Dkt. 148. The Parties may modify this protocol by written stipulation filed with the Court, without further leave of Court.

## 2. DEFINITIONS

As used in this Order: (a) the "Midjourney AI Models" means the Midjourney image-generation models designated v4, v5, v6, v7, and v8, and Midjourney's video-generation model; (b) "Training Data" means the image and video datasets used to train one or more of the Midjourney AI Models, including all associated captions, metadata, and retained embedding vectors, and the labels by which Midjourney identifies each dataset in its own systems, including in its training configurations and training logs; (c) "Plaintiffs' Project" means one or more Google Cloud Platform projects created and controlled by

Plaintiffs' Outside Counsel of Record or their retained experts, at Plaintiffs' expense, isolated from Midjourney and its counsel, and access to which is limited to persons authorized under Sections 7.3 and 7.4 of the Stipulated Protective Order, Dkt. 46 (the "Protective Order"), and Section 8 of this Order; (d) the "Hosted Copy," the "Manifest," the "Mapping," "Verified Transfer Completion," and "Identified Records" have the meanings given below. All references to "days" mean calendar days unless otherwise stated.

**3. THE HOSTED COPY**

Within seven (7) days after entry of this Order, Plaintiffs' counsel shall designate the destination buckets within Plaintiffs' Project and provide the project identifier, bucket names, and service account information. Any delay by Plaintiffs in providing that information extends Midjourney's deadline under this Section by the length of the delay. Plaintiffs' counsel shall designate buckets configured in the Standard storage class or with Autoclass enabled, and shall use commercially reasonable efforts to designate buckets located in the same Google Cloud region as the source data. Consistent with Section 5 herein, Midjourney shall identify in writing each Google Cloud Storage bucket or other storage location that contains Training Data as maintained in the ordinary course of Midjourney's business, and shall confirm in writing that the identified locations together contain all Training Data for each of the Midjourney AI Models. Midjourney shall transfer a complete copy of all such Training Data for each of the Midjourney AI Models, including the v4 and v5 datasets and all video training data (the "Hosted Copy"), to the designated buckets no later than seven (7) days after Plaintiffs' designation. If Plaintiffs designate buckets located in another Google Cloud region, Midjourney shall complete the transfer no later than fifteen (15) days after Plaintiffs' designation. The transfer shall be performed by Midjourney, and the parties shall bear the costs of the transfer equally (50% paid by Midjourney, 50% paid by Plaintiffs collectively), including per-operation request fees and any network egress charges. The Hosted Copy shall preserve the Training Data as maintained in the ordinary course of Midjourney's business, including its contents,

organization, directory and file structure, file names and paths, and associated metadata, and, to the extent the Hosted Copy differs in any respect that Midjourney is aware of, Midjourney shall identify each difference in writing. Changes to Google Cloud Storage object metadata that are inherent in the copying process, including the creation timestamps and object paths of the copied objects within the destination buckets, do not violate this Section where the Manifest records the original values. If, after the date stated under Section 5(b), additional image or video data is used to train any of the Midjourney AI Models, Midjourney shall supplement the Hosted Copy, the Manifest, and the Mapping to include that data within twenty-one (21) days and shall serve an updated declaration under Section 5, and this Section's deliveries and Section 6's verification apply to each supplementation.

**4. THE MANIFEST AND THE MAPPING**

Contemporaneously with the transfer under Section 3, Midjourney shall produce:

(a) a complete, per-object, machine-readable manifest of the Training Data (the "Manifest") stating, for each object: the original file path; the object's size; the original creation timestamp; the MD5 and CRC32C checksums for the source objects as maintained by Google Cloud Storage; the dataset labels by which Midjourney refers to the object's dataset in its own systems, if different from the filepath or location, including in training configurations and training logs; and a flag identifying any object for which an original value was not captured. As used in this Order, "original" means the value as the object was maintained in the ordinary course of Midjourney's business, prior to any copying performed for purposes of this litigation; and

(b) a complete written mapping (the "Mapping") of each directory and dataset within the Training Data to the Midjourney AI Model version or versions trained on it, including identification of the directories and datasets containing the v4 and v5 training data, and identifying the training configurations, training logs, or other internal records on which the Mapping is based. The Mapping shall account for every directory and subdirectory transferred under Section 3, and shall state expressly, as to any directory or subdirectory

not used to train any Midjourney AI Model, that it was not so used. The Mapping shall state whether the directory and file paths within those locations are the dataset labels by which Midjourney refers to that data in its own systems, including in its training configurations and training logs, and, where they are not, shall state the labels Midjourney uses.

Midjourney shall enable Google Cloud Storage inventory reporting for the locations identified under Section 3, in a format loadable into BigQuery, shall generate the inventory reports as of the date the transfer under Section 3 begins, and shall deliver the resulting reports to Plaintiffs contemporaneously with the Manifest. The Manifest shall reconcile with that inventory reporting.

## 5. DECLARATION

Contemporaneously with the Manifest and the Mapping, Midjourney shall serve a declaration, executed under penalty of perjury by a named person with knowledge of the creation of the Hosted Copy, and of the generation of the Manifest and the Mapping, who may be deposed regarding its contents, stating, to the best of the declarant's knowledge and based on Midjourney's reasonable investigation of reasonably available information: (a) that the Hosted Copy contains all Training Data for each of the Midjourney AI Models, that the locations identified under Section 3 are all of the storage locations containing Training Data, and that no Training Data was excluded; (b) the date through which the foregoing is complete; (c) that the Manifest lists every object and that the values it reports are the original values maintained in the ordinary course of Midjourney's business, except as flagged; (d) that the Mapping is complete and accurate and identifies the records on which it is based; and (e) each respect in which the Hosted Copy differs from the Training Data as maintained in the ordinary course of Midjourney's business.

## 6. VERIFICATION AND CURE

Plaintiffs shall verify each transfer under Section 3 by checksum against the Manifest. Midjourney shall re-transfer, within five (5) business days of written notice, any object whose checksum does not match or that is missing. "Verified Transfer Completion"

means the date on which Plaintiffs confirm in writing that the Hosted Copy is complete and verified against the Manifest and that the declaration required by Section 5 has been served. If Plaintiffs believe there is a deficiency in the Manifest, the Mapping, or the declaration, they shall serve a written notice identifying their specific demands and the specific alleged defect. Midjourney shall cure within seven (7) business days or else, if Midjourney disputes the existence of a defect, the Parties shall meet and confer within seven (7) business days to discuss the issue in good faith. Any alleged defect unresolved within seven (7) days of such meet and confer may be addressed before Magistrate Judge Richlin consistent with Section 12 herein.

**7. STORAGE MANAGEMENT AND COSTS**

The parties shall bear the costs of transferring the Hosted Copy equally, as provided in Section 3. Midjourney shall bear all costs of creating the Hosted Copy and all costs of the deliveries and declaration required by Sections 3 through 5. From the date the transfer under Section 3 is complete, the parties shall bear the at-rest storage costs of the Hosted Copy equally (50% paid by Midjourney, 50% paid by Plaintiffs collectively) for the duration of this Action. Plaintiffs shall manage the storage of the Hosted Copy and shall identify Training Data not relevant to their analysis and, as soon as reasonably practicable, transition it to lower-cost storage classes or manage it so that it transitions to lower-cost classes, including under Autoclass, to reduce the at-rest cost for both parties. The Hosted Copy shall be maintained in a dedicated project within Plaintiffs' Project used solely for storage of the Hosted Copy. Midjourney shall be provided access to that project's billing reports. Within thirty (30) days after the close of each calendar quarter, Midjourney shall reimburse Plaintiffs 50% of the at-rest storage charges incurred by that project during the quarter. Within thirty (30) days after completion of the transfer, each Party shall provide the other with the Google Cloud billing records reflecting the request fees and network charges it incurred in connection with the transfer, and the Party that incurred less than half of the total shall pay the other the amount necessary to equalize those costs. Plaintiffs shall

bear all costs of their own compute, analysis, tooling, and reads. Cost obligations under this Order run from its entry forward.

**8. ACCESS TO THE HOSTED COPY; REVIEW PERSONNEL**

Plaintiffs shall maintain the Hosted Copy in a secure manner consistent with Section 7.1 of the Protective Order. Access to the Hosted Copy and to Plaintiffs' Project shall be limited to Plaintiffs' Outside Counsel of Record and their employees, experts cleared under Section 7.4 of the Protective Order, and Professional Vendors under Sections 2.16 and 7.3(a) of the Protective Order. Review personnel engaged by Plaintiffs' Outside Counsel of Record through a professional review vendor to review the Training Data are Professional Vendors within Section 2.16 of the Protective Order, may access the Hosted Copy under Section 7.3(a), and are not subject to the procedures of Section 7.4, provided that: (a) Plaintiffs' counsel identifies the review vendor entity to Midjourney in writing before review personnel first access the Hosted Copy; (b) each such person signs Exhibit A to the Protective Order before access; (c) review personnel shall access Training Data records, including any candidate sets or excerpts derived from the Hosted Copy, solely within a secured review environment, whether accessed on premises or remotely, operated by or at the direction of Plaintiffs' Outside Counsel of Record that maintains access logging; and (d) Training Data records may only be exported from the review environment by or at the direction of Plaintiffs' Outside Counsel of Record for use in this Action, and review personnel shall not otherwise download, copy, or retain Training Data records outside that environment.

Plaintiffs may use artificial-intelligence and machine-learning tools, including commercially available models and services, to analyze the Training Data. Training Data records transmitted to any such tool or service retain their designations and protections under the Protective Order.

**9. DESIGNATIONS**

The Hosted Copy and all Training Data are designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Protective Order. Records that Plaintiffs

identify as depicting Plaintiffs' works or characters (the "Identified Records") shall be re-designated "CONFIDENTIAL" after Plaintiffs serve a list identifying them.

Re-designation extends to the image or video content of each Identified Record and the metadata collected with the file from its source. Data generated by Midjourney and information about the organization or directory structure of the Training Data retain the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation, without prejudice to Plaintiffs seeking re-designation of particular fields or otherwise objecting to designations under Section 6 of the Protective Order.

A list served under this Section shall identify records by Manifest entry or object path. Notwithstanding Section 3 of the Protective Order, the list, and counts, statistics, and match results concerning the appearance of Plaintiffs' works and characters in the Training Data, may be disclosed upon service of the list to persons authorized to receive "CONFIDENTIAL" information under Section 7.2 of the Protective Order, and Plaintiffs' Outside Counsel of Record may communicate to those persons whether, in what form, and to what extent Plaintiffs' works and characters appear in the Training Data.

Service of a list does not waive any privilege or protection, including as to the methods, queries, or analyses used to prepare it, no list is a representation that it is complete, and the absence of any record from any list shall not be used as evidence or argument that the record, or any work or character, is absent from the Training Data. Nothing in this Section limits either Party's rights under Section 6 of the Protective Order.

## 10. PRESERVATION

Nothing in this Order authorizes the deletion of any data. All preservation obligations remain in effect, including Midjourney's obligations with respect to the Training Data as maintained in the ordinary course of its business, the Manifest, the Mapping, and deduplication records, and Plaintiffs' obligations with respect to the Hosted Copy. Midjourney's preservation obligations extend to the image and video data (with associated metadata) used to train any image- or video-generation model Midjourney

makes available during the pendency of this Action, and to the training configurations, training logs, and deduplication records for that model.

**11. RESERVATION OF RIGHTS**

This Order is without prejudice to Plaintiffs' positions regarding the sufficiency of Midjourney's discovery responses, including under Rule 33(d), if the Hosted Copy is incomplete, or if the Hosted Copy differs from the Training Data as maintained in the ordinary course of Midjourney's business in contents, organization, directory or file structure, file names or paths, or associated metadata, other than differences in original creation timestamp for which the Manifest records the original value. This Order does not limit or affect any source code discovery ordered by the Court or any other order of the Court; and, subject to Section 1 herein, does not limit any Party's right to seek additional discovery, move to compel, or seek other relief. Nothing in this Order limits any Party's right to seek modification of the pretrial schedule.

**12. ENFORCEMENT**

Disputes arising under this Order shall be presented to Magistrate Judge Richlin, by informal discovery conference where available. The Court retains jurisdiction to enforce this Order.

IT IS SO STIPULATED, through Counsel of Record.

DATED: September 22, 2026 /s/ *David R. Singer*

David R. Singer
Jenner & Block LLP
Attorneys for Plaintiffs

DATED: September 22, 2026 /s/ *Judd Lauter*

Judd Lauter
Cooley LLP
Attorneys for Defendant Midjourney, Inc.

Pursuant to C.D. Cal. L.R. 5-4.3.4(a)(2)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

IT IS ORDERED that the foregoing Agreement is approved.

Dated: September 29, 2026

HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE