COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
AASTHA SHARMA (366392)
(asharma@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

JOHN PAUL OLEKSIUK (283396)
(jpo@cooley.com)
STEPHANIE SCHUYLER (PRO HAC VICE)
(sschuyler@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

JUDD D. LAUTER (290945)
(jlauter@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

KAYLA BLAKER (PRO HAC VICE)
(kblaker@cooley.com)
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: (720) 566-4000
Facsimile: (720) 566-4099

*Counsel for Defendant Midjourney, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DISNEY ENTERPRISES, INC., et al.; WARNER BROS. ENTERTAINMENT, INC., et al.,

Plaintiffs,

v.

MIDJOURNEY, INC.,

Defendant.

ALL CASES

Case No. 2:25-cv-05275-JAK-AJR
Consolidated for all purposes with Case No. 2:25-cv-08376-JAK-E

**DEFENDANT MIDJOURNEY'S BRIEF IN RESPONSE TO TENTATIVE ORDER RE: SOURCE CODE PRODUCTION (DKT. 218)**

Judge: Hon. A. Joel Richlin

Date Action Filed: June 11, 2025

## I. Introduction

Although the technology in this case may be complicated, discovery need not be complex. The contours of Plaintiffs' claims and Midjourney's defenses, which the Court is well-versed in by now, are relatively straightforward. In other Gen AI cases grappling with similar fair use issues (*see Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025)), none hinged on source code minutiae. Yet Plaintiffs' demands for source code and other sensitive technical documentation have been relentless, expanding with each effort by Midjourney to satisfy them.

Midjourney has already produced (1) training code for every image generation model it had released prior to the complaints; (2) code related to data processing, and (3) code related to moderation. Following various IDCs and direction from the Court, Midjourney produced (4) additional, duplicative moderation code, (5) training code for its video model, (6) training code for its newest models, and (7) code used to train a training data scoring model. *See* Dkts. 85-1, 87, 148. This is in addition to the over 30,000 business documents that have been produced, tens of millions of user prompts and outputs, billions of training data images and video clips, and terabytes of data comprising the configurations of *every* training run stored in Midjourney's logging platform. Every production has been met with demands for more.

Now, Plaintiffs seek disclosure of three additional categories of confidential source code: code for the "--cref" parameter, and for algorithms underlying the Explore Page and Midjourney TV. These will not be their last outsized demands if the Tentative Order stands, because Plaintiffs and their experts will inevitably argue they need more–without any showing that what they've received to date supports the speculation on which they were granted access to other sensitive data.

Here, Plaintiffs argued that the --cref parameter and the Explore Page and Midjourney TV algorithms are "relevant and necessary" on the basis that they *might* shed *some* additional light on an issue. That is not the standard, and it cannot be,

particularly where the material sought is quintessential trade-secret information, and, as to the --cref code, cannot be extricated from highly sensitive trade secrets. Plaintiffs bore the burden of demonstrating that their discovery needs, to the extent legitimate, cannot be satisfied through less intrusive means. They did not and the Tentative Order excused them of that burden. It did so by crediting arguments that Plaintiffs never advanced, let alone established, and that, in important respects, are factually incorrect.

Midjourney respectfully requests that the Court reconsider the Tentative Order and deny Plaintiffs' demands for highly confidential source code in their entirety.

## II. BACKGROUND

### A. The --cref parameter

Midjourney is a service through which users generate images and short video clips based on users' text and image prompts. Users control the settings for their creations, such as image size or generation speed, by selecting among certain "parameters," either from options in the Midjourney interface or by typing two hyphens followed by a short name (e.g., "--ar" for aspect ratio). Kruse Decl. ¶ 3. The "--cref" parameter (short for "character reference") was introduced in 2024 for Midjourney v6. *Id.* ¶ 4. It lets a user supply a reference image so that the generated image maintains the same subject matter—for example, a user who has generated an image of a dragon can use --cref to show that same dragon in a new scene described by a new prompt. *Id.* Midjourney's most advanced models offer approximately 28 parameters, *but --cref is not one of them*: it exists only for the since-superseded v6 model (and corresponding "Niji 6"), and is rejected by Midjourney's service for other models, including v7 (released April 2025) and v8 (released March 2026). *Id.* ¶ 5.

The --cref parameter's instructions are general and are not specific to the contents of any particular reference image. *Id.* ¶ 7. At a high level, and only when affirmatively selected, the parameter first converts a user's reference image into a numeric description; then, as an image is generated according to a prompt and other

instructions, the generated image is nudged closer to that numeric description. *Id.* ¶¶ 6-7. There is no code-based step that finds or isolates the reference image's subject: the v6 model processes the reference image as a whole, and which characteristics of a subject (such as face, hair, or clothing) carry through to the output depends on what the model has learned and stored in its weights, not on any rule or instruction in the source code. *Id.* ¶ 8.

The --cref source code is divided across two repositories: dreammachines-monorepo, which receives and initially acts on a user's job (and which will be made available to Plaintiffs' experts for review), and image-generation, which contains Midjourney's core inference code and is at the heart of many of its trade secrets. *Id.* ¶ 10. Because the --cref parameter is implemented during inference, the corresponding code depends extensively on other inference-related code and cannot be coherently separated from it if produced in its entirety. *Id.* ¶ 10. As Midjourney's CEO, David Holz, explained in his June 20, 2026 declaration regarding the v8 model and the torch-aesthetic-redux repository, Midjourney closely guards its trade secrets—particularly its inference code. *Id.* ¶ 11; *see* Dkt. 98-9. Access to this code is limited even within Midjourney. Kruse Decl. ¶ 11. The trade secrets implicated by the --cref-dependent inference code are akin to those described in the Holz declaration and would cause Midjourney comparable competitive harm if disclosed. *Id.* ¶ 12.

### B. The Explore Page and Midjourney TV

The Explore Page is a feature of the Midjourney service that displays a stream of images generated by Midjourney users, organized under categories such as "top of the day," "top of the month," "hot," and "random." *See* IDC Update (Sep. 11, 2026) at 14, 16. Midjourney TV is a continuously streaming channel of user-generated content. *Id.* Both features select content for display primarily based on user popularity. *Id.* Midjourney has provided Plaintiffs a detailed, verified response to Interrogatory No. 10 describing how the Explore Page selects content for display,

and has invited Plaintiffs to serve a corollary interrogatory regarding Midjourney TV. *Id*.

### C. The Tentative Order

The October 13 Tentative Order (Dkt. 218) directed Midjourney to make available "all source code that determines the images and/or videos that are displayed" on the Explore Page and Midjourney TV, and "all source code" for the "--cref" parameter. Dkt. 218 at 3-4. The Court invited Midjourney to submit formal briefing on the tentative by October 21, 2026. *Id*. at 4-5.

## III. LEGAL STANDARD

Discovery is limited to that which is "proportional to the needs of the case," and courts "must limit" discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(1), (b)(2)(C). Under this standard, "disclosure of trade secrets will be required only where such disclosure is relevant and necessary to the prosecution or defense of a particular case." *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 330 (9th Cir. 1961) (emphasis added). Relevance alone does not satisfy this standard; Plaintiffs must separately show that the trade secret material — as opposed to other available information — is necessary. *Id.*; *ODS Techs., L.P. v. Magna Ent. Corp.*, 2008 WL 11343035, at *1 (C.D. Cal. Oct. 24, 2008).

"It is common knowledge that a computer program's source code is a trade secret." *ODS Techs.*, 2008 WL 11343035, at *1. *See also* Cal. Civil Code § 3426.1(d) (defining trade secret as including a "program, . . . method, technique, or process"). Thus, "[a] party seeking to compel the production of a source code must demonstrate that it is relevant and necessary to the action." *Get Seen Media Grp., LLC v. Tiller*, 2021 WL 5083741, at *5 (C.D. Cal. June 23, 2021) (denying request for source code). Accordingly, courts routinely deny discovery of source code where the requesting party's needs, to the extent legitimate, can be met through less intrusive means, such as other documents or testimony. *See e.g.*, *Realtime Data, LLC v. MetroPCS Tex.,*

*LLC*, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) (deposition testimony sufficient); *Disney Enters., Inc. v. Hotfile Corp.*, 2011 WL 13100240, at *2 (S.D. Fla. Aug. 26, 2011) (denying production where code could be described by other means).

## IV. ARGUMENT

Plaintiffs had the burden to demonstrate that the source code they seek is "both relevant and necessary to the action." *Synopsys, Inc. v. Nassda Corp.*, 2002 WL 32749138, at *1 (N.D. Cal. Sep. 16, 2002). They failed to meet their burden.

### A. Plaintiffs Failed to Meet Their Burden Regarding the --cref Code.

Sensitivity of the code. The code corresponding to the --cref parameter implicates core trade secrets embodied in Midjourney inference code. Kruse Decl. ¶¶ 9, 11-12. Because the parameter is implemented during inference it depends extensively on other inference-related code and is not fully separable from it. *Id.* ¶ 10. Disclosure of inference code, which, to date, has not been produced and Plaintiffs have not sought, risks irreparable harm to Midjourney. *Id.* ¶¶ 11-12. *See* Dkt. 98-9.

Failure to Establish Relevance or Necessity. Plaintiffs' demand for source code corresponding to the --cref parameter relied entirely on shifting, conclusory and inadequate assertions of relevance and need. Initially, Plaintiffs argued that the --cref parameter is relevant to a "tailoring" theory of contributory infringement—a theory that Plainitffs had *expressly disclaimed* one month prior. *See* IDC Update (Sep. 11, 2026) at 11 (quoting Plaintiffs' original argument that "how the service responds when a user invokes a character bears directly on tailoring"). Only after Midjourney pointed this out did Plaintiffs swap that argument at the last minute with another conclusory assertion: that "[h]ow Midjourney designed its service to respond when a subscriber invokes that parameter bears directly on Midjourney's volitional conduct, on direct infringement and willfulness, and on the intent that Plaintiffs' inducement claim places at issue." *Id.* In other words, Plaintiffs did no more than simply assert that the code is relevant.

At the September 22 IDC, Plaintiffs' articulation of relevance and need was

no more developed. Plaintiffs' counsel argued that the character reference feature "is designed to reproduce a specific character on demand," Sept. 22 IDC Tr. 17:16-17, and that because Midjourney disputes its liability for direct infringement and pointed out that its users created the images, "if they're creating a system that makes it easy to create works with our characters, that's relevant to secondary infringement," *id*. at 17:19-21. Together with Plaintiffs' IDC statement, *that was the entirety of their relevance showing*.[1] And it begs the questions: *Why or how* is creating such a feature "relevant to secondary infringement"? To which elements of Plaintiffs' remaining inducement and vicarious copyright infringement claims does such contention correspond? The answer is: none.

Plaintiffs' assertion at the IDC that the --cref feature supposedly makes infringement easy is also meaningless when set against Plaintiffs' emphasis throughout this litigation that no effort is required from Midjourney users to generate allegedly infringing images (i.e. independent from their speculation around the --cref parameter). *See e.g.*, Disney/Universal Compl. ¶ 1 (alleging that Midjourney "functions as a virtual vending machine"), ¶ 8 (alleging that "if a Midjourney subscriber submits a simple text prompt requesting an image of the character Darth Vader… "Midjourney obliges"); Warner Compl. ¶¶ 9-12 (same allegation as to Wonder Woman, Tweety, and Scooby-Doo, and further alleging that "[e]ven in response to generic prompts like 'classic comic book superhero battle'" Midjourney outputs images of asserted works); Dkt. 27 (26(f) Report) at 4 (alleging Midjourney operates "a virtual vending machine [for] infringing images and videos of Plaintiffs' copyrighted works,"); Dkt. 154 at 11 (arguing Midjourney "'specifically designed' its AI service to readily produce and display perfect reproductions and derivatives of Plaintiffs' copyrighted characters," which it "distributes . . . to its subscribers on

[1] Although Plaintiffs bore the burden of showing relevance, they will certainly try to backfill the lack of it in their forthcoming reply, which is improper. Plaintiffs should be limited to the arguments they made before and during the September 22 IDC. *If* the Court permits Plaintiffs submit new arguments and/or introduce an expert declaration, Midjourney requests a formal opportunity to respond.

demand," including from "a prompt with a generic term like 'superhero'"); May 22, IDC Tr. 30:20-32:9 (Plaintiffs' counsel explaining that Midjourney's models are "really, really good at . . . remembering characters … [and] you don't need to turn lots of nobs [sic] and buttons and tune this like a ham radio" to get such an output).

Against this backdrop, Plaintiffs' arguments fell far short of showing the –cref parameter code is both "relevant and necessary." *See* Tentative Order at 4 (confidential source code must be both "relevant and necessary" to warrant disclosure). Nonetheless, the tentative reached the conclusion that the "parameter has a *significant* impact on how Midjourney generates allegedly infringing images and videos" and that "only the source code will show *exactly how* the character reference parameter creates new images with reference to a subject character which can be a copyrighted work." *Id.* at 4 (emphasis added). Respectfully, there was/is nothing in the record to support either conclusion, both of which are incorrect.

***First***, the parameter will not show "exactly" how images are created—or anything close to it. The code associated with the parameter consists of general instructions that direct Midjourney's v6 model to nudge a user's output image toward a numerical representation of the user's reference image, instructing the model which direction to push the image numerically, not on which features of the reference image to reproduce or how those features should appear in the final output. Kruse Decl. ¶ 7. There is no source code with instructions to identify a "character" in the reference image, isolate that character, or that contains rules directing the model to preserve face, hair, clothing, or other features in a reference image. *Id.* ¶ 8. The v6 model processes a reference image in its entirety, and which visual characteristics ultimately carry through into an output depends on relationships the model learned during training and encoded in its weights (which are not part of the source code and are not interpretable)—*not* on rules contained in the --cref source code. *Id.* ¶ 8. The --cref code is wholly irrelevant for these reasons.

***Second***, it is unclear how or why the Tentative Order concluded that the --cref

parameter featured "significant[ly]" in instances of alleged infringement. To the contrary, the parameter has not featured in any of Plaintiffs' allegations to date and, as noted above, is unrelated to Plaintiffs' repeated emphasis on how easily users are able to create allegedly infringing images with simple text prompts. Moreover, the parameter was only available for v6, which was superseded in early 2025 by v7 (and later, v8), and is rejected by those and other Midjourney models. This fact alone belies any determination of significance, let alone need. And though it may be true that Midjourney users have used the feature while generating images that Plaintiffs will undoubtedly allege are infringing (which Midjourney acknowledged), the same is likely true of *any* Midjourney parameter. And it is necessarily true of all inference code. If the fact that code is implicated in a user's creation of an allegedly infringing image were sufficient to justify its production, then the same reasoning would entitle Plaintiffs to all of Midjourney's source code. But plainly that would not be an appropriate result. Tellingly, Plaintiffs have never sought Midjourney's core inference code until now, and have never framed their demands as seeking inference code, presumably because they know they are not entitled to it.

***Third***, to the extent that the --cref parameter is relevant at all, which it isn't, how it functions can be demonstrated through other, less burdensome discovery, such as deposition testimony. *See e.g., Synopsys* 2015 WL 1197705, at *4 (denying motion to compel code production where it "would be duplicative of discovery [plaintiff] already possesses or will shortly possess," given "the risk . . . resulting from the exposure of its valuable proprietary information"); *Realtime Data*, 2012 WL 1905080, at *3 (deposition of a knowledgeable engineer sufficient in lieu of source code); *Saleh v. Nike, Inc.*, 2021 WL 4434352, at *1 (C.D. Cal. Aug. 16, 2021) (holding that even where source code is relevant, a court "will not be justified in ordering disclosure" when alternatives are available). To the extent that Plaintiffs purport to be seeking information showing why Midjourney developed the feature, it is those other forms of discovery that would reveal the company's motivations and

expectations.

Plaintiffs did not and cannot carry their burden to show that the --cref source code is both relevant and necessary. Its motion to compel should be denied.

**B. Plaintiffs' False and Conclusory Allegations Regarding the Explore Page and Midjourney TV Code Fail to Support its Need**

Plaintiffs' demands for the Explore Page and Midjourney TV code are similarly defective, albeit with a patina of relevance and lower stakes. Relying on wholly conclusory allegations that Midjourney designed its Explore feature and Midjourney TV to "promote infringement" of Plaintiffs' works, they argued that only source code will reveal whether Midjourney deliberately selected infringing images for display. But the premise of Plaintiffs' stated need is contradicted simply by observing the Explore Page and Midjourney TV, and it has been independently rebutted by other discovery Midjourney has already provided, including its detailed, verified response to Interrogatory No. 10.[2]

The district court opinion in *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 260-61 (S.D.N.Y. 2008) is directly on point. There, plaintiff Viacom International sought production of the source code for YouTube's search algorithm "to support their claim that 'Defendants have purposefully designed or modified the tool to facilitate the location of infringing content,'" which Google had denied via a sworn declaration from a Google engineer. *Id*. at 259. The court declined to compel production, reasoning that the plaintiff's unsubstantiated speculation was insufficient to justify the production of source code in the face of a sworn testimonial. *Id*. at 260. The same logic applies with equal force here. *Accord Get Seen Media*, 2021 WL

[2] Midjourney has invited Plaintiffs to serve a corollary interrogatory for Midjourney TV. In any event, if there were evidence of Midjourney deliberately curating allegedly infringing works to appear in the at-issue Explore gallery or on Midjourney TV, surely Plaintiffs would have included them in one of the nearly 200 pages of allegations that comprise the Complaints in this consolidated action. It is revealing that they did not, and even more so that after over a year of litigation, months of discovery, and having received tens of thousands of documents from Midjourney, ***Plaintiffs have not cited a single document*** supporting these specious allegations.

5083741, at *4 (citing *Viacom* and denying motion to compel source code premised on speculation in a complaint).

The Tentative Order, which did not have the benefit of, and therefore does not address, this authority, reasons that production of the code is justified because Midjourney "has put the [Explore page] algorithm at issue by *submitting evidence* as to how images are selected for display on the Explore page in support of Defendant's Motion for Judgment on the Pleadings." Tentative at 3 (emphasis added). This characterization is not fair and does not accurately describe Midjourney's argument. In deciding Rule 12(c) motions, the court must examine the Complaint's well-pleaded allegations and materials subject to judicial notice or incorporated by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Consistent with that standard, Midjourney referred the Court to information that *Plaintiffs* implicitly incorporated in the complaints, or that were otherwise subject to judicial notice, in particular, the webpage for the Explore feature itself. *See Lammey v. CBM Two Hotels, L.P*, 2022 WL 22805525, at *2 (C.D. Cal. July 8, 2022) (judicially noticing website landing page and descriptions thereon) (Kronstadt, J.). *See also D.B., et al. v. Bellesa Enters. US, Inc.*, 2026 WL 2058427, at *3 (C.D. Cal. July 14, 2026) (same) (Kronstadt, J.). It is self-evident from observing the Midjourney website that Plaintiffs' characterizations are false. Pointing out the obvious does not justify discovery any more than Plaintiffs' self-serving, unsupported conjecture does. Similarly, other than empty speculation, there's nothing to support discovery into Midjourney TV's code. Plaintiffs, after a year, cannot point to any example of allegedly infringing videos that were displayed, let alone emphasized as they allege.

For all of these reasons, Plaintiffs' demands and the Tentative Order's reasoning does not justify disclosure of code corresponding to Midjourney TV and the Explore page. Accordingly, Midjourney respectfully requests that the Court reconsider its Tentative Order and decline to order production of source code for the Explore Page, Midjourney TV, and the "--cref" parameter.

Dated: October 21, 2026 COOLEY LLP

By: */s/Judd Lauter*
Bobby Ghajar
John Paul Oleksiuk
Judd Lauter
Stephanie Schuyler
Kayla Blaker
Aastha Sharma

*Counsel for Defendant Midjourney, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Midjourney, Inc., certifies that this brief contains 3,667 words, and, being under ten pages in length, complies with the Standing Order of this Court.

Dated: October 21, 2026 By: */s/Judd Lauter*
Judd Lauter