UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-05275-JAK-AJR** | Date | October 28, 2026 |
| Title | Disney Enterprises Inc., et al. v. Midjourney Inc. | | |

| | |
|---|---|
| Present: | Hon. A. Joel Richlin, U.S. Magistrate Judge |

| | |
|---|---|
| Nicholas Huynh | C/S 10/26/2026 |
| Deputy Clerk | Court Reporter / Recorder |

| | |
|---|---|
| Attorneys for Plaintiff(s): | Attorneys for Defendant(s): |
| David R. Singer, Esq.<br>Kara V. Brandeisky, Esq.<br>Zachary A. Marino, Esq.<br>Lauren Michelle Greene, Esq. | Stephanie J. Schuyler, Esq.<br>John Paul Oleksiuk, Esq.<br>Judd David Lauter, Esq. |

**Proceedings:** **MINUTES OF INFORMAL DISCOVERY VIDEOCONFERENCE**

On October 19, 2026, the Court held an informal discovery conference by Zoom to discuss various discovery disputes. (Dkt. 234.) In advance of the hearing, the parties submitted a Joint Status Update by email (the "Joint Status Update"). (Id.) There was not enough time during the hearing to address all of the issues raised in the Joint Status Update. (Id. at 4-7.) Therefore, the Court set a further informal discovery conference for October 26, 2026, to address four issues. (Id. at 7.) On October 26, 2026, the Court held a further informal discovery conference limited to a discussion of the four remaining issues. The Court received extensive oral argument from the parties at the hearing and then took the four issues under submission. Based on the discussion with the parties and the parties' Joint Status Update, the Court directs the parties as follows:

**Plaintiffs' Issue No. 2: Midjourney's "Attorneys' Eyes Only" Designation of the Stealth Sample Report and Outputs [Dkt. 160; Dkt. 46 §§ 2.9, 5.1, 6.3]:** This dispute relates to the parties' stipulated protocol for sampling stealth-mode prompts and outputs. (Dkt. 160.) The protocol provides that, "To the extent Midjourney withholds or redacts any information in the Sample on privacy grounds, it shall identify the basis for each such withholding or redaction (e.g., personally identifying information like a person's name, home address, or phone number)." (Id., § 6.) On September 21, 2026, Midjourney produced the stealth sample report and outputs and designated all of them as Highly Confidential – Attorney's Eyes Only ("AEO"). Plaintiffs challenge this as an improper blanket designation under Section 6 of the Protective Order. Midjourney counters that it has designated as AEO only roughly 38,000 of more than tens of millions of jobs disclosed to Plaintiffs. Midjourney contends that the designations are necessary because users of the stealth feature have an expectation that their outputs will not be disclosed to third

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-05275-JAK-AJR** | Date | October 28, 2026 |
| Title | Disney Enterprises Inc., et al. v. Midjourney Inc. | | |

parties and some of the users may be competitors with Plaintiffs. Therefore, there is a risk that the outputs contain commercial sensitive information and Midjourney has no way of interrogating the purpose of a given job that would enable it to perform a more targeted assessment of commercial sensitivity.

At the hearing, Midjourney's counsel clarified that 38,000 is the total number of sampled jobs, and each job can have up to four outputs, so the total number of outputs designated as AEO is some multiple of 38,000 up to 4 times 38,000. Midjourney proposed that it would accept a good faith determination by Plaintiffs' counsel that a particular output either was infringing (based on counsel's determination) or that counsel needed to show the output to their client to make that determination. Based on this good faith determination, Midjourney would accept Plaintiffs showing the output to their clients and would later de-designate the output from AEO to Confidential. At some point, Plaintiffs would need to provide a list of all outputs to be de-designated. This approach is designed to limit the disclosure of Plaintiffs' counsel's attorney work product and also make the process less cumbersome.

Plaintiffs' counsel noted that Midjourney had already redacted personally identifiable information ("PII") from all of the produced outputs and reports. However, Plaintiffs' counsel was also willing to work with Midjourney on the terms of their proposal. Therefore, the Court directed the parties to meet and confer and see if they could agree on language that the Court would then order. The parties have now met and conferred, and agreed on the following language, which the Court incorporates as its Order:

> Under the Court's August 11, 2026 Order (Dkt. 160), Midjourney produced a Sample of Private Prompts and associated outputs, together with a sample report. Midjourney has designated all of that material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Stipulated Protective Order (Dkt. 46). Capitalized terms have the meanings given in those Orders. Pursuant to the parties' agreement, the Court orders that any Private Prompt and associated output in the Sample that Plaintiffs' Outside Counsel of Record or their retained experts determine in good faith may contain or depict one or more of Plaintiffs' asserted works or characters shall be treated as "CONFIDENTIAL" under the Stipulated Protective Order upon that determination, without re-designation by Midjourney and without any requirement that Plaintiffs identify the determination or the affected Private Prompts to Midjourney. The determination whether a Private Prompt or output may contain or depict an asserted work or character, and the basis for that determination, is attorney work product and is not subject to

discovery. The same treatment applies to the corresponding entries in the sample report, including the prompt text and associated metadata for each such Private Prompt. Material so treated may be disclosed to persons authorized to receive "CONFIDENTIAL" information under Section 7.2 of the Stipulated Protective Order. Neither party waives any rights under Section 6 of the Stipulated Protective Order. Plaintiffs' review vendor and its review personnel may access the Sample as Professional Vendors under Sections 2.16 and 7.3(a) of the Stipulated Protective Order.

The foregoing Order resolves the dispute as to Plaintiffs' Issue No. 2.

**<u>Midjourney's Issue No. 2: Documents Regarding License and Settlement Agreements:</u>** This dispute relates to Midjourney's requests seeking documents related to Plaintiffs' licensing of generative AI tools as well as any agreement related to the settlement by Plaintiffs of copyright claims against generative AI services. Plaintiffs agreed to produce "non-privileged agreements, licenses, or permissions concerning the use of generative AI to generate images and/or video outputs intended for consumers, featuring the asserted works," but refused to produce any documents regarding settlements or any communication regarding licensing. Plaintiffs agreed to produce the actual final signed license agreements. Midjourney contends that in addition to obtaining the actual final signed license agreements, it should be able to discover communications about licensing to establish the existence of licensing markets. Thes requests are specifically focused on communications related to the licensing of copyrighted material for either: (1) training generative AI services; or (2) outputs from generative AI services. Midjourney contends that it needs to obtain settlement agreements for the same reason as it needs communications related to licensing. Specifically, Midjourney contends that if Plaintiffs are negotiating settlement agreements with third parties who they allege infringed Plaintiffs' copyrights through training and/or outputs (as Plaintiffs claim Midjourney has), then those agreements are relevant here. Plaintiffs respond that only the license agreements themselves are relevant and they therefore stand on their objection to producing documents related to the license agreements as not proportional to the needs of the case. Plaintiffs further respond that settlement agreements are protected by Federal Rule of Evidence 408 and not relevant to damages or the market for the works at issue.

Midjourney relies on <u>Onan v. Databricks, Inc.</u>, 2026 WL 125149 (N.D. Cal. Jan. 16, 2026), for the proposition that license agreements and communications about licensing are relevant to the question of whether licensing markets even exist, and therefore relevant to

Midjourney's fair use defense. Onan is a similar case where a group of content creators have sued a generative AI company and its corporate parent related to the use of copyrighted works for training and output by their generative AI tools. See Onan, 2026 WL 125149, at *1-3. In Onan, the U.S. District Court for the Northern District of California explained that licenses with publishers for permission to use copyrighted content for generative AI training was relevant to the defendants' fair use defense because such licenses may show what the plaintiffs could have made from licensing their content, as well as the feasibility of generative AI companies assembling convenient libraries of works to train their models, which could undercut the argument that alleged copying was necessary for technological advancement. Id. at *2. Thus, the Onan court directed the defendants to produce the license agreements sought by plaintiffs, but also concluded that the defendants did "not need to produce any 'related communications' and [we]re just required to produce executed agreements with third parties to obtain textual data for training purposes." Id. at *3.

The Court finds the rationale and conclusion from Onan to be applicable here. There is no dispute that the actual license agreements are relevant to Midjourney's fair use defense and Plaintiffs have agreed to produce the final signed license agreements. The only dispute is whether Plaintiffs should also produce all communications related to these license agreements. The Court concludes that such a request is substantially overbroad and not proportional to the needs of the case. As an initial matter, it is entirely unclear how to limit a request for communications related to license agreements. Does that mean all communications leading up to the execution of the agreement, or does it also include post-execution communications that somehow bear on the meaning or effect of the license agreement? With regard to pre-execution communications, all of the back and forth is simply parol evidence as to the meaning of the license agreement and therefore the final executed agreement is really the best evidence of what the parties intended to agree to. Midjourney contends that it needs communications related to license agreements so that it can show that generative AI companies have refused Plaintiffs' demands to enter license agreements. But Midjourney can make the same point by the absence of executed license agreements. And to the extent what Midjourney really wants is evidence of positions taken by other generative AI companies, Midjourney is free to propound third-party discovery. The Court suspects that generative AI companies will be happy to assist. Therefore, just like in Onan, the Court concludes that Plaintiffs here need not produce documents related to license agreements, just the final signed agreements are sufficient.

With regard to its request for settlement agreements, Midjourney relies on ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010), for the proposition

that settlement agreements may be the most reliable evidence of a license because generative AI is a highly innovative technology that has been the subject of many infringement lawsuits that are akin to "pseudolicensing discussions." In ResQNet.com, Inc., the Federal Circuit was reviewing the district court's determination of a reasonable royalty in a patent infringement action, which considered a number of licenses that arose out of litigation. See id. The Federal Circuit observed "that the most reliable license in th[e] record arose out of litigation," but also warned that license agreements resulting from litigation must be scrutinized because the "litigation itself can skew the results of the hypothetical negotiation." Id.

In response, Plaintiffs contend that settlement agreements would be inadmissible under Federal Rule of Evidence 408 and therefore discovery of settlement agreements should be denied. "However, by its terms, Rule 408 limits the admissibility of settlement agreements, not their discovery." Big Baboon Corp. v. Dell, Inc., 2010 WL 3955831, at *2 (C.D. Cal. Oct. 8, 2010). Indeed, courts have recognized that settlement agreements can be admitted under Rule 408 for purposes other than proving the value or validity of a claim. See id. Ultimately, courts in the Ninth Circuit balance the public policy favoring settlement agreements and the expectation of the parties to the agreement with regard to confidentiality against the interest of the party seeking the settlement agreements and their need for such discovery in the case. See id. at *4 ("Courts must balance one party's interest in the discovery of potentially relevant information against another party's interest in protecting a settlement negotiated with the expectation of confidentiality." (internal quotation marks and brackets omitted)). The key question here is whether Midjourney seeks the settlement agreements for a purpose not prohibited by Rule 408. See id. at *3 ("Because Defendants are requesting discovery for a purpose not prohibited by Rule 408 and because Ninth Circuit law does not clearly recognize a broad settlement privilege, Plaintiff's settlement agreement with Honda is not protected from disclosure on the ground that it is privileged.").

Midjourney stated unequivocally that it seeks the settlement agreements at issue to prove its fair use defense. But that is an effort to prove or disprove the validity of Plaintiffs' copyright infringement claims and therefore directly prohibited by Federal Rule of Evidence 408(a). Therefore, the Court concludes that Midjourney has not offered a permissible purpose for the requested discovery under Rule 408(b). Moreover, the Court notes that even if Midjourney had proffered a permissible purpose, the Court would still have to weigh that purpose against the chilling effect on settlements from permitting the discovery and the recognition that settlement agreements have only limited probative value with regard to identifying and characterizing markets for intellectual property. See

UMG Recordings, Inc. v. Suno, Inc., 2026 WL 936049, at *6 (D. Mass. Apr. 6, 2026) ("Plaintiff's request for documents regarding the Warner Music Group settlement and associated licensing is denied. F.R.E. 408 is not an absolute bar, but the relevance of this information is marginal and the potential for chilling settlements—in this and other cases—is high. As Suno argues, settlements of litigation have little persuasive bearing on identifying and characterizing markets for intellectual property."). Accordingly, Midjourney's request for discovery into settlement agreements and related communications is DENIED.

**Midjourney's Issue No. 4: Plaintiffs' Response to Interrogatory No. 5 Regarding Plaintiffs' Claim of Copyright:** This dispute relates to Plaintiffs' response to Midjourney's Interrogatory No. 5. Interrogatory No. 5 states, "For each ASSERTED WORK IDENTIFIED in response to Interrogatory No. 1, IDENTIFY any elements of the ASSERTED WORK that YOU contend were copied by Midjourney that are excluded from YOUR claim of rights in the ASSERTED WORK (e.g., THIRD-PARTY material, scènes à faire, etc.)." Plaintiffs responded in relevant part, "The registered copyrights for [Plaintiff's] asserted works that have or will be produced encompass the entirety of the identified characters appearing therein. These unauthorized image and video outputs by Midjourney infringe all the protectible expression of the characters being copied. Plaintiffs are asserting their full scope of rights under U.S. copyright law and nothing less." Midjourney contends that Plaintiffs' response is circular and does not address what expression is protectable. Midjourney further contends that it is trying to understand whether the claim registered covers a character (or elements of a character). Plaintiffs respond that Interrogatory No. 5 does not ask Plaintiffs to identify any aspect of each asserted work that is not covered by the copyright registration for that work and instead asks Plaintiffs what elements of the works at issue that Plaintiffs contend Midjourney copied are excluded from Plaintiffs' claim of ownership. Plaintiffs contend that they have answered this question by responding that Plaintiffs do not contend that any element of the characters at issue that Midjourney copied is excluded from their claim of ownership.

At the hearing, Midjourney clarified that it is seeking a supplemental response containing a work-by-work narrative describing the material in each work that was excluded from the copyright registration. However, that is not what Interrogatory No. 5 asks for. At its core, Interrogatory No. 5 asks Plaintiffs to identify any element of the asserted works in the case that are excluded from Plaintiffs' copyright claims. Plaintiffs have responded by stating that there is no element of the asserted works in the case that is excluded from Plaintiffs' copyright claims. Specifically, Plaintiffs responded that "[t]he registered copyrights for [Plaintiff's] asserted works that have or will be produced

encompass the entirety of the identified characters appearing therein." This response answers the interrogatory. Midjourney contended at the hearing that this answer is factually incorrect because the copyright registrations produced by Plaintiffs do not cover every protectable element of the asserted works in the case. However, the alleged factual inaccuracy of Plaintiffs' response is not a basis to compel further a response to Interrogatory No. 5. See, e.g., Petconnect Rescue, Inc. v. Salinas, 2022 WL 448416, at *4 (S.D. Cal. Feb. 14, 2022) ("However, the Court does not grade the factual accuracy of Defendants' responses in a motion to compel."); Burke v. Basil, 2021 WL 4189395, at *3 (C.D. Cal. May 21, 2021) ("The Court, however, declines to decide on the factual accuracy of NMUSD's response on a motion to compel . . . .").

To the extent Midjourney believes there are deficiencies in Plaintiffs' document production related to the copyright registrations and chain of title for the asserted works in the case, Midjourney should meet and confer with Plaintiffs about those alleged deficiencies. But the fact that Midjourney disputes the accuracy of Plaintiffs' response to Interrogatory No. 5 in light of the copyright registrations and chain of title documents produced to date is not a basis to compel Plaintiffs to provide a work-by-work narrative supplemental response to Interrogatory No. 5. Accordingly, Midjourney's request to compel a supplemental response is DENIED.

**Midjourney's Issue No. 5: Plaintiffs' Use of Midjourney and Scraping of Midjourney Content:** This dispute contains a few related issues. First, Midjourney contends that Plaintiffs have not provided sufficient information in the log that the Court directed Plaintiffs to provide related to their reliance on Rule 33(d) in responding to Midjourney's Interrogatory No. 7. Midjourney sent Plaintiffs a detailed letter on this issue and Plaintiffs have agreed to respond, but contend that they were not given sufficient time to do so as Midjourney only brought this up on October 13, 2026. The second issue is Midjourney's request for evidence of the use of Midjourney by Plaintiffs not for purposes of investigating this lawsuit as requested in Midjourney's Request for Production No. 131. Plaintiffs respond that they have already agreed to produce responsive documents so they do not believe there is any dispute. The third issue is Midjourney's request for evidence of Plaintiffs' knowledge of scraping of Midjourney content by Plaintiffs' current or former AI providers, such as Adobe, as requested in Midjourney's Request for Production No. 132. Plaintiffs object to providing any such evidence as being not relevant or proportional to the needs of the case. Disney also notes that it has stated in response to Request for Admission Nos. 263 and 264 that it is not aware of any alleged scraping of Midjourney by Adobe.

As to the first issue, Plaintiffs have agreed to respond to Midjourney's letter related to Plaintiffs' log provided in response to Midjourney's Interrogatory No. 7 no later than **October 30, 2026**. The parties should finish working through the issue informally and then can raise any remaining dispute with the Court.

As to the second issue, Plaintiffs contended at the hearing that they already agreed to produce any non-privileged document showing authorized scraping or downloading of Midjourney content in response to Midjourney's Request for Production No. 131. The Court has now reviewed Plaintiffs' response to Request for Production No. 131 and agrees. Plaintiffs agreed to produce "nonprivileged documents concerning [Plaintiffs'] employees' or contractors' actual or proposed authorized use of Midjourney, and uses of Midjourney by the individuals previously identified by Midjourney, for a purpose other than to investigate Midjourney's infringement in anticipation of this litigation." The Court construes this response as including authorized scraping or downloading of Midjourney content. The Court also accepts the representation of Plaintiffs' counsel at the hearing that they will search for authorized scraping and downloading of Midjourney content, and directs Plaintiffs to do so. To the extent Midjourney contends that Plaintiffs' search to date has not been reasonably diligent such that it would include authorized scraping and downloading of Midjourney content, that is a separate issue which Plaintiffs have addressed in their letter discussed in the context of the first issue.

As to the third issue, the Court concludes that Request for Production No. 132 is substantially overbroad and seeks information that is simply not proportional to the needs of the case. Accordingly, no further response is required. Responding to this request would require Plaintiffs to investigate every current or former AI provider for evidence of Plaintiffs' knowledge of those providers' practices as to whether they engaged in any scraping of Midjourney content. Midjourney contends this information would be relevant to show that Plaintiffs are benefiting from the kind of scraping that Plaintiffs are suing Midjourney over. However, any alleged benefit would be indirect at best and therefore of limited relevance to the claims and defenses at issue here. Moreover, to the extent Midjourney is trying to assert an unclean hands defense, the Court has previously explained that it follows the Ninth Circuit's guidance that in the context of copyright infringement, the equitable defense of "unclean hands is recognized only rarely." Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 990 (9th Cir. 2009) (internal quotation marks omitted). Therefore, given the limited relevance of the information sought, the Court concludes that the request is not proportional to the needs of the case. Finally, the Court notes that to the extent Midjourney is trying to establish an industry practice as to the use of scraping by generative AI companies, it remains free to do that and can pursue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-05275-JAK-AJR** | Date | October 28, 2026 |
| Title | Disney Enterprises Inc., et al. v. Midjourney Inc. | | |

third-party discovery if needed. Once again, the Court suspects that generative AI companies will be happy to assist Midjourney's efforts.

IT IS SO ORDERED.

| | |
|---|---|
| | 1:55 |
| **Initials of Preparer** | N.H. |